**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
SEATTLE DIVISION**

| | |
|---|---|
| JOHN DOE #1, an individual, JOHN DOE #2, an individual, and PROTECT MARRIAGE WASHINGTON,<br><br>                Plaintiffs,<br>  vs.<br><br>SAM REED, in his official capacity as Secretary of State of Washington, DEBRA GALARZA, in her official capacity as Public Records Officer for the Secretary of State of Washington,<br><br>                Defendants. | No.<br><br>**VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

John Doe #1, an individual, John Doe #2, an individual, and Protect Marriage Washington complain and allege as follows:

# INTRODUCTION

**1.** This is a civil action for declaratory and injunctive relief arising under the First and Fourteenth Amendments to the Constitution of the United States. This case concerns the constitutionality of the Washington Public Records Act, Wash. Rev. Code § 42.56.001, *et seq.*, as it applies to the public release of referenda petitions submitted to the Secretary of State of Washington.

**Verified Complaint**              1                  **BOPP, COLESON & BOSTROM**
                                                                                                  **1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434**

2. The rights of citizens to peaceably assemble and petition the government for redress of grievances are among the fundamental rights protected by the Bill of Rights. Inherent within these rights is the right of individuals to engage in anonymous speech, speech that has "played an important role in the progress of mankind." *McIntyre v. Ohio Elections Commission*, 514 U.S. 334, 341 (1995); *id.* at 343 n. 6 (citing the Federalist Papers as perhaps the most famous example of anonymous writing in our nation's political history). And as the Supreme Court has recognized, there is nothing inherently suspect with an individual wanting to keep his or her support for an issue private. *Id.* at 341-42 ("The decision in favor of anonymity may be motivated by fear of economic or official retaliation, by concern about social ostracism, or merely by a desire to preserve as much of one's privacy as possible.")

3. The public release of a referendum petition containing the names and addresses of over 138,500 Washington residents pursuant to Washington's Public Records Act threatens to undermine the First Amendment's goal of encouraging "uninhibited, robust, and wide-open" debate, *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964). By publicly disseminating the names of individuals signing a referendum petition, individuals and organizations hope to make it personally, economically, and politically unpopular to advocate a position that would seek to preserve the sanctity of marriage, as traditionally defined as between one man and one woman.

4. Given the sensitive First Amendment rights at issue, Plaintiffs complain that the State of Washington lacks a compelling interest sufficient to justify the public disclosure of referendum petitions.

5. In the alternative, Plaintiffs complain that, if the State possesses a compelling state interest, the Public Records Act is unconstitutional because there is a reasonable probability of threats, harassment, and reprisals if the names and addresses of the petition signers are publicly released.

6. Given the nature of the rights asserted, the failure to obtain injunctive relief from this Court will result in immediate and irreparable injury to Plaintiffs.

**Verified Complaint**     2     **BOPP, COLESON & BOSTROM**
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

## JURISDICTION AND VENUE

**7.** This case raises questions under the Constitution of the United States and 42 U.S.C. § 1983, and thus this Court has jurisdiction over all claims for relief pursuant to 28 U.S.C. §§ 1331 and 1343(a).

**8.** The Western District of Washington is the proper venue for this case pursuant to 28 U.S.C. § 1391(b) because Defendants Reed and Galarza reside in this district, Plaintiff Protect Marriage Washington has its principle place of business in this district, and Plaintiffs John Doe #1 and John Doe #2 reside in Washington.

## PARTIES

**9.** Plaintiff John Doe #1 is an individual and resident of Stevens County, Washington. Plaintiff John Doe #1 signed the Referendum 71 petition.

**10.** Plaintiff John Doe #2 is an individual and resident of Cowlitz County, Washington. Plaintiff John Doe #2 signed the Referendum 71 petition.

**11.** Plaintiff Protect Marriage Washington is a State Political Committee organized pursuant to Wash. Rev. Code § 42.17.040, to place Referendum 71 on the ballot and to encourage citizens to reject SB 5688, and has its principal place of business in Snohomish County, Washington.

**12.** Defendant Sam Reed is the Secretary of State of Washington. In his official capacity, Defendant Reed is responsible for receiving referendum petitions pursuant to Wash. Rev. Code § 29A.72.010 and for making public records available pursuant to the Public Records Act. Wash. Rev. Code § 42.56.001 *et seq*.

**13.** Defendant Brenda Galarza is the Public Records Officer for Defendant Reed. Upon information and belief, Defendant Galarza has been appointed by Defendant Reed, pursuant to Wash. Rev. Code § 42.56.580, to serve as the point of contact for members of the public when requesting disclosure of pubic records from the Secretary of State and to oversee the agency's compliance with the Public Records Act.

# FACTS

**14.** Pursuant to Wash. Const. art. II, § 1(b), the referendum power is reserved by the people of Washington State.

**15.** The referendum power grants Washington citizens the right to call a referendum on any act, bill, law, or any part thereof passed by the legislature by submitting a petition to that effect to the Secretary of State. Wash. Const. art. II, § 1(b).

**16.** If a petition submitted to the Secretary of State contains at least four percent of the votes cast for the office of governor at the last gubernatorial election preceding the filing of the referendum petition, the effective date of the act, bill, law, or any part thereof is delayed until the electorate has an opportunity to vote on the referendum. Wash. Const. art. II, §§ 1(b) & (d).

**17.** An act, bill, law, or any part thereof, subject to a referendum, becomes law only if a majority of the votes cast are in favor of the referendum. Wash. Const. art. II, § 1(d).

**18.** On January 28, 2009, Washington State Senator Ed Murray introduced Senate Bill 5688 ("SB 5688"), a bill designed to expand the rights, responsibilities, and obligations accorded state-registered same-sex and senior domestic partners to be equivalent to those of married spouses. The legislation is commonly referred to simply as the "everything but marriage" domestic partnership bill.

**19.** On March 10, 2009, after various amendments, the Washington Senate passed Second Substitute Senate Bill 5688.

**20.** On April 15, 2009, the Washington House of Representatives passed Second Substitute Senate Bill 5688.

**21.** On or about May 4, 2009, Larry Stickney filed notice with the Secretary of State of his intent to circulate a referendum petition related to SB 5688. The Secretary of State assigned the title "Referendum 71."

**22.** On or about May 13, 2009, Protect Marriage Washington organized as a State Political Committee pursuant to Wash. Rev. Code § 42.17.040.

**23.** Protect Marriage Washington's purpose is to circulate a referendum petition on SB 5688 and to encourage voters to reject SB 5688.

24. Larry Stickney is the campaign manager of Protect Marriage Washington.

25. As the campaign manager for Protect Marriage Washington, Larry Stickney has received a large number of emails from people who disagree with his position on marriage. True and correct copies of some of these emails are attached to this Complaint as Exhibit 1. Some of these emails are threatening and/or harassing. For example, one threatening email states: "You better stay off the olympic peninsula. . it's a very dangerous place filled with people who hate racists, gay bashers and anyone who doesn't believe in equality. Fair is fair." Another email threatened the signers of the Referendum 71 petition with boycotts: "We shall boycott the businesses of EVERYONE who signs your odious, bigoted petition." Other emails are offensive and harassing: "Dear God fearing hate mongerers - . . . Maybe you just want to feel a cock in your ass and hate yourself for it. Whatever. Praise Jeebus you retarded fuckholes!"

26. These threats have caused Larry Stickney a great deal of worry for his safety and the safety of his family.

27. Early in the campaign to circulate the Referendum 71 petition, Larry Stickney made his children sleep in an interior living room because he feared for their safety if they slept in their own bedrooms.

28. In late June an individual was seen taking pictures of Larry Stickney's home while his daughter played outside.

29. Larry Stickney filed a complaint with his local sheriff because of threats on a local blog. One of the blog posts stated: "If Larry Stickney can do 'legal' things that harm OUR family, why can't we go to Arlington, WA to harm his family?" A true and correct copy of Larry Stickney's email correspondence with the Sheriff is is attached to the Complaint as Exhibit 2.

30. Larry Stickney has also received threatening and harassing phone calls from individuals in the middle of the night. For example, shortly after Referendum 71 was presented to the Secretary of State on May 4, 2009, he received a phone call at 2:00 a.m. from a woman who sounded frantic and deranged, and who said various obscene and vile things to him.

31. Since Referendum 71 was submitted to the Secretary of State for review on May 4, 2009, numerous news sources and blogs have focused their attention on intimate details of Larry

Stickney's personal life. For example, "The Stranger," an alternative Seattle newspaper, published details of his divorce that occurred fifteen years ago. A true and correct copy of that article is attached to this Complaint as Exhibit 3.

32. On May 18, 2009, Washington Governor Christine Gregoire signed Engrossed Second Substitute Senate Bill 5688.[1]

33. Upon information and belief, the group WhoSigned.org threatened to publish the names of every individual signing the Referendum 71 petition on or about June 1, 2009.

34. Upon information and belief, Plaintiffs believe that WhoSigned.org intends to make an end-run around Wash. Rev. Code § 29A.72.230 (prohibiting proponents and opponents of a referendum petition from making records of the names, addresses, and other information on the petition during the verification and canvass process), by requesting copies of the petitions submitted pursuant to Washington's Public Records Act, Wash. Rev. Code § 42.56.001 *et seq*.

35. On or about June 2, 2009, Dave Ammons, communications director for Defendant Reed, posted a blog entry on the Secretary of State's website suggesting that the Secretary of State intended to comply with WhoSigned.org's Public Records request. A true and correct copy of that blog post is attached hereto as Exhibit 4.

36. On or about June 9, 2009, the group KnowThyNeighbor.org issued a joint press release with WhoSigned.org again threatening to publish the names on the internet of every individual signing the Referendum 71 petition.

37. KnowThyNeighbor.org and WhoSigned.org have publicly stated that they intend to publish the names of petition signers on the internet and to make the names searchable.

38. KnowThyNeighbor.org and WhoSigned.org have stated that the purpose of placing the names on the internet is to encourage individuals to contact any person who signed the Referendum 71 petition.

39. The news media has widely reported that KnowThyNeighbor.org and WhoSigned.org intend to publish the names of any individual who signs the petition on the internet.

---

[1] The enacted legislation subject to the referendum petition will be referred to simply as SB 5688.

40. On Saturday, July 25, 2009, Protect Marriage Washington submitted the petition with over 138,500 signatures to Defendant Reed, exceeding the number of signatures necessary to place a referendum question on the ballot.

41. By filing the petition, Plaintiffs have delayed the effective date of SB 5688. If the Secretary of State determines that petition contains a sufficient number of valid signatures, SB 5688 will become law only if a majority of Washington residents vote to "approve" the bill at the next general election.

42. Defendant Reed is responsible for verifying and canvassing the signatures on the Referendum 71 petition. Proponents and opponents of Referendum 71 are permitted to have representatives present during the verification and canvass process. The statute prohibits proponents and opponents who are observing the verification and canvass process from making any records of the names, addresses, or other information contained on the petitions. Wash. Rev. Code § 29A.72.230.

43. Plaintiff Protect Marriage Washington, and its officers and directors have been subject to threats, harassment, and reprisals while attempting to gather the signatures necessary to place Referendum 71 on the ballot.

44. Petition circulators have been subjected to threats, harassment, and reprisals as they attempted to obtain the signatures necessary to place Referendum 71 on the ballot.

45. Defendant Galarza has stated that referendum petitions are "public records" within the meaning of Wash. Rev. Code § 42.56.10(2) and are subject to public disclosure pursuant to Wash. Rev. Code § 42.56.070.

46. Given the threats, harassment, and reprisals directed at Plaintiff Protect Marriage Washington, petition signers, and supporters of a traditional definition of marriage across the country, there is a reasonable probability that the disclosure of those who signed the Referendum 71 petition, including disclosure of the addresses of petition signers, will result in threats, harassment, and reprisals.

47. The threatened publication of the petitions has created an environment that discourages Washington citizens from exercising their First Amendment rights to participate in the referendum process.

48. The threatened publication of the petitions discourages individuals and organizations from exercising their First Amendment rights to support the effort to encourage Washington citizens to reject SB 5688.

49. Plaintiffs have suffered, or will suffer, irreparable harm if the requested relief is not granted.

## LEGAL ARGUMENTS COMMON TO PLAINTIFFS' CLAIMS

50. "The First Amendment is the pillar of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open . . . ." *Mont. Right to Life v. Eddlemann*, 999 F. Supp. 1380, 1384 (D. Mont. 1998).

51. "In the free society ordained by our Constitution it is not the government, but the people—individually as citizens and candidates and collectively as associations and political committees—who must retain control over the quantity and range of debate on public issues in a political campaign." *Buckley v. Valeo*, 424 U.S. 1, 57 (1976).

52. In *Buckley*, the Supreme Court held that any significant encroachment on First Amendment rights, such as those imposed by compelled disclosure provisions, must survive exacting scrutiny, which requires the government to craft a narrowly tailored law to serve a compelling government interest. *Buckley*, 424 U.S. at 64.

53. The Supreme Court has recognized that the principles applied in *Buckley* apply as forcefully to activities surrounding the referenda process. *See Buckley v. American Constitutional Law Foundation*, 525 U.S. 182, 192 (1999) ("[T]he First Amendment requires us to be vigilant in making those judgments, to guard against undue hindrances to political conversations and the exchange of ideas. We therefore detail why we are satisfied that . . . the restrictions in question significantly inhibit communication with voters about proposed political change, and are not warranted by the state interests (administrative efficiency, fraud detection, informing voters) alleged to justify those restrictions.") (internal citations omitted); *Citizens Against Rent Control*

1  *v. Berkeley*, 454 U.S. 290, 295 (1981) (applying *Buckley*'s contribution limit analysis in the context of ballot measure elections).

54. The Public Records Act, in so far as it results in the public disclosure of the names and addresses of petition signers, results in compelled political speech.

55. The Supreme Court has repeatedly reaffirmed that "compelled disclosure, in itself, can seriously infringe on privacy of association and belief guaranteed by the First Amendment." *Davis v. FEC*, 128 S. Ct. 2759, 2774-75 (2008) (*quoting Buckley*, 424 U.S. at 64.

56. To survive exacting scrutiny, the Public Records Act must be narrowly tailored to serve a compelling government interest. *Buckley*, 424 U.S. at 64.

57. The burden is on the State to demonstrate that the Public Records Act is narrowly tailored to serve a compelling state interest. *Cal. Pro-Life Council, Inc. v. Randolph*, 507 F.3d 1172, 1178 (9th Cir. 2007) (*citing Republican Party of Minnesota v. White*, 536 U.S. 765, 774-75 (2002)).

58. In the context of the First Amendment, the usual deference granted to the legislature does "not foreclose [a court's] independent judgment of the facts bearing on an issue of constitutional law." *Turner Broad. Sys. v. FEC*, 512 U.S. 622, 666 (1994) (internal citations omitted). The Court's role is to ensure that the legislature "has drawn *reasonable inferences* based on *substantial* evidence." *Id.* (emphasis added).

59. The Ninth Circuit recently held that compelled disclosure of *de minimis* support of a referenda is unconstitutional under the First Amendment. *See Canyon Ferry Road Baptist Church of East Helena, Inc. v. Unsworth*, 556 F.3d 1021, 1033 (9th Cir. 2009).

60. Furthermore, even if the Public Records Act is narrowly tailored to serve a compelling government interest, it remains unconstitutional because there is a reasonable probability that the disclosure of the names of those individuals who signed the Referendum 71 petition will expose those individuals to threats, harassment, and reprisals. *See Brown v. Socialist Workers '74 Campaign Comm.*, 459 U.S. 87 (1982) (applying the reasonable-probability test announced in *Buckley*, 424 U.S. at 73).

**Verified Complaint**   9   **BOPP, COLESON & BOSTROM**
**1 South Sixth Street**
**Terre Haute, Indiana 47807-3510**
**(812) 232-2434**

**COUNT I – THE PUBLIC RECORDS ACT IS UNCONSTITUTIONAL AS APPLIED TO REFERENDUM PETITIONS**

61. Plaintiffs incorporate here by reference paragraphs one through sixty, *supra*, as if fully set forth herein.

62. The Public Records Act violates the First Amendment as applied to referendum petitions because the Public Records Act is not narrowly tailored to serve a compelling government interest.

63. WHEREFORE, Plaintiffs request the following relief:

**a.** Declare Wash. Rev. Code § 42.56.070 unconstitutional to the extent that it requires the Secretary of State to make referendum petitions submitted to the Secretary of State's office available to the public;

**b.** Enjoin Defendants from making referendum petitions available to the public pursuant to the Public Records Act, Wash. Rev. Code § 42.56.001 *et seq*., or otherwise;

**c.** Grant Plaintiffs John Doe #1, John Doe #2, and Protect Marriage Washington their costs and attorneys fees under 42 U.S.C. § 1988 and any other applicable authority; and

**d.** Any and all other such relief as may be just and equitable.

**COUNT II – THE PUBLIC RECORDS ACT IS UNCONSTITUTIONAL AS APPLIED TO THE REFERENDUM 71 PETITION BECAUSE THERE IS A REASONABLE PROBABILITY OF THREATS, HARASSMENT, AND REPRISALS**

64. Plaintiffs incorporate here by reference paragraphs one through sixty, *supra*, as if fully set forth herein.

65. In the alternative, the Public Records Act is unconstitutional as applied to the Referendum 71 petition because there is a reasonable probability that the signatories of the Referendum 71 petition will be subjected to threats, harassment, and reprisals.

66. WHEREFORE, Plaintiffs request the following relief:

**a.** Declare Wash. Rev. Code § 42.56.070 unconstitutional to the extent that it requires the Secretary of State to make the Referendum 71 petition, or any petition related to the definition or marriage or the rights and responsibilities that should be accorded to same-sex

1 couples, submitted to the Secretary of State's office available to the public;

2 **b.** Enjoin Defendants from making the Referendum 71 petition, or any petition related to the definition or marriage or the rights and responsibilities that should be accorded to same-sex couples, available to the public pursuant to the Public Records Act, Wash. Rev. Code § 42.56.001 *et seq.*, or otherwise;

**c.** Grant Plaintiffs John Doe #1, John Doe #2, and Protect Marriage Washington their cots and attorneys fees under 42 U.S.C. § 1988 and any other applicable authority; and

**d.** Any and all other such relief as may be just and equitable.

# VERIFICATION

I SWEAR (OR AFFIRM) UNDER THE PENALTIES FOR PERJURY UNDER THE LAWS OF THE UNITED STATES THAT THE FOREGOING STATEMENTS CONCERNING ME IN THIS COMPLAINT ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND UNDERSTANDING.

Dated this 28th day of July, 2009.

_____
Larry Stickney

1 Dated this 28th day of July, 2009.

2 Respectfully submitted,

3

4 James Bopp, Jr. (Ind. Bar No. 2838-84)*
Sarah E. Troupis (Wis. Bar No. 1061515)*
5 Scott F. Bieniek (Ill. Bar No. 6295901)*
BOPP, COLESON & BOSTROM
6 1 South Sixth Street
Terre Haute, Indiana 47807-3510
7 (812) 232-2434
*Counsel for All Plaintiffs*

Stephen Pidgeon
ATTORNEY AT LAW, P.S.
10900 NE 8th Street, Suite 900
Bellevue, Washington 98004
(425) 605-4774
Counsel for All Plaintiffs

8 *Pro Hac Vice Application Pending*

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Verified Complaint**　　　　　　13　　　　　　**BOPP, COLESON & BOSTROM**
**1 South Sixth Street**
**Terre Haute, Indiana 47807-3510**
**(812) 232-2434**