**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
TACOMA DIVISION**

| | |
|---|---|
| JOHN DOE #1, an individual, JOHN DOE #2, an individual, and PROTECT MARRIAGE WASHINGTON,<br><br>　　　　　　　　Plaintiffs,<br>　vs.<br><br>SAM REED, in his official capacity as Secretary of State of Washington, BRENDA GALARZA, in her official capacity as Public Records Officer for the Secretary of State of Washington,<br><br>　　　　　　　　Defendants. | No. 3:09-CV-05456-BHS<br><br>**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>NOTE ON MOTION CALENDAR:<br>September 3, 2009<br><br>The Honorable Benjamin H. Settle<br><br>**ORAL ARGUMENT REQUESTED** |

# TABLE OF CONTENTS

I.  INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.  Plaintiffs Are Likely to Succeed on the Merits. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

        1.  Count I - The Public Records Act Fails Strict Scrutiny. . . . . . . . . . . . . . . . . . . . 1

            a.  The Public Records Act is not narrowly
tailored to serve a compelling government interest. . . . . . . . . . . . . . . . . . 1

                1)  Defendants have incorrectly defined the State's
"informational interest." . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

                2)  The Public Records Act is not narrowly tailored
to serve the State's interest in preventing fraud
in the election process. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

            b.  The First Amendment protects a group's right to
associate without being compelled to disclose
that association if the State cannot carry its burden
under strict scrutiny. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

                1)  Voluntary association with, and disclosure to, a private
organization does not negate the right to be free
from compelled disclosure. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

                2)  Limited governmental disclosure to allow for
signature verification is the type of compelled
disclosure permitted under the First Amendment. . . . . . . . . . . . . . . 7

        2.  Count II - The Public Records Act Is Unconstitutional
As-applied to Referendum 71 Because There Is a
Reasonable Probability that the Release of the Names of the
Petition Signers Will Subject Those Petition Signers to
Threats, Harassment, and Reprisals. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

            a.  The protections of the First Amendment extend to all
groups and are not limited to minority parties. . . . . . . . . . . . . . . . . . . . . . 8

            b.  Plaintiffs must demonstrate that it is likely they
will be able to show a reasonable probability
of threats, harassment, or reprisals. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

                1)  The differences between this case and the
California case illustrate the importance of
granting a preliminary injunction. . . . . . . . . . . . . . . . . . . . . . . . . . 10

**Reply in Supp. of Mot. for**          i          B<small>OPP</small>, C<small>OLESON</small> & B<small>OSTROM</small>
**Prelim. Inj.**          **1 South Sixth Street**
**(No. 3:09-CV-05456-BHS)**          **Terre Haute, Indiana 47807-3510**
         **(812) 232-2434**

# TABLE OF CONTENTS – CONTINUED

B.  Plaintiffs Have Established That They Will Suffer Irreparable Harm, the Balance of Equities Tips in Their Favor, and that an Injunction Is in the Public's Interest .................................... 12

III. CONCLUSION ........................................................... 12

**Reply in Supp. of Mot. for Prelim. Inj.**
**(No. 3:09-CV-05456-BHS)**

ii

**BOPP, COLESON & BOSTROM**
**1 South Sixth Street**
**Terre Haute, Indiana 47807-3510**
**(812) 232-2434**

# TABLE OF AUTHORITIES

*Cases:*

*Am. Civil Liberties Union of Nev. v. Heller*,
   378 F.3d 773 (9th Cir. 2006) .................................................. 7

*Am. Coll. of Obstetricians & Gynecologists, Penn. Section v. Thornburgh*,
   613 F. Supp. 656 (E.D. Penn. 1985) .......................................... 8

*Brown v. Socialist Workers '74 Campaign Comm.*,
   459 U.S. 87 (1981) ........................................................... 9

*Buckley v. Valeo*,
   424 U.S. 1 (1976) ......................................................... 2, 9

*Cal. Pro-Life Council, Inc. v. Getman* ("*CPLC I*"),
   328 F.3d 1088 (9th Cir. 2003) ................................................ 3

*Cal. Pro-Life Council, Inc. v. Randolph* ("*CPLC II*"),
   507 F.3d 1172 (9th Cir. 2007) ......................................... 1, 3, 7

*Canyon Ferry Road Baptist Church of East Helena, Inc. v. Unsworth*,
   556 F.3d 1021 (9th Cir. 2009) ................................................ 3

*Davis v. FEC*,
   128 S. Ct. 2759 (2008) ....................................................... 6

*Elrod v. Burns*,
   427 U.S. 347 (1976) ......................................................... 10

*FEC v. Wisconsin Right to Life* ("*WRTL II*"),
   551 U.S. 449, 127 S. Ct. 449 (2007) ....................................... 5, 7

*First Nat'l Bank of Boston v. Bellotti*,
   435 U.S. 765 (1978) .......................................................... 8

*McConnell v. FEC*,
   251 F. Supp. 2d 176 (D.D.C. 2003) ............................................ 8

*Meyer v. Grant*,
   486 U.S. 414 (1988) .......................................................... 3

*NAACP v. Alabama*,
   357 U.S. 449 (1958) .......................................................... 6

*New York Times Co. v. Sullivan*,
   376 U.S. 254 (1964) .......................................................... 9

*ProtectMarriage.com v. Bowen*,
   599 F. Supp. 2d 1197 (E.D. Cal. 2009) ....................................... 10

*Republican Party of Minn. v. White*,
   536 U.S. 765 (2002) .......................................................... 3

**Reply in Supp. of Mot. for**               iii               **BOPP, COLESON & BOSTROM**
**Prelim. Inj.**                                               **1 South Sixth Street**
**(No. 3:09-CV-05456-BHS)**                                    **Terre Haute, Indiana 47807-3510**
                                                               **(812) 232-2434**

# TABLE OF AUTHORITIES – CONTINUED

*Richey v. Tyson*,
　120 F. Supp. 2d 1298 (S.D. Ala. 2000) ......................................................... 8

*Rutan v. Republican Party of Ill.*,
　497 U.S. 62 (1990) ...................................................................... 4

*Simon & Schuster v. New York State Crime Victims Bd.*,
　502 U.S. 105 (1991) ..................................................................... 3

*Turner Broad. Sys., Inc. v. FCC*,
　512 U.S. 622 (1994) ..................................................................... 2

*Wash. Initiatives Now v. Rippie*,
　213 F.3d 1132 (9th Cir. 2000) ............................................................ 3

*Winter v. Natural Res. Def. Council, Inc.*,
　129 S. Ct. 365 (2008) ................................................................... 9

***Constitutions, Statutes, and Court Rules:***

Wash. Rev. Code § 29A.72.230 ................................................................. 4

Wash. Rev. Code § 29A.68.011 *et seq.* ...................................................... 4

Wash. Rev. Code § 42.17.010 *et seq.* ....................................................... 2

Wash. Rev. Code § 42.56.001 *et seq.* ....................................................... 1

***Other***

Peter Callaghan, *More on PDC Precedence on Not Requiring
　Full Disclosure*, Aug. 12, 2009 .......................................................... 9

# I. INTRODUCTION

In support of Plaintiffs' Motion for Preliminary Injunction ("PI Memo."), and in Reply to Defendants' Response Opposing Motion for Preliminary Injunction ("Defs.' Resp."), Plaintiffs present the following Reply in Support of Plaintiffs' Motion for Preliminary Injunction.

# II. ARGUMENT

**A. Plaintiffs Are Likely to Succeed on the Merits.**

Plaintiffs have asserted two independent grounds in support of their motion for preliminary injunction. Either is sufficient to warrant the issuance of a preliminary injunction in this case. In applying the preliminary injunction standards, the Court should first ask whether the Public Records Act (the "PRA"), Wash. Rev. Code § 42.56.001 *et seq.*, is unconstitutional as-applied to referendum petitions. Plaintiffs have demonstrated that they are entitled to a preliminary injunction because the PRA, as-applied to referendum petitions, fails strict scrutiny.

However, even if Plaintiffs have not met the requirements for a preliminary injunction on the first ground, a preliminary injunction should still issue because, as-applied to Referendum 71, Plaintiffs are likely to succeed on their claim that public disclosure will create a reasonable probability of threats, harassment, and reprisals.

**1. Count I - The Public Records Act Fails Strict Scrutiny.**

As-applied to referendum petitions, the PRA is unconstitutional because it is not narrowly tailored to serve a compelling government interest sufficient to warrant the public disclosure of referendum petitions. *See also*, PI Memo. at 9-18.

    **a. The Public Records Act is not narrowly tailored to serve a compelling government interest.**

Plaintiffs have demonstrated a likelihood of success on the merits and are entitled to a preliminary injunction unless the State can present evidence that the PRA is narrowly tailored to serve a compelling government interest. *See Cal. Pro-Life Council, Inc. v. Randolph*, 507 F.3d 1172, 1178 (9th Cir. 2007) ("*CPLC II*"). Here, the State alleges that the PRA is supported by two interests—an informational interest and a fraud interest—but offers no evidence to suggest either interest is compelling or that the public disclosure of referendum petitions is narrowly tailored to

**Reply in Supp. of Mot. for Prelim. Inj.**
**(No. 3:09-CV-05456-BHS)**

1

**BOPP, COLESON & BOSTROM**
**1 South Sixth Street**
**Terre Haute, Indiana 47807-3510**
**(812) 232-2434**

address that interest in a direct and material way. *See Turner Broad. Sys. v. FEC*, 512 U.S. 622, 664 (1994). In the context of the First Amendment, the Court's role is to ensure that the legislature "has drawn *reasonable inferences* based on *substantial* evidence." *Id*. at 666 (also holding that the usual deference granted to the legislature does "'not foreclose [a court's] independent judgment of the facts bearing on an issue of constitutional law.'") (internal citation omitted). Defendants fail to offer a single piece of evidence to suggest that the public disclosure of referendum petitions is narrowly tailored to serve a compelling governmental interest. Therefore, Plaintiffs have demonstrated a likelihood of success on the merits.

**1)    Defendants have incorrectly defined the State's "informational interest."**

Defendants assert that they have an informational interest in releasing the names of the petition signers to the public, i.e., that "the State has an important interest in making available to the electorate information about who is essentially lobbying for their vote, and thus, who likely will benefit from the measure." (Defs.' Resp. at 17.) However, the informational interest, as defined by Defendants, is not the informational interest found sufficient in prior decisions to justify compelled public disclosure provisions.

The informational interest described by the Supreme Court in *Buckley v. Valeo*, 424 U.S. 1, 66 (1976), is that of disclosing who is financially backing a referendum.[1] The compelled disclosure of the 138,000 individuals who merely signed the referendum petition does not, and indeed cannot, serve this interest.[2] As the Ninth Circuit recently explained, the information interest described in *Buckley* is limited to informing voters about who *financially* supports or opposes a ballot issue, and, therefore; does not extend to providing the electorate with information about

---

[1] The Supreme Court referred to this problem as "campaign ignorance." *Buckley*, 424 U.S. at 68. Campaign ignorance in the context of a referendum petition is even less of an problem than in other ballot petitions. A referendum petition challenges a law that has been enacted by the State Legislature. Presumably, during the legislative process, the various interests supporting and opposing the measure have already been identified, through means such as testimony in front of various legislative committees and through debate on the floors of the legislature.

[2] Plaintiff Protect Marriage Washington is subject to Washington's campaign finance act. The Act requires them to register as a political committee and to report certain information, including the names and addresses of individuals making financial contributions to the committee. *See* Wash. Rev. Code § 42.17.010 *et seq*. Thus, Washington has attempted to address its asserted informational interest through more narrowly tailored provisions.

| | | |
|---|---|---|
| **Reply in Supp. of Mot. for Prelim. Inj.**<br>**(No. 3:09-CV-05456-BHS)** | **2** | **BOPP, COLESON & BOSTROM**<br>**1 South Sixth Street**<br>**Terre Haute, Indiana 47807-3510**<br>**(812) 232-2434** |

those providing *de minimis* support. *Canyon Ferry Road Baptist Church of East Helena v. Unsworth*, 556 F.3d 1021,1032-33 (9th Cir. 2009). *See also Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1105 n.23 (9th Cir. 2003) ("*CPLC I*"). To paraphrase Justice Noonan, How do the names of the petition signers affect anyone else's vote? Does any voter exclaim, "Hank Jones signed the petition, I must be against it!" *See Canyon Ferry*, 556 F.3d at 1036 (Noonan, J., concurring).

### 2) The Public Records Act is not narrowly tailored to serve the State's interest in preventing fraud in the election process.

The other interest raised by Defendants is a fraud interest, i.e., "protecting the integrity of the State's referendum election process" by allowing the public "to independently examine whether the State acted properly in determining whether a referendum measure qualified for the ballot." (Defs.' Resp. at 16.) Washington bears the burden of proving that the fraud interest is compelling and that the public disclosure of referendum petitions is narrowly tailored to serve that interest, a burden it has failed to carry in this case. *See CPLC II*, 507 F.3d at 1178 (stating that the government bears the burden of proving that the compelled disclosure statute is narrowly tailored to serve a compelling government interest).

To begin, the State's concerns about fraud appear to be overblown. *See Wash. Initiative Now v. Rippie*, 213 F.3d 1132, 1139 (9th Cir. 2000) (noting that fraud prosecutions during the petition process have been sparse). Furthermore, the Supreme Court has recognized that fraud is much less of a concern during the petition process. *See Meyer v. Grant*, 486 U.S. 414, 427-28 (1988). However, even if the State could present evidence that its interest in combating fraud is compelling, the public disclosure of referendum petitions is not narrowly tailored to serve that interest.

A law can fail to be narrowly tailored in one of several ways. It may be over-inclusive if it restricts speech that does not implicate the government's compelling interest in the statute. *Simon & Schuster v. New York State Crime Victims Bd.*, 502 U.S. 105, 121 (1991). The regulation may also be under-inclusive if it fails to restrict speech that does implicate the government's interest. *See*, *e.g.*, *Republican Party of Minn. v. White*, 536 U.S. 765, 779-80 (2002). Finally, a regulation is not narrowly tailored if the state's compelling interest can be achieved through a

| | | |
|---|---|---|
| **Reply in Supp. of Mot. for Prelim. Inj.** <br> **(No. 3:09-CV-05456-BHS)** | **3** | **BOPP, COLESON & BOSTROM** <br> **1 South Sixth Street** <br> **Terre Haute, Indiana 47807-3510** <br> **(812) 232-2434** |

1 less restrictive means. *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 75 (1990). Here, the State's interest is adequately served through a less restrictive means—limited government disclosure to allow for signature verification.

Pursuant to Washington law, the Secretary of State, and only the Secretary of State, is granted the authority to verify and canvass the names of the legal voters on the petition. Wash. Rev. Code § 29A.72.230. Given the State's interest in ensuring that a sufficient number of legal voters support the referendum, this is an example of a narrowly tailored statute designed to serve a compelling state interest.

Defendants suggest that the State has an interest in having the public assist in the signature verification process. (Defs.' Resp. at 16.) ("Absent access to the names of persons who signed referendum petitions, the public would not be able to independently examine whether the State acted properly in determining whether a referendum measure qualified for the ballot.") In a vacuum, Defendants' argument sounds plausible. However, the facts suggest that the public does not have an interest in assisting the State in the signature verification process.

First, the Secretary of State, and only the Secretary of State, is given the power to conduct the signature verification process. Wash. Rev. Code § 29A.72.230. That statute provides for no specific mechanism allowing individual citizens to challenge individual signatures on the referendum petition.[3] Defendants' argument is undercut by their own suggestion that the prohibition against making records by observers during the signature verification process is to "preserve the order and integrity of the signature verification process." (Defs.' Resp. at 4, n. 2.) Absent procedures to allow for individuals to bring forth challenges to signatures and appropriate deadlines, this assertion rings hollow. Plaintiffs can only imagine the chaos that would ensue if individual citizens were allowed to file challenges to the 138,000 signatures submitted to the Secretary of State's office, signatures that had already been subjected to verification by the Secretary of State. The integrity of the election process is protected by the Secretary of State, who is responsible for verifying the signatures, and by the observers permitted to be present during the verification pro

---

[3] Washington does provide a general mechanism for challenging elections. *See Wash. Rev. Code* § 29A.68.011 *et seq.*

**Reply in Supp. of Mot. for**      **4**      **BOPP, COLESON & BOSTROM**
**Prelim. Inj.**      **1 South Sixth Street**
**(No. 3:09-CV-05456-BHS)**      **Terre Haute, Indiana 47807-3510**
     **(812) 232-2434**

cess, who can ensure that the Secretary of State is observing proper procedures in the signature verification process.

Second, the fact that the disclosure occurs through the PRA and not through a provision of the elections code itself is illustrative of the rather tenuous argument raised by the State. If the goal is to allow for public assistance in the signature verification process, one would expect the disclosure provision to be contained within the elections code itself, and the code would provide for procedures for submitting contested names.

Third, the State concedes that no one has requested copies of referendum petitions in recent years, but proudly points out that petitions for initiative measures are routinely the subject of public records requests. (Defs.' Resp. at 22, n. 10.) Despite this fact, Defendants have failed to cite a single instance where the public disclosure of the initiative petition resulted in the detection of a fraudulent signature.[4] The State has simply failed to carry its burden of offering evidence that the statute is supported by a compelling government interest, and that its chosen remedy, the public disclosure of referendum petitions, is narrowly tailored to address that interest in a direct and material way.

Accordingly, the state lacks a compelling government interest in the public release of referendum petitions, and even if it had such an interest, the PRA is not narrowly tailored to serve that interest. Thus, Plaintiffs have demonstrated a high likelihood of success on the merits.

**b. The First Amendment protects a group's right to associate without being compelled to disclose that association if the State cannot carry its burden under strict scrutiny**.

In *NAACP v. Alabama*, the Supreme Court recognized the invaluable importance of group association protected by the First Amendment, and that any state limitations on the freedoms of speech and association are subject to strict scrutiny:

> It is beyond debate that freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the 'liberty' assured by the Due Process Clause of

---

[4] The interest is not detecting and prosecuting instances of fraud, which is an example of the "prophylaxis-upon-prophylaxis approach" rejected in *WRTL II*, 127 S. Ct. at 2672. In order for the proffered fraud interest to be compelling, it must result in widespread detection of fraudulent signatures. The detection of a few bad signatures, unlikely to effect whether the referendum qualifies, is insufficient to overcome the burdens on Plaintiffs' First Amendment rights that occur when the names of 138,000 petition signers are released to the public.

> the Fourteenth Amendment, which embraces freedom of speech. . . . Of course, it is immaterial whether the beliefs sought to be advanced by association pertain to political, economic, religious or cultural matters, and state action which may have the effect of curtailing the freedom to associate is subject to the closest scrutiny.

357 U.S. 449, 460-61 (1958) (citations omitted). The freedom to associate with a group, free from compelled disclosure except in those instances where the state can carry its heavy burden under strict scrutiny, defeats Defendants' arguments.

### 1) Voluntary association with, and disclosure to, a private organization does not negate the right to be free from compelled disclosure.

Defendants argue that Plaintiffs are not entitled to a preliminary injunction because the petition signers have disclosed their names to multiple private parties associated with the petition process. (Defs.' Resp. at 9.) ("The sponsors of a referendum petition and those managing the petition campaign have access to the names of petition signers. . . . Plaintiffs already have disclosed their names to . . . multiple private parties as a necessary part of an open referendum process.") This argument fails to account for the First Amendment's protection of *both* privacy of belief *and* association, and that the Supreme Court has "repeatedly found that compelled disclosure, in itself, can seriously infringe on" both. *Davis v. FEC*, 128 S. Ct. 2759, 2774-75 (2008).

That Protect Marriage Washington has access to the names contained on the petition is the essence of the associational right protected by the First Amendment. Individuals may voluntarily associate with Protect Marriage Washington and sign the petition. However, the fact that individuals exercised their First Amendment rights does not grant Washington the authority to compel the public disclosure of the petition or Protect Marriage Washington's members.[5]

Instead, the burden is upon the state of Washington to demonstrate that it has a compelling government interest *and* that public disclosure of the referendum petitions is narrowly tailored to achieve that interest. Defendants' argument that Plaintiffs are estopped from asserting their First Amendment rights because they have voluntarily disclosed their identities to a group they have chosen to associate with does not undercut the First Amendment rights of petition signers at stake in this litigation.

---

[5] Further, nothing on the referendum petition form indicates to an individual signing the petition that their name and personal information is subject to public disclosure.

| | | |
|---|---|---|
| Reply in Supp. of Mot. for<br>Prelim. Inj.<br>(No. 3:09-CV-05456-BHS) | 6 | **BOPP, COLESON & BOSTROM**<br>1 South Sixth Street<br>Terre Haute, Indiana 47807-3510<br>(812) 232-2434 |

### 2) Limited governmental disclosure to allow for signature verification is the type of compelled disclosure permitted under the First Amendment.

Defendants also argue that the limited governmental disclosure that occurs to allow the Secretary of State to verify petition signatures creates an interest sufficient to allow full public disclosure of referendum petitions. (Defs.' Resp. at 8-9.) Plaintiffs recognize that Washington may have a compelling government interest in verifying the validity of the petition signatures. Limited governmental disclosure to allow the Secretary of State to compare the petition signatures to those contained on the voter roles appears to be the most narrowly tailored method of addressing that interest. Plaintiffs have submitted over 9,000 petitions, containing approximately 138,000 signatures, and Plaintiffs encourage Defendant Reed to perform his statutory duty to verify each and every signature.

However, that Washington has an interest in verifying the validity of the signatures does not create a compelling government interest sufficient to justify their public release. As the Supreme Court has said, each application of a statute restricting speech must be supported by a compelling government interest. *FEC v. Wisconsin Right to Life*, 127 S. Ct. 2652, 2672 (2007) ("*WRTL II*"). *See also Am. Civil Liberties Union of Nevada v. Heller*, 378 F.3d 979, 991 (9th Cir. 2004) ("[I]t is not just *that* a speaker's identity is revealed, but how and when that identity is revealed, that matters in a First Amendment analysis of a state's regulation of political speech.") (emphasis in original). Thus, in applying strict scrutiny to the provisions of the PRA challenged herein, the Court must be cognizant of the fact that limited disclosure to the government is different in kind than full public disclosure. Limited governmental disclosure may be constitutional in cases where public reporting may not. This is such a case because the public disclosure of referendum petitions is not supported by a compelling governmental interest, and even if it were, it is not narrowly tailored to serve that interest. *See CPLC II*, 507 F.3d at 1178 (stating that the government bears the burden of proving that compelled public disclosure provisions are narrowly tailored to serve a compelling government interest).

**Reply in Supp. of Mot. for**         7         **BOPP, COLESON & BOSTROM**
**Prelim. Inj.**         **1 South Sixth Street**
**(No. 3:09-CV-05456-BHS)**         **Terre Haute, Indiana 47807-3510**
        **(812) 232-2434**

2. **Count II - The Public Records Act Is Unconstitutional As-applied to Referendum 71 Because There Is a Reasonable Probability that the Release of the Names of the Petition Signers Will Subject Those Petition Signers to Threats, Harassment, and Reprisals.**

Even if the PRA is deemed Constitutional as-applied to referendum petitions, a particular group is entitled to an exemption if is is able to demonstrate that the disclosure will result in a reasonable probability of threats, harassment, and reprisals. Here, those who signed the Referendum 71 petition will be subject to just such a reasonable probability of threats, harassment, and reprisals, and should be granted an exemption from disclosure. (*See also*, PI Memo. at 18-28.)

a. **The protections of the First Amendment extend to all groups and are not limited to minority parties.**

Contrary to Defendants' assertion that "the courts have extended this [disclosure exemption] only to established groups who could demonstrate that they were unpopular and disadvantaged in comparison to their adversaries," (Defs.' Resp. at 12.), the First Amendment's protections apply to all persons, and the reasonable probability test has not been limited to minority parties.

The disclosure exemption is not limited to minor parties. (PI Memo. at 24.) Although the exemption is, by nature, more likely to occur with respect to minor political parties, it is not limited in application to minor political parties, or even political parties at all. *See McConnell v. FEC*, 251 F. Supp. 2d 176, 245-47 (D.D.C. 2003) (applying reasonable probability exemption test to non-minority groups other than political parties). The reasonable-probability test has been applied to groups such as abortion providers and Christian groups. *See Am. Coll. of Obstetricians and Gynecologists, Penn. Section v. Thornburgh*, 613 F. Supp. 656, 668 (E.D. Penn. 1985) (applying the *Brown* reasonable-probability test to abortion providers and relying on past evidence of harassment to grant exemption); *Richey v. Tyson*, 120 F. Supp. 2d 1298 (S.D. Ala. 2000) (applying the reasonable-probability test to the Christian Coalition of Alabama and denying an exemption because Plaintiffs had failed to meet evidentiary burden).

The First Amendment "belongs to all who exercise its freedoms." *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 802 (1978) (Burger, J., concurring). Here, one need only consider the

**Reply in Supp. of Mot. for Prelim. Inj.**
**(No. 3:09-CV-05456-BHS)**

8

**BOPP, COLESON & BOSTROM**
**1 South Sixth Street**
**Terre Haute, Indiana 47807-3510**
**(812) 232-2434**

result if the roles were reversed to realize the exemption does not apply only to minority parties.[6] An application of the exemption to only some who exercise their First Amendment rights and are subject to harassment, but not to others who suffer the same problems, cuts against the very nature of the First Amendment itself. The goal of the First Amendment is to encourage "uninhibitted, robust, and wide-open" debate, *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964). The rule must encourage a debate on the merits of the referendum and should not arm opponents with intimidation and harassment as permissible tools of debate.

   **b. Plaintiffs must demonstrate that it is likely they will be able to show a reasonable probability of threats, harassment, or reprisals.**

Defendants suggest that the proper standard to apply when looking at the threats, harassment, and reprisals in the context of a preliminary injunction is "whether signers of the petitions would *likely* suffer harm." (Defs.' Resp. at 18.) This is not correct. When determining whether to issue a preliminary injunction, a plaintiff must establish "that he is likely to succeed on the merits." *Winter v. Natural Res. Def. Council, Inc.*, 129 S. Ct. 365, 374 (2008). As to the merits, Plaintiffs must meet the reasonable-probability test which requires only a reasonable probability that disclosure of the names of the petition signers will subject those petition signers to threats, harassment, or reprisals. *See Brown v. Socialist Workers '74 Campaign Comm.*, 459 U.S. 87, 88 (1981); *Buckley*, 424 U.S. at 74 (1976).

Taken in combination, and contrary to Defendants' assertions, Plaintiffs are not required to establish that it is likely signers of the petition will suffer harm. Instead, Plaintiffs must establish only a likelihood that they will be able to show that the release of the names will subject those individuals to a reasonable probability of threats, harassment, and reprisals. This likelihood has been amply demonstrated. (*See* PI Memo. at 26-28.)

Defendants also suggest that, while "unfortunate" and "probably violations of criminal laws," the incidents of threats, harassment, and reprisals presented by Plaintiffs "fall short of

---

[6] In 1994, a Washington organization opposing a measure that would deny certain rights to gays and lesbians asked for, and was granted, an exemption from reporting the occupations and employers of donors to the organization by the Public Disclosure Commission. Peter Callaghan, More on PDC precedence on not requiring full disclosure, Aug. 12, 2009, http://blogs.thenewstribune.com/politics/2009/08/12/more_on_pdc_precedence_on_not_requiring_

**Reply in Supp. of Mot. for**        9        **BOPP, COLESON & BOSTROM**
**Prelim. Inj.**        **1 South Sixth Street**
**(No. 3:09-CV-05456-BHS)**        **Terre Haute, Indiana 47807-3510**
       **(812) 232-2434**

1  showing that Referendum 71 petition signers are likely to suffer irreparable harm as a result of
2  public access to their names."[7] (Defs. Resp.19.) However, this statement confuses the prelimi-
3  nary injunction test with the reasonable-probability test. As set forth in Plaintiffs' Preliminary
4  Injunction Memorandum, to meet the reasonable-probability test, Plaintiffs need only show that
5  threats, harassment, and reprisals exist to establish a basis for a disclosure exemption; the threats,
6  harassment, and reprisals need not be criminal, nor even severe, to be considered under the
7  reasonable-probability test. (PI Memo. at 22-24.) If Plaintiffs establish that there is a reasonable
8  probability of threats, harassment, and reprisals, they meet the first prong of the preliminary
9  injunction test, which is that they have a substantial likelihood of success on the merits. Irrepara-
10 ble injury is considered under the second prong of the preliminary injunction test, which asks
11 whether Plaintiffs will suffer irreparable injury if the injunction is not issued. As set forth in
12 Plaintiffs' Preliminary Injunction Memorandum, "[t]he loss of First Amendment freedoms, even
13 for minimal periods of time, constitute irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373
14 (1976); (PI Memo. at 29.). Because Plaintiffs meet the reasonable-probability test for an exemp-
15 tion, they will lose those First Amendment freedoms without an injunction, and that loss consti-
16 tutes an irreparable injury.

### 1) The differences between this case and the California case illustrate the importance of granting a preliminary injunction.

Defendants heavily rely on a pending California case, *ProtectMarriage.com v. Bowen*, 599 F. Supp. 2d 1197 (E.D. Cal. 2009) ("*ProtectMarriage.com*"), for several propositions they assert in their Response. However, the two cases come before their respective courts at different stages in the petition process, and that difference makes action in this case all the more important. Moreover, there is evidence before the California court that the failure to issue a preliminary injunction led directly to the threats, harassment, and reprisals that this Court can prevent by the issuance of a preliminary injunction.

Initially, it is important to clarify what was before the California court when it issued its

---

[7] The reasonable-probability test exists because such post-hoc criminal remedies are inadequate to protect Plaintiffs' First Amendment rights.

| | | |
|---|---|---|
| **Reply in Supp. of Mot. for** | **10** | **BOPP, COLESON & BOSTROM** |
| **Prelim. Inj.** | | **1 South Sixth Street** |
| **(No. 3:09-CV-05456-BHS)** | | **Terre Haute, Indiana 47807-3510** |
| | | **(812) 232-2434** |

1 decision cited by Defendants. Defendants assert that the court in *ProtectMarriage.com* "rejected plaintiffs' claim as-applied to California's law requiring disclosure of campaign contributions, on almost exactly the same evidence as the Plaintiffs present in this case." (Defs.' Resp. at 7.) The evidence before the California court when it denied the preliminary injunction was extremely limited. Of the fifty-eight (58) declarations from that case submitted in support of Plaintiffs' Motion for Preliminary Injunction here, only nine (9) were before the California court for purposes of its preliminary injunction hearing. (*See* Decl. of Scott F. Bieniek in Supp. of PI Memo ("Decl. of Bieniek"), Ex. 12 (John Does #1-9).) The remaining declarations were submitted in support of the plaintiffs' motion for summary judgment, denied on June 24, 2009, without prejudice, pursuant to Fed. R. Civ. P. 56(f), to allow the state additional time to conduct discovery regarding their interests in disclosure. *See* Decl. of Sarah E. Troupis, Ex.@ (Order of California Court); Decl. of Bieniek, Ex. 13 (John Does #10-58). Moreover, two of the declarations filed after the California court's order denying the preliminary injunction are particularly alarming because they specifically reference the court's order or the disclosure that occurred shortly after the court's order. *See* Decl. of Bieniek, Ex. 13, p. 243 (John Doe #54) ("The judge released the names today of the donors who supported Prop 8, and your name is on the list as having donated. . . . You're a queer-hating douchebag. Fuck you. Best, Julia"). *See also*, Decl. of Bieniek No. 1, Ex. 13, p. 240, John Doe #53 (discussing harassing phone calls that began shortly after the court's order and the consequent release of the name of the John Doe witness). The denial of the requested preliminary injunction directly led to the sort of threats, harassment, and reprisals that it could have protected against.

Furthermore, there are factual and legal differences between the two cases. *ProtectMarriage.com* arose in the similar, but not identical, context of campaign finance disclosure. Those whose rights are at issue in *ProtectMarriage.com* supported a specific campaign financially, as opposed to by merely signing a petition. The case was brought after the election had ended, to prevent further release of names under California's campaign finance disclosure laws, even though many or most of the names of donors had already been released. Here, the petition signers are taking part in a potential election at the beginning of the process; the release

**Reply in Supp. of Mot. for**     **11**     **BOPP, COLESON & BOSTROM**
**Prelim. Inj.**     **1 South Sixth Street**
**(No. 3:09-CV-05456-BHS)**     **Terre Haute, Indiana 47807-3510**
    **(812) 232-2434**

of their names would subject them to a much longer period of time where their names are available and the election is being contested, making the time period in which they are likely to be harassed of a greater length. In *ProtectMarriage.com*, the plaintiffs were asking for relief when most of the damage had already been done; here, the Court stands in the position of being able to prevent that damage before it has a chance to begin.

### B. Plaintiffs Have Established That They Will Suffer Irreparable Harm, the Balance of Equities Tips in Their Favor, and that an Injunction Is in the Public's Interest.

As set forth in Plaintiffs' Preliminary Injunction Memorandum, the Supreme Court and the Ninth Circuit have set forth the importance of issuing a preliminary injunction to prevent the exact sort of First Amendment harm that Plaintiffs in this case would suffer without such an injunction. The harms and interests alleged by Defendants are not applicable here, and do not outweigh the all-important First Amendment rights of the citizens of Washington.

### III. CONCLUSION

For the reasons set forth above, as well as the reasons set forth in Plaintiffs' Motion for Preliminary Injunction and Memorandum in Support Thereof, as well as the supporting documents, Plaintiffs' respectfully request that this Court grant their request for a preliminary injunction.

Dated this 21st day of August, 2009.

Respectfully submitted,

   /s/ Sarah E. Troupis
James Bopp, Jr. (Ind. Bar No. 2838-84)*
Sarah E. Troupis (Wis. Bar No. 1061515)*
Scott F. Bieniek (Ill. Bar No. 6295901)*
BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434
*Counsel for All Plaintiffs*

Stephen Pidgeon
ATTORNEY AT LAW, P.S.
30002 Colby Avenue, Suite 306
Everett, Washington 98201
(360) 805-6677
*Counsel for All Plaintiffs*

*Pro Hac Vice Application Granted

**Reply in Supp. of Mot. for Prelim. Inj.**
**(No. 3:09-CV-05456-BHS)**

12

**BOPP, COLESON & BOSTROM**
**1 South Sixth Street**
**Terre Haute, Indiana 47807-3510**
**(812) 232-2434**

# CERTIFICATE OF SERVICE

I, Sarah E. Troupis, am over the age of 18 years and not a party to the above-captioned action. My business address is 1 South Sixth Street; Terre Haute, Indiana 47807-3510.

On Augus 21, 2009, I electronically filed the foregoing document described as Reply in Support of Motion for Preliminary Injunction with the Clerk of Court using the CM/ECF system which will send notification of such filing to:

James K. Pharris
jamesp@atg.wa.gov
*Counsel for Defendants Sam Reed and Brenda Galarza*

I declare under the penalty of perjury under the laws of the State of Indiana that the above is true and correct. Executed this 21st day of August 2009.


   /s/ Sarah E. Troupis
Sarah E. Troupis
*Counsel for All Plaintiffs*

**Reply in Supp. of Mot. for Prelim. Inj.**
**(No. 3:09-CV-05456-BHS)**
13
BOPP, COLESON & BOSTROM
**1 South Sixth Street**
**Terre Haute, Indiana 47807-3510**
**(812) 232-2434**