THE HONORABLE BENJAMIN H. SETTLE

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JOHN DOE #1, an individual, JOHN DOE #2, an individual, and PROTECT MARRIAGE WASHINGTON,<br><br>Plaintiffs,<br><br>v.<br><br>SAM REED, in his official capacity as Secretary of State of Washington, BRENDA GALARZA, in her official capacity as Public Records Officer for the Secretary of State of Washington,<br><br>Defendants. | No. C:09-cv-05456 BHS<br><br><br><br>BRIEF OF INTERVENOR WASHINGTON FAMILIES STANDING TOGETHER |

Washington Families Standing Together ("WAFST") has sought to intervene in this case for a limited purpose – to highlight the independent and state law rights the parties have failed to address in the papers submitted to date in this action. Washington law expressly allows its citizens the right to contest in state court the validity of signatures on referendum petitions. The same statute (RCW 29A.72.240) gives the Superior Court of Thurston County the authority to order the Secretary of State to produce the petitions to the court for examination and challenge. Yet, the TRO in force since July 29, 2009 (four days after this suit was filed) forbids any such challenge or exercise of the state court's authority *even though this statute is unchallenged in this matter*. Any continuation of the TRO would extinguish this statutory right because it must be

BRIEF OF INTERVENOR WAFST
(No. 3:09-CV-05456-BHS) – 1

**EXHIBIT 1**

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

71718-0001/LEGAL16841248.1

9

exercised within five days of the Secretary's certification – now anticipated on September 1, 2009. The Court should thus tailor any order, including any continuation of the TRO, in a manner that will allow WAFST (or any other Washington citizen) to investigate and pursue, and permit the state court to adjudicate, such a claim.

## I.  STATEMENT OF FACTS

On July 25, 2009, Protect Marriage Washington submitted a collection of signatures purportedly gathered from registered Washington voters in support of placing Referendum 71 on the general election ballot. Referendum 71 seeks a statewide vote on Engrossed Substitute Senate Bill 5688, which amended Washington State's domestic partnership law, and which is forestalled from going into effect so long as Referendum 71 is pending. Washington Families Standing Together ("WAFST") is a statewide campaign, endorsed by thousands of individuals and more than 150 non-profit and faith-based organizations that support Engrossed Substitute Senate Bill 5688 and oppose Referendum 71.

Since July 25, 2009, WAFST volunteers have participated as observers to the signature verification process for the Referendum 71 petition. *See* Declaration of Mona Smith, ¶¶ 2-8. WAFST observed several types of error by the Secretary of State, including the acceptance of signatures from improper petitions and the counting of mismatched signatures, and has filed suit to address the improper petitions. *See* Declaration of Anne Levinson, Ex. 1 (August 27, 2009 state court suit). To address the latter error, however, WAFST asked the Secretary of State to reexamine a large group of signatures that had been erroneously counted. Smith Decl., ¶8. The Secretary did so for only 222 of the signatures, and as a result found that 29 (13%) had been counted in error. These errors represent a small sample of the total potential errors, as WAFST volunteers were allowed by the Secretary to observe only about 20% of the signature matchers. *Id*. ¶¶4-7.

WAFST thus turned to its rights under the Public Disclosure Act to be able to examine the large percentage of the signature "matches" it had been unable to observe. Levinson Decl., ¶

BRIEF OF INTERVENOR WAFST
(No. 3:09-CV-05456-BHS) – 2

**EXHIBIT 1**

71718-0001/LEGAL16841248.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

4. If the 13% error rate extends to the total number of signatures accepted by the Secretary, Referendum 71 will not qualify for the ballot. The Court's Temporary Restraining Order, however, precludes WAFST from investigating the remaining Referendum 71 signatures. *See* TRO (Dkt. No. 9).

## II.  ARGUMENT

### A.  THE COURT SHOULD REJECT THE PLAINTIFFS' SUGGESTION TOWARD SECRET AND UNREVIEWABLE REFERENDUM GOVERNANCE

As an initial matter, WAFST respectfully submits that signatures offered in support of a Referendum challenging a law enacted by our Legislature and signed by the Governor are, of necessity, public records within the meaning of Washington's public disclosure laws. The startling suggestion that signatures could be collected and submitted to repeal a lawfully adopted statute, yet sheltered from public view and evaluated only in secret by a small handful of government employees is antithetical to fundamental principles of an open democracy and would undermine our public records statute.

For the reasons stated in the Secretary's brief, the Court should reject the plaintiffs' challenge. The interests in open government and fraud-free elections outweigh the potential harms suggested by the plaintiffs' under any constitutional standard.

### B.  THE COURT SHOULD IMMEDIATELY AMEND THE TRO, AND SHOULD TAILOR ANY FUTURE ORDER TO PRESERVE UNCHALLENGED STATE LAW RIGHTS

Regardless of how the Court resolves the constitutional challenge, the Court should amend any continuance of the TRO, and should tailor any ultimate order in a manner that allows WAFST (and any other Washington voter) to pursue unchallenged state law rights.

Washington law recognizes a right for Washington citizens to challenge referendum petition signatures in state court:

> Any citizen dissatisfied with the determination of the secretary of state that an initiative or referendum petition contains or does not contain the requisite number of signatures of legal voters may, within five days after such determination, apply to the superior court of Thurston county for a citation requiring the secretary of

BRIEF OF INTERVENOR WAFST
(No. 3:09-CV-05456-BHS) – 3

**EXHIBIT 1**

71718-0001/LEGAL16841248.1

Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**11**

> state to submit the petition to said court for examination, and for a writ of mandate compelling the certification of the measure and petition, or for an injunction to prevent the certification thereof to the legislature, as the case may be.

RCW 29A.72.240. Thus, "any" Washington citizen may seek a judicial examination of the signatures submitted in support of a referendum by appealing within five days of the referendum certification by the Secretary of State. Nowhere in the preliminary injunction briefing have the parties challenged or even addressed this statute. Yet the statute exists so that citizens may challenge the errors they observe during the signature checking process. *See* RCW 29A.72.230 (the verification and canvass of signatures on the petition may be observed by persons representing the advocates and opponents of the proposed measure). The ability to contest errors before a court, above and beyond the mere right to observe the Secretary of State, is an important right the parties ignore.

Indeed, Plaintiffs have gone so far as to assert that under "Washington law, the Secretary of State*, and only the Secretary of State*, is granted the authority to verify and canvass the names of the legal voters on the petition." Dkt. 31 at 4 (emphasis added).[1] This misses the point; Washington law expressly contemplates both citizen and judicial oversight of the Referendum verification process. Washington citizens have a clear, important, and indisputable right to challenge petitions before the Washington courts. Nothing in Washington law suggests that the Secretary of State is the "only" person with *access* to, or the authority to *evaluate* petitions and signatures. Washington law suggests precisely the opposite.

The Court should thus immediately amend any continuing TRO to preserve WAFST's right to public records. Without access to this information, WAFST cannot examine the extent of signature mismatches in the referendum petition. This prevents further dialogue between WAFST and the Secretary to avoid erroneous signature "matches." The TRO also unnecessarily

---

[1] The suggestion that "only" the Secretary of State may view petition signatures implies that signatures could be submitted in secret and "verified" without public oversight or judicial review. Nothing in our State Constitution or in Washington's public disclosure or election statutes would even remotely support such a position.

BRIEF OF INTERVENOR WAFST
(No. 3:09-CV-05456-BHS) – 4

**EXHIBIT 1**

71718-0001/LEGAL16841248.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**12**

hinders WAFST and its attorneys from investigating a claim under RCW 29A.72.240 so that any such claim may be presented in the most narrow and precise manner. Any such claim must be filed within five days of certification (expected September 1, 2009). Immediate relief from this Court is necessary to permit a real and meaningful examination of the referendum signature verification process. The Proposed Protective Order filed with this memorandum would allow WAFST to access the signatures for the sole purpose of examining them and considering a claim under RCW 29A.72.240.

The Court should also refrain from ruling on the Public Records Act, RCW 42.56.011 *et seq.*, in a way that would conflict with RCW 29A.72.240. *See Natural Res. Def. Council, Inc. v. Winter*, 508 F.3d 885, 886 (9th Cir. 2007) ("Injunctive relief must be tailored to remedy the specific harm alleged"); *see also In re Mex. Money Transfer Lit. (Western Union & Orlandi Valuta)*, 164 F. Supp. 2d 1002 (N.D. Ill. 2000) (recognizing that court did not exceed its authority in entering injunction at issue because in the event of a conflict between the injunction and state law, the latter would take precedence). To that end, any injunctive relief awarded by the Court should, at a minimum, allow state courts to issue orders and adjudicate claims under RCW 29A.72.240 using protective orders not inconsistent with the Court's ultimate order.

### III.   CONCLUSION

For the reasons set forth above, intervenor WAFST respectfully requests that the Court immediately dissolve the TRO, or, in the alternative, and tailor any injunctive relief in a manner that allows WAFST to pursue, and the state courts to adjudicate, unchallenged state law rights.

BRIEF OF INTERVENOR WAFST
(No. 3:09-CV-05456-BHS) – 5

**EXHIBIT 1**

71718-0001/LEGAL16841248.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

DATED: August 28, 2009

s/ *Ryan J. McBrayer*
Kevin J. Hamilton, WSBA No. 15648
KHamilton@perkinscoie.com
Ryan J. McBrayer, WBSA No. 28338
RMcBrayer@perkinscoie.com
William B. Stafford, WSBA No. 39849
WStafford@perkinscoie.com
**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000

Attorneys for Intervenor
Washington Families Standing Together

BRIEF OF INTERVENOR WAFST
(No. 3:09-CV-05456-BHS) – 6

**EXHIBIT 1**

71718-0001/LEGAL16841248.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000