# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# TACOMA DIVISION

| | |
|---|---|
| JOHN DOE #1, an individual, JOHN DOE #2, an individual, and PROTECT MARRIAGE WASHINGTON,<br><br>                    Plaintiffs,<br>vs.<br><br>SAM REED, in his official capacity as Secretary of State of Washington, BRENDA GALARZA, in her official capacity as Public Records Officer for the Secretary of State of Washington,<br><br>                    Defendants. | No. 3:09-CV-05456-BHS<br><br>**PLAINTIFFS' OPPOSITION TO MOTIONS TO INTERVENE OF WASHINGTON COALITION FOR OPEN GOVERNMENT, WASHINGTON FAMILIES STANDING TOGETHER, AND ARTHUR WEST**<br><br>NOTE ON MOTION CALENDAR: September 3, 2009 - 2:30 p.m.<br><br>The Honorable Benjamin H. Settle<br><br>**ORAL ARGUMENT REQUESTED** |

## I. Introduction

On Thursday, August 27, 2009, the Washington Coalition for Open Government ("WCOG") filed a motion to intervene.[1] (WCOG Mot. to Intervene, Doc. 36.) On Friday, August 28, 2009, the Court entered a minute order setting forth an accelerated briefing schedule on WCOG's

---

[1] Pursuant to Local Civil Rule 7(d) and Fed. R. Civ. P. 6(c), WCOG's motion is improperly noticed for a September 3, 2009 hearing. *See also* Local Civil Rule 6(e) (abolishing motions to shorten time).

1  motion to intervene.[2] (Minute Order, Doc. 41.) On Friday, August 28, 2009, shortly after the

2  Court entered its minute order, Washington Families Standing Together ("WAFST") also filed a

3  motion to intervene.[3] (WAFST Mot. to Intervene, Doc. 43.) On Monday, August 31, 2009, at

4  approximately 3:57 p.m. EDT, Arthur West ("West") emailed a motion to intervene to counsel

5  for Plaintiffs and State Defendants.[4] Plaintiffs, pursuant to the Court's order with respect to

6  WCOG's motion, and in the spirit of the order with respect to the motions of WAFST and West,

7  now timely file their opposition to the Motions to Intervene.[5]

## II. Background

Before addressing WCOG's, WAFST's, and West's Motions to Intervene, Plaintiffs wish to take an opportunity to reiterate what is before the Court in the present action. The present action is not about the constitutionality of Referendum 71, or what rights should be afforded to domestic partners. This case is about the First Amendment. The Court is asked to determine whether the compelled disclosure of referendum petitions violates the guarantees afforded under the First Amendment. If the Court determines that the public disclosure of referendum petitions is generally constitutional, the Court is also asked whether the Referendum 71 petition should be

---

[2] In the interest of judicial economy, Plaintiffs are filing their opposition to all motions to intervene received as of the time of this filing on August 31, 2009, so that they may be considered at the September 3 hearing if the Court so desires.

[3] Again, the motion is improperly noticed for a September 3, 2009, hearing under both Local Civil Rule 7(d) and Fed. R. Civ. P. 6(c).

[4] Again, the motion is improperly noticed for a September 3, 2009, hearing under both Local Civil Rule 7(d) and Fed. R. Civ. P. 6(c). Plaintiffs have prepared their opposition to the Motion to Intervene emailed by Mr. West, but note that they have no assurance that it is the same version that will be filed with the Court, or that Mr. West even intends to file the motion with the Court in advance of the September 3, 2009 hearing.

[5] WCOG received notice of the temporary restraining order and the September 3, 2009 hearing on Plaintiffs' motion for a preliminary injunction on or before August 3, 2009. *See* (Nixon Decl. ¶¶ 4-5); (Nixon Decl., Ex. C) (indicating that WCOG received a copy of the Court's Order Granting Plaintiffs' Motion for TRO on August 3, 2009).
WAFST received notice on or before August 12, 2009. *See* (Defs.' Reply in Supp. of Mot. To Join, Ex. B.) (setting forth a public records request for "Each petition . . . , *excluding* any and all other information subject to the temporary restraining order entered on July 29, 2009 . . . .")
Arthur West received notice on or before August 12, 2009. *See* (Defs.' Reply in Supp. of Mot. to Join, Ex. C.)
WCOG, WAFST, and West have failed to explain why they chose to wait until a week before the scheduled hearing to file their motions to intervene, and their delay should not be allowed to prejudice Plaintiffs' opposition to their motions to intervene or Plaintiffs' motion for preliminary injunction.

**Plaintiffs' Opposition to**      **2**      **BOPP, COLESON & BOSTROM**
**Motions to Intervene**      **1 South Sixth Street**
**(No. 3:09-CV-05456-BHS)**      **Terre Haute, Indiana 47807-3510**
**(812) 232-2434**

exempt from such disclosure in light of the threats, harassment, and reprisals directed at supporters of a traditional definition of marriage.

WCOG, WAFST, and West, in filing their motions to intervene, seek to distract the Court from addressing the narrow issues properly before it. WCOG's stated purpose is to litigate the "long-term viability of the PRA . . . . the construction of the PRA as a whole . . . and the significance of open access to the citizens of the State of Washington." (WCOG Mot. to Intervene at 10.) In short, WCOG wishes to debate the general policies supporting sunshine laws and the background of the Washington Public Records Act. WAFST has indicated that its interest is one of "defending the enhanced domestic partnership law." (WAFST Mot. to Intervene at 7.) West is interested in challenging the constitutionality of the PRA because it "lacks adequate procedural protections to insure a prompt and final adjudication."[6] (West Mot. to Intervene at 2.) Each Proposed Intervenor seeks to assert divergent interests unrelated to the narrow issues properly before the Court and their Motions to Intervene should be denied.

## III. Argument

**A. The Motions to Intervene as of Right Should Be Denied.**

Intervention as of right is governed by Federal Rule of Civil Procedure 24(a)(2), which states: "On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."

The Ninth Circuit breaks Rule 24(a)(2) into four parts: "A party seeking to intervene as of right must meet four requirements: (1) the applicant must timely move to intervene; (2) the applicant must have a significantly protectable interest relating to the property or transaction that is the subject of the action; (3) the applicant must be situated such that the disposition of the action may impair or impede the party's ability to protect that interest; and (4) the applicant's

---

[6] West is apparently frustrated by the delay between filing a public records request, litigation in state court to compel its production, and the award of attorney's fees in cases where the court ultimately determines that the state improperly withheld disclosure. (West Mot. to Intervene at 3.)

1  interest must not be adequately represented by existing parties**. . . .** Each of these four
2  requirements must be satisfied to support a right to intervene." *Arakari v. Cayetano*, 324 F.3d
3  1078, 1083 (9th Cir. 2003).

4  None of the Proposed Intervenors meet the requirements for intervention as of right, and
5  therefore, their motions to intervene should be denied.  Most importantly, because the State
6  adequately represents all of the interests asserted by Proposed Intevenors on the narrow issues
7  presented in this case, none of the Proposed Intervenors should be allowed to intervene as of
8  right.

9  **1.  The Proposed Intervenors' Motions to Intervene Were Not Timely.**

10  "In determining timeliness, three factors are weighed: (1) the stage of the proceeding at
11  which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for
12  and length of the delay." *County of Orange v. Air California*, 799 F.2d 535, 538 (9th Cir. 1986).
13  Here, the timeliness of the Motions to Intervene is dependent on which count of Plaintiffs'
14  Complaint is being analyzed.

15  On the first count of Plaintiffs' Verified Complaint, which is a purely legal challenge to the
16  Washington Public Records Act as it is applied to referendum petitions, it is easy to see why the
17  Proposed Intervenors' Motions are not timely.  The issues raised in Count I, as set forth in
18  Plaintiffs' filings on their Motion for Preliminary Injunction and their Motion to Consolidate, are
19  purely legal issues that merit a decision as soon as possible.  Allowing the Proposed Intervenors
20  to enter the case at this stage, on a purely legal matter, would thus prejudice both parties, who
21  have already spent significant amounts of time briefing the First Count of Plaintiffs' Verified
22  Complaint.

23  As to the second count of Plaintiffs' Verified Complaint, which is a challenge to the
24  Washington Public Records Act, as applied to the reasonable probability of threats, harassment,
25  and reprisals to those who support Referendum 71, the Court's decision at the Preliminary
26  Injunction hearing will be a decision that determines whether the names of the petition signers
27  will be released.  Whatever the Court's decision on the Motion for Preliminary Injunction, this
28  decision will, for all practical purposes, be a decision on the merits of the case, and the parties

**Plaintiffs' Opposition to**                4                **BOPP, COLESON & BOSTROM**
**Motions to Intervene**                                       **1 South Sixth Street**
**(No. 3:09-CV-05456-BHS)**                                    **Terre Haute, Indiana 47807-3510**
                                                               **(812) 232-2434**

will proceed to summary judgment and/or trial. To allow the Proposed Intervenors to intervene now, without the possibility for full briefing on any points they may raise against the Motion for Preliminary Injunction, could severely prejudice Plaintiffs. For example, the Proposed Intervenors could present an argument now, without full briefing, on which a decision is made to release the names of the petition signers. However, if Plaintiffs, after full briefing, are able to show that the names of the petition signers should not be released, it will be of no comfort to those who were subject to threats, harassment, and reprisals because of this untimely intervention of the Proposed Intervenors.

**2.     None of the Proposed Intervenors Have a Significantly Protectable Interest.**

Before being allowed to intervene, a proposed intervenor must show that they have a significantly protectable interest: "An applicant has a 'significant protectable interest' in an action if (1) it asserts an interest that is protected under some law, and (2) there is a 'relationship' between its legally protected interest and the plaintiff's claims. The relationship requirement is met if the resolution of the plaintiff's claims actually will affect the appellant. The 'interest' test is not a clear-cut or bright-line rule, because no specific legal or equitable interest need be established. Instead, the 'interest' test directs courts to make a practical, threshold inquiry, and is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Southern California Edison Co. v. Lynch*, 307 F.3d 794, 803 (9th Cir. 2002) (internal quotations and citations omitted); *see also In re Estate of Ferdinand E. Marcos Human Rights Litigation,* 536 F.3d 980, 984-85 (9th Cir. 2008)**.**

As set forth above, this case deals with two narrow, constitutional issues. The first issue is whether the release of the names of those who sign referendum petitions under the Washington Public Records Act is constitutional; the second is whether, as applied to those who signed the Referendum 71 petition, there is a reasonable probability that the release of the names of the petition signers will result in a reasonable probability that those signers will be subject to threats, harassment, and reprisals. This narrow focus of the case at bar provides the basis for why neither of the Proposed Intervenors has a significantly protectable interest.

Proposed Intervenor WCOG states that its interest in this suit is "in participating in the interpretation and construction of the PRA." (WCOG Mot. to Intervene at 7.) While WCOG may be a party long-interested in the Washington Public Records Act, they have not specified why they are specifically interested in the narrow issue of whether it is constitutional as applied to referendum petitions. From their briefing, it appears that WCOG wants to argue very general propositions about the application of the Washington Public Records Act across the entire broad spectrum of public records covered by the Act. While this information might be helpful to a broad understanding of the Public Records Act, and its application in a general sense, this adds very little, if anything, to the narrow issue to be decided in this case. Moreover, to the extent that this is a significantly protectable interest, it is the interest of the State, which is responsible for interpreting and constructing the Washington Public Records Act, in addition to upholding it, applying it, and otherwise being responsible for it.[7]

Proposed Intervenor WAFST proposes two significantly protectable interests. First, WAFST states that it has an interest "in defending the enhanced domestic partnership law" (WAFST Mot. to Intervene at 4.) This interest asserted by WAFST goes not to the constitutional issues presented by this lawsuit, but to the underlying subject matter of Referendum 71, and is therefore unrelated to the issues of this case. While WAFST may feel strongly about those underlying issues, this is not the proper forum in which to assert its beliefs.

The second significantly protectable interest that Proposed Intervenor WAFST asserts is that

---

[7]As WCOG notes in their Motion to Intervene, "in promoting open government in general, and access to public records specifically," they take an active role in the courts "by filing *amicus curiae* briefs." (WCOG Mot. to Intervene at 5.) Here, the information they wish to present to the court—information on the history of the Public Records Act, rather than responses to the specific Constitutional challenges to the Public Records Act presented by Plaintiffs—is exactly the sort of information that might be helpful to the court's understanding of the history of the Public Records Act as done through an *amicus* brief, but would not be properly brought before the Court by an intervenor.

Similarly, if a group such as The Institute for Justice, which sponsored studies relied upon by Plaintiffs, wished to interevene in this case because of their knowledge of campaign disclosure laws, they would similarly be barred from intervention. However, their knowledge could be helpful to the Court in support of Plaintiffs as the authors of an *amicus* brief, or they might provide an expert witness to aid the Plaintiffs' case. However, allowing them to intervene would allow a nearly unlimited number of groups to intervene, merely because they have knowledge that could potentially aid the Court's understanding of the history involved in the case.

Plaintiffs' Opposition to
Motions to Intervene
(No. 3:09-CV-05456-BHS)

6

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

it has a specific interest in determining signature mismatches under Washington Revised Code §29A.72.240. (WAFST Mot. to Intervene at 4.) Washington Revised Code §29A.72.240 reads:

> Any citizen dissatisfied with the determination of the secretary of state that an initiative or referendum petition contains or does not contain the requisite number of signatures of legal voters may, within five days after such determination, apply to the superior court of Thurston county for a citation requiring the secretary of state to submit the petition to said court for examination, and for a writ of mandate compelling the certification of the measure and petition, or for an injunction to prevent the certification thereof to the legislature, as the case may be. Such application and all proceedings had thereunder shall take precedence over other cases and shall be speedily heard and determined.

As set forth in Plaintiffs' Preliminary Injunction Memorandum, the Washington Public Records Act only contemplates that the names of the petition signers will be viewed by a limited number of individuals, necessary to ensure the limited interest in signature verification.[8] (See Pls.' Prelim. Inj. Mem. at 18; Pls.' Prelim. Inj. Reply at 4.) That WAFST is able to point to a specific, limited review of the petition signatures by a court, to provide a further review of those signature in line with the narrow interest of the State already presented by Plaintiffs, and similarly refuted by Defendants, does nothing to change Plaintiffs' analysis of the underlying constitutional challenges, nor does it establish a significantly protectable interest for WAFST.[9]

Proposed Intervenor West states that he has a "longstanding interest in the disclosure of accurate information concerning [the] initiative and referendum process in the State of Washington," and that he "requires the information he has requested concerning R-71 in order to cast an informed vote based upon full disclosure of relevant information." (West Mot. to Intervene at 1-2.) As is the case with Proposed Intervenor WCOG, while West may be a party

---

[8] Under WRC §29A.72.240, to gain judicial review, a citizen need only show that he or she is "dissatisfied" with the Secretary of State's determination on the verification of the signatures to apply for the court's re-examination of the submitted signatures; the citizen does not need not specify anything more than mere dissatisfaction to gain access to the Court. Requiring the disclosure of the names of the petition signers under this statute is therefore subject to the exact same reasoning and legal precedent as those statutes specifically discussed in the previous briefing of this case, and allowing intervention would add nothing to the Court's examination of these issues.

[9] Plaintiffs would not object to a preliminary injunction that would allow other courts to see the petitions and petition signers in the course of an *in camera* review, to ensure the narrow interest of the government in the validity of the signatures, so long as the names of the petition signers were not released to the public through that investigation, and the investigation was limited to the extremely narrow interest the government has in ensuring the validity of the petitions.

**Plaintiffs' Opposition to**         7         **BOPP, COLESON & BOSTROM**
**Motions to Intervene**                                                                              **1 South Sixth Street**
**(No. 3:09-CV-05456-BHS)**                                             **Terre Haute, Indiana 47807-3510**
                                                                                                           **(812) 232-2434**

with a longstanding interest in the Washington Public Records Act, he must specify why he is specifically interested in the narrow issues currently before the Court to satisfy the second requirement for intervention as of right. Moreover, the interest he asserts in casting an informed vote is the same interest that any citizen of Washington should have—allowing intervention for this reason would severely cut against the practicality and efficiency this aspect of intervention requires.

Moreover, even if there is an interest asserted by the Proposed Intervenors, the interest is adequately protected by the State, as set forth below in Section III.A.4. Therefore, allowing the Proposed Intervenors to intervene to assert any possible interest that they may have would cut against judicial economy and efficiency.[10]

### 3. Neither of the Proposed Intervenors Will be Impaired or Impeded in their Ability to Protect Their Asserted Interests.

The third requirement of intervention as of right "presupposes that the prospective intervenor has a protectable interest." *Northwest Forest Resource Council v. Glickman*, 82 F3d 825, 838 (9th Cir. 1996). If there is such an interest, when determining whether the disposition of an action will impair or impede the ability of a proposed intervenor to protect its alleged interest, "[w]e follow the guidance of Rule 24 advisory committee notes that state that '[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene.'" *Southwest Center for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001) (quoting FRCP 24 advisory committee's notes).

As set forth above, Proposed Intervenor WCOG states that its interest in this suit is "in participating in the interpretation and construction of the PRA." (WCOG Mot. to Intervene at 7.) As set forth above, WCOG is a group generally concerned with the Washington Public Records

---

[10]Proposed Intervenors WCOG and WAFST correctly note that public interest groups are regularly allowed to intervene. (WCOG Mot. to Intervene at 8; WAFST Mot. to Intervene at 4.) However, the cases in which the Ninth Circuit has "allowed public interest groups to intervene generally share a common thread: . . . these groups were directly involved with the enactment of the law or in the administrative proceedings out of which the litigation arose." *Northwest Forest Resource Council v. Glickman*, 82 F3d 825, 837 (9th Cir. 1996). In this case, neither party alleges to have been involved with the enactment of the law, and this litigation did not arise out of an administrative proceeding; thus, the fact that interest groups are regularly allowed to intervene does not merit allowing these particular interest groups to intervene in this litigation.

| | | |
|---|---|---|
| **Plaintiffs' Opposition to Motions to Intervene (No. 3:09-CV-05456-BHS)** | 8 | **BOPP, COLESON & BOSTROM** 1 South Sixth Street Terre Haute, Indiana 47807-3510 (812) 232-2434 |

Act, and not the specific application of the Act to referendum petitions. However, on the narrow issue of obtaining the names of those who have signed referendum petitions, this argument is undercut by their failure to have ever asked for the names of referendum signers in the past. (Decl. of Handy in Support of Opposition to Preliminary Injunction at ¶ 11.) A group like WCOG, which has never concerned itself with the application of the Public Records Act to referendum petitions, and which is only interested in the broad application of that Act, will not be "substantially affected in a practical sense" by this Court's rulings.

Proposed Intervenor WAFST states that its interests in this suit are "in defending the enhanced domestic partnership law" and "in its investigation of signature mismatches." (WAFST Mot. to Intervene at 4.) The first interest is entirely unrelated to the issues presented in this case; WAFST will still be allowed to defend the enhanced domestic partnership law through all legal means. Moreover, because Washington law is crafted in such a way that the Court can review the signatures collected without disclosure to the public, in compliance with the State's narrow interest in signature verification, a lack of release of the names of the petition signers will also not impair or impede WAFST's second asserted interest. They may still bring suit requiring judicial review of the signatures, without a release of those signatures.

### 4. The Interests of the Proposed Intervenors Are Adequately Represented by the State.

The biggest stumbling block for each the Proposed Intervenors is the fourth requirement, which requires that the Proposed Intervenors must not be adequately represented by those already parties to the action. In making the determination as to adequacy of representation, "[t]his Court considers three factors in determining the adequacy of representation: (1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; (3) whether a proposed intervenor would offer any necessary elements to the proceeding that the other parties would neglect." *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003).

However, this Court does not need to address each of these concerns. All of the Proposed Intervenors fail to note that, in this case, adequacy of representation is *presumed* because of the

1  government's participation in the suit: "There is also an assumption of adequacy when the
2  government is acting on behalf of a constituency that it represents. . . . In the absence of a 'very
3  compelling showing to the contrary,' it will be presumed that a state adequately represents its
4  citizens when the applicant shares the same interest. . . . Where parties share the same ultimate
5  objective, differences in litigation strategy do not normally justify intervention." *Arakaki v.*
6  *Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003) (quoting 7C Charles Alan Wright, et al., Federal
7  Practice and Procedure: Civil 2d § 1909, 332 (2d ed. 1996); *see also California ex rel. Lockyer v.*
8  *United States*, 450 F.3d 436, 443 (9th Cir. 2006); *Flying J, Inc. v. Van Hollen*, ___ F.3d ___, WL
9  2535712 at *3 (7th Cir. 2009) (unless there is an indication that the State is "planning to throw
10 the case" by failing to defend its own statute, adding an intervenor-defendant "would simply
11 complicate the litigation" and a motion to intervene should be denied).

12 As a party to this suit, the State is assumed to represent the concerns of all the Proposed
13 Intervenors, because they are all citizens or groups of citizens. WCOG states that it is "the voice
14 of citizen advocates." (WCOG Mot. to Intervene at 5.) WAFST states that it "represents over a
15 hundred organizations and thousands of families in Washington." (WAFST Mot. to Intervene at
16 4.) West has "a particular interest as an individual voter . . . ." (West Mot. to Intervene at 3.)

17 Because the State is assumed to represent all of the Proposed Intervenors, the Proposed
18 Intervenors must make a "very compelling showing" as to how the State's interest is different
19 from their own, before this Court can allow their intervention as of right. However, none of the
20 Proposed Intervenors makes any showing as to how the State's interest on the narrow issues
21 presented in this suit differs from their own, let alone a compelling showing that would require
22 intervention.

23 Here, the State's interest is in upholding the Constitutionality of the Public Records Act in
24 two situations: as applied to the release of the names of those who signed referendum petitions,
25 and as applied in light of the reasonable probability of threats, harassment, and reprisals. If
26 upheld, the names of the referendum signers would be released. This interest of the State and
27 that of the Proposed Intervenors are aligned—the Proposed Intervenors desire to have the Act
28 upheld as Constitutional, thus allowing the names of the petition signers to be released.

That the interests of the State and the Proposed Intervenors are aligned is demonstrated in the Motions to Intervene submitted by Proposed Intervenors. WCOG states that it will "focus on the significance of open access to the citizens of the State of Washington." (WCOG Mot. to Intervene at 10.) However, this is not a "very compelling showing" that WCOG's interests are different than those of its own; instead, it shows that WCOG only wishes to add historical aspects to the arguments presented by the State, and is not a "very compelling showing" of an interest contrary to that presented by the State.

WAFST's alignment with the State's arguments is clear, as they don't present any argument contrary to that of the State, but merely agree with their reasoning "[f]or the reasons stated in the Secretary's brief. . . . ." (WAFST Brief in Support of Mot. to Intervene at 3.) Moreover, even though WAFST indicates that it is concerned with the State's failure to address a specific portion of the Public Records Act, this is the sort of difference in litigation strategy that the Ninth Circuit has rule does not merit intervention as of right.[11]

Despite West's statement that "he has rights and interests that differ from the State," because he has "previously notified the Washington State Attorney General that RCW 42.56[.001 *et seq.*] is unconstitutional as applied in that it lacks adequate procedural protections to insure a prompt and final adjudication," his interests in this case, like the other Intervenors, are aligned with those of the State. (West Mot. to Intervene at 2.) Although West has certain grievances with the Washington Public Records Act unrelated to those asserted by Plaintiffs, he asserts no reason why, with regard to the two narrow issues presented for review here, his interests are opposed to those of the State, in which, unlike in the other cases he may have pending or previously adjudicated, the State wishes to disclose the records he seeks.

**B.   The Motions to Permissively Intervene Should Be Denied.**

Just as they fail to meet the requirements for intervention as of right, the Proposed

---

[11]Proposed Intervenor WAFST suggests that the State does not adequately represent their interests in this lawsuit, because the State would be a defendant in any action brought by WAFST challenging the certification of Referendum 71. (WAFST Mot. to Intervene at 6.) However, the State's potential to be a Defendant in a lawsuit brought by WAFST other than this lawsuit does not reflect the proper issue on this point: that, in this lawsuit, their interests are perfectly aligned, and settled law states that this alignment prevents intervention as of right.

| | | |
|---|---|---|
| **Plaintiffs' Opposition to** | 11 | **BOPP, COLESON & BOSTROM** |
| **Motions to Intervene** | | **1 South Sixth Street** |
| **(No. 3:09-CV-05456-BHS)** | | **Terre Haute, Indiana 47807-3510** |
| | | **(812) 232-2434** |

1    Intervenors also fail to meet the requirements for permissive intervention. Permissive intervention is governed by Federal Rule of Civil Procedure 24(b)(1)(B), which states: "On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." The Ninth Circuit breaks Rule 24(b)(1)(B) into three parts: "An applicant who seeks permissive intervention must prove that it meets three threshold requirements: (1) it shares a common question of law or fact with the main action; (2) its motion is timely; and (3) the court has an independent basis for jurisdiction over the applicant's claims." *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998).

However, these three requirements, even if met, do not necessarily permit intervention. Even if an applicant satisfies those threshold requirements, the district court has discretion to deny permissive intervention." *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998). This discretion involves consideration of various other factors:

> If the trial court determines that the initial conditions for permissive intervention under Rule 24(b)(1) or 24(b)(2) are met, it is then entitled to consider other factors in making its discretionary decision on the issue of permissive intervention. These relevant factors include the nature and extent of the intervenors' interest, their standing to raise relevant legal issues, the legal position they seek to advance, and its probable relation to the merits of the case. The court may also consider whether changes have occurred in the litigation so that intervention that was once denied should be reexamined, whether the intervenors' interests are adequately represented by other parties, whether intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.

*Spangler v. Pasadena City Board of Education*, 552 F.2d 1326, 1329 (9th Cir. 1977) (footnotes omitted).

**1.   No Proposed Intervenor Asserts a Claim Which Has a Common Question of Law or Fact.**

With permissive intervention, "[t]he language of the rule makes clear that if the would be intervenor's claim or defense contains no question of law or fact that is raised also by the main action, intervention under Rule 24(b)(2) must be denied." *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1(9th Cir. 2002).

As set forth above at Section III.A.2, the Proposed Intervenors merely assert "interests" in the underlying action, and not actual claims. Moreover, none of the interests asserted by the

Proposed Intervenors adds to the as applied Constitutional claims brought by Plaintiffs, or asserts a specific claim for which there is a question of law or fact in common with this suit. Thus, there is no common question of law or fact to a claim that any of the Proposed Intervenors wish to assert that would justify their presence as Defendants in this suit.[12]

**2.   The Motions to Intervene Are Not Timely.**

As set forth above in Section III.A.1, none of the Proposed Intervenors' Motions to Intervene are timely, and therefore do not meet the second requirement for permissive intervention.

**3.   The Court Does Not Have an Independent Basis for Jurisdiction Over the Proposed Intervenors' Claims.**

The third issue involving permissive intervention in this situation turns not on the issues presented by the Proposed Intervenors, but on the claims that they wish to assert. As set forth in Section III.A.2, above, the Proposed Intervenors do not present interests sufficient to interevene in this case, let alone legal claims that would give this Court an independent basis for jurisdiction.

Further, Proposed Intervenors WAFST and West do not specifically address this aspect of permissive joinder, Proposed Intervenor WCOG asserts that its independent basis for jurisdiction is that "its public records request for the disclosure of signed petition pages for Referendum 71 was denied due to Plaintiffs' Temporary Restraining Order." (WCOG Mot. to Intervene at 16.) Specifically, WCOG states that they could have brought suit under RCW § 42.56.550 to challenge the denial of their public records request, but chose not to "in the interest of judicial economy and comity." (WCOG Mot. to Intervene at 16.)   However, this argument does not consider that Plaintiffs have not asserted any claims in this suit that the referendum petitions are exempt from disclosure under any specific portion of the Washington Public Records Act, and which might establish an independent basis for jurisdiction. Instead, Plaintiffs assert that the application of the Act to referendum petitions is unconstitutional. Until and only if this Court

---

[12] Moreover, Plaintiffs have not raised any claims in this suit that could be properly brought against the Proposed Intervenors. The Proposed Intervenors are not responsible for the Constitutionality of the Washington Public Records Act, nor are they enforcing agents of the Public Records Act. Plaintiffs would have no basis on their own to sue the Proposed Intervenors.

| Plaintiffs' Opposition to Motions to Intervene (No. 3:09-CV-05456-BHS) | 13 | BOPP, COLESON & BOSTROM 1 South Sixth Street Terre Haute, Indiana 47807-3510 (812) 232-2434 |
|---|---|---|

1  rules that the Act's application to referendum petitions is Constitutional on both counts of
2  Plaintiffs' Verified Complaint, WCOG's stated interest cannot be ruled upon here, or in any
3  other court.[13]

**4.  Other Discretionary Factors Weigh Against Granting Permissive Intervention.**

In the cases of each of the Proposed Intervenors, several other factors weigh against granting permissive intervention.  As set forth above, two of the Proposed Intervenors are citizen groups whose interests in the narrow Constitutional issues raised in this case are adequately represented by the State, and the other is an individual citizen of Washington whose interests are also adequately represented by the State.  *See also Arakaki*, 324 F.3d at 1086 (State is assumed to represent the interests of its citizens when sharing the same interests); *California ex rel. Lockyer*, 450 F.3d at 443 (same).

Further, none of the Proposed Intervenors adds unique factual information to the claims that could not or would not be addressed by those already parties.  And the interests proposed to be advanced by the Proposed Intervenors, as set forth above, do nothing to add to the Court's decision on the narrow Constitutional issues that are part of this case.  Allowing intervention here would merely serve to add parties to the case who cannot add arguments of legal relevance to the case, and would needlessly complicate litigation that is currently narrowly focused, and, without the Intervenors, could be dealt with quickly and efficiently by the parties already involved in the suit.[14]

# IV. Conclusion

For the reasons set forth above, the Motions to Intervene filed by Proposed Intervenors Washington Coalition for Open Government, Washington Families Standing Together, and Arthur West should be denied.

---

[13] Moreover, based upon their Motion to Intervene, it appears that WCOG has not chosen and does not intend to bring this particular claim in this litigation.

[14] A good example of the potential for confusion is found in WCOG's Motion to Intervene, where WCOG confuses the reasonable-probability test of *Brown* with a series of cases entirely unrelated to Constitutional challenges to campaign disclosure.  (WCOG Mot. to Intervene at 13.)  Moreover, the prospect of confusion and complication is amply demonstrated by the filing of three Motions to Intervene over the course of three business days with a week or less before the hearing at which all are noticed.

1  Dated this 31st day of August, 2009.

2  Respectfully submitted,

3
     /s/ Sarah E. Troupis
4  James Bopp, Jr. (Ind. Bar No. 2838-84)*      Stephen Pidgeon
   Sarah E. Troupis (Wis. Bar No. 1061515)*     ATTORNEY AT LAW, P.S.
5  Scott F. Bieniek (Ill. Bar No. 6295901)*     30002 Colby Avenue, Suite 306
   BOPP, COLESON & BOSTROM                      Everett, Washington 98201
6  1 South Sixth Street                         (360) 805-6677
   Terre Haute, Indiana 47807-3510              *Counsel for All Plaintiffs*
7  (812) 232-2434
   *Counsel for All Plaintiffs*

8  *Pro Hac Vice Application Granted*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| **Plaintiffs' Opposition to** | 15 | **BOPP, COLESON & BOSTROM** |
| **Motions to Intervene** | | **1 South Sixth Street** |
| **(No. 3:09-CV-05456-BHS)** | | **Terre Haute, Indiana 47807-3510** |
| | | **(812) 232-2434** |

# CERTIFICATE OF SERVICE

I, Sarah E. Troupis, am over the age of 18 years and not a party to the above-captioned action. My business address is 1 South Sixth Street; Terre Haute, Indiana 47807-3510.

On August 31, 2009, I electronically filed the foregoing document described as Plaintiffs' Opposition to Motions to Intervene of Washington Coalition for Open Government, Washington Families Standing Together, and Arthur West with the Clerk of Court using the CM/ECF system which will send notification of such filing to:

James K. Pharris
jamesp@atg.wa.gov
*Counsel for Defendants Sam Reed and Brenda Galarza*

Steven J. Dixson
sjd@wkdlaw.com
Duane M. Swinton
dms@wkdlaw.com
*Counsel for Proposed Intervenor Washington Coalition for Open Government*

Ryan McBrayer
rmcbrayer@perkinscoie.com
*Counsel for Proposed Intervenor Washington Families Standing Together*

And, pursuant to Fed. R. Civ. P. 5(b)(1) and 5(b)(2)(C), I served the foregoing document by placing a true and correct copy of the document in a sealed envelope with postage thereon fully prepaid, in the United States mail at Terre Haute, Indiana, addressed to the following non-CM/ECF participants:

Leslie R. Weatherhead
Witherspoon, Kelley, Davenport & Toole, P.S.
1100 U.S. Bank Building
422 W. Riverside Avenue
Spokane, WA 99201-0300
*Counsel for Proposed Intervenor Washington Coalition for Open Government*

Kevin J. Hamilton
William B. Stafford
Perkins Coie, LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
*Counsel for Proposed Intervenor Washington Families Standing Together*

Arthur West<br>
120 State Ave NE #1497<br>
Olympia, WA 98501<br>
*Proposed Intervenor*[15]

I declare under the penalty of perjury under the laws of the State of Indiana that the above is true and correct. Executed this 31st day of August, 2009.

   /s/ Sarah E. Troupis
Sarah E. Troupis
*Counsel for All Plaintiffs*

---

[15] A courtesy copy was provided via e-mail to Mr. West at awestaa@gmail.com.