THE HONORABLE BENJAMIN H. SETTLE

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JOHN DOE #1, an individual; JOHN DOE
#2, an individual; and PROTECT
MARRIAGE WASHINGTON,

               Plaintiffs,

    v.

SAM REED, in his official capacity as
Secretary of State of Washington and
BRENDA GALARZA, in her official
capacity as Public Records Officer for the
Secretary of State of Washington,

               Defendants.

NO. C:09-cv-05456 BHS

INTERVENOR WAFST'S OPPOSITION TO
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT

NOTED ON MOTION CALENDAR

Friday, July 22, 2011

INTERVENOR WAFST'S OPPOSITION TO
PLTFS' MOTION FOR SUMMARY
JUDGMENT (NO. C:09-CV-05456)

71718-0001/LEGAL21281321.4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

II.   STATEMENT OF FACTS ................................................................................. 3

III.  ARGUMENT...................................................................................................... 4

    A.    Plaintiffs Have Failed to Establish, as a Matter of Law, a Likelihood of Threats, Harassment, or Reprisals that Law Enforcement Is Unable or Unwilling to Control ................................................................................... 5

        1.    The U.S. Supreme Court Has Indicated that Plaintiffs Face a Heavy Burden of Proving Harassment that Law Enforcement Cannot Control................................................................................... 5

        2.    Plaintiffs Have Not Shown that Those Who Signed R-71 Petitions Two Years Ago Constitute a "Minor Party" ............................. 10

        3.    Plaintiffs Have Not Established that Those Who Signed R-71 Petitions Espouse Marginalized Views.................................... 11

        4.    The Evidence of Alleged Harassment in California From Prop. 8 Has Already Been Found Insufficient to Qualify Plaintiffs For An As-Applied Exemption ...................................................... 12

        5.    Plaintiffs Inappropriately Attempt to Lessen Their Burden Because They Cannot Meet the Heavy Burden as Required by the Supreme Court ..................................................................................... 16

    B.    The Existence of the Internet Does Not Change the Constitutional Analysis................................................................................................. 17

    C.    Plaintiffs' Evidence of Alleged Threats, Reprisals, and Harassment Is Insufficient ........................................................................................... 19

        1.    In Considering Plaintiffs' Motion, the Court May Not Accept Unsupported Inferences ............................................................ 19

        2.    Plaintiffs Provide No Evidence that Signing a Referendum 71 Petition Alone Will Result in Any Reprisals or Harassment.................. 22

IV.  CONCLUSION................................................................................................ 24

INTERVENOR WAFST'S OPPOSITION TO
PLTFS' MOTION FOR SUMMARY
JUDGMENT (NO. C:09-cv-05456) – i

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

## I.    INTRODUCTION

Plaintiffs' Motion for Summary Judgment fails at every level.  Indeed, it appears to be primarily designed to blunt the impact of the State's (and Intervenors') cross-motions rather than to seriously suggest that affirmative relief would be appropriate on this record.  But even taken at face value, it cannot withstand scrutiny when weighed against applicable summary judgment standards.

First, and most strikingly, Plaintiffs' Motion provides no evidence that individuals refused to sign Referendum 71 ("Referendum 71" or "R-71") out of fear that their identities would be revealed or that mere signers are likely to face harassment today, nearly two years after Washington voters upheld Engrossed Second Substitute Senate Bill 5688, an enhanced domestic partnership law.  Plaintiffs, indeed, do not even attempt to make such a showing.

Similarly, Plaintiffs tellingly do not address the fact that the identities of financial contributors to Referendum 71 have been public for two years.  There is no evidence in the record before the Court that people who made financial contributions in support of Protect Marriage Washington ("PMW") or R-71 have faced any threats, reprisals, or harassment.  But if known *donors* have not suffered any negative ramifications because of their financial support of this cause, then it is of course even less likely that mere *signers* would be subjected to harassment, much less that these signers would be subjected to harassment *today*, almost two years after the voters in Washington upheld the enhanced domestic partnership law.

The record before the Court is patently insufficient to support Plaintiffs' claims.  As explained in Intervenor Washington Families Standing Together's ("WAFST") Motion for Summary Judgment, Plaintiffs' identified witnesses—some of whom were prominent PMW supporters and all of whom played a public role in the campaign—were asked at deposition to identify all events that support their claim that signers of the referendum will suffer reprisals, threats, or harassment if their names are revealed.  WAFST's Motion sets forth in detail what

INTERVENOR WAFST'S OPPOSITION TO
PLTFS' MOTION FOR SUMMARY
JUDGMENT (NO. C:09-CV-05456) – 1
71718-0001/LEGAL21281321.4

Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

Plaintiffs recounted. That evidence is remarkably insufficient, and at best amounts to little more than typical political debate and activities that accompany *any* election on a disputed issue. It hardly meets the heavy burden Plaintiffs face on remand in this "as applied" challenge seeking an exemption from the general rule of disclosure emphatically embraced by the U.S. Supreme Court in this very case.

Unable to meet their heavy burden of proof with relevant evidence, Plaintiffs have instead cluttered the record with a wide array of unhelpful (and often offensive) material. This odd collection of material—cobbled together from newspaper articles, blog posts, and links to YouTube videos pertaining to events occurring in different states at different times on different issues—does not help Plaintiffs' cause. Plaintiffs' presentation to the Court of what they represent as "[t]he evidence of intimidation and retaliation in this case" is misleading at best. Pls.' Mot. for Summ. J. at 9-14. Most of the material is patently irrelevant. Much does relate to an election, but not to the R-71 election in Washington. Instead, this material relates to events in California surrounding Proposition 8 ("Prop. 8"), where the tempers of some flared as voters were asked to take away the right of same-sex marriage. Plaintiffs' heavy reliance on the Prop. 8 campaign is puzzling, given that the federal courts in California have *rejected precisely the same type of lawsuit as Plaintiffs pursue here. See ProtectMarriage.com v. Bowen*, 599 F. Supp. 2d 1197 (E.D. Cal. 2009). In any event, it is now almost two years removed from an election *where the opposite result was achieved* than in California and for a ballot measure not taking away the right of marriage. There is no reason to believe (and certainly no evidence to support) that any person who merely signed to put a measure on the ballot will face any threat of harassment, much less that State or local law enforcement officials would be unwilling or unable to swiftly address any reported threats, reprisals, or harassment.

Plaintiffs' evidence is simply insufficient to sustain Plaintiffs' burden as a matter of law.

INTERVENOR WAFST'S OPPOSITION TO
PLTFS' MOTION FOR SUMMARY
JUDGMENT (NO. C:09-CV-05456) – 2
71718-0001/LEGAL21281321.4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

## II.  STATEMENT OF FACTS

WAFST incorporates by reference the facts set forth, and the declarations supporting same, in its separate Motion for Summary Judgment.  Little more discussion of the record evidence in this case is necessary because Plaintiffs' Motion presents little in the way of authentic, admissible evidence.  WAFST here will address only a few additional relevant points.

Plaintiffs identified 19 witnesses in this matter.  With one exception (a minor whose testimony would have been redundant with that of his mother), all of these persons were deposed.  Given that these are Plaintiffs' only potential trial witnesses, one would expect their testimony to be central to Plaintiffs' Motion.  That it is not speaks volumes about Plaintiffs' own assessment of the actual evidence in the record: it is uniformly unhelpful to Plaintiffs' case.  PMW's witnesses all testified that they have taken visible roles in the R-71 debates, do not have serious concerns about their names being disclosed, and have not experienced any real harassment because of their public support of R-71.[1]  *See* WAFST's Mot. for Summ. J. at 4-16 (reviewing the testimony of the witnesses).  These candid admissions are fatal to Plaintiffs' Motion.  Their *actual* testimony, rather than the out-of-context and misleading sound bites set out in Plaintiffs' Motion, is the most potent response to that Motion.

Because these witnesses' testimony does not establish a likelihood of threats, reprisals, or harassment, Plaintiffs have resorted to mixing in newspaper articles and other improper hearsay and unauthenticated evidence to try to support their Motion.  Plaintiffs' evidentiary sleights of hand are perhaps most sharply displayed by their list of "real threats . . . directed against traditional marriage supporters."  Pls.' Mot. for Summ. J. at 10.  Given the construction of

---

[1] Plaintiffs assert that the evidence they have submitted is, "in one sense, incomplete, because many reprisals have gone unreported for fear of further reprisals." Pls.' Mot. for Summ. J. at 6. Plaintiffs offer no competent evidence to support this assertion. Instead, they point to (1) a single statement by one deponent about his hesitation to discuss all the incidents he or his family faced, but which testimony does not support that he, in fact, failed to describe everything of which he was aware, and (2) one hearsay upon hearsay statement about other persons not wanting to come forward with respect to the Prop. 8 situation. *Id.* at 6 n.6. Regardless, the Court can rule only on what evidence is properly before it, not on speculation about what evidence Plaintiffs, for whatever reason, did not present.

INTERVENOR WAFST'S OPPOSITION TO
PLTFS' MOTION FOR SUMMARY
JUDGMENT (NO. C:09-CV-05456) – 3
71718-0001/LEGAL21281321.4

Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Plaintiffs' Motion, it would appear that they are somehow suggesting this is a list of threats made directly to R-71 supporters that were clearly tied to their support for R-71. The reality is that the *vast* majority are not.

Indeed, Plaintiffs have not introduced any evidence that anyone who merely signed R-71, or even donated to PMW, have been harassed. PMW campaign manager Larry Stickney asked R-71 petition signers to email him regarding any harassment they have endured; the lack of resulting evidence in the record speaks eloquently—and directly—to the point. Dkt. #205 (Declaration of William Stafford ("Stafford Decl."), Ex. O, at 358-63 (L. Stickney Dep. 30:3-35:8)). Similarly, Plaintiffs have not introduced any evidence that people who donated to R-71 have been threatened, despite the fact that these donors' identities have been available for two years. Dkt. #198 at ¶ 16.

### III.   ARGUMENT

Pursuant to Federal Rule of Civil Procedure 56(c), a motion for summary judgment may be granted when the moving party demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "There exists a genuine issue as to a particular fact—and hence that fact 'can be resolved only by a finder of fact' at trial—when '[it] may reasonably be resolved in favor of either party'; conversely, there exists no genuine issue when reasonable minds could not differ as to the import of the evidence." *Oldja v. Warm Beach Christian Camps & Conference Ctr.*, 2011 WL 2519954, at *1 (W.D. Wash. June 24, 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-52 (1986)). The substantive law of the case determines whether a given fact is material. *Id.* (citing *Anderson*, 477 U.S. at 248). Thus, summary judgment requires an inquiry into "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 248. "If applying the relevant law to those facts about which no two reasonable factfinders could

INTERVENOR WAFST'S OPPOSITION TO
PLTFFS' MOTION FOR SUMMARY
JUDGMENT (NO. C:09-CV-05456) – 4
71718-0001/LEGAL21281321.4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

disagree dictates that the moving party must prevail, then a motion for summary judgment must be granted." *Oldja*, 2011 WL 2519954, at *1.

A.   **Plaintiffs Have Failed to Establish, as a Matter of Law, a Likelihood of Threats, Harassment, or Reprisals that Law Enforcement Is Unable or Unwilling to Control**

Plaintiffs' Motion for Summary Judgment fails for at least four reasons:  (1) Plaintiffs cannot demonstrate that law enforcement is unwilling or unable to control any alleged harassment faced by R-71 petition signers; (2) Plaintiffs have not established that R-71 signers are a "party" that is capable of enjoying the minor-party exemption from disclosure laws; (3) while Plaintiffs' effort to vote down the enhanced domestic partnership law was rejected by the voters, Plaintiffs can hardly prove that the 137,000 R-71 signers constitute a minority such as required by the U.S. Supreme Court in *Brown v. Socialist Workers '74 Campaign Committee*, 459 U.S. 87 (1982); and (4) much of the alleged harassment on which Plaintiffs rely to establish the propriety of an exemption has already been found to be insufficient to qualify for such an exemption in *ProtectMarriage.com*, 599 F. Supp. 2d 1197.  Plaintiffs, perhaps recognizing that they cannot meet their heavy burden to qualify for an as-applied exemption, attempt to convince the Court that their burden is, in fact, not so burdensome.  Pls.' Mot. for Summ. J. at 8-9, 14-15, 23-24.  But the law does not support Plaintiffs' novel argument:  Plaintiffs' burden is to establish by a preponderance of the evidence that there is (a) a substantial likelihood of significant threats to R-71 petition signers if R-71 petitions are disclosed, and (b) that law enforcement is or will be unable or unwilling to control or address those threats.  On this record, they can establish neither.

1.   **The U.S. Supreme Court Has Indicated that Plaintiffs Face a Heavy Burden of Proving Harassment that Law Enforcement Cannot Control**

Although the U.S. Supreme Court allowed Plaintiffs to return to court for further proceedings on Plaintiffs' as-applied challenge (which was not before the Court), five Justices have already articulated a governing legal framework that is highly unfavorable to Plaintiffs' case.  That standard, applied to the record before this Court, is fatal to Plaintiffs' claims.

INTERVENOR WAFST'S OPPOSITION TO
PLTFS' MOTION FOR SUMMARY
JUDGMENT (NO. C:09-CV-05456) – 5
71718-0001/LEGAL21281321.4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

a.    **Plaintiffs Provide No Evidence that the Police Are Not Willing and Able to Protect Against Threats or Harassment**

Five Justices indicated that, for Plaintiffs to succeed on their as-applied challenge, Plaintiffs must prove not only serious harassment but also that law enforcement is unable or unwilling to control the harassment. In their Motion, Plaintiffs argue that "it is no answer to point to existing laws against harassment." Pls.' Mot. for Summ. J. at 17. But that is precisely the answer that a majority of the Justices gave in this very case. In her concurring opinion, Justice Sotomayor, joined by Justices Stevens and Ginsburg, said that Plaintiffs must show a "reasonable probability of *serious and widespread harassment that the State is unwilling or unable to control.*" *Doe v. Reed*, 130 S. Ct. 2811, 2829 (2010) (Sotomayor, J., concurring) (emphasis added). In his concurring opinion, Justice Stevens, joined by Justice Breyer, agreed with Justice Sotomayor that "for an as-applied challenge to a law such as the [Public Records Act] to succeed, there would have to be a significant threat of harassment directed at those who sign the petition *that cannot be mitigated by law enforcement measures.*" *Id.* at 2831 (Stevens, J., concurring) (emphasis added). Justice Scalia also thought that the proper remedy for the type of harm alleged here is enforcement of existing laws. *See id.* at 2837 (Scalia, J., concurring) ("There are laws against threats and intimidation."). Thus, five Justices have expressed the opinion that law enforcement must be unable to remedy the threats for Plaintiffs' as-applied challenge to succeed—that is, contrary to Plaintiffs' assertion, it is indeed an answer to point to existing laws against threats, harassment, or reprisals.[2]

---

[2] In denying an exemption to Prop. 8 donors in California, the District Court for the Eastern District of California found that existing laws adequately protected those plaintiffs:

> Those responsible for threatening the lives of supporters of Proposition 8 are subject to criminal liability. Those choosing to vandalize the property of individuals or the public are likewise liable. Those mailing white powder to organizations are subject to federal prosecution. In each case, there are appropriate legal channels through which to rectify and deter the reoccurrence of such reprehensible behavior. . . .

> Contrary to groups such as the SWP [Socialist Workers Party], Plaintiffs can seek adequate relief from law enforcement and the legal system.

INTERVENOR WAFST'S OPPOSITION TO
PLTFS' MOTION FOR SUMMARY
JUDGMENT (NO. C:09-CV-05456) – 6
71718-0001/LEGAL21281321.4

Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Plaintiffs cannot meet this standard—and they barely try. All record evidence shows that the few times R-71 signers found it necessary to call the police, the police promptly attended to the callers' needs. *E.g.*, Dkt. #197 (Declaration of Anne Egeler ("Egeler Decl."), Ex. 4 (Dep. 41:5-42:7)) (calls to witness ceased after he phoned the police)); Dkt. #205 (Stafford Decl., Ex. M, at 301 (Dep. 19:13-20)) (police responded in less than five minutes).

Unable to meet the demanding standard articulated by the concurring Justices, Plaintiffs brush it aside. While Plaintiffs obliquely acknowledge that "[i]t has been suggested that the proper remedy in this case is simply to enforce existing laws," they baldly speculate that "[t]here is reason to believe" that law enforcement efforts will be insufficient to protect against potential threats or harassment. Pls.' Mot. for Summ. J. at 17. But Plaintiffs offer no competent evidence on point. In fact, the only support that Plaintiffs submit is a hearsay statement of Professor Eugene Volokh posted on a "listserv" on the Internet. Plaintiffs did not identify Mr. Volokh as a witness in this matter, and they certainly did not disclose that they would be offering expert opinions from him. Nor do they provide any foundation that would allow the Court to assess that Mr. Volokh is qualified to offer the opinions set forth in this hearsay statement. A party cannot support a motion for summary judgment by relying on an unauthenticated, hearsay blog post by an undisclosed expert witness who has neither (a) been timely identified, nor (b) timely provided an expert report under CR 26(a)(2).[3] The Court should strike this material; and, in any event, it assuredly is insufficient to support this motion.

More fundamentally, what Plaintiffs are advocating is that law enforcement can *never* be sufficient to protect against threats and harassment. This argument runs counter to the Supreme Court's decision rejecting Plaintiffs' facial attack on disclosure. If law enforcement is always

---

*ProtectMarriage.com*, 599 F. Supp. 2d at 1217-18. This is hardly a novel conclusion; calling for police protection is the common sense response to a threat or illegal act, and the very purpose of law enforcement agencies in our society is to respond to such threats.

[3] Additionally, Plaintiffs have offered no foundation or authentication that this statement is what it purports to be or that it in was in fact made by Mr. Volokh.

INTERVENOR WAFST'S OPPOSITION TO
PLTFS' MOTION FOR SUMMARY
JUDGMENT (NO. C:09-CV-05456) – 7
71718-0001/LEGAL21281321.4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

insufficient, then disclosure should always be preventable. The Supreme Court emphatically rejected this contention; it can hardly be reintroduced through the back door now.

Sadly, there have been instances in the past where law enforcement has been unwilling or politically unable to protect certain minor parties. Law enforcement in the southern states, for instance, often proved unwilling or unable to protect members of the NAACP or other civil rights advocacy groups during the civil rights era. Law enforcement has likewise been unwilling, at times throughout our nation's history, to protect communist or socialist parties. And, indeed, law enforcement has not always protected the rights of the LGBT community from attack.[4]

In contrast, there is no evidence that those espousing anti-gay views have been unable to count on law enforcement to protect them or that law enforcement officials in Washington hold special affection for LGBT activists engaged in illegal activities. As much as Plaintiffs try to paint themselves as holding minority "fringe" views, Pls.' Mot. for Summ. J. at 15-16, 21-23, there is simply no evidence to support that proposition and it is, indeed, indefensible.

### b.    Plaintiffs Cannot Meet Their Heavy Burden

As the Supreme Court has stated in this case, the First Amendment disclosure exemption Plaintiffs seek here is available only to "minor parties." *See Doe*, 130 S. Ct. at 2821 (noting "'minor parties' may be exempt from disclosure requirements" in certain circumstances) (quoting *Buckley v. Valeo*, 424 U.S. 1, 74 (1976)) (per curiam). "[T]he 'minor party' requirement articulated in *Buckley* is very much relevant and intact." *ProtectMarriage.com*, 599 F. Supp. 2d at 1216. As the case law makes clear, a "minor party" is a cohesive organization with little political clout. An example is the Ohio branch of the Socialist Workers Party during the 1980s,

---

[4] While Plaintiffs and those who share similar views have not historically been marginalized in this country, as recently acknowledged by the federal government, "gays and lesbians have suffered a long history of discrimination based on prejudice and stereotypes." *Golinski v. U.S. Office of Pers. Mgmt.*, No. C 3:10-00257-JSW (N.D. Cal.), Dkt. #145 (Defs.' Brief in Opp. to Motions to Dismiss, at 9-13) (detailing how "the federal government, state and local governments, and private parties all have contributed to this long history of discrimination"). This animus regularly takes the form of violence: "[G]ays and lesbians continue to be among the most frequent victims of all reported hate crimes." *Id.* at 12 (citing H.R. Rep. 111-86, at 10 (2009)).

INTERVENOR WAFST'S OPPOSITION TO
PLTFS' MOTION FOR SUMMARY
JUDGMENT (NO. C:09-CV-05456) – 8
71718-0001/LEGAL21281321.4

Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

"a small political party with approximately sixty members in the State of Ohio," which had "little success at the polls" and whose "expenditures in Ohio . . . averaged about $15,000 annually." *Brown*, 459 U.S. at 88-89.

Five Supreme Court Justices have strongly implied that Plaintiffs' particular as-applied challenge should fail because of the onerous burden that a minor party must satisfy to qualify for an exemption. Justices Sotomayor, Stevens, and Ginsburg noted the "heavy burden" that a "party attempting to challenge particular applications of the State's regulations will bear" and further explained that "[a]llowing case-specific invalidation under a more forgiving standard would unduly diminish the substantial breathing room States are afforded to adopt and implement reasonable, nondiscriminatory measures like the disclosure requirement now at issue." *Doe*, 130 S. Ct. at 2829 (Sotomayor, J., concurring). These Justices counseled courts reviewing as-applied challenges to "be deeply skeptical of any assertion that the Constitution, which embraces political transparency, compels States to conceal the identity of persons who seek to participate in law-making through a state-created referendum process." *Id.* Justices Stevens and Breyer concurred that absent "strong evidence" of a "substantial burden" on Plaintiffs, their request for an exemption should be denied. *Id.* at 2831-32 (Stevens, J., concurring). Justice Stevens wrote that it is "unlikely" that an as-applied challenge could succeed in "cases involving the [Public Records Act]." *Id.* at 2831. Justice Scalia, meanwhile, has signaled his skepticism that any party—minor or otherwise—will be able to obtain an as-applied exemption to laws requiring disclosure of petitions. *Id.* at 2837 (Scalia, J., concurring) ("[T]here is no constitutional basis for this Court to [impose on states a requirement to keep petition signatures secret]—or to insist . . . that [such requirement] can only be avoided by the demonstration of a "'sufficiently important governmental interest'"). The Court should hold Plaintiffs to their "heavy burden." They cannot meet it.

INTERVENOR WAFST'S OPPOSITION TO
PLTFS' MOTION FOR SUMMARY
JUDGMENT (NO. C:09-CV-05456) – 9
71718-0001/LEGAL21281321.4

Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

2.     **Plaintiffs Have Not Shown that Those Who Signed R-71 Petitions Two Years Ago Constitute a "Minor Party"**

Plaintiffs' claim also fails because Plaintiffs cannot prove that those who signed R-71 constitute a "party" for purposes of the minor-*party* exemption.  The exemption is available only to "parties" because it is intended to address situations where the application of disclosure requirements "will impinge upon protected associational activity." *Buckley*, 424 U.S. at 73. Thus, if there is no "party" (i.e., no association), there can be no exemption.

As the majority of the Supreme Court opined, most people who signed the R-71 petition probably wished that the enhanced domestic partnership law would not become law, but some *might* have been "agnostic as to the merits of the underlying law" and were simply "express[ing] the political view that the question should be considered by the whole electorate." *Id.* at 2817 (internal quotation marks and citation omitted).  These agnostic signers would not necessarily be part of the same ideological group as those signers who were expressing a substantive view regarding the law.  The reality is that Plaintiffs have, once again, introduced no evidence on this point.  Thus, the Court has no way of knowing whether R-71 petition signers share common beliefs sufficient to render them a "party" that may qualify for the minor-party exemption—and this lack of evidence also dooms Plaintiffs' Motion.

In contrast, those parties for whom the U.S. Supreme Court has sustained as-applied challenges include members of clearly defined groups, such as the NAACP in *NAACP v. Alabama*, 357 U.S. 449 (1958), and the Socialist Workers Party in *Brown*, 459 U.S. 87.

The NAACP and Socialist Workers Party are clearly delineated minor parties with robust philosophies covering more than one issue, a far cry from the diverse citizens who may have signed R-71 for reasons not including disagreement with the enhanced domestic partnership law. *E.g., Jenness v. Fortson*, 403 U.S. 431, 438-39 (1971) ("A voter may sign a petition even though he has signed others. . . . The signer of a petition is not required to state that he intends to vote for that candidate at the election.").  Because Plaintiffs have failed to submit evidence regarding

INTERVENOR WAFST'S OPPOSITION TO
PLTFS' MOTION FOR SUMMARY
JUDGMENT (NO. C:09-CV-05456) – 10
71718-0001/LEGAL21281321.4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

the vast majority of petition signers, they have failed to establish that the 137,000 people who

signed R-71 are a "party" as a matter of law.  For this reason as well, Plaintiffs' Motion for

Summary Judgment must fail.

3.   **Plaintiffs Have Not Established that Those Who Signed R-71 Petitions Espouse Marginalized Views**

Even if the 137,000 people who signed R-71 are a "party" for purposes of the as-applied

exemption simply because they all signed the same petition, their view on this one issue (even if

one were to accept that they share a singular view) certainly does not put them in the sort of

marginalized minority that has been found to qualify for an exemption, such as the NAACP in

1950s Alabama or the Socialist Workers Party in the 1980s.  Plaintiffs consistently rely on

*Federal Election Commission v. Hall-Tyner Election Campaign Committee*, 678 F.2d 416 (2d

Cir. 1982), to support their claim, but the contributors to the Communist Party candidates in

*Hall-Tyner* consisted of 500 people, 424 of whom donated anonymously, and most of whom

donated anonymously on the condition that their names permanently remain confidential.  *Id.* at

418, 423 n.17.  The number of people who signed R-71 petitions is 274 times greater than the

donors in *Hall-Tyner*.  These 137,000 petition signers ultimately joined 840,000 voters—or 47%

of those who voted, *Doe*, 130 S. Ct. at 2816—who cast a "no" vote on R-71.  These signers,

while technically a narrow numerical "minority," are not the sort of minority group that has

"little chance of winning an election." *Buckley*, 424 U.S. at 70.  People with viewpoints like

those that Plaintiffs attribute to R-71 petition signers not only can win, but do. Jane S. Schacter,

*The Other Same-Sex Marriage Debate*, 84 Chi-Kent L. Rev. 379, 385-386 (2009) (noting that

"[a]lmost every ballot measure that has put a [measure limiting the recognition of same-sex

relationships] of some kind before the voters has passed").

*Hall-Tyner* clarified that minor parties espouse "universally disfavored or repugnant"

opinions and "abhorrent" ideologies, *Hall-Tyner*, 678 F.2d at 419, and described minor parties as

"fringe organizations" with "unpopular ideolog[ies]" and that lack "firm financial foundation[s]"

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

such that a "decrease in contributions may threaten the minority [parties'] very existence," *id.* at 420. Although in their Motion for Summary Judgment, Plaintiffs attempt to come within this umbrella by characterizing their views as "extremely unpopular," Pls.' Mot. for Summ. J. at 15, that representation is belied by the actual record in this case. Surely Plaintiffs, with 47% of the popular vote, are not an "extremely unpopular" group whose "very existence" "may [be] threatened" by disclosure requirements.

The disclosure exemption is quite simply inapplicable in the context of a well-financed group of hundreds of thousands of individuals. *E.g., Brown*, 459 U.S. 87 (using the term "minor" or some variation approximately three dozen times in the 14-page majority opinion); *Goland v. United States*, 903 F.2d 1247, 1260 (9th Cir. 1990) (rejecting an exemption because "Goland was not promoting a reviled cause or candidate"); *ProtectMarriage.com*, 599 F. Supp. 2d at 1215 (holding that "minor status is a necessary element of a successful as-applied claim" and that "[t]here is surely no evidence that the seven million individuals who voted in favor of Proposition 8 can be considered a 'fringe organization' or that their beliefs would be considered unpopular or unorthodox"). Plaintiffs' Motion must therefore fail because those who signed R-71 are not a minor party, as required.

4. **The Evidence of Alleged Harassment in California From Prop. 8 Has Already Been Found Insufficient to Qualify Plaintiffs For An As-Applied Exemption**

Perhaps recognizing the weaknesses in their evidence in this case, Plaintiffs rely heavily on alleged intimidation surrounding the passing of Prop. 8 in California. *E.g.*, Pls.' Mot. for Summ. J. at 7 n.7, 10 n.10, 11, 13, 14, 21-22. But the district court that reviewed the alleged threats and harassment from the Prop. 8 campaign has already concluded that the Prop. 8 evidence *fails* to meet the high standard for an as-applied exemption to disclosure, despite the death threats received by Prop. 8 supporters. *See ProtectMarriage.com*, 599 F. Supp. 2d at 1200 ("If I had a gun I would have gunned you down along with each and every other supporter"); "Keep letting him preach hate and he'll be sorry. He will be meeting his maker sooner than

INTERVENOR WAFST'S OPPOSITION TO
PLTFS' MOTION FOR SUMMARY
JUDGMENT (NO. C:09-CV-05456) – 12
71718-0001/LEGAL21281321.4

expected."). The district court in *ProtectMarriage.com* described the evidence of threats, harassment, and reprisals in that case as "relatively minimal," *id.* at 1216, and noted that the alleged harassment was "directed at a very small segment of the supporters of the initiative," *id.* at 1217. That court also found it relevant that Prop. 8 supporters faced no government hostility. *Id.* at 1217. What was true for the Prop. 8 donors remains true for the R-71 signers: the alleged threats were even more "relatively minimal," were "directed at a very small segment" of outspoken supporters (as opposed to mere signers), and were accompanied by no government harassment.

Despite the existence of the factually on-point case *ProtectMarriage.com*, Plaintiffs nonetheless repeatedly rely on the factually inapposite cases *Averill* and *Hall-Tyner* to bolster their claim for an as-applied exemption. Neither case supports Plaintiffs' claims here. *Cf. Averill v. City of Seattle*, 325 F. Supp. 2d 1173, 1174 n.1 (W.D. Wash. 2004) (noting that "the exemption analysis is fact specific").

*Averill* involved threats against the Freedom Socialist Party, which, in marked contrast to Plaintiffs in this case, was a long-subjugated minority group.[5] *See id.* at 1178 (detailing past harassment against the Freedom Socialist Party). *Averill* also involved threats to people who contributed money to the party, *id.* at 1174, as opposed to the persons in this case, who merely signed a petition but who did not necessarily offer financial support or even necessarily disagree with the merits of the proposed law. Therefore, *Averill* does nothing to show that the signers of R-71 are a fringe group or that they have been, or likely will be, harassed because of their views. *Averill* supports only the notion that when courts grant exceptions to disclosure—which they do sparingly—the exemptions are issued to marginalized political groups, such as the Freedom

---

[5] Courts have consistently reaffirmed that the Socialist Party qualifies for an exemption because of its small size and lengthy history of government subjugation. *E.g.*, *Brown*, 459 U.S. at 88 (permitting an as-applied exemption for the Socialist Workers Party, "a minor political party which historically has been the object of harassment by government officials and private parties"); *Hall-Tyner*, 678 F.2d 416 (same for Communist Party); *but see Or. Socialist Workers 1974 Campaign Comm. v. Paulus*, 432 F. Supp. 1255, 1257 (D. Or. 1977) (refusing to grant exemption for Socialist Workers Party despite that group's claim of "sweeping and systematic government harassment and surveillance") (internal quotation marks omitted).

INTERVENOR WAFST'S OPPOSITION TO
PLTFS' MOTION FOR SUMMARY
JUDGMENT (NO. C:09-CV-05456) – 13
71718-0001/LEGAL21281321.4

Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Socialist Party, that have little chance of influencing an election, and not to those who have historically experienced a great deal of influence and success at the polls and in the legislature.

Plaintiffs also rely heavily on *Hall-Tyner*, 678 F.2d 416. But that case, too, is readily distinguishable from the present action not only because *Hall-Tyner*, like *Averill*, involved an exemption for a highly marginalized group, the Communist Party, but also because in *Hall-Tyner*, 424 of 500 contributors donated money anonymously, and the vast majority of them explicitly conditioned their donations on confidentiality. *Hall-Tyner*, 678 F.2d at 418, 423 n.17. Contrast these several hundred donors who specifically asked to remain anonymous with the 137,000 signatories of the R-71 petition, who were provided no confidentiality guarantees, some of whom, in fact, knew that their names would be disclosed as part of the public record, *e.g.*, Dkt. #205 (Stafford Decl., Ex. R, at 440 (Dep. 34:1-10)), and all of whom, at the very least, knowingly exposed their names to future or potential petition signers. Dkt. #197 (Egeler Decl., Ex. 1 (Dep. 47:16-48:5)) (witness signed the petition knowing her name could be disclosed); Dkt. #206 (Declaration of Steven Dixson, Ex. J (Dep. 14:1-5)) (John Doe plaintiff would have signed the petition even if he had known his name would be disclosed). Indeed, if Plaintiffs' witnesses are representative, the vast majority of R-71 petition signers would have little concern if they were publicly identified as having signed the R-71 petition. *See* WAFST's Mot. for Summ. J. at 4-15.

Indeed, in *Hall-Tyner* there was significant evidence of *government* harassment, including "state and federal legislation subjecting Communist Party members to civil and criminal liability," legislation making it "illegal in many states simply to be a member of the Communist Party," and a lengthy "history of governmental surveillance and harassment of Communist Party members." *Hall-Tyner*, 678 F.2d at 419, 422 (also at 423, noting the "extensive governmental surveillance and harassment long directed at the Communist Party and its members"). Contrast that extensive history of government discrimination with the complete absence of any such evidence in this case. In fact, all Plaintiffs could point to were statements by

INTERVENOR WAFST'S OPPOSITION TO
PLTFS' MOTION FOR SUMMARY
JUDGMENT (NO. C:09-CV-05456) – 14
71718-0001/LEGAL21281321.4

Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

a few judges that invective against gay rights is "irrational" or "inexplicable." Pls.' Mot. for Summ. J. at 15.[6] These "reasoned, seasoned, and reserved" statements, *id.*, are a far cry from an expansive body of law criminalizing Plaintiffs' beliefs or the extensive history of governmental harassment documented by members of the Communist Party. Indeed, Plaintiffs' suggestion that courts taking action to protect the LGBT community from discriminatory laws constitutes government hostility against *them* is flabbergasting.[7]

Moreover, both *Averill* and *Hall-Tyner* predate the Supreme Court's decision in *Doe v. Reed*, where five of the concurring Justices clarified that the government must be unable or unwilling to control the harassment against the minor party, *Doe*, 130 S. Ct. at 2829 (Sotomayor, J., concurring), 2831 (Stevens, J., concurring), 2837 (Scalia, J., concurring), and that a plaintiff bears a heavy burden to qualify for an as-applied exemption.

Because Plaintiffs are not similarly situated to the Socialist Freedom Party or the Communist Party, and because *Doe v. Reed* has offered further guidance regarding the substance of as-applied challenges unavailable to the courts in *Averill* and *Hall-Tyner*, Plaintiffs' reliance on those cases fails.[8]

---

[6] Of course, the courts in the cases in question were considering whether a particular piece of legislation could withstand rational basis review. In applying that standard of review, courts must consider whether there is a rational basis for the legislation in question. Application of a "reasonableness" standard review scarcely demonstrates that Plaintiffs' views are "unpopular," given that these courts were necessarily considering challenges *to popularly enacted laws.*

[7] For example, Plaintiffs refer to the Supreme Court's decision in *Romer v. Evans*, 517 U.S. 620 (1996), in which the Court struck down a referendum passed by Colorado voters that "prohibit[ed] all legislative, executive or judicial action at any level of state or local government designed to protect" what the referendum called those of "Homosexual, Lesbian or Bisexual Orientation." *Id.* at 624. As the Supreme Court concluded, the law thus "deem[ed] a class of persons a stranger to its laws" and "classifie[d] homosexuals not to further a proper legislative end but to make them unequal to everyone else." *Id.* at 635. That the Court struck down a patently unconstitutional law scarcely suggests government hostility to Plaintiffs' views.

[8] The plaintiffs in *ProtectMarriage.com* also attempted to rely on *Averill*—to no avail. Pls. Mot. for Summ. J. in *ProtectMarriage.com v. Bowen, available at* 2009 WL 703123. The court in *ProtectMarriage.com* found that there was "simply no plausible analogy to be had" between the Prop. 8 case facing it and Communist Party cases. *ProtectMarriage.com*, 599 F. Supp. 2d at 1216. Similarly, the Court should follow the *ProtectMarriage.com* decision and decline to rely on *Averill* and *Hall-Tyner* in this factually inapposite situation.

INTERVENOR WAFST'S OPPOSITION TO
PLTFS' MOTION FOR SUMMARY
JUDGMENT (NO. C:09-CV-05456) – 15
71718-0001/LEGAL21281321.4

Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**5.    Plaintiffs Inappropriately Attempt to Lessen Their Burden Because They Cannot Meet the Heavy Burden as Required by the Supreme Court**

*Apparently* recognizing that their evidence is insufficient to meet the "heavy burden," *Doe*, 130 S. Ct. at 2829 (Sotomayor, J., concurring), of qualifying for an as-applied exemption, Plaintiffs attempt to persuade the Court that their burden is "flexible" and easy to satisfy. It is true that *Buckley* permitted "flexibility in the proof of injury," 424 U.S. at 74, but surely that does not imply that the burden of proof is flexible, only that the courts should accept various forms of evidence. *E.g., Averill*, 325 F. Supp. 2d at 1177 ("It is the likelihood that supporters will receive threats that must be determined by the Court."). Courts explicitly recognize that a plaintiff's burden of proof in exemption disclosure cases is the usual civil preponderance of the evidence standard. *See, e.g., Goland*, 903 F.2d at 1260 (*Buckley* requires a showing of "probable harassment"); *Or. Socialist Workers 1974 Campaign Comm.*, 432 F. Supp. at 1259 (refusing to carve out an exemption for the Socialist Workers Party because the plaintiffs had failed to show a reasonable probability of harassment "by a preponderance of the evidence"). In fact, the Supreme Court in *Buckley* stated that an exemption should be permitted only where "the type of chill and harassment identified in *NAACP v. Alabama* can be shown." *Buckley*, 424 U.S. at 74. That type of chill and harassment included an "uncontroverted showing that on past occasions revelation of the identity of [the NAACP's] rank-and-file members has exposed these members to economic reprisal, loss of employment, threat of physical coercion, and other manifestations of public hostility." *NAACP*, 357 U.S. at 462. Surely that is not a light burden to shoulder.

Plaintiffs present the Court with scattered examples of unwelcome and sometimes illegal conduct. But if this were sufficient to meet the *Buckley* standard, then it is difficult to imagine a ballot measure that would *not* rouse sufficient emotions to entitle persons on both sides to keep their identities hidden. Yet such a result would run directly contrary to the Supreme Court's rejection of Plaintiffs' facial attack on the Public Records Act. Plaintiffs' novel end-run attempt to lower the burden of proof is unsupported by case law or other authority.

INTERVENOR WAFST'S OPPOSITION TO
PLTFS' MOTION FOR SUMMARY
JUDGMENT (NO. C:09-CV-05456) – 16
71718-0001/LEGAL21281321.4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**B.      The Existence of the Internet Does Not Change the Constitutional Analysis**

Plaintiffs next speculate that the Internet's "indefinite preservation of records" increases the possibility of harassment. Pls.' Mot. for Summ. J. at 20 (emphasis omitted). Putting aside the fact that this pure conjecture does not aid Plaintiffs in meeting their burden of proving a "reasonable probability" of harassment, *e.g., Dole v. Local Union 375, Plumbers Int'l Union*, 921 F.2d 969, 973 (9th Cir. 1990) ("A subjective fear of reprisal is insufficient to invoke first amendment protection against a disclosure requirement."), the Supreme Court in this very case has *suggested* that the Internet's efficiency in disseminating information does *not* change the constitutional analysis. In dissent in *Doe v. Reed*, Justice Thomas argued that the availability of records on the Internet should tip the balance in favor of nondisclosure, but candidly conceded that "[t]he Court apparently disagrees" with his assessment, at least for the ordinary referendum petition. *Doe*, 130. S. Ct. at 2846 (Thomas, J., dissenting). Thus, the Supreme Court has already signaled that the availability of records on the Internet should not change the constitutional analysis. *See also ProtectMarriage.com*, 599 F. Supp. 2d at 1199-1200 (refusing to grant an exemption to Prop. 8 supporters despite the fact that various websites "have also included other publicly-available personal information such as telephone numbers" and "[a]t least one such website provides contributor information via an interactive map detailing the contributors' address, occupation, and contribution amount").

Moreover, Plaintiffs look only at the negative role that the Internet may play, while ignoring the Internet's capacity to streamline information that will ensure governmental transparency and accountability and to disseminate this information to the citizenry. *See Citizens United v. Fed. Election Comm'n*, 130 S. Ct. 876, 916 (2010) ("With the advent of the Internet, prompt disclosure of expenditures can provide shareholders and citizens with the information needed to hold corporations and elected officials accountable for their positions and supporters"); *see also* Note, *Making Ballot Initiatives Work: Some Assembly Required*, 123 Harv. L. Rev. 959, 970 (2009-10) ("[D]eliberation over the internet or engagement through phone conversations

INTERVENOR WAFST'S OPPOSITION TO
PLTFS' MOTION FOR SUMMARY
JUDGMENT (NO. C:09-CV-05456) – 17
71718-0001/LEGAL21281321.4

Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

may be better than no discussion at all."). Indeed, "an understanding of competing views is likely to weaken the forms of fragmentation and misunderstanding that come from deliberation among the like-minded." Cass R. Sunstein, *Deliberative Trouble? Why Groups Go to Extremes*, 110 Yale L.J. 71, 115-16 (2000). It was precisely this sort of deliberation among those with competing views that KnowThyNeighbor.org, among other groups, wished to foster. *See Doe v. Reed*, 586 F.3d 671, 675 (9th Cir. 2009) (KnowThyNeighbor.org wanted to trigger "uncomfortable" conversations between the opposing sides), *aff'd*, 130 S. Ct. 2811 (2010). Plaintiffs acknowledge that "the answer to speech with which one disagrees is 'more speech,'" Pls.' Mot. for Summ. J. at 2 (citing *Whitney v. California*, 274 U.S. 357, 377 (1927) (Brandeis, J., concurring)), *overruled on other grounds, Brandenburg v. Ohio*, 395 U.S. 444 (1969) (per curiam) but then attempt to hide the trigger for that additional speech. Throughout the R-71 campaign, WAFST sought to do more than simply rally support among those who supported its views—it sought to reach out to those who might disagree with it. A democracy simply cannot function if those who disagree are unwilling to settle their differences—or even learn they have common ground—through debate. *Doe*, 130 S. Ct. at 2837 (Scalia, J., concurring) ("Requiring people to stand up in public for their political acts fosters civic courage, without which democracy is doomed").

Finally, despite the fact that some R-71 signers took very active roles in the petition-gathering process and publicly disclosed their names (which are now available—and have been available—on the Internet), and *all* of the names of those who contributed money to support R-71 have been disclosed and available on the Internet for over two years, Plaintiffs have presented almost no evidence of threats and harassment post-election, save the email rejoicing in Plaintiffs' loss before the Supreme Court.[9] Pls. Mot. for Summ. J. at 11. Moreover, Plaintiffs have offered

---

[9] In a footnote, Plaintiffs suggest that now that the R-71 election has passed, the State's informational interest has subsided, reducing, and possibly nullifying, the need for disclosure. Pls.' Mot. for Summ. J. at 5 n.3. The district court in *ProtectMarriage.com* rejected this very argument. *See* 599 F. Supp. 2d at 1224 ("To assume that the passage of an election draws a line in the sand past which no issues remain open to public debate is simply not congruent with the form of democracy the people of California have determined to employ.").

INTERVENOR WAFST'S OPPOSITION TO
PLTFS' MOTION FOR SUMMARY
JUDGMENT (NO. C:09-CV-05456) – 18
71718-0001/LEGAL21281321.4

Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

*no* evidence that anyone who made a financial contribution to Protect Marriage Washington or

Referendum 71 has faced any threats, reprisals, or harassment since the release of their identities

almost two years ago. If Plaintiffs' pure speculation about what *might* happen in the future—

speculation that is belied by the lack of threats to the donors—is found sufficient to qualify them

for an as-applied exemption, virtually any minor party would qualify for an exemption (as would

any non-minority group, at least if Plaintiffs have their way). This would prove too much—and

the exception of non-disclosure would swallow the rule of disclosure, contrary to the central

holding of *Doe v. Reed* itself. *See ProtectMarriage.com*, 599 F. Supp. 2d at 1219 (A decision in

the plaintiffs' favor "would establish precedent for any group backing any controversial ballot

initiative to come before this Court with evidence of the actions of fringe opposition groups to

support their arguments for exemption from California's disclosure requirements. Such a holding

would thwart the will of California's government and the will of the electorate to garner objective

information necessary to evaluat[e] their own legislation."). The R-71 election has passed, and

even assuming Plaintiffs could have shown a likelihood of threats prior to or during the

election—which they could not—they certainly cannot do so now. *See id.* at 1217 (noting that

threats in the Prop. 8 campaign "occurred over the course of a few months during the heat of an

election battle surrounding a hotly contested ballot initiative").

**C.    Plaintiffs' Evidence of Alleged Threats, Reprisals, and Harassment Is Insufficient**

**1.    In Considering Plaintiffs' Motion, the Court May Not Accept Unsupported Inferences**

Because the law does not support Plaintiffs, they have cluttered the record with volumes

of colorful but entirely inadmissible evidence,[10] and they invite the Court to accept unsupported

---

[10] WAFST joins the State's motion to strike evidence submitted by Plaintiffs as unauthenticated, lacking in foundation, irrelevant, and hearsay. WAFST further objects, pursuant to ER 403, that the evidence discussed in the State's motion is substantially more prejudicial than probative. In fact, Plaintiffs' filing of a prophylactic "Notice of Intent to Offer Evidence under Federal Rule of Evidence 807" (Dkt. #216) serves to highlight that much of the evidence that they have submitted cannot be admitted through any of the specific exceptions to the hearsay rule. But their notice is legally insufficient as it does not identify what statements they contend are admissible under the so-called "residual exception." A party intending to rely on Rule 807 must identify "the statement and the particulars of it, including the name and address of the declarant" to be offered pursuant to the rule. Fed. R. Evid. 807. Plaintiffs

INTERVENOR WAFST'S OPPOSITION TO
PLTFS' MOTION FOR SUMMARY
JUDGMENT (NO. C:09-CV-05456) – 19
71718-0001/LEGAL21281321.4

Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

assumptions about much of this evidence. Unlike when considering WAFST's own Motion for Summary Judgment, the Court must not give Plaintiffs the benefit of inferences not supported by the record. *E.g., Prakash v. Savi Techs., Inc.*, 2011 WL 2414349, at *1 (W.D. Wash. June 10, 2011) ("Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party," and "[t]he Court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor.") (citations omitted).

Plaintiffs' submission is ripe with innuendo that must be rejected. For instance, Plaintiffs twice start their summary of the alleged threats that they contend support their case with citation to a death threat allegedly made by telephone to the home of one of their witnesses. Pls.' Mot. for Summ. J. at 9, 10 (citing Ex. 1-3, at 18:9-10). Plaintiffs' suggestion, though not expressly stated, is that this incident occurred due to this witness's public statement that she had signed R-71. As already discussed in WAFST's Motion, however, the newspaper article published on the day of this incident identified this witness's support of several other causes, and she was a candidate for public office and thus had necessarily made known her views on a number of issues. There is absolutely no evidence in the record to connect the alleged death threat to her signing the petition. The Court should not accept the proposed inference—whether directly stated or simply suggested—that the signing and the threat are connected.

By way of just one more example, consider Plaintiffs' Exhibit 5-1. This exhibit consists of an unauthenticated video of conversation (or part thereof; it is not clear what editing may have occurred) between Bill O'Reilly of Fox News and someone identified on the video as Christine Cloud, during which both Mr. O'Reilly and Ms. Cloud make out-of-court unsworn statements (including Ms. Cloud's remarks about what she claims the person with whom she had a

---

have not even attempted to meet this notice requirement. Beyond notice, the proponent of the evidence also, among other things, must demonstrate that the hearsay statement is offered for a material fact and is "more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts." *Id.* Plaintiffs cannot meet this test for the mountain of hearsay submitted.

INTERVENOR WAFST'S OPPOSITION TO
PLTFS' MOTION FOR SUMMARY
JUDGMENT (NO. C:09-CV-05456) – 20
71718-0001/LEGAL21281321.4

Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

confrontation said and what she discussed with the police).  The exhibit includes not just the

hearsay (and hearsay upon hearsay, if not beyond) in the video itself but also the YouTube

website page on which additional out-of-court statements are set forth, including the title to the

video apparently included by the person(s) who posted the video there (identified only as

"DPS72"), which heading asserts that the alleged "attack" described in the video was by a "gay

activist."[11]  Not only is there no evidence to support that the alleged confrontation that Ms. Cloud

described in the video was by an "activist," let alone a gay one (other than the incident happened

in a neighborhood of San Francisco historically populated by many gays),[12] but more

importantly, there is no competent evidence connecting the events to political opinions or

support of a particular political cause.  What allegedly happened to Ms. Cloud could have been

based on a perception that Ms. Cloud was simply in the way or rude (not for her views), or the

incident could have been an accident misconstrued by Ms. Cloud as being purposeful.

Recognizing that they cannot make a necessary connection for most of the instances

reported in the hearsay material they submit, Plaintiffs retreat to arguing—without support—that

they should be relieved from having to prove alleged perpetrators' motives. Pls.' Mot. for Summ.

J. at 23.  Plaintiffs' argument, however, has no end.  It effectively would allow any group to

claim it is reasonably likely to be threatened or harassed based on any totally unconnected or

random act of violence.  The Supreme Court's rejection of Plaintiffs' facial challenge, not to

mention the test that the Court has set forth for an exception to the general rule in favor of

disclosure, does not permit such a result.

---

[11] The website also includes various other hearsay statements, including the titles of other videos that YouTube linked to this video, comments by viewers of the videos, and "like" or "dislike" tallies. Plaintiffs' filing provides no indication what parts of this vast amount of evidence it actually is asking the Court to consider. WAFST submits that none of it should—or can—be.

[12] This is just one of many examples in the material submitted by Plaintiffs of hearsay declarants asserting that someone else is gay without foundation. *See, e.g.*, Dkt. #209-3, at ¶ 6 (describing witness's "impression" that a person was "a homosexual" based on conversation); Dkt. #209-4, at 6 (hearsay email exchange wherein individual informed PMW campaign manager Larry Stickney, "I'm a straight woman married to a straight man. Interesting that you assumed I must be gay.").

Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**2.    Plaintiffs Provide No Evidence that Signing a Referendum 71 Petition Alone Will Result in Any Reprisals or Harassment**

To the extent that Plaintiffs have connected any threatening conduct or statements to Referendum 71, none of it was directed against one who merely signed the referendum petition. WAFST's Mot. for Summ. J. at 16 (highlighting that Plaintiffs produced *no* emails responding to L. Stickney's email solicitation to R-71 petition signers asking them to share any harassment they had endured). To the contrary, the vast majority of the evidence that Plaintiffs submit concerns those who were the public face of the effort to place R-71 on the ballot—the petition sponsors, politicians who spoke out in support, or signature gatherers. *Contrast Buckley*, 424 U.S. at 71 (refusing an exemption where the plaintiffs' evidence consisted of "the clearly articulated fears of individuals, well experienced in the political process") (internal quotation marks omitted), *with NAACP*, 357 U.S. at 462 (permitting an exemption where disclosure of rank-and-file members in the past had exposed them to "economic reprisal, loss of employment, threat of physical coercion, and other manifestations of public hostility"). None of these individuals is similarly situated to mere petition signers.

Plaintiffs attempt to make this link by pointing to certain statements or conduct directed to those who *contributed* to Prop. 8 in California, but who were not public supporters of that measure. For instance, Plaintiffs point to the political pressure that led to Peter Vidmar's decision to resign as the head of the 2010 U.S. Olympic team based on his financial support for Prop. 8. Pls.' Mot. for Summ. J. at 21-22.[13] But there is a material difference between supporting a measure financially and signing a referendum petition to put a measure on the ballot. As the Supreme Court recognized, not all who signed the petition necessarily disagreed with the merits of the enhanced domestic partnership law. *See Doe*, 130 S. Ct. at 2817 (noting that some signers might have been "agnostic as to the merits of the underlying law"). Because signing a petition alone has little effect, a person may sign simply to get the signature gatherer to

---

[13] As Plaintiffs concede, though, Mr. Vidmar apparently also attended a public rally in support of the measure. Pls.' Mot. for Summ. J. at 21.

INTERVENOR WAFST'S OPPOSITION TO
PLTFS' MOTION FOR SUMMARY
JUDGMENT (NO. C:09-CV-05456) – 22
71718-0001/LEGAL21281321.4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

leave her alone, or because she has no strong views on the issue, but feels the public should decide the matter. *See id.* (noting that some signers might have been "express[ing] the political view that the question should be considered by the whole electorate"). People are much less likely to give financially, especially not thousands of dollars, for such non-substantive and benign reasons. Significant financial support is a much better indicator of one's true values. And, in turn, what happens to those who give financially (or who otherwise publicly espouse their positions) is not an accurate indicator of what will happen to those who simply sign a petition.

Moreover, rather than looking to what happened to some financial contributors in *California*, it is important to examine what has transpired in Washington. Because one would expect that threats, reprisals, and harassment are more likely to occur to those who give financially to a campaign than to those who simply sign a petition relating to the campaign, the most probative evidence for Plaintiffs would be what has happened to those who made financial contributions in support of the R-71 effort. Tellingly, however, Plaintiffs are bereft of such evidence. Why? Here the Court is free to make an inference in favor of the non-moving party— and the clear inference is that Plaintiffs have not been able to identify any evidence that making a financial contribution to the Referendum 71 campaign has resulted in any threats, harassment, or reprisals, even though the names of such donors have been public information for two years. This dearth of evidence is, WAFST submits, eloquent and compelling.

In the end, Plaintiffs can present nothing but their subjective fear that R-71 petition signers will be harassed if R-71 petitions are not exempted from public disclosure laws. That falls decidedly short of what Plaintiffs must show to carry their burden on summary judgment. *Dole*, 921 F.2d at 973 ("A subjective fear of reprisal is insufficient to invoke first amendment protection against a disclosure requirement.").

INTERVENOR WAFST'S OPPOSITION TO
PLTFS' MOTION FOR SUMMARY
JUDGMENT (NO. C:09-CV-05456) – 23
71718-0001/LEGAL21281321.4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

## IV.    CONCLUSION

As Justice Scalia noted at oral argument in this case, "[T]he First Amendment does not protect you from civic discourse or even from nasty phone calls when you exercise your political rights to legislate or to take part in the legislative process." Dkt. #205 (Stafford Decl., Ex. T); *see also Or. Socialist Workers 1974 Campaign Comm.*, 432 F. Supp. at 1259 ("We feel that persons supporting specific parties and candidates should be willing to 'stand up and be counted.'").  The signers of R-71 chose to speak, and having so chosen, they are not entitled to do so anonymously to protect themselves from the mere possibility that their fellow citizens may discuss, debate, or question their statements.  Indeed, this free and open public debate is the very foundation of our democracy.

Plaintiffs bear the burden of establishing their entitlement to judgment as a matter of law. The collection of inadmissible evidence they submit in support of their Motion falls well short of meeting that burden.  For the reasons stated above, WAFST respectfully requests that the Court deny Plaintiffs' Motion for Summary Judgment.

Dated this 18th day of July, 2011.

s/ *Kevin J. Hamilton*
Kevin J. Hamilton, WSBA No. 15648
William B. Stafford, WSBA No. 39849
**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Telephone:  206.359.8000
Facsimile:  206.359.9000
KHamilton@perkinscoie.com
WStafford@perkinscoie.com

*Attorneys for Intervenor Washington
Families Standing Together*

INTERVENOR WAFST'S OPPOSITION TO
PLTFS' MOTION FOR SUMMARY
JUDGMENT (NO. C:09-CV-05456) – 24
71718-0001/LEGAL21281321.4

**CERTIFICATE OF SERVICE**

I hereby certify that on July 18, 2011 I electronically filed INTERVENOR WAFST'S

OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT in the above-

referenced case with the Court via CM/ECF, which system will send notification of such filing to

counsel of record.

James Bopp, Jr.
Jared Haynie *(admitted pro hac vice)*
Joseph E La Rue *(admitted pro hac vice)*
**Bopp Coleson & Bostrom**
1 South Sixth Street
Terre Haute, IN 47807-3510
jboppjr@aol.com
sbieniek@bopplaw.com
jlarue@bopplaw.com

Stephen Walter Pidgeon
3002 Colby Avenue, Suite 306
Everett, WA  98201
stephen.pidgeon@comcast.net

*Attorneys for Plaintiffs*

Duane M Swinton
Leslie R. Weatherhead
Steven Joseph Dixson
**Witherspoon Kelley Davenport & Toole**
422 W Riverside, Ste 1100
Spokane, WA 99201
dms@wkdtlaw.com
lwlibertas@aol.com
sjd@wkdtlaw.com

*Attorneys for Intervenor Washington
Coalition for Open Government*

Anne Elizabeth Egeler
William G. Clark
William Berggren Collins
**Attorney General of Washington**
P.O. Box 40100
Olympia, WA 98504-0100
360-753-7085
annee1@atg.wa.gov
jamesp@atg.wa.gov
billc@atg.wa.gov

*Attorneys for Sam Reed and
Brenda Galarza*

CERTIFICATE OF SERVICE (NO. C:09-CV-
05456) – 1

71718-0001/LEGAL21281321.4

1
2
3      I certify under penalty of perjury that the foregoing is true and correct.
4
5      DATED:  July 18, 2011                    s/ Kevin J. Hamilton
6                                               Kevin J. Hamilton, WSBA No. 15648
7                                               KHamilton@perkinscoie.com
8                                               **Perkins Coie LLP**
9                                               1201 Third Avenue, Suite 4800
10                                              Seattle, WA  98101-3099
11                                              Telephone:  206.359.8000
12                                              Facsimile:  206.359.9000

CERTIFICATE OF SERVICE (NO. C:09-CV-
05456) – 2