THE HONORABLE BENJAMIN H. SETTLE

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JOHN DOE #1, an individual; JOHN DOE
#2, an individual; and PROTECT
MARRIAGE WASHINGTON,

          Plaintiffs,

   v.

SAM REED, in his official capacity as
Secretary of State of Washington and
BRENDA GALARZA, in her official
capacity as Public Records Officer for the
Secretary of State of Washington,

          Defendants.

No. C:09-cv-05456 BHS

INTERVENOR WASHINGTON
FAMILIES STANDING TOGETHER'S
MOTION FOR SUMMARY JUDGMENT

NOTE ON MOTION CALENDAR:
JULY 22, 2011

**ORAL ARGUMENT REQUESTED**

# FILED UNDER SEAL
# PURSUANT TO STIPULATED PROTECTIVE ORDER
# (DOCKET NO. 181)

INTERVENOR WASHINGTON FAMILIES STANDING
TOGETHER'S MOTION FOR SUMMARY
JUDGMENT (NO. C:09-CV-05456 BHS)
71718-0001/LEGAL21210430.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

# **TABLE OF CONTENTS**

I.   INTRODUCTION ............................................................................................ 1

    A.   Referendum 71 .................................................................................... 2

        1.   The Measure................................................................................ 2

    B.   Procedural Posture ............................................................................... 3

    C.   Discovery ............................................................................................. 4

        1.   The Doe Plaintiffs and Doe Declarants .................................... 4

            a.   John Doe #1, ......................................................... 5

            b.   John Doe #2, ......................................................... 5

            c.   John Doe #3, ......................................................... 5

            d.   John Doe #4, ......................................................... 6

            e.   John Doe #5, ......................................................... 7

        2.   Plaintiffs' Other Witnesses....................................................... 7

            a.   .............................................................................. 7

            b.   .............................................................................. 8

            c.   .............................................................................. 9

            d.   .............................................................................. 9

            e.   ............................................................................ 10

            f.   ............................................................................ 10

            g.   ............................................................................ 11

            h.   ............................................................................ 11

            i.   ............................................................................ 12

            j.   ............................................................................ 13

            k.   ............................................................................ 14

            l.   ............................................................................ 14

            m.   ............................................................................ 15

        3.   The Written Discovery.............................................................. 15

II.   ARGUMENT.............................................................................................. 16

    A.   The Reasonable Probability Standard ................................................ 16

    B.   The Application of the Reasonable Probability Standard to This Case.............. 18

    C.   As a Matter of Law, Plaintiffs Cannot Meet the Reasonable Probability
        Standard ............................................................................................. 19

        1.   R-71 Petition Signers Are Not a Minor Party ......................... 19

INTERVENOR WAFST'S MOTION FOR
SUMMARY JUDGMENT (NO. C:09-CV-05456
BHS)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

**TABLE OF CONTENTS**
(continued)

2.    Plaintiffs Cannot Show a Reasonable Probability that R-71 Petition
      Signers Will Face Severe and Widespread Harassment if R-71
      Petitions Are Released .......................................................................... 21

III.   CONCLUSION.................................................................................................... 24

INTERVENOR WAFST'S MOTION FOR
SUMMARY JUDGMENT (NO. C:09-CV-05456
BHS)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

# I. INTRODUCTION

> [I]t may . . . be a bad idea to keep petition signatures secret. There are laws against threats and intimidation; and harsh criticism, short of unlawful action, is a price our people have traditionally been willing to pay for self-governance. Requiring people to stand up in public for their political acts fosters civic courage, without which democracy is doomed. . . . I do not look forward to a society which . . . exercises the direct democracy of initiative and referendum hidden from public scrutiny and protected from the accountability of criticism.

*Doe v. Reed*, 561 U.S. __, 130 S. Ct. 2811, 2837 (2010) (Scalia, J., concurring).

Plaintiffs Protect Marriage Washington ("PMW") and John Does #1 and #2, bear a heavy burden. To establish an exception from Washington's Public Records Act ("PRA"), RCW Chap. 42.56, for Referendum 71 ("R-71") petition sheets, Plaintiffs must show those who signed a petition—two years ago for a past election—(1) are a "minor party" and (2) face a "reasonable probability," if petition sheets are disclosed, of severe and widespread harassment the State is unwilling or unable to address. As a matter of law, the record in this case fails that standard.

First, those who signed R-71 petitions are not a "minor party" akin to other groups labeled as such by the U.S. Supreme Court, such as the Socialist Workers Party in the 1970s. Indeed, many who signed the petitions may have simply wished to see the issue placed on the ballot before the voters. The Supreme Court has never recognized such an ad hoc group of voters, who by definition never chose to join a party, much less an identified organization of any kind, as expressing an "associational interest" sufficient to warrant intrusive disruption of a state's otherwise-applicable public disclosure requirements.

The record is even starker with respect to the "reasonable probability" standard. Plaintiffs seek a disclosure exemption for all petition *signers* – not for signature *gatherers*, R-71 spokespeople, or public endorsers of the measure, although they make up the vast majority of those who are put forth as witnesses. Their position on the issue is *already* well-known and disclosing that they also signed the petition adds nothing to the public record. Nor would such disclosure provide support for Plaintiffs' claims regarding petition *signers*. The record before the Court, in short, cannot justify the sweeping relief sought by Plaintiffs.

INTERVENOR WASHINGTON FAMILIES STANDING TOGETHER'S MOTION FOR SUMMARY JUDGMENT (NO. C:09-CV-05456 BHS) – 1
71718-0001/LEGAL21210430.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Plaintiffs originally requested a preliminary injunction in the midst of a campaign. Since then, the Supreme Court has clarified that disclosure is the default rule, not the exception, and that as-applied exceptions are narrow and to be applied only in unusual circumstances. Plaintiffs' claims have now been subjected to close scrutiny, on the record and subject to cross-examination. With that guidance and fully developed record, it is now clear that Plaintiffs' case does not begin to meet the reasonable probability test laid out by the Court.

What the record does show is that this was a campaign like any other campaign on a highly public issue. The R-71 campaign was hotly debated and highly publicized. It addressed an issue—civil rights for domestic partners—that is among an array of much-debated social issues in our state that are the subject of intense differences of opinion. Vigorous discourse accompanies many issues in today's climate, whether taxes, stimulus spending, health care reform, marijuana, reproductive rights, or even replacing the Alaskan Way viaduct. Indeed, Plaintiffs' evidence of "harassment" is simply a reflection of the fact that public proponents (and opponents) of placing R-71 on the ballot experienced the garden-variety push and shove that occurs in any vigorous political campaign. On this record, no reasonable jury could find for Plaintiffs, and, accordingly, Intervenor Washington Families Standing Together ("WAFST") moves for summary judgment dismissing Plaintiffs' claims in their entirety.

## A.  Referendum 71

### 1.  The Measure

R-71 was a ballot measure that sought a vote in an effort to overturn Engrossed Second Substitute Senate Bill 5688, an enhanced domestic partnership law signed into law in May 2009. To put the measure before the voters, the sponsor (PMW) needed to submit petitions signed by at least 120,577 legally registered voters by July 26, 2009. *See* Wash. Const. art. II, § 1(b). In May 2009, PMW filed R-71 and began gathering the necessary signatures. *See Doe*, 130 S. Ct. at 2816. R-71 petition circulators gathered signatures in public places, such as community events, county fairs, churches, storefronts, and shopping malls. *See, e.g.*, John Doe Decl. #4 ¶ 8 (Dkt.

INTERVENOR WASHINGTON FAMILIES STANDING
TOGETHER'S MOTION FOR SUMMARY
JUDGMENT (NO. C:09-CV-05456 BHS) – 2
71718-0001/LEGAL21210430.1

Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

#53 at 2); John Doe Decl. #5 ¶ 5 (Dkt. #54 at 2); Declaration of William B. Stafford ("Stafford Decl."), Ex. K, at 223 (        Dep. 9:12-22).  As a result, the act of signing a petition was almost invariably never private.  All signatures, names, addresses, and email addresses on the petition sheet were easily viewable not just by the petition circulator and PMW, but by any other signer or potential signer who reviewed the petition, *see, e.g.*, Stafford Decl., Ex. M, at 317 (        Dep. 62:14-17), and petition sheets were sometimes posted or left on a table, *see, e.g., id.*, Ex. R, at 435 (        Dep. at 12:2-12).  Plaintiffs do not present *any* evidence that any individuals refused to sign the petitions out of concern that their identities would become known.

R-71 qualified for the ballot, and the voters spoke – approving R-71 by a vote of 53% to 47%.  *See* Declaration of Noel Frame ("Frame Decl."), ¶ 15, Ex. B.  951,822 Washingtonians voted to approve R-71, while 838,842 voted to reject it, *id.*, making Washington the first state in the nation to vote affirmatively in support of relationship recognition for LGBT individuals.

**B.      Procedural Posture**

PMW commenced this action on July 28, 2009, joined by two "John Doe" plaintiffs. Plaintiffs objected to the disclosure of R-71 petitions on two grounds:  (1) that it was unconstitutional for the State to disclose *any* referendum or initiative petitions under any circumstances, Compl., Count I (Dkt. #2); and (2) that disclosure of R-71 petitions was unconstitutional "because there is a reasonable probability that the signatories of the R-71 petition will be subjected to threats, harassment, and reprisals."  Compl., Count II (Dkt. #2).

Plaintiffs moved for a preliminary injunction.  On a limited record, in the heat of the campaign, the Court concluded that Plaintiffs were entitled to relief under Count I of the Complaint and explicitly declined to reach the question whether the alleged threats of harassment justified exempting the petitions from disclosure under the "reasonable probability" of harm standard articulated in *Brown v. Socialist Workers '74 Campaign Committee*, 459 U.S. 87 (1982). The State appealed, and the Ninth Circuit reversed.  *Doe v. Reed*, 586 F.3d 671 (2009).  The Supreme Court accepted review and, by an eight-to-one decision, affirmed the Ninth Circuit.

INTERVENOR WASHINGTON FAMILIES STANDING
TOGETHER'S MOTION FOR SUMMARY
JUDGMENT (NO. C:09-CV-05456 BHS) – 3
71718-0001/LEGAL21210430.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax:  206.359.9000

*Doe*, 130 S. Ct. 2811. (Although the Supreme Court did not address Plaintiffs' as-applied challenge, it noted that Plaintiffs had provided "scant evidence" and that "what little plaintiffs do offer with respect to typical petitions in Washington hurts, not helps.") *Id.* at 2821.

## C.   Discovery

On remand, the parties embarked on discovery. Plaintiffs identified nineteen witnesses, including the two John Doe plaintiffs and three additional John Doe declarants. The State and intervenors took the depositions of all but one of these witnesses.[1] The State provided its own witness list, and also served written discovery, seeking all documents evincing or related to harassment of R-71 petition signers. Stafford Decl., Ex. S. Discovery in this matter has now closed. *See* Dkt. #128. Thus, the evidence Plaintiffs may rely on to carry their burden in this matter consists solely of (1) the testimony of the identified witnesses and (2) the documents produced in discovery, nothing more. Whatever else might be said of that record, it falls well short of the constitutional mark necessary to establish an as-applied challenge.

In short, the parties have developed a record laying bare what was not fully developed at the time the Court issued its preliminary injunction order—Plaintiffs' evidence of "threats" and "harassment" consists of nothing more than uncomfortable conversations between R-71 proponents and opponents, heated rhetoric exchanged in the midst of a campaign, experiences unrelated to R-71, and a handful of incidents in which the police were contacted and addressed any issues.[2] Plaintiffs presented no evidence R-71 petition signers were harassed by government agents, or that police refused to provide assistance to supporters of R-71 when requested.

### 1.   The Doe Plaintiffs and Doe Declarants

The John Doe plaintiffs and declarants supported R-71 publicly, and testified they (1) did not personally have serious concerns if the fact they signed the R-71 petition was disclosed; and (2) experienced no real harassment because of their support. This testimony does not help Plaintiffs' case.

---

[1] Defendants did not depose a minor whose testimony would be redundant with that of another witness.
[2] WAFST accepts as true facts testified to in the witness depositions for purposes of this motion.

INTERVENOR WASHINGTON FAMILIES STANDING
TOGETHER'S MOTION FOR SUMMARY
JUDGMENT (NO. C:09-CV-05456 BHS) – 4
71718-0001/LEGAL21210430.1

Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

    **a.**    **John Doe #1,**

    participated in a rally to gather signatures for R-71, at which he announced his opposition to same-sex marriage in a videotaped interview that is posted on the internet. Stafford Decl., Ex. A, at 16-17 (    Dep. 22:19-23:19). He signed the R-71 petition in public. *Id.* at 11-15 (    Dep. 8:14-12:22). When asked to participate in the lawsuit,    said he "was happy to serve as a name . . . on the docket," and "was happy to have [his] name associated with the [R-71] campaign," *id.* at 18-19 (Pc    Dep. 27:5-7, 28:16-17). He also said that he would not "be hesitant to testify in federal court" if asked. *Id.*, at 21 (    Dep. 32:14-15).    did not experience harassment or threats as a result of his public endorsement of R-71, and is aware of no threats to him if he were to testify publicly in this matter. *Id.*, at 20, 22-24 (    Dep. 31:3-17, 45:3-21, 47:17-48:7).

    **b.**    **John Doe #2,**

    gathered petition signatures in highly public locations on multiple occasions, *id.*, Ex. B, at 29-30 (    Dep. 10:19-11:17), and waved an R-71 sign in a high traffic area with approximately seventy other people, *id.* at 31-32 (    Dep. 14:17-15:10). He stated that he has never tried to keep his support of R-71 a secret, and that he is comfortable with letting people know he signed the petition and is proceeding as a John Doe not "because of [his] name, but because of other people." *Id.* at 33, 39 (    Dep. 19:8-13, 38:6-17). He does have "some" concern about testifying publicly, but the only negative experiences he had during the R-71 campaign were: (1) receiving an angry text message from his own brother; (2) being "mooned" (by an unidentified teenager in a passing car); and (3) being "flipped off" by people in passing cars. *Id.* at 33-38 (    Dep. 19:17-20:4, 22:23-23:6, 25:7-23, 29:9-23).

    **c.**    **John Doe #3,**

    publicly and repeatedly endorsed the R-71 campaign. *Id.*, Ex. C, at 46-48 (    Dep. 10:10-18, 12:19-20, 13:1-24). He signed the petition himself, likely at his church, and publicly encouraged others to do so as well. *Id.* at 45-46 (    Dep. 9:23-10:21).

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

During his deposition, he stated that he would have no problem testifying publicly in court, and that there was no reason why his involvement with R-71 needed to be kept a secret. *Id.* at 44 (          Dep. 8:13-24).  He did claim to have experienced "harassment" when a transgender woman called          and, in a "reserved" tone, suggested she might bring some people "to picket the church or to attend a morning service," though she "assured" him they would "conduct themselves in a way appropriate to a public worship service." *Id.* at 49-50 (          Dep. 20:1-21:25).          stated that she "was not inappropriate in the way she expressed herself." *Id.* at 53 (          Dep. 37:17-20).  He assumes she obtained his name by referencing PMW's R-71 website, where he was listed as a supporter. *Id.* at 52 (          Dep. 28:6-11).

          received no other calls regarding R-71, received no mail regarding R-71, did not feel he was harassed or threatened in any other way prior to the R-71 election, and has not received any threats or harassment after the election. *Id.* at 51-52 (          Dep. 27:10-28:5).

**d.      John Doe #4,**

          had "a very, very public position in the referendum," including testifying in front of the state legislature, gathering petition signatures in front of "big box" stores, and participating in television interviews. *Id.*, Ex. D, at 58-61, 68, 70-71 (          Dep. 7:13-8:18, 16:1-17:16, 25:17-23, 30:24-31:10).  He does not feel secretive about his opinions regarding R-71 or his position in this lawsuit. *Id.* at 68 (          Dep. 25:12-26:5).

He alleged four incidents of "harassment" during the R-71 campaign: (1) when a lesbian couple approached him while he was gathering signatures and said "We have feelings too"; (2) when a transgender person asked him "Why are you getting these signatures?" and then suggested that she was "going to bring a bunch of [her] friends . . . to [his] church on this Sunday and . . . pack [the] church"; (3) when a young woman took a picture of him and his wife gathering signatures; and (4) when someone asked the manager of a store where he was gathering signatures to ask him to leave, a request the manager declined. *Id.* at 61-67 (          Dep. 17:23-23:10).

INTERVENOR WASHINGTON FAMILIES STANDING
TOGETHER'S MOTION FOR SUMMARY
JUDGMENT (NO. C:09-CV-05456 BHS) – 6
71718-0001/LEGAL21210430.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

     **e.**     **John Doe #5,**

     was very public in her support of R-71, spending at least ten days gathering more than 1,000 petition signatures in front of stores, testifying at a state legislative hearing, publicly endorsing R-71, and voicing her opinions on radio stations and in newspaper interviews. *Id.*, Ex. E, at 76-80, 82-85 (     Dep. 8:16-10:4, 12:15-13:25, 17:3-18:23, 45:8-46:13). She would "feel comfortable telling someone publicly that [she has] been involved in this lawsuit," and that she supported R-71. *Id.* at 80-81 (     Dep. 13:22-14:7). reported the same "harassing" incidents as     , and one additional incident in which she received phone calls from a transgender person who asked why she was collecting signatures for R-71 and suggested she was going to bring a group of her homosexual and transgender friends to a service at     church. *Id.* at 85-91 (     Dep. 46:24-52:24).

**2.**     **Plaintiffs' Other Witnesses**

     Plaintiffs have identified fourteen other witnesses. Presumably, Plaintiffs identified the individuals who, in Plaintiffs' estimation, could present the most vivid and compelling evidence that it is reasonably probable that anyone who merely signed the R71 petition can reasonably anticipate being subjected to severe harassment that will go unaddressed by the State. In any event, these are the individuals on whose testimony Plaintiffs must rely to make their case.

     **a.**

     publicly expressed his opinion regarding R-71. He held an R-71 campaign sign at a Spokane intersection on two occasions. *Id.*, Ex. F, at 96 (     Dep. 16:12-23). On five or six occasions, he solicited R-71 petition signatures. *Id.* at 97-99 (     Dep. 23:12-25:6). And, he posted an R-71 sign in his yard. *Id.* at 99 (     Dep. 25:7-8). He received no physical threats or harassment as a result of his R-71 activities. *Id.* at 100 (     Dep. 28:5-14). In the summer of 2010, two or three Post-It notes containing vulgar language were placed on his vehicle, but he does not know whether they were related to his R-71 support. *Id.* at 100-102 (     Dep. 28:21-30:24).

INTERVENOR WASHINGTON FAMILIES STANDING
TOGETHER'S MOTION FOR SUMMARY
JUDGMENT (NO. C:09-CV-05456 BHS) – 7
71718-0001/LEGAL21210430.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

b.                                                        . *Id.*, Ex. G, at 107

(              Dep. 6:1-6).  He has not sought to hide that he signed the R-71 petition, and

publicly supported R-71, including at rallies and other events.  *Id.* at 137-43 (              Dep.

56:9-62:12).  He is "in the public's eye all the time" and when asked whether he knew he may be

required to publicly testify, he replied: "That's why I agreed to do it."  *Id.* at 108-09, 117-18

(              Dep. 6:11-17).  He has for many years taken a public stance against gay rights; for

example, he organized and spoke at

                              *Id.* at 110-14 (              Dep. 10:10-

11:21, 20:25-21:2).  He has been covered in the media extensively.  *Id.* at 115-16 (

Dep. 13:25-17:8).  The last time he "Googled" his name, there were approximately 300,000 hits.

*Id.* at 154 (              Dep. 18:15-19:2).  He has continued to speak out, after the R-71 election,

on issues involving homosexuality.  *Id.* at 154 (              Dep. 76:3-12).

Over the years,                          office has received calls taking issue with his

views on gay rights, including threatening phone calls, though he cannot point to any calls or

threats received specific to R-71.  *Id.* at 130-31, 134, 144-45, 147, 150, 153-54 (              . Dep.

38:22-39:2, 46:4-22, 63:7-64:10, 66:3-13, 71:10-21, 75:22-76:19).  He is not aware of death

threats made to him because of his position on R-71.  *Id.* at 145-47 (              Dep. 64:24-

66:2).  He has never been physically attacked at rallies or protests.  *Id.* at 135 (              Dep.

48:3-8).  To his knowledge, no members of                  have been attacked or harassed

because they signed the R-71 petition.  *Id.* at 149 (              Dep. 69:5-10).

While not connected to R-71,                  has spoken at rallies at which the police

were present and took action to maintain the peace, and he has contacted the police on numerous

occasions and been "pleased" with their responsiveness.  *Id.* at 119-30, 132-36, 148-49, 151-52

(              Dep. 26:9-30:7, 32:12-38:19, 44:5-46:3, 48:12-49:16, 68:6-69:4, 73:16-74:4).

INTERVENOR WASHINGTON FAMILIES STANDING
TOGETHER'S MOTION FOR SUMMARY
JUDGMENT (NO. C:09-CV-05456 BHS) – 8
71718-0001/LEGAL21210430.1

Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

**c.**

. *Id.*, Ex. H, at 159-61 (          Dep. 8:24-9:7, 14:4-11).  He hosted and attended meetings held in support of R-71, attended by dozens of people, and had an R-71 sign in front of his house. *Id.* at 174-83, 185-86 (          Dep. 56:6-65:15, 75:16-76:11).  He signed the petition in his church. *Id.* at 184 (          Dep. 68:9-12).

He expressed fear of being a witness, but said that would be true for any lawsuit because of bad experiences in the Soviet era in his native Ukraine. *Id.* at 162-65 (          Dep. 22:11-25:4).  During the R-71 campaign, a woman took photographs of his house on one occasion (telling him it was for a school project) and he felt he was being watched on a few occasions. *Id.* at 167-71 (          Dep. 42:11-43:2, 48:10-50:22).  He thinks his mail was stolen but is not sure and does not know if it was because of R-71. *Id.* at 172-73 (          Dep. 52:19-53:3).  He never filed a police report about these events. *Id.* at 166 (          Dep. 38:11-22).

**d.**

was publicly involved in gathering signatures, waving R-71 signs at busy intersections, and engaging in campaign strategy meetings two or three times every week for three months. *Id.*, Ex. I, at 205-06 (          Dep. 33:23-34:5).  After R-71 qualified for the ballot, he continued publicly campaigning twice a week. *Id.* at 206 (          Dep. 34:19-24).

had an R-71 sign posted in the yard at his home and put an R-71 bumper sticker on his car. *Id.* at 192, 205 (          Dep. 14:8-9, 33:21-22).          has no concerns with giving public testimony regarding his involvement with R-71. *Id.* at 191 (D.          Dep. 9:14-22).

describes three incidents that he characterized as harassment.  One night after a sign holding rally a young man directed expletives at          and pushed him. *Id.* at 193-96 (          Dep. 18:15-21:16).          did not notify a police officer who was within his sight. *Id.* at 196-97 (          Dep. 21:21-22:8).  At another rally          and others were approached by three young men wearing only thong underwear, who mooned the group and threw garbage at them from the window of their van; nobody was physically hurt. *Id.* at 198-201 (          Dep.

INTERVENOR WASHINGTON FAMILIES STANDING
TOGETHER'S MOTION FOR SUMMARY
JUDGMENT (NO. C:09-CV-05456 BHS) – 9
71718-0001/LEGAL21210430.1

Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

23:18-24:5, 25:5-11, 29:8-9).  Finally, when collecting R-71 signatures        was approached by a woman who said "we'll do everything to stop what you're doing" and a man who said "we'll have your kids." *Id.* at 202-04 (            Dep. 30:20-32:1).            was neither physically threatened nor concerned for his safety, and did not notify the police of the incident.  *Id.* at 204-05 (        Dep. 32:2-12, 33:8-20).

    e.

       spoke to many people about R-71.  *Id.*, Ex. J, at 213 (            Dep. 8:6-10).  Given his public support for R-71, "of course people knew my view about this matter." *Id.* at 213 (        Dep. 8:6-10).  He has no objection to testifying publicly about his support of R-71.  *Id.* at 211-12 (            Dep. 6:21-7:1). He did not experience any harassment directed towards him personally as a result of his support for R-71.  *Id.* at 214-15 (            Dep. 11:25-12:16).  He reported that notes were left near his church stating that "you're worse than the fascists," "get out of here" and "your children . . . will be homosexuals." *Id.* at 214-15 (            Dep. 11:25-12:16).  He did not feel threatened by the notes and did not call the police to report the notes.  *Id.* at 216-17 (            Dep. 15:15-16:16).

    f.

       was an active supporter of R-71.  He gathered petition signatures in public locations on many occasions, waved R-71 signs in a high traffic location, and placed an R-71 bumper sticker on his car and an R-71 sign in his yard.  *Id.*, Ex. K, at 222-26 (        Dep. 8:25-10:25, 13:17-14:14).  He was interviewed by a reporter who published a story listing him as an R-71 supporter.  *Id.* at 227 (            Dep. 20:14-17).  He is not concerned about testifying in court.  *Id.* at 242-43 (            Dep. 39:25-40:4).

  - On a few occasions,            felt he was harassed for his support of R-71.  While he was holding an R-71 sign on a bridge, some passing motorists shouted insults or made offensive gestures, but he did not feel physically threatened.  *Id.* at 228-31, 244 (            Dep. 21:12-24:20, 47:20-25).  While gathering signatures on two occasions, two individuals shouted

INTERVENOR WASHINGTON FAMILIES STANDING
TOGETHER'S MOTION FOR SUMMARY
JUDGMENT (NO. C:09-CV-05456 BHS) – 10
71718-0001/LEGAL21210430.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax:  206.359.9000

profanity at him, but he did not feel threatened and he did not call the police. *Id.* at 232-37

(          Dep. 25:22-30:23).          name appeared on an apparently pro-gay rights

website, but this did not concern him about his personal safety, and he did not call the police. *Id.*

at 238-40 (          Dep. 31:1-5, 33:7-12, 34:6-11).  He has not experienced any harassment or

threats since the R-71 vote. *Id.* at 241, 245-46 (          Dep. 35:7-10; 51:22-52:4).

    g.

          . *Id.*, Ex. L, at 251-52, 286-87 (          Dep. 9:25-10:2;

91:16-18, 94:6-8).          frequently expressed his support for R-71 via posts on websites,

speeches at public hearings and rallies, and interviews and articles published by prominent news

organizations. *Id.* at 253-56, 260-67, 284-85 (          Dep. 19:6-20:8, 20:11-22:14, 36:6-39:10,

40:19-25, 41:22-43:3, 83:2-18, 85:10-21).          authorized

to spend funds on R-71 activities, all publicly identified on the Public Disclosure

Commission's ("PDC") website. *Id.* at 257-59 (          Dep. 29:8-31:3).  He is willing to testify

in court. *Id.* at 224 (          Dep. 10:14-18).

          states he received death threats via a blogger's website.  When asked to explain

how the website advocates violence against him,          admitted the website did not advocate

violence except in self-defense to a violent physical attack. *Id.* at 268-74 (.          Dep. 45:10-

51:2).  He did not report the website to the police. *Id.* at 276-78 (          Dep. 60:22-25, 63:18-

20, 64:9-11).  He has not suffered a physical attack or received other threats related to his

support of R-71. *Id.* at 275-76, 279-83 (          Dep. 59:24-60:7, 65:7-9, 68:1-71:14, 71:17-21).

    h.

    At the time of the R-71 campaign,          was a          candidate

working to make publicly known her name and stance on issues, including R-71.          gathered

signatures for R-71 and has made public her support for R-71. *Id.*, Ex. M, at 292, 296-98, 317,

INTERVENOR WASHINGTON FAMILIES STANDING
TOGETHER'S MOTION FOR SUMMARY
JUDGMENT (NO. C:09-CV-05456 BHS) – 11
71718-0001/LEGAL21210430.1

Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

319 (         Dep. 7:11-18, 11:19-13:12, 62:6-13, 89:11-13).                is not concerned about publicly testifying in court. *Id.* at 299 (         Dep. 17:11-16).

, the Everett Herald published a long, front-page article about candidacy,

and mentioning that        had signed the R-71 petition. *Id.* at 293-96 ( Dep. 8:25-9:17, 10:25-11:18). The article contained contact information for        including a cellular phone number at which she has not received any calls regarding R-71. *Id.* at 304-05, 320 (         Dep. 23:12-24:1, 96:1-16). That evening, an anonymous individual called her family's unlisted home phone and, speaking to        son, asked for        , said "I will kill you and your family," and then hung up. *Id.* at 299-300, 303 (         Dep. 17:19-18:18, 21:9-25). The caller did not mention R-71. *Id.*, at 303 (         Dep. 21:9-25).        called the police, who responded within five minutes, took her statement, reassured her, advised her that the police would perform extra patrols of her house, and followed up with her the next day about a means by which she might be able to trace further calls. *Id.* at 301-03, 306-07 (         Dep. 19:13-21:2, 30:10-31:24).

Other than that incident,        does not report any threats or harassment she believes are related to her support for R-71. *Id.* at 308-12, 318 (         Dep. 32:10-20, 37:16-20, 38:17-23, 40:21-41:11, 64:15-19). Months after the election, two people threw applesauce on her son from a car, but she is unsure why they did so. *Id.* at 312-16 (         Dep. 41:22-43:2, 49:22-50:2).

i.

Her picture and statement of support are printed on the back of each R-71 petition sheet. Dkt. #27, Ex. A at 12. She endorsed R-71 on the PMW and Faith and Freedom Network websites. Stafford Decl., Ex. N, at 326-30 (         Dep. 15:6-17:4, 24:17-25:22). She wrote a fundraising message that appeared on the PMW website. *Id.* at 329-30 (         Dep. 24:17-25:22). She also made six donations to PMW; information that is available on the PDC's website. She has no concern about testifying publicly in this case if her testimony does not occur during legislative session. *Id.* at 325 (         Dep. 7:4-13).

INTERVENOR WASHINGTON FAMILIES STANDING
TOGETHER'S MOTION FOR SUMMARY
JUDGMENT (NO. C:09-CV-05456 BHS) – 12
71718-0001/LEGAL21210430.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

received several phone calls and two faxes in October 2009 she believes are
related to her support of R-71. *Id.* at 331-33, 337-38, 344-46 (          Dep. 26:17-28:13, 36:21-
37:13, 46:12-48:2). She recalls the caller used vulgar language, but does not recall being told her
stance on R-71 had motivated the calls. *Id.* at 334-35 (          Dep. 29:8-30:17). She did not
feel physically threatened by the calls and faxes, nor did she notify the police. *Id.* at 336, 339-
40, 346-49 (          Dep. 33:11-21, 41:24-42:3, 93:24-94:12, 105:11-14, 106:4-8). She did not
experience anything else she felt was a threat or harassment related to R-71. *Id.* at 340-42
(          Dep. 42:22-43:8, 45:10-13).

   **j.**

                                        *Id.*, Ex. O, at 355-56 (
Dep. 6:1-13, 7:7-11). He is "personally extremely public." *Id.* at 356 (          Dep. 22:14-
17).          testified against the bill that was a precursor to R-71 in a public hearing in front of
about 300 spectators. At this hearing, he provided both his name and address. *Id.* at 354-55 (
Dep. 6:7-7:5). He remains listed on the PMW website, spoke with reporters and
appeared in internet and print stories about R-71, had more than twenty radio appearances, won a
               and appeared on TV, participated in public debates, and spoke in front
of approximately 2,000 people when R-71 was filed. *Id.* at 356-57, 363-67 (          Dep.
22:18-23:15, 35:23-37:15, 38:7-39:20). Although he did not experience physical harassment or
violence, the PMW campaign received threatening or hostile emails. *Id.* at 368-69, 377 (
   Dep. 48:16-49:9, 73:1-2). He felt personally threatened when a Bellingham blogger
wrote, "Why can't we go to Arlington and harm his family?" *Id.* at 370, 388-89 (
Dep. 53:2-24, 130:15-131:2).          contacted the police who, in response, promised to
investigate the matter;          reported no incidents involving the blogger after this. *Id.* at 371-
73, 390-92 (          Dep. 56:20-58:2, 140:21-142:6). The only other time          felt
threatened was when his daughter told him a man was outside photographing his house, though
          did not see the man and does not know why someone would take such photos. *Id.* at

INTERVENOR WASHINGTON FAMILIES STANDING
TOGETHER'S MOTION FOR SUMMARY
JUDGMENT (NO. C:09-CV-05456 BHS) – 13
71718-0001/LEGAL21210430.1

Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

374-75 (                    Dep. 59:7-60:25).  He did not contact the police about the photographer.  *Id.*

at 376 (                    Dep. 71:10-25).

          received phone calls from a transgendered individual that he perceived as

"bothersome."  *Id.* at 381-82, 384-87 (                    Dep. 86:9-87:15, 90:7-91:3, 124:22-125:1).

did not contact the police about this caller.  *Id.* at 383, 385 (                    Dep. 88:18-20,

91:4-12).  Since the election,            has continued to act in a public role as a

and blogger, and on occasion has received emails or read blog posts calling him such

things as a "rat" or a "homophobic bigot."  *Id.* at 378-80 (                    Dep. 83:17-85:21).

        **k.**

        , participated in public events, and was listed by name in

newspaper articles in connection with the campaign.  *Id.*, Ex. P, at 397-98, 400-01 (

Dep. 5:24-25, 7:3-24, 10:3-15, 11:16-25).  He commented online on an article in The Stranger

about R-71 and identified himself                                        *Id.* at 399 (            Dep. 8:4-13).

He said people wrote back but "[t]hey never said anything about me – you know, they never said,

you know, I am a jerk for working on the campaign or whatever."  *Id.* at 402 (                    Dep.

13:17-23).            was never threatened or harassed in connection with R-71, though he heard

a few voicemails left for                              which included cursing, references to gay

sex, and statements about                    alleged hatred of homosexuals.  *Id.* at 404-07 (

Dep. 15:24-16:25, 21:21-22:6).                              never saw anyone physically attacked for

their association with R-71.  *Id.* at 403-04 (            14:21-15:16).

        **l.**

        shared his opinion on R-71 in public

debates, on the radio, at a public state legislative hearing, and in a letter to the editor in the

Kitsap Sun.  *Id.*, Ex. Q, at 412-17 (            Dep. 11:8-12:8, 13:17-21, 14:4-17, 17:25-18:15).

does not mind if others know he signed the petition because "it's so miniscule compared

to the fact that I'm a public spokesman, so it's not really – my signature is hardly the issue."  *Id.*

INTERVENOR WASHINGTON FAMILIES STANDING
TOGETHER'S MOTION FOR SUMMARY
JUDGMENT (NO. C:09-CV-05456 BHS) – 14

71718-0001/LEGAL21210430.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

at 418-19 (          Dep. 19:1-20:4).  He does not believe he would be put at risk if R-71 petitions

were released. *Id.* at 419-20 (          Dep. 20:25-21:2).

          described a single incident of harassment because of his support for R-71. *Id.* at

420-28 (          Dep. 21:3-29:3).  He was handing out brochures on R-71 on a ferry, and a

person he handed the brochure to read it, became upset, said it was "a bunch of shit," wadded up

the brochure, and threw it at          The man then told          that he and his partner "had just

as much right to get married as" did          and sought to have the other ferry passengers take a

vote on the issue.          determined the man was "at least temporarily berserk" and so "saw no

point in continuing." *Id.* at 422 (          Dep. 23:13-20).          left the area, and ferry workers

prevented the man from following him.          experienced nothing else that he considered

harassment based on his public support for R-71 before the election, and has not experienced

anything threatening post-election. *Id.* at 428-29 (          Dep. 29:1-3, 31:4-9).

          **m.**

                              *Id.*, Ex. R, at 434 (          Dep. 5:13-

16).  She signed R-71 at her church office, knew the petition was public upon request, and did

not take any steps to keep her signature private. *Id.* at 440 (          Dep. 34:1-10).  She was not

threatened or harassed as a result of signing the R-71 petition. *Id.* at 436 (          Dep. 15:5-12).

She is not aware of anyone who refused to sign the petition or put up an R-71 sign out of fear, or

was attacked or had property destroyed due to supporting R-71. *Id.* at 441, 444 (          Dep.

37:4-6, 56:7-23).  The church received about 5-10 phone calls telling the church to "shut up" and

that if it did not, it would be "taken down," but nobody followed up or damaged the church. *Id.*

at 436-38, 443 (          Dep. 15:21-16:13, 24:2-10, 40:9-16).  She is not "in any way fearful of

being harassed personally regarding R-71." *Id.* at 439, 442 (          Dep. 31:11-23; 39:4-6).

          **3.     The Written Discovery**

          On September 21, 2010, and October 1, 2010, Plaintiffs produced documents in response

to Defendant's Request for Production of Documents, which sought documents "relating to any

INTERVENOR WASHINGTON FAMILIES STANDING
TOGETHER'S MOTION FOR SUMMARY
JUDGMENT (NO. C:09-CV-05456 BHS) – 15
71718-0001/LEGAL21210430.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

alleged harassment, threat or retaliation relating directly or indirectly to R-71." *Id.*, Ex. S. Plaintiffs produced 1,542 pages of documents in response, primarily newspaper articles regarding the Prop. 8 campaign in California and the R-71 campaign in Washington. *Id.* ¶ 22.

What was *not* included in this production speaks volumes. At his deposition, stated that he sent an email solicitation to R-71 petition signers whose email addresses he retained, asking them to share their experiences of harassment. *Id.*, Ex. O, at 358-63 ( Dep. 30:3-35:8). confirmed any responses would have been provided in Plaintiffs' production. *Id.* WAFST has reviewed the production. It does not appear to contain any emails responding to 's solicitation in which a person indicates he or she was harassed because he or she signed the R-71 petition. *Id.* That is, despite solicitation, Plaintiffs have not been able to produce a *single piece* of documentary evidence showing a person who signed the R-71 petition was harassed simply because he or she signed the petition.

This is the sum total of the evidence supporting Plaintiffs' extraordinary "as applied" challenge to Washington's public disclosure requirements. It is, in a word, insufficient.

## II.    ARGUMENT

It is beyond dispute that the State's interest "in preserving the integrity of the electoral process" by requiring the disclosure of referendum petitions is an important state interest; indeed, it is the law of the case. *Doe*, 130 S. Ct. at 2819. The question before this Court is whether Plaintiffs have made the showing necessary to exempt those who signed the R-71 petitions under the "reasonable probability" standard governing their as-applied challenge. In light of the way in which they rely on a doctrine designed to protect minor parties harassed by government actors (or that government actors fail to protect), it is worth reviewing that standard with some care.

### A.    The Reasonable Probability Standard

The First Amendment provides a narrow exemption from general disclosure requirements to "minor parties" in limited instances. *See id.* at 2821 (noting "'minor parties' may be exempt from disclosure requirements" in certain circumstances) (quoting *Buckley v. Valeo*, 424 U.S. 1,

INTERVENOR WASHINGTON FAMILIES STANDING
TOGETHER'S MOTION FOR SUMMARY
JUDGMENT (NO. C:09-CV-05456 BHS) – 16
71718-0001/LEGAL21210430.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

74 (1976)).[3]  Minor parties are those "with little chance of winning an election," and which "are

less likely to have a sound financial base." *Buckley*, 424 U.S. at 70-71.  An example is the

Socialist Workers Party during the 1980s, "a small political party with approximately sixty

members in the State of Ohio," which had "little success at the polls," and whose "expenditures

in Ohio ... . averaged about $15,000 annually." *Brown*, 459 U.S. at 88-99.  Another example is

the NAACP in 1950s Alabama.  *See NAACP v. State of Alabama*, 357 U.S. 449 (1958).

Minor parties seeking disclosure exemptions must establish "a reasonable probability that

the compelled disclosure of . . . names will subject them to threats, harassment, or reprisals from

either Government officials or private parties." *Brown*, 459 U.S. at 93 (internal quotation marks

and citation omitted).  There is no blanket exemption for minor parties; rather, they must produce

evidence of probable harassment.  *See Buckley*, 424 U.S. at 74.  A minor party must show it will

suffer "*serious and widespread* harassment" and that law enforcement is unwilling or unable to

*take* action against threats or harassment.  *Doe*, 130 S. Ct. at 2829 (Sotomayor, J., concurring)

(emphasis added); *see also id.* at 2831 (Stevens, J. concurring).

Courts carefully review the type and amount of evidence that plaintiffs offer in support of

their claims for exemptions.  "A subjective fear of reprisal is insufficient to invoke first

amendment protection against a disclosure requirement." *Dole v. Local Union 375, Plumbers*

*Int'l Union*, 921 F.2d 969, 973 (9th Cir. 1990).  Instead, plaintiffs must put forth "objective and

articulable facts, which go beyond broad allegations or subjective fears." *Brock v. Local 375,*

*Plumbers Int'l Union, AFL-CIO*, 860 F.2d 346, 350 n.1 (9th Cir. 1988).  Courts reject claims

based on unsubstantiated speculation and subjective fears.[4]

---

[3] *See also Brown*, 459 U.S. at 94 (discussing test for "exempting minor parties" from disclosure laws); *Protectmarriage.com v. Bowen*, 599 F. Supp. 2d 1197, 1215 (E.D. Cal. 2009) ("[M]inor status is a necessary element of a successful as-applied claim . . . .").

[4] *E.g., Humphreys, Hutcheson & Moseley v. Donovan*, 755 F.2d 1211, 1221 (6th Cir. 1985); *Sherwin-Williams Co. v. Spitzer*, 2005 WL 2128938, at *5 (N.D.N.Y. Aug. 24, 2005) ("Speculating that the [disclosure] . . . may cause a withdrawal of membership does not bolster their claim of a First Amendment infringement.") (citation omitted); *Richey v. Tyson*, 120 F. Supp. 2d 1298, 1323-24 (S.D. Ala. 2000) (highlighting the distinction between the "reasonable probability" standard and the "subjective fear" articulated in that case).

INTERVENOR WASHINGTON FAMILIES STANDING
TOGETHER'S MOTION FOR SUMMARY
JUDGMENT (NO. C:09-CV-05456 BHS) – 17
71718-0001/LEGAL21210430.1

Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

The two seminal "reasonable probability" cases are illustrative. In *Brown*, the Supreme Court found an Ohio statute requiring reporting of the names and addresses of campaign contributors and recipients of campaign disbursements could not be constitutionally applied to the Socialist Workers Party ("SWP") because of the "substantial evidence" proffered in that case, including "threatening phone calls and hate mail, the burning of SWP literature, the destruction of SWP members' property, police harassment of a party candidate, and the firing of shots at an SWP office," in addition to the firing of twenty-two SWP members because of their party membership, "massive" FBI surveillance and a counterintelligence program "designed to impair the ability of the SWP . . . to function," 8,000,000 government documents relating to the SWP, and "numerous instances of recent harassment" of the SWP. 459 U.S. at 98-102.

Similarly, in *NAACP*, the Supreme Court upheld an as-applied challenge to a state law requiring disclosure of the identities of the NAACP's local membership because the NAACP "made an uncontroverted showing that on past occasions revelation of the identity of its rank-and-file members ha[d] exposed these members to economic reprisal, loss of employment, threat of physical coercion, and other manifestations of public hostility." 357 U.S. at 462.

In contrast, in *Protectmarriage.com*, the Eastern District of California held that proponents of a constitutional amendment defining marriage as being between a man and a woman had a "non-minor status" and that "[t]here is surely no evidence that the seven million individuals who voted in favor of Proposition 8 can be considered a 'fringe organization' or that their beliefs would be considered unpopular or unorthodox." 599 F. Supp. 2d at 1215-16.

**B.    The Application of the Reasonable Probability Standard to This Case**

The opinion of the Supreme Court in this case did not address what should happen on remand. The Court held only that as a general matter the State's decision to make petition signatures subject to the PRA was not unconstitutional, and that a minor party and its members "resisting disclosure can prevail under the First Amendment if they can" meet the reasonable probability standard. *Doe*, 130 S. Ct. at 2820.

INTERVENOR WASHINGTON FAMILIES STANDING
TOGETHER'S MOTION FOR SUMMARY
JUDGMENT (NO. C:09-CV-05456 BHS) – 18
71718-0001/LEGAL21210430.1

Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone: 206.359.8000
Fax:  206.359.9000

Four members of the Court provide further guidance. Through the concurring opinions of Justice Stevens (joined by Justice Breyer) and of Justice Sotomayor (joined by Justices Stevens and Ginsburg), four Justices provide this Court with concrete guidance, expressing their view that Plaintiffs can only prevail on their "as applied" challenge by showing not only that petition signers face serious threats or harassment, but that the government was either the source of those threats or has demonstrated an unwillingness or inability to protect R-71 petition signers from those threats.[5] Justice Sotomayor wrote, "Case-specific relief may be available . . . in the rare circumstance in which disclosure poses a reasonable probability of serious and widespread harassment *that the State is unwilling or unable to control.*" *Id.* at 2829 (emphasis added). Likewise, Justice Stevens wrote, "For an as-applied challenge to a law such as the PRA to succeed, there would have to be a significant threat of harassment directed at those who sign the petition *that cannot be mitigated by law enforcement measures.*" *Id.* at 2831 (emphasis added).[6]

In short, to survive summary judgment, Plaintiffs bear the burden of adducing sufficient evidence that a reasonable jury could find that (1) R-71 petition signers constitute a minor party and disclosure of R-71 petitions poses (2) a reasonable probability of (3) serious and widespread harassment against R-71 petition signers that (4) the State is unwilling or unable to control. But whatever the precise articulation of the "reasonable probability" standard applied to Plaintiffs' claims, it is plain that Plaintiffs cannot possibly prevail on the record before the Court.

**C.    As a Matter of Law, Plaintiffs Cannot Meet the Reasonable Probability Standard**

**1.    R-71 Petition Signers Are Not a Minor Party**

Plaintiffs' claims fail at the threshold as they plainly cannot demonstrate "minor party" status. There is no record evidence that petition signers constitute a cohesive organization (or

---

[5] As Justice Scalia expressed his view that petitions should essentially never be anonymous, *id.* at 2832, there actually are five Justices supporting this view.

[6] Justice Alito offered his view that "to assure a fair consideration of their claim," those seeking to avoid disclosure should be permitted to "rely on a wide array of evidence." *Id.* at 2823 (internal quotation marks and citation omitted). While instructive from an evidentiary standpoint, this analysis ultimately begs the question of what this "wide array of evidence" must demonstrate, and the remainder of Justice Alito's opinion shows he was more focused on what a party might need to show to avoid disclosure during (or before) a campaign than after the campaign had concluded. *Id.* at 2823-27.

INTERVENOR WASHINGTON FAMILIES STANDING
TOGETHER'S MOTION FOR SUMMARY
JUDGMENT (NO. C:09-CV-05456 BHS) – 19
71718-0001/LEGAL21210430.1

Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

"minor party") such that it would be appropriate to recognize associational interests binding those who signed R-71 petitions. Indeed, there is remarkably little evidence in the record with respect to the vast majority of those who signed the petition.

Plaintiffs' case rests on an effort to conflate R-71 petition signers with the political beliefs expressed by Plaintiffs. There is no record basis for this sleight of hand and no rational basis to support it. It is not apparent why a given individual signed an R-71 petition; i.e. whether she wished to see the domestic partnership law rejected or simply believed the public should have an opportunity to vote on the issue. *See Doe*, 130 S. Ct. at 2817 (noting that "[i]n most cases, the individual's signature will express the view that the law subject to the petition should be overturned" but a signer may be "agnostic as to the merits of the underlying law" and instead be "express[ing] the political view that the question should be considered 'by the whole electorate.'") (quoting *Meyer v. Grant*, 486 U.S. 414, 421 (1988)). That is, R-71 petition signers do not amount to the type of organization for whom the Supreme Court has sustained an as-applied challenge to a disclosure requirement, such as the NAACP or the SWP.

Even assuming every person who signed a petition did so because she opposed the domestic partnership law, this collection of voters would not be a "minor" party. Opponents of same-sex marriage do not hold dissident views. *Protectmarriage.com*, 599 F. Supp. 2d at 1219 (opposition to same-sex marriage is "a historically non-controversial belief"). The very suggestion is absurd. Nearly 840,000 Washingtonians (47% of those who voted) voted no on R-71, and R-71 passed in *only 10* of Washington's 39 counties. *See* Frame Decl. Ex. B.[7]

Popular groups like those who oppose marriage equality and domestic partnership laws are not the sorts of minor parties that courts are seeking to protect with the disclosure exemption, and the more than 137,000 people who signed R-71 in a mere sixty-eight days are a far cry from the sixty-member Socialist Party involved in *Brown*. If the rule were to the contrary—if no

---

[7] Far from being fringe, Plaintiffs' views are in some respects the law of Washington State. In 1998, Washington adopted the state Defense of Marriage Act ("DOMA"), which amended RCW 26.04.010 to describe marriage as a civil contract that is valid only if "between a male and a female." In 2006, the Washington State Supreme Court upheld the constitutionality of DOMA. *See Andersen v. King Cnty.*, 158 Wn.2d 1 (2006).

INTERVENOR WASHINGTON FAMILIES STANDING TOGETHER'S MOTION FOR SUMMARY JUDGMENT (NO. C:09-CV-05456 BHS) – 20

71718-0001/LEGAL21210430.1

Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

"minor party" showing were required—vast swathes of the populace would be exempt from disclosure laws.  The Democratic Party and progressive groups could undoubtedly show they are subjected to the type of rough campaign speech at issue here, *see* Frame Decl. ¶¶ 5-13, and the Republican Party and conservative organizations could do the same.  *See, e.g.*, Dkt. #200, ¶¶ 3-12.  This is why "minor status is a necessary element of a successful as-applied claim." *Protectmarriage.com*, 599 F. Supp. 2d at 1215.  If it were not, the as-applied exception would swallow the general rule of disclosure.  *Id.* at 1216 ("Prior courts surely were aware that members of major parties might . . . become the target of threats or harassment at the hands of extremist members of an opposing group . . . . [But] the Supreme Court [did not] create[] an exception . . . for the majority.").

Because Plaintiffs have adduced no evidence suggesting R-71 petition signers can be deemed a minor party, their as-applied challenge necessarily fails.

> **2.    Plaintiffs Cannot Show a Reasonable Probability that R-71 Petition Signers Will Face Severe and Widespread Harassment if R-71 Petitions Are Released**

Even if Plaintiffs qualify as a "minor party" for purposes of the disclosure exemption—which they do not—or even if the minor-party exemption sweeps so broadly as to encompass majority groups—which it does not—Plaintiffs cannot meet the reasonable probability standard.

As noted above, Plaintiffs seek relief for those who *signed* the R-71 petition—not PMW, signature gatherers, or community groups opposing the domestic partnership law.  It is here that Plaintiffs' evidence fails most dramatically.  The record in this case shows that Plaintiffs' claims are premised on the unpleasantries or simple political opposition that accompany any disputed election, such as public or telephone confrontations with PMW campaign workers and volunteers, "mooning" or obscene gestures directed at signature gatherers or sign wavers, and rude blog posts.  *Compare generally* Stafford Decl., Exs. A-R *with* Frame Decl. ¶¶ 5-13.  There are no allegations that any person who merely signed the R-71 petition—without taking a public stand—has been threatened or harassed (even at the low levels of those who were much more prominently involved in the campaign).  There are no allegations in the Complaint that *any*

INTERVENOR WASHINGTON FAMILIES STANDING
TOGETHER'S MOTION FOR SUMMARY
JUDGMENT (NO. C:09-CV-05456 BHS) – 21
71718-0001/LEGAL21210430.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

citizens refused to sign the R-71 petition for fear of harassment. Plaintiffs' showing fails as a matter of law for a host of reasons.

First, R-71 petition signers residing in most parts of the state were in the *majority*. Frame Decl. Ex. B. Plaintiffs have not begun to show that such individuals would suffer harassment if the fact of their signature became publicly available.

Second, the act of signing an R-71 petition is no secret; signatures could be viewed by signature gatherers, people deciding whether to sign the same petition, PMW campaign staffers, state election workers, and campaign observers during the signature verification process. Plaintiffs cannot maintain an as-applied challenge to prevent the disclosure of information that has never been private in the first instance. *Uphaus v. Wyman*, 360 U.S. 72, 81 (1959) (rejecting challenge to government effort to obtain list of guests who had attended a summer camp because the parties "had made public at the inception the association they now wish to keep private").

Third, Plaintiffs cannot show R-71 petition signers face a reasonable probability of severe harassment if petitions are disclosed *now*. The standard is prospective. *Dole*, 921 F.2d at 972. Here, there is no ongoing "association" of R-71 petition signers—the election is long since over—and Plaintiffs, despite having had years to gather evidence, have presented no evidence that disclosure poses a present day risk of harassment. The record, in fact, is to the contrary.[8]

Next, to the extent Plaintiffs rely on alleged statements and events occurring during the R-71 campaign, impolitic, argumentative, and even threatening statements are not uncommon in political campaigns and cannot sustain a reasonable probability showing.[9]  "Uninhibited speech

---

[8] *See* Stafford Decl., Exs. U-Z.

*Id.*, Exs. U-Z.

[9] The issues cuts both ways. *See* Frame Decl. ¶¶ 5-13. Those opposing the effort to qualify R-71 for the ballot, including members of WAFST, received angry telephone messages and were the subject of hostile, threatening, and harassing blog postings. *See id.* ¶¶ 10-12; Levinson Decl. in Opp'n to Mot. for TRO, Exs. E-G, filed in *Family PAC v. Reed*, No. 09-5662 (W.D. Wash. Oct. 21, 2009) (Dkt. #26).

INTERVENOR WASHINGTON FAMILIES STANDING
TOGETHER'S MOTION FOR SUMMARY
JUDGMENT (NO. C:09-CV-05456 BHS) – 22
71718-0001/LEGAL21210430.1

Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

is the single most important element upon which this nation has thrived." *State ex rel. Pub. Disclosure Comm'n v. 119 Vote No! Comm.*, 135 Wn.2d 618, 624-27 (1998). Heated debate lies at the core of our democracy and the First Amendment. That debate can be contentious because "[p]articularly in the . . . political realms, 'the tenets of one man . . . seem the rankest error to his neighbor.'" *Id.* at 625 (quoting *Cantwell v. Connecticut*, 310 U.S. 296, 310 (1940)). "At times such speech seems unpalatable, but the value of free debate overcomes the danger of misuse." *Id.* (citing *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995)).

Thus, "it is our law and our tradition that more speech, not less, is the governing rule." *Citizens United v. Fed. Election Comm'n*, 130 S. Ct. 876, 911 (U.S. 2010). The fundamental principle animating a democratic society is that individuals with differing views will hash out their differences through public debate; in the legislature, in the public square, or with friends, families, and neighbors. In short, when citizens are confronted with others "who feel differently about [public] matters," the way to address those differences is through debate—"to persuade them that they are wrong." *Texas v. Johnson*, 491 U.S. 397, 419 (1989). The salutary effects of free speech cannot be felt if we all retreat to the comfort of those we know already agree with us.

While one would wish that those who disagree will always do so civilly, the reality can be different, and passionate, rude, or even hostile speech has been squarely protected by the courts, and does not constitute harassment or threats warranting a disclosure exemption. To the contrary, "harsh criticism, short of unlawful action, is a price our people have traditionally been willing to pay for self-governance." *Doe*, 130 S. Ct. at 2837 (Scalia, J., concurring). "[R]unning a democracy takes a certain amount of civic courage," and the "First Amendment . . . [does not] protect you from criticism or even nasty phone calls when you exercise your political rights to . . . take part in the legislative process." Stafford Decl., Ex. T (Scalia, J.).[10]

---

[10] The Supreme Court has recognized that "language of the political arena . . . is often vituperative, abusive, and inexact." *Watts v. United States*, 394 U.S. 705, 706, 708 (1969) (per curiam) (district court erred in failing to enter a judgment of acquittal for a man accused of threatening the president by saying, "[i]f they ever make me carry a rifle, the first man I want to get in my sights is L.B.J" because the statement was "political hyperbole"); *cf. Cafeteria Emps. Union, Local 302 v. Angelos*, 320 U.S. 293, 295 (1943) (government may not hold a union liable for "loose language" that is "part of the conventional give-and-take in our economic and political controversies").

INTERVENOR WASHINGTON FAMILIES STANDING
TOGETHER'S MOTION FOR SUMMARY
JUDGMENT (NO. C:09-CV-05456 BHS) – 23
71718-0001/LEGAL21210430.1

Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

R-71 was designed to (based on one's views) strip away the civil rights of a vulnerable minority or protect the sanctity of traditional marriage. R-71 aroused passions, touched on fundamental beliefs, and unleashed vigorous speech. Plaintiffs' evidence amounts to nothing more than a showing that among the millions of Washington residents who campaigned for and against, debated, and voted on R-71, a handful of people expressed disagreement with a handful of others using colorful, or even rude and offensive, language and deeds common in today's political discourse, especially when touching on such charged topics. This evidence, even in combination, fails to rise to the level of a "reasonable probability . . . [of] threats, harassment, or reprisals."[11] It is difficult to see where the proverbial slippery slope would end for all other campaigns if the rhetoric of this campaign were deemed sufficient to vitiate Washington's PRA.

Plaintiffs' claim suffers from one final fatal deficiency. There is no evidence the State is unwilling or unable to respond to complaints of threats or harassments. To the contrary, the evidence before the Court is that the State is both willing and able to control any perceived threats or harassments against R-71 supporters brought to its attention. In the few instances in which Plaintiffs' witnesses contacted police, their concerns were addressed promptly. Thus, law enforcement measures can mitigate any threat of harassment, and that fact alone dooms Plaintiffs' claim. In short, this is not a situation like the NAACP faced in the South in the 1950s.

## III.    CONCLUSION

On this record, Plaintiffs' claims fail: (a) R-71 signatories do not constitute a minor party in need of special protection apart from State law enforcement, and (b) Plaintiffs have not put forth substantial, non-speculative evidence of anything more than heated political rhetoric.

For the reasons stated above, WAFST respectfully submits that this Court should grant WAFST's motion for summary judgment.

---

[11] See, e.g., Protectmarriage.com, 599 F. Supp. 2d at 1216-20 (no reasonable probability of harassment despite allegations of vandalism and threats made against those who supported Proposition 8); see also Dole, 921 F.2d at 972 (same, where minor party showed a decrease in contributions contemporaneous with the subpoena creating a risk of disclosure, but provided no objective evidence the decrease occurred because of the subpoena).

INTERVENOR WASHINGTON FAMILIES STANDING
TOGETHER'S MOTION FOR SUMMARY
JUDGMENT (NO. C:09-CV-05456 BHS) – 24
71718-0001/LEGAL21210430.1

Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1
2    DATED:  June 29, 2011

3                                             *s/ Kevin J. Hamilton*
4                                             Kevin J. Hamilton, WSBA No. 15648
5                                             Ryan J. McBrayer, WSBA No. 28338
6                                             William B. Stafford, WSBA No. 39849
7                                             **Perkins Coie LLP**
8                                             1201 Third Avenue, Suite 4800
9                                             Seattle, WA  98101-3099
10                                            Telephone:  206.359.8000
11                                            Facsimile:  206.359.9000
12                                            KHamilton@perkinscoie.com
13                                            WStafford@perkinscoie.com
14                                            RMcBrayer@perkinscoie.com
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45
46
47
48
49
50
51

INTERVENOR WASHINGTON FAMILIES STANDING
TOGETHER'S MOTION FOR SUMMARY
JUDGMENT (NO. C:09-CV-05456 BHS) – 25
71718-0001/LEGAL21210430.1

# CERTIFICATE OF SERVICE

I certify that on June 29, 2011, I electronically filed the foregoing INTERVENOR

WASHINGTON FAMILIES STANDING TOGETHER'S MOTION FOR SUMMARY

JUDGMENT with the Clerk of the Court using the CM/ECF system, which will send notification

of such filing to the following attorneys of record.

James Bopp, Jr.
Jared Haynie *(admitted pro hac vice)*
Joseph E La Rue *(admitted pro hac vice)*
**Bopp Coleson & Bostrom**
1 South Sixth Street
Terre Haute, IN 47807-3510
jboppjr@aol.com
sbieniek@bopplaw.com
jlarue@bopplaw.com

Anne Elizabeth Egeler
James Kendrick Pharris
Jay Douglas Geck
**Attorney General of Washington**
P.O. Box 40100
Olympia, WA 98504-0100
360-753-7085
anneel@atg.wa.gov
jamesp@atg.wa.gov
billc@atg.wa.gov

Stephen Walter Pidgeon
3002 Colby Avenue, Suite 306
Everett, WA  98201
stephen.pidgeon@comcast.net

*Attorneys for Sam Reed and
Brenda Galarza*

*Attorneys for Plaintiffs*

Duane M Swinton
Leslie R. Weatherhead
Steven Joseph Dixson
**Witherspoon Kelley Davenport & Toole**
422 W Riverside, Ste 1100
Spokane, WA 99201
dms@wkdtlaw.com
lwlibertas@aol.com
sjd@wkdtlaw.com

*Attorneys for Intervenor Washington
Coalition for Open Government*

CERTIFICATE OF SERVICE (NO. C:09-CV-
05456 BHS) – 1

71718-0001/LEGAL21196059.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

I certify under penalty of perjury that the foregoing is true and correct.

DATED this 29th day of June, 2011.

*s/ Kevin J. Hamilton*

Kevin J. Hamilton, WSBA No. 15648
**Perkins Coie** LLP
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Telephone:  206.359.8000
Facsimile:  206.359.9000
WStafford@perkinscoie.com

*Attorneys for Intervenor Washington
Families Standing Together*

CERTIFICATE OF SERVICE (NO. C:09-CV-
05456 BHS) – 2

71718-0001/LEGAL21196059.1