The Honorable Benjamin H. Settle

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT TACOMA

JOHN DOE #1, an individual, JOHN
DOE #2, an individual, and PROTECT
MARRIAGE WASHINGTON,

               Plaintiffs,

   v.

SAM REED, in his official capacity as
Secretary of State of Washington,
BRENDA GALARZA, in her official
capacity as Public Records Officer for the
Secretary of State of Washington,

               Defendants.

NO.  09-cv-05456-BHS

DEFENDANTS' MOTION TO
STRIKE AND DEFENDANTS'
RESPONSE TO PLAINTIFFS'
MOTION FOR SUMMARY
JUDGMENT

**NOTED ON MOTION
CALENDAR:**

**July 22, 2011**

**ORAL ARGUMENT
REQUESTED**

**FILED UNDER SEAL PURSUANT TO JOINT MOTION AT DKT. 220**

DEFENDANTS' MOTION TO STRIKE
AND DEFENDANTS' RESPONSE TO
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT
NO.  09-CV-05456-BHS

1

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

**TABLE OF CONTENTS**

I.   MOTION TO STRIKE..................................................................................... 2

    A.   Plaintiffs Bear The Burden Of Establishing The Authenticity And
         Admissibility Of The Evidence They Offer In Support Of The Motion ................. 2

    B.   Plaintiffs Have Not Authenticated The Documents Attached To The Haynie
         Declarations Or The Emails Allegedly Received By Plaintiff REDACTED ................. 3

    C.   Exhibits 3, 4, And 5 Are Inadmissible Hearsay For Which Fed. R. Evid. 807
         Provides No Exception ............................................................................ 4

         1.   The Hearsay In Exhibits 3, 4, And 5 Lacks Circumstantial Guarantees Of
              Trustworthiness ............................................................................... 5

         2.   Exhibits 3, 4, And 5 Lack The Probative Quality Of Sworn Testimony By
              The Sources Quoted In These Exhibits .................................................. 6

         3.   The Interests Of Justice Require The Rejection Of Exhibits 3, 4, And 5 .......... 7

         4.   Plaintiffs' Fed. R. Evid. 807 Notice Was Untimely And Deficient ................. 7

         5.   The Haynie Declarations And Exhibits 4 And 5 Contain Irrelevant
              Documents And Information ................................................................ 8

         6.   The Court Should Strike Evidence From Undisclosed Witnesses ................. 8

II.  RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ................. 9

    A.   Introduction ........................................................................................ 9

    B.   Counter Statement Of The Case ............................................................... 9

         1.   State Disclosure Of PMW Supporters ................................................... 9

         2.   Plaintiffs' Allegations Of Harassment .................................................. 10

              a.   Verbal And Written Exchanges And Gestures That Were Not
                   Perceived As A Threat .............................................................. 10

              b.   Concerns Resolved By The Police ................................................ 12

              c.   Experiences Witnesses Admit Arose Outside The Context Of The R-
                   71 ........................................................................................ 13

              d.   Allegations Relating To California's Proposition 8 ........................... 13

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

C.   ARGUMENT ................................................................................ 14

1.   The Plaintiffs' Motion Raises Issues Of Material Fact ...................................... 14

2.   PMW Has Not Met Its Burden To Show That Disclosure Will Result In
Serious Threats, Harassment, Or Reprisals That Will Impact The
Exercise Of Its First Amendment Rights ........................................................ 15

a.   Exemption From Disclosure Is Applied Only To Avoid Harassment
Of Minor Parties, Not Mainstream Political Organizations Like
PMW ............................................................................................................ 17

b.   "Flexibility In The Proof Of Injury" Still Requires A Showing Of
The Level Of Harm Demonstrated In *NAACP v. Alabama* ..................... 19

c.   Only "New Parties" With "No History" May Rely On The
Experiences Of Other Groups To Establish A Reasonable
Probability Of Harm .................................................................................. 21

3.   The Alleged Harm Will Not Impact The First Amendment Right Of
Association ...................................................................................................... 22

4.   The State Has An Indisputably Important Interest In Preserving The
Integrity Of The Electoral Process ................................................................ 23

D.   Conclusion ............................................................................................................ 24

DEFENDANTS' MOTION TO STRIKE
AND DEFENDANTS' RESPONSE TO
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT
NO.  09-CV-05456-BHS

ii

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Aamco Transmissions v. Baker,*
   591 F. Supp. 2d 788 (E.D. Pa. 2008) ........................................................ 6, 7

*ACLU v. City of Las Vegas,*
   13. F. Supp. 2d 1064 (D. Nev. 1998) ........................................................ 6

*Adobe Sys., Inc. v. Christenson,*
   2011 WL 540278 (D. Nev.) ........................................................ 3

*Allan v. Greenpoint Mortg. Funding,*
   730 F. Supp. 2d 1071 (N.D. Cal. 2010) ........................................................ 3

*Andersen v. King County,*
   138 P.3d 963 (2006) ........................................................ 19

*Atlantic Richfield Co. v. USA Petroleum Co.,*
   495 U.S. 3282 (1990) ........................................................ 15

*Averill v. City of Seattle,*
   325 F. Supp. 2d 1173 (2004) ........................................................ 17

*Brown v. Socialist Workers,*
   459 U.S. 87 (Ohio 1982) ........................................................ 17, 22

*Buckley v. Valeo,*
   424 U.S. 1 (1976) ........................................................ passim

*Citizens United v. Fed. Election Comm'n,*
   130 U.S. 876 (2010) ........................................................ 22

*Demirchyan v. Gonzales,*
   2010 WL 3521784 (C.D. Cal. 2010) ........................................................ 3, 6

*Doe v. Reed,*
   130 S. Ct. 2811 (2010) ........................................................ passim

*Eisenstadt v. Centel Corp.,*
   113 F.3d 738 (7th Cir. 1997) ........................................................ 6

*Fair Housing Council of Riverside Cnty, Inc. v. Riverside Two,*
   249 F.3d 1132 (9th Cir. 2001) ........................................................ 15

*Fed. Elec. Comm'n v. Hall-Tyner Election Campaign Comm.,*
   678 F.2d 416 (2nd Cir. 1982) ........................................................ 18

DEFENDANTS' MOTION TO STRIKE
AND DEFENDANTS' RESPONSE TO
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT
NO. 09-CV-05456-BHS

iii

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

*Fong v. Am. Airlines,*
  626 F.2d 759 (9th Cir. 1980) ................................................................. 5

*Freedom Socialist Party v. Bradbury,*
  48 P.3d 199 (Or. 2002) ........................................................................ 18

*Green v. Baca,*
  226 F.R.D. 624 (C.D. Cal. 2005) ........................................................... 7

*Hall v. CIA,*
  538 F. Supp. 2d 64 (D.C. 2008) ......................................................... 3, 4

*Hollingsworth v. Perry,*
  130 S. Ct. 705 (2010) .......................................................................... 19

*Huff v. White Motor Corp.,*
  609 F.2d 286 (7th Cir. 1979) ................................................................. 5

*In re Bedrock Mktg.,*
  404 B.R. 929 (D. Utah 2009) ................................................................. 3

*In re Cypress Semiconductor Sec. Litig.,*
  891 F. Supp. 1369 (N.D. Cal. 1995) ...................................................... 6

*In re Easysaver Rewards Litig.,*
  737 F. Supp. 2d 1159 (S.D. Cal. 2010) ................................................. 4

*Land Grantors in Henderson, Union, & Webster Counties v. United States,*
  86 Fed. Cl. 35 (2009) ........................................................................... 5

*Larez v. City of Los Angeles,*
  946 F.2d 630 (9th Cir. 1991) ................................................................. 6

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
  475 U.S. 574 (1986) ............................................................................ 15

*McIntyre v. Ohio Elections. Comm'n,*
  514 U.S. 334 (1995) ............................................................................ 16

*Montanans for Justice v. State ex rel. McGrath,*
  146 P.3d 759 (Mont. 2006) .................................................................. 24

*NAACP v. Alabama,*
  357 U.S. 449 (1958) .................................................................. 17, 19, 22

*Partido Revolutionaries Dominico v. Pradido Revoludionaries Dominico,*
  311 F. Supp. 2d 14 (D.D.C. 2004) ......................................................... 6

*Piva v. Xerox Corp.,*
  654 F.2d 591 (9th Cir. 1981) ................................................................. 8

DEFENDANTS' MOTION TO STRIKE
AND DEFENDANTS' RESPONSE TO
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT
NO. 09-CV-05456-BHS

iv

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

*Porter v. Bowen,*
    496 F.3d 1009 (9th Cir. 2007) ................................................................ 24

*ProtectMarriage.com v. Bowen,*
    599 F. Supp. 2d 1197 (2009) ........................................................ 14, 19

*Provenz v. Miller,*
    102 F.3d 1478 (9th Cir. 1996) ............................................................... 3

*Sours v. Glanz,*
    24 F. App'x 912 (10th Cir. 2001) ........................................................... 8

*United States v. Bonds,*
    608 F.3d 495 (9th Cir. 2010) ................................................................. 5

*United States v. Canan,*
    48 F.3d 954 (6th Cir. 1995) ................................................................... 5

*United States v. Fredericks,*
    599 F.2d 262 (8th Cir. 1979) ................................................................. 6

*United States v. Mandel,*
    591 F.2d 1347 (4th Cir. 1979) ............................................................... 8

*United States v. Mathis,*
    559 F.2d 294 (5th Cir. 1977) ................................................................. 7

*United States v. Musel,*
    421 F. Supp. 2d 1153 (S.D. Iowa 2006) ................................................. 8

*United States v. Ochoa,*
    229 F.3d 631 (7th Cir. 2000) ................................................................. 5

*United States v. Tome,*
    61 F.3d 1446 (10th Cir. 1995) ............................................................... 5

**Constitutional Provisions**

Ga. Const. art. 1, § 4 (2011) ...................................................................... 18

Idaho Const. art. III, § 28 (2011) ............................................................... 18

Kan. Const. art. 15, §16 (2010) .................................................................. 18

La. Const. art.12, § 15 (2011) .................................................................... 18

Mich. Const. art. 1, § 25 (2011) ................................................................. 18

Miss. Const. art. 14, § 263A (2011) ........................................................... 18

Neb. Const. art. 1, § 29 (2010) ................................................................... 18

DEFENDANTS' MOTION TO STRIKE
AND DEFENDANTS' RESPONSE TO
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT
NO.  09-CV-05456-BHS

v

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1   Okla. Const. art. 2, § 35 (2010) ................................................................. 18

2   Or. Const. art. XV, §5a (2011) ................................................................... 18

3   S.C. Const. art. XVII, § 15 (2010) .............................................................. 18

4   S.D. Const. art. 21, § 9 (2011) .................................................................... 18

5   Tenn. Const. art. 11, § 18 (2011) ................................................................ 18

6   Va. Const. art. 1, § 15-A (2011) ................................................................. 18

7   Wis. Const. art. 13, § 13 (2011) ................................................................. 19

8                                        **Statutes**

9   Ala. Code § 30-1-19 (1975) ........................................................................ 18

10   Alaska Stat. § 25.05.011 (2010) ................................................................ 18

11   Ariz. Rev. Stat. § 25-901 (2011) .............................................................. 18

12   Ark. Code Ann. §9-11-109 (2010) ........................................................... 18

13   Colo. Rev. Stat. § 14-2-104 (2011) .......................................................... 18

14   Del. Code Ann. tit. 13, § 101 (2011) ........................................................ 18

15   Fla. Stat. § 741.212 (2011) ....................................................................... 18

16   Haw. Rev. Stat. § 572-1 (2011) ................................................................ 18

17   Ill. Comp. Stat § 750 5/201 (2011) ........................................................... 18

18   Ind. Code § 31-11-1-1 (2011) ................................................................... 18

19   Ky. Rev. Stat. § 233 A (2010) .................................................................. 18

20   Md. Code Ann. Fam. Law § 2-101( 2011) ............................................... 18

21   Me. Rev. Stat. tit. 19-A, § 650 (2010) ..................................................... 18

22   Minn. Stat. § 517.01 (2011) ...................................................................... 18

23   Mo. Rev. Stat. § 451.022 (2011) .............................................................. 18

24   Mont. Code Ann. § 40-1-103 (2010) ........................................................ 18

25   N.C. Gen. Stat. § 51-1 (2010) ................................................................... 18

26   N.D. Cent. Code § 14-03-01 (2011) ......................................................... 18

DEFENDANTS' MOTION TO STRIKE
AND DEFENDANTS' RESPONSE TO
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT
NO. 09-CV-05456-BHS

vi

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1    Nev. Rev. Stat. § 122.020 (2011) .................................................................... 18

2    Ohio Rev. Code Ann. § 3101.01 (2011) ......................................................... 18

3    Pa. Stat. Ann. § 1102 (2011) .......................................................................... 18

4    Tex. Fam. Code Ann. § 2.001 (2011) ............................................................ 18

5    Utah Code Ann. § 30-1-4.5 (2011) ................................................................ 18

6    W.Va. Code § 48-2-104 (2011) ..................................................................... 19

7    Wash. Rev. Code § 26.04.020(1)(c) (2010) ................................................... 19

8    Wyo. Stat. Ann. § 20-1-101 (2011) ............................................................... 19

9    **<u>Rules</u>**

10   Civ. R. 7(g) ....................................................................................................... 2

11   Fed. R. Civ. P. 56(c) ................................................................................. 14, 15

12   Fed. R. Civ. P. 56(c)(4) .................................................................................... 2

13   Fed. R. Evid. 401 ............................................................................................. 8

14   Fed. R. Evid. 402 ............................................................................................. 8

15   Fed. R. Evid. 807 .................................................................................... passim

16   Fed. R. Evid. 901 ......................................................................................... 2, 3

17   Fed. R. Evid. 901(b)(1) .................................................................................... 3

18   Fed. R. Evid. 902 ......................................................................................... 2, 3

19

20

21

22

23

24

25

26

DEFENDANTS' MOTION TO STRIKE       vii       ATTORNEY GENERAL OF WASHINGTON
AND DEFENDANTS' RESPONSE TO                        1125 Washington Street SE
PLAINTIFFS' MOTION FOR SUMMARY                     PO Box 40100
JUDGMENT                                         Olympia, WA 98504-0100
NO. 09-CV-05456-BHS                            (360) 753-6200

# I.    MOTION TO STRIKE

Defendants move this Court to strike the first and second declarations of Jared Haynie, and Exhibits 4 and 5 to the Hanynie declarations, and to strike Exhibit 3 to the declaration of REDACTED, as inadmissible evidence.[1]

Plaintiffs must prove the reasonable probability of violent threats, harassment, and reprisals against Washingtonians who signed the R-71 petition.  In support of their summary judgment motion on this critical issue, plaintiffs try to overwhelm the Court and defense counsel with a plethora of unauthenticated and hearsay emails, web site postings, internet news sites, and You Tube videos that generally concern opposing views on same sex civil unions.

Rather than establishing bases for admitting this evidence, plaintiffs have simply attached them to two declarations from legal counsel Jared Haynie, and one from plaintiff REDACTED , a public figure who maintains the public website of Protect Marriage Washington (PMW).  Defendants hereby move to strike these declarations and their exhibits because of plaintiffs' failure to provide any foundation for their admission into evidence, as required by Fed. R. Civ. P. 56(c)(4), and Fed. R. Evid. 901, 902 and 807.  This motion to strike is incorporated into this brief pursuant to Civ. R. 7(g), and is based in substantial part on the declaration of Aaron Williams submitted herewith.

## A.    Plaintiffs Bear The Burden Of Establishing The Authenticity And Admissibility Of The Evidence They Offer In Support Of The Motion

Fed. R. Civ. P. 56(c)(4) mandates that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  The same requirements apply to documents and materials attached to summary judgment affidavits.  *Id.*  Evidence offered in connection with summary judgment motions

---

[1] Dkt 210-1 to Dkt. 210-7; Dkt. 211-1 to Dkt. 211-3; Dkt. 212-1 to Dkt. 212-3; Dkt. 213-1 to Dkt. 213-2; Dkt 209-4.  See Proposed Order Granting Motion to Strike.

DEFENDANTS' MOTION TO STRIKE
AND DEFENDANTS' RESPONSE TO
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT
NO. 09-CV-05456-BHS

2

1   faces the same obstacles and burdens a party has at trial.   Unauthenticated or inadmissible

2   evidence is stricken from the record.  *Hall v. CIA*, 538 F. Supp. 2d 64, 71 (D.C. 2008).

3   **B.   Plaintiffs Have Not Authenticated The Documents Attached To The Haynie Declarations Or The Emails Allegedly Received By Plaintiff** REDACTED

4

5   Under Fed. R. Evid. 901 the proponent of evidence must prove that a document is what

6   it purports to be.   *Demirchyan v. Gonzales*, 2010 WL 3521784 (C.D. Cal. 2010).   As

7   sponsoring witnesses, Messrs. Haynie and REDACTED must detail their personal knowledge and

8   experience with the generation, maintenance, and integrity of the documents and internet

9   materials they attach to their declarations.  Fed. R. Evid. 901(b)(1); *Allan v. Greenpoint Mortg.*

10   *Funding*, 730 F. Supp. 2d 1071, 1075-76 (N.D. Cal. 2010); *In re Bedrock Mktg.*, 404 B.R. 929,

11   937 (D. Utah 2009).  The requisite details for authenticating and admitting evidence cannot be

12   included in a summary judgment reply brief.  *See Provenz v. Miller*, 102 F.3d 1478, 1493 (9th

13   Cir. 1996).

14   Mr. Haynie provides no information to establish the authenticity of the newspaper,

15   magazine, and web site materials attached as Exhibit 4 or the You Tube and social media

16   postings attached as Exhibit 5.  These materials are not self-authenticating under Fed. R. Evid.

17   902.

18   Courts do not treat printouts from internet websites as self-authenticating or admit them without foundation or authentication.   The court in *In re*

19   *Homestore.com., Inc. v. Securities Litigation*, 347 F. Supp. 2d 769, 782-783 (C.D. Cal. 2004), states in this regard:

20

21   Printouts from a web site do not bear the indicia of reliability demanded for other self authenticating documents under Fed. R.

22   Evid. 902.  To be authenticated, some statement or affidavit from someone with knowledge is required; for example, Homestore's

23   web master or someone else with personal knowledge would be sufficient.

24

25   *Adobe Sys., Inc. v. Christenson*, 2011 WL 540278, at *9 (D. Nev.); *see also In re Easysaver*

26

DEFENDANTS' MOTION TO STRIKE AND DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT NO. 09-CV-05456-BHS

3

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1  *Rewards Litig.*, 737 F. Supp. 2d 1159, 1168 (S.D. Cal. 2010) (screen shots and materials taken

2  from websites are not self-authenticating; information taken from internet lacks reliability and

3  must be properly authenticated); *Allan*, 730 F. Supp. 2d at 1075-76 (sponsoring witness'

4  affidavits must personally identify and authenticate pages from websites relied on to support

5  claims); *Hall*, 538 F. Supp. at 68 (declarant must have "personal knowledge" of events and

6  documents attached to written testimony).

7      Similarly, Mr. REDACTED provides no authenticating information about the emails and

8  photographs comprising Exhibit 3 that were generated by other persons.  Instead, he labels

9  them generally as "threatening" or "vandalism" without providing circumstances or context

10  that proves his assertions or establishes his declaration is based upon personal knowledge.  The

11  Court should strike these declarations and exhibits.

12  **C.    Exhibits 3, 4, And 5 Are Inadmissible Hearsay For Which Fed. R. Evid. 807**
13  **       Provides No Exception**

14      On June 29, 2011, the day they filed their summary judgment pleadings, plaintiffs

15  provided for the first time a notice of intent to offer all their summary judgment evidence

16  pursuant to Fed. R. Evid. 807.  Known as the "residual exception" to the rules barring hearsay,

17  Rule 807 states:

18          A statement not specifically covered by Rule 803 or 804 but having
          equivalent circumstantial guarantees of trustworthiness, is not excluded by the
19          hearsay rule, if the court determines that (A) the statement is offered as
          evidence of a material fact; (B) the statement is more probative on the point for
20          which it is offered than any other evidence which the proponent can procure
          through reasonable efforts; and (C) the general purposes of these rules and the
21          interests of justice will best be served by admission of the statement into
          evidence. However, a statement may not be admitted under this exception
22          unless the proponent of it makes known to the adverse party sufficiently in
          advance of the trial or hearing to provide the adverse party with a fair
23          opportunity to prepare to meet it, the proponent's intention to offer the
          statement and the particulars of it, including the name and address of the
24          declarant.

25

26

DEFENDANTS' MOTION TO STRIKE
AND DEFENDANTS' RESPONSE TO
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT
NO. 09-CV-05456-BHS

4

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1    Fed. R. Evid. 807 is the only hearsay exception cited by plaintiffs as grounds for admitting the

2    third-party statements and documents comprising Exhibits 3, 4, and 5 to the REDACTED and

3    Haynie Declarations.  As a matter of law, "this exception is not to be used as a new and broad

4    hearsay exception, but rather is to be used rarely and in exceptional circumstances." *United*

5    *States v. Bonds*, 608 F.3d 495, 500 (9th Cir. 2010); *Fong v. Am. Airlines*, 626 F.2d 759 (9th

6    Cir. 1980).

7    　　　To justify admission under Fed. R. Evid. 807, the proponent must establish five

8    elements: (1) the hearsay itself must have circumstantial guarantees of trustworthiness; (2) the

9    hearsay must be material; (3) the hearsay must be more probative than any other evidence the

10   proponent can procure; (4) admission of the hearsay must serve the interests of justice; and (5)

11   the proponent must notify the other parties to the case of the intended use of each hearsay

12   statement and the names and addresses of each hearsay declarant so that the opposing side(s)

13   have a fair opportunity to evaluate and challenge the hearsay. *Fong*, 626 F.2d at 763; *Huff v.*

14   *White Motor Corp.*, 609 F.2d 286, 290-91 (7th Cir. 1979).  Exhibits 3, 4, and 5 fail to meet

15   each of these requirements.

16   **1.    The Hearsay In Exhibits 3, 4, And 5 Lacks Circumstantial Guarantees Of**
         **Trustworthiness**
17

18   　　　Fed. R. Evid. 807's first element requires that plaintiff establish for each individual

19   statement in Exhibits 3, 4, and 5 the "indicia of trustworthiness" that justify its admission.

20   *United States v. Canan*, 48 F.3d 954, 960 (6th Cir. 1995).  Trustworthiness for each hearsay

21   statement must be evident in the statement itself and not proven by other evidence.  *United*

22   *States v. Ochoa*, 229 F.3d 631, 637 (7th Cir. 2000); *United States v. Tome*, 61 F.3d 1446, 1452

23   (10th Cir. 1995).  Factors demonstrating hearsay is *untrustworthy* are statements that were not

24   made under oath, were not made based upon personal knowledge, were uncorroborated or not

25   spontaneous, and were not subject to cross-examination.  *E.g., Land Grantors in Henderson,*

26   *Union, & Webster Counties v. United States*, 86 Fed. Cl. 35, 41-43 (2009); *United States v.*

DEFENDANTS' MOTION TO STRIKE
AND DEFENDANTS' RESPONSE TO
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT
NO. 09-CV-05456-BHS

5

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1   *Fredericks*, 599 F.2d 262, 265 (8th Cir. 1979); *Aamco Transmissions v. Baker*, 591 F. Supp. 2d

2   788, 799 (E.D. Pa. 2008).  If the speaker(s) of the hearsay statements are not identified, the

3   evidence is not trustworthy under Fed. R. Evid. 807.  *Partido Revolutionaries Dominico v.*

4   *Pradido Revoludionaries Dominico*, 311 F. Supp. 2d 14, 19 (D.D.C. 2004).   The hearsay

5   contained in Exhibits 3, 4, and 5 is not admissible under FRE 807 because of these factors.

6       **2.**      **Exhibits 3, 4, And 5 Lack The Probative Quality Of Sworn Testimony By**

7                          **The Sources Quoted In These Exhibits**

8           Fed. R. Evid. 807 will not provide the basis for admitting hearsay statements when the

9   offeror of the hearsay had the option of obtaining the same evidence from other sources.  This

10  is particularly true as to newspaper and magazine articles and audio or TV programming,

11  which accounts for all of Exhibits 4 and 5, and for the emails authored by unknown persons in

12  Mr. REDACTED's Exhibit 3.

13          Thus, in *Larez v. City of Los Angeles*, 946 F.2d 630 (9th Cir. 1991), the court excluded

14  newspaper articles quoting the defendant making remarks dismissive of alleged civil rights

15  violations by police officers.  Holding that Fed. R. Evid. 807's mandate is a "best evidence

16  requirement," the court held that it would be error to admit the newspaper or magazine

17  accounts because "testimony from the reporters themselves would have been better." *Larez*, at

18  946 F.2d at 644.  Furthermore, where, as in this case, plaintiffs fail to show any efforts to

19  obtain the more probative evidence from the declarants of the hearsay, the courts have

20  excluded the hearsay under Fed. R. Evid. 807. *Id.* at 643; *Eisenstadt v. Centel Corp.*, 113 F.3d

21  738, 743 (7th Cir. 1997).   This result has been followed by many federal courts.  *E.g.*,

22  *Demirchyan,* 2010 WL 3521784 at *11; *ACLU v. City of Las Vegas*, 13 F. Supp. 2d 1064, 1070

23  (D. Nev. 1998); *In re Cypress Semiconductor Sec. Litig.*, 891 F. Supp. 1369, 1374 (N.D. Cal.

24  1995).  Finally, even when court rulings have precluded live testimony from the sources of the

25  hearsay statements, newspaper and news service accounts of those hearsay statements or

26  occurrences are excluded under Fed. R. Evid. 807.  *Green v. Baca*, 226 F.R.D. 624, 639 (C.D.

DEFENDANTS' MOTION TO STRIKE
AND DEFENDANTS' RESPONSE TO
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT
NO. 09-CV-05456-BHS

6

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1   Cal. 2005); *In re Cypress Semiconductor*, 891 F. Supp. at 1374-75 (1995).

2        The Haynie and REDACTED Declarations describe no efforts to obtain non-hearsay

3   testimony from the sources of the hearsay offered as evidence of a reasonable probability of

4   violence, threats, and retribution directed at signors of R-71 petitions.  The contents of Exhibits

5   3, 4, and 5 are not "more probative" than any other evidence that plaintiffs could and should

6   have obtained and must be excluded.

7        **3.**     **The Interests Of Justice Require The Rejection Of Exhibits 3, 4, And 5**

8        Admission of the multiple hearsay contained in Exhibits 3, 4, and 5 in order to grant

9   plaintiffs summary judgment will contravene the interests of justice.  Demonstrating probable

10   injury if the identities of R-71 petition signors are released is plaintiffs' burden in this case.  To

11   relieve them of that burden by allowing evidence of hearsay internet postings and emails –

12   most of which have no relationship to R-71 or Washington State – would be unjust and

13   contrary to the purposes of the evidentiary rules.  "In both civil and criminal cases, our

14   common law heritage has always favored the presentation of live testimony over the

15   presentation of hearsay testimony by the out-of-court declarant."  *United States v. Mathis*, 559

16   F.2d 294, 299 (5th Cir. 1977).  Where, as in this case, plaintiffs have opted not to obtain direct,

17   non-hearsay evidence, Fed. R. Evid. 807 is not available because "admitting this evidence

18   would give [plaintiffs] the unfettered ability to present a one-sided version of events, which

19   [defendants] could not test through cross-examination."  *Aamco Transmissions*, 591 F. Supp.

20   2d at 800.

21        **4.**     **Plaintiffs' Fed. R. Evid. 807 Notice Was Untimely And Deficient**

22        This action has been pending since 2009.  The majority of plaintiffs' Fed. R. Evid. 807

23   evidence dates back that far.  In addition, defendants have had discovery outstanding that

24   would require production of this evidence much earlier than June 29, 2011:

25        [Fed. R. Evid. 807] requires the proponent to notify the adverse party of this or

26        her intention to offer the evidence under this rule sufficiently in advance of the

DEFENDANTS' MOTION TO STRIKE     7     ATTORNEY GENERAL OF WASHINGTON
AND DEFENDANTS' RESPONSE TO     1125 Washington Street SE
PLAINTIFFS' MOTION FOR SUMMARY     PO Box 40100
JUDGMENT     Olympia, WA 98504-0100
NO. 09-CV-05456-BHS     (360) 753-6200

trial or hearing to provide the adverse party with a fair opportunity to meet the evidence . . . The purpose of the notice requirement is to give adverse parties an opportunity to attack the trustworthiness of the evidence.

*Piva v. Xerox Corp.*, 654 F.2d 591, 595-96 (9th Cir. 1981).  The notice requirements of Fed. R. Evid. 807 are strictly construed.  *Sours v. Glanz*, 24 F. App'x 912, 914 (10th Cir. 2001). Courts have rejected evidence offered under this Rule simply because a party has failed to disclose the names and addresses of all the hearsay declarants.  *United States v. Mandel*, 591 F.2d 1347, 1369 (4th Cir. 1979); *United States v. Musel*, 421 F. Supp. 2d 1153, 1161 (S.D. Iowa 2006).

The offer of the hearsay in Exhibits 4 and 5 is both late and incurably incomplete. Defendants will have no opportunity at this point to conduct the investigation, interviewing and depositions needed to rebut evidence withheld until June 29, 2011.  No identifying information for the hearsay declarants or for Exhibits 3, 4, and 5 was provided.  Failure to provide notice is yet another basis to reject all alleged evidence offered under Fed. R. Evid. 807.

### 5.   The Haynie Declarations And Exhibits 4 And 5 Contain Irrelevant Documents And Information

In addition to being authenticated and admissible, evidence must be relevant to the case.  Fed. R. Evid. 401, 402.  Plaintiffs' summary judgment pertains to the critical issue of whether there is reasonable probability of violence, threats, or reprisals against Washingtonians who signed or declined to sign R-71 petitions.  Evidence of events or statements concerning gay marriage generally, about campaigns or controversies in other states, and about circumstances before 2009 are irrelevant and should be stricken.

### 6.   The Court Should Strike Evidence From Undisclosed Witnesses

This Court entered a pre-trial scheduling order requiring that plaintiffs disclose all witnesses.  The order provides that untimely disclosed witnesses will not be allowed.  None of

DEFENDANTS' MOTION TO STRIKE
AND DEFENDANTS' RESPONSE TO
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT
NO. 09-CV-05456-BHS

8

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1  the hearsay declarants in Exhibits 3, 4, and 5 were disclosed as ordered. The testimony and

2  documents associated with those witnesses must be stricken.

3  **II.     RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

4  **A.     Introduction**

5       The issue in this case is not whether the plaintiffs experienced harassment during the R-

6  71 election. If that were the issue, it could be addressed by the police, or in a civil harassment

7  or criminal proceeding. The issue is whether the plaintiffs are a minor group, so far outside the

8  mainstream, that disclosure of its supporters will impede the exercise of Protect Marriage

9  Washington's First Amendment right of association. *Doe v. Reed*, 130 S. Ct. 2811 (2010).

10       The answer to this question is already known. For two years, the names of over 850

11  PMW donors have been published on a State website. The disclosure has had no impact on

12  PMW's right of association. PMW cannot identify a single donor that experienced harassment.

13  Nor has it identified anyone who declined to sign the petition or donate due to fear of

14  disclosure.

15       Now that the election has been over for nearly two years, disclosure of the petitions is

16  even more unlikely to impact the plaintiffs' First Amendment right of association. Only before

17  an election is there a reasonable possibility that harassment might infringe on the right of

18  association by discouraging people from signing petitions or participating in the campaign.

19  *Doe*, 130 S. Ct. at 2822 (Alito, J., concurring).

20  **B.     Counter Statement Of The Case**

21       **1.     State Disclosure Of PMW Supporters**

22       PMW is not a new political group. PMW registered as a Washington political

23  committee in May 2009, collected signatures statewide on the R-71 petition, and campaigned

24  statewide in anticipation of the 2009 November general election.

25       Since June 2009, the name, city, state, and zip code of over 850 individuals and

26  businesses that contributed to PMW have been posted on a publically searchable database by

DEFENDANTS' MOTION TO STRIKE
AND DEFENDANTS' RESPONSE TO
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT
NO. 09-CV-05456-BHS

9

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1    the Washington Public Disclosure Commission.  Dkt. 198 at ¶16.  If $100 or more was

2    donated, the Commission also posted the contributor's occupation and employer.  *Id. at* ¶¶16-

3    17.  Fearing that disclosure of supporters would result in harassment, PMW moved to seal the

4    names.  The Commission found that PMW was unable to show that any harassment was caused

5    by disclosure, and therefore denied the request.  *Id.* at ¶21.

6        No one who simply donated money to PMW's R-71 campaign, and therefore had their

7    name and address posted on the internet by the Public Disclosure Commission, is alleged to

8    have suffered retaliation or harassment that deterred the exercise of the First Amendment right

9    of association.  Similarly, no one who simply signed the petition is alleged to have suffered

10   retaliation or harassment that deterred the exercise of the First Amendment right of association.

11       **2.      Plaintiffs' Allegations Of Harassment**

12       The plaintiffs' allegations fall into four categories:  (1) verbal or written comments that

13   did not cause witnesses to feel threatened or call the police; (2) concerns resolved by the

14   police; (3) experiences witnesses admit arose outside the context of the R-71 campaign or may

15   not be related to R-71; and (4) allegations relating to California's Proposition 8.

16           **a.      Verbal And Written Exchanges And Gestures That Were Not**
17           **Perceived As A Threat**

18       The plaintiffs cite few examples of verbal or written exchanges in Washington.  A

19   number of plaintiffs' allegations cite the testimony of  REDACTED , one of the primary

20   spokespersons for the R-71 campaign.  Plaintiffs contend she experienced "loss of employment

21   and job opportunities."  Dkt. #209 at 9, (citing Ex. 2 ¶¶ 36–44).   REDACTED   filed an

22   application to volunteer at SafePlace, a women's shelter.   A SafePlace representative

23   telephoned Ms. REDACTED to ask about her public, "anti-gay" stand, because the SafePlace staff

24   includes lesbians and transgender individuals.  Pl. Ex. 2 at ¶ 40.  Ms. REDACTEDl's application

25   was <u>not</u> denied.   Rather, as she admits in her declaration, she chose to withdraw her

26   application.  *Id.* at 8, ¶ 43.  Plaintiffs also claim that Ms. REDACTED received "hate mail."  Dkt.

DEFENDANTS' MOTION TO STRIKE
AND DEFENDANTS' RESPONSE TO
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT
NO. 09-CV-05456-BHS

10

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1    #209 at 9, (citing Ex. 4). Ms. REDACTED received one sheet of paper, stating "Christian bigot."

2    *Id.* There was nothing threatening contained in the letter. *Id.* Finally, plaintiffs contend Ms.

3    REDACTED suffered "acts of intimidation through photography." Dkt. 209 at 9. A young woman

4    used her cell phone to take a picture of REDACTED and REDACTED while they were in a parking

5    lot gathering signatures, and stated that she was going to post the picture on the internet. Ms.

6    REDACTED told the young woman not to post the picture. Dkt. 214 at 186. The REDACTED did not

7    check to see whether the picture was posted on the internet, and did not feel the need to contact

8    the police. *Id.* at 187.

9         Plaintiffs allege that "activists lashed out, promising emotional harm to supporters'

10    children by threatening to convert them to homosexuality." Dkt. 209 at 13, citing Ex. 1-9, at

11    11:25-12:20. The citation is to the testimony of Pastor REDACTED, who testified that there were a

12    few notes left in front of his church, stating "nothing will come of this for you" and "your

13    children will be just like us." Ex. 1-9 to Dkt. 209 at 11:25 to 12-7. When asked whether he

14    believed his parishioners or the church were being threatened with harm, Pastor REDACTED

15    answered: "Of course I don't think so. I didn't have that kind of fear." *Id.* at 16:12-16.

16         Plaintiffs contend that REDACTED, a PMW campaign organizer, was told he

17    deserved to die. Dkt. 209 at 11, (citing Ex. 1-8, at 19:5-6, 19:19-24). REDACTED testified that

18    after an R-71 rally at an intersection in Vancouver, Washington, a man said "what you guys are

19    doing is wrong. You guys deserve to die. Everybody deserves to live." *Id.* at 17:2-6; 19:13-

20    24. REDACTED saw a police officer in the vicinity, but chose not to contact him. *Id.* at 21:19-25.

21    Plaintiffs also claim REDACTED witnessed "lewd and perverse demonstrations." Dkt. 209 at 9,

22    (citing Ex. 1-8 at 22-24). The cited demonstration was three men in thong bathing suits

23    walking through a public site during an R-71 rally. *Id.* at 22-24.

24         A number of plaintiffs' citations were to written or verbal comments received by REDACTED

25    REDACTED, the head of REDACTED . Dkt. 209, at 9 (citing Dkt. 2-4); Ex. 1 at

26    10 (citing 1-11 at 58-59, 86-87). Multiple citations are made to "intimidating" phone calls

DEFENDANTS' MOTION TO STRIKE
AND DEFENDANTS' RESPONSE TO
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT
NO. 09-CV-05456-BHS

11

1   received by Mr. REDACTED, from a single caller, Krystal Mountaine.   REDACTED also

2   received calls from Ms. REDACTED, and reported the calls to the Lacey, Washington police

3   department. Dkt. 197-4, Ex. 9.  After an officer spoke with Ms. REDACTED, the calls stopped.

4   *Id.* at 54:15 to 55:4.

5               **b.        Concerns Resolved By The Police**

6           Nearly all of the plaintiffs' citations to internet postings in Washington are citations to a

7   single blog site. Dkt. 209, at 9 (citing Ex. 4-195, 4-83, 4-84), 10 (citing 4-189), at 11 (citing 4-

8   195, 3-1 at 13), 12 (citing 4-84, 3-1), 13 (citing Ex. 4-189).   REDACTED reported his

9   concerns about the blog to the police.  *Id.* at 56:25 to 57:19.  Bellingham Police Detective

10  Allan Jensen contacted the blogger, John Bisceglia, and investigated the complaint. Dkt. 199,

11  Ex. A.  As a result of the investigation, Mr. Bisceglia apologized and agreed to remove any

12  post that might offend others.  *Id.* at 5.  No complaints were made about the blog after

13  Detective Jensen handled the matter.  The blog is no longer on the internet.

14          Plaintiffs cite a phone message heard by   REDACTED , an employee of Pastor

15  REDACTED's church.  The caller stated: "I'm going to kill the pastor." Dkt. 209 at 10.  He did

16  not state why he was making the threat, and did not mention R-71 or any other issue.   In

17  response to a call from Ms. REDACTED, two Redmond police officers investigated the message.

18  Ms. REDACTED felt the Redmond police were "absolutely" doing their best. Dkt. 214 at 430.

19          Plaintiffs allege that a "perpetrator threatened to kill" a supporter's "child and the

20  whole family." Dkt. 209 at 13 (citing Ex. 1-3).  A local newspaper ran a story about REDACTED

21  REDACTED's Tea Party affiliation and legislative campaign, and mentioned that she signed the R-71

22  petition.  The next day an unidentified caller told her 13-year-old son "I will kill you and your

23  family" and then hung up. Dkt. 197-3, Ex. 7 at 17:19 to 18:18. Ms. REDACTED and her son admitted

24  in statements to the police that the caller said absolutely nothing to indicate whether the threat

25  was related to R-71, Ms. REDACTED's Tea Party activism, or any other issue or conflict with family

26  members.  Dkt. 201, Ex. A at 4-5.  The police responded to Ms. REDACTED's call within five

DEFENDANTS' MOTION TO STRIKE
AND DEFENDANTS' RESPONSE TO
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT
NO. 09-CV-05456-BHS

12

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1   minutes. *Id.* at 19:13-20; Dkt. 201, Ex. A at 1.  Officer Andrew Mehl explained how to deal

2   with any future callers, and assured her that he would do extra patrols of the house. Dkt. 201.

3        Plaintiffs' contention that "there is evidence of at least one physical assault against the

4   thirteen-year-old child of a prominent supporter" is similarly misleading.  Ms. [REDACTED] testified

5   that months after the conclusion of the election, she traveled with her son from Everett to

6   Ocean Shores for a Republican Party conference. Dkt. 205-4, Ex. M at 41:23 to 50:25; Dkt

7   214, Ex. 1 at 106:2-15.  While her son was standing alone outside their motel, a man and a

8   woman drove by, and the woman tossed a snack size container of applesauce out the window.

9   *Id.*  The applesauce got on Ms. [REDACTED]'s son's clothing.  Plaintiffs have offered nothing to

10  indicate that this Ocean Shores couple knew REDACTED was a defeated candidate in a

11  district over 100 miles away, or to show that they knew or cared what her stance was on R-71.

     c.   **Experiences Witnesses Admit Arose Outside The Context Of The R-71**

12      Plaintiffs rely heavily on alleged incidents that pre-date the existence of R-71, and

13  therefore are clearly unrelated. REDACTED Decl. at ¶12.  For example, plaintiffs contend a sign

14  was pointed at a pastor's head, saying "throw rocks here," during a "Day of Silence" high

15  school students held to show support for gay classmates. Dkt 197-2, Ex. 6 at 24:14 to 26:21;

16  Dkt. 197-1, Ex. 1 at 20:1 to 21:1. REDACTED held a rally to object to the students' event.  This

17  occurred a year before the R-71 petition existed, and had nothing to do with same-sex

18  partnership.  When asked whether anything was thrown at him, Pastor REDACTED stated, "Oh,

19  no.  I mean, that wouldn't have happened." *Id.* at 28:17-18.  According to Pastor REDACTED,

20  the presence of the police at his rally helped to prevent any violence. *Id.* at 35:11-19.

     d.   **Allegations Relating To California's Proposition 8**

21      The bulk of plaintiffs' citations relate to incidents that occurred in California, as a result

22  of Proposition 8.  Because PMW has a full history in Washington, including over two years of

23  public disclosure of the names and addresses of over 850 of its contributors, evidence

DEFENDANTS' MOTION TO STRIKE
AND DEFENDANTS' RESPONSE TO
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT
NO. 09-CV-05456-BHS

13

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1   regarding California is irrelevant.   Even if it were admissible, the evidence would be

2   insufficient to meet the plaintiffs' burden of establishing that disclosure will result in serious

3   harassment or reprisals that will impact their First Amendment right of association.

4        If the Court permits the plaintiffs to rely on the California declarations, in violation of

5   the Joint Scheduling Order, the Court will find that the alleged "harassment" amounts to little

6   more than hurt feelings.  For example, one declarant related that "members of the country club

7   have made rude comments to me about my sign [supporting Proposition 8]," and that gay

8   members of the country club "used to greet me warmly; now, they give me looks of disdain

9   and do not greet me as I pass."  Dkt. 4, Ex. 13 at 52 ¶ 7.  Another complained that her pastor

10  "told her to find another church."  She was upset that her pastor "was not going to tell [the

11  congregation] how to vote" on Proposition 8, even though she lobbied him to and thought he

12  was required to.  Dkt. 4, Ex. 13 at 212 ¶¶ 4-6.  All of the declarations contain similarly trivial

13  allegations.

14       Like Washington, California has disclosed the names of contributors to the "traditional

15  marriage" organizations campaigning for Proposition 8.  *ProtectMarriage.com v. Bowen*, 599

16  F. Supp. 2d 1197 (2009).  Although the names have been publically available since 2009, the

17  plaintiffs have not offered any evidence that the contributors suffered any harassment

18  following the disclosure, or that the threat of harassment has in any way impacted First

19  Amendment associational rights.

20  **C.    ARGUMENT**

21       **1.    The Plaintiffs' Motion Raises Issues Of Material Fact**

22       The Federal Rules permit summary judgment when there is "no genuine issue as to any

23  material fact" and the petitioners are "entitled to judgment as a matter of law."  Fed. R. Civ. P.

24  56(c).  When parties file cross motions for summary judgment, asserting that there are no

25  issues of material fact, it "does not vitiate the court's responsibility to determine whether

26  disputed issues of material fact are present."  *Fair Housing Council of Riverside Cnty, Inc. v.*

DEFENDANTS' MOTION TO STRIKE
AND DEFENDANTS' RESPONSE TO
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT
NO. 09-CV-05456-BHS

14

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1   *Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).  Because the material plaintiffs rely on

2   raises issues of material fact, their request for summary judgment cannot be granted under Fed.

3   R. Civ. P. 56(c).  Rather than relying on the undisputed testimony of their witnesses, plaintiffs

4   opted to rely on hundreds of citations to web pages and blogs without proper authentication.

5   REDACTED Decl.  In addition, plaintiffs rely on the testimony of out-of-state, confidential

6   declarants who were not disclosed as witnesses pursuant to the Joint Scheduling Order entered

7   by this Court.  Dkt. 128.  Because the identity of these declarants was never disclosed, the

8   defendants have had no opportunity to conduct discovery or obtain contrary evidence.

9         Since the defendants dispute the authenticity and content of the web pages and blogs,

10   and dispute the testimony of the undisclosed witnesses, "'inferences to be drawn from the

11   underlying facts . . . must be viewed in the light most favorable to the party opposing the

12   motion.'"  *Atlantic Richfield Co. v. USA Petroleum Co.,* 495 U.S. 328, 332 (1990), (citing

13   *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)).  The inference

14   to be drawn from the disputed material is that despite the fact that the names of donors to

15   PMW have been public information for nearly two years, Washington has not seen harassment,

16   threats, or reprisals, that have impaired anyone's First Amendment right to associate, or

17   deterred anyone from associating.  To the extent any blogger or prank caller made anyone feel

18   uncomfortable, our state and local police provided immediate assistance.  As a result, the

19   individuals that troubled the plaintiffs' spokespersons and campaign leaders voluntarily

20   stopped their behavior.  Evidence regarding California is not relevant, but if it were, the

21   inference to be draw is that California's state and local police were likely to have been just as

22   responsive, and equally successful in persuading people to behave in a civil manner.

23        **2.    PMW Has Not Met Its Burden To Show That Disclosure Will Result In Serious Threats, Harassment, Or Reprisals That Will Impact The Exercise Of Its First Amendment Rights**

24

25         The plaintiffs' motion fails to satisfy the test established by the United States Supreme

26   Court.  The Supreme Court has held that a minority party or group may be exempt from

DEFENDANTS' MOTION TO STRIKE
AND DEFENDANTS' RESPONSE TO
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT
NO. 09-CV-05456-BHS

15

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1    disclosure if there is a "reasonable probability of serious and widespread harassment that the

2    State is unwilling or unable to control." *Doe*, 130 S. Ct. at 2829 (Sotomayor, J., concurring).

3    The test reiterates the Court's prior holding that the State's important interest in disclosure can

4    be overcome only "where the threat to the exercise of First Amendment rights is so serious and

5    the state's interest furthered by disclosure so insubstantial that the Act's requirements cannot

6    be constitutionally applied." *Buckley*, 424 U.S. 1, 71 (1976).

7          In determining whether protection of a group's First Amendment right of association

8    outweighs the State's interest in disclosure, the courts consider not only the nature of the

9    harassment, but also the nature of the group that is being harassed, and how harassment will

10   impact that particular group's ability to associate.  It is typical to experience harassment and

11   threats during an election.  Dkt. 200; Dkt. 207.  For most groups, such behavior does not

12   cripple the group's ability to associate.  Therefore, the harassment is appropriately addressed in

13   civil or criminal cases, not through the extraordinary remedy of applying the First Amendment

14   to prohibit public disclosure of election-related information.

15         However, "'from time to time throughout history, persecuted groups have been able to

16   criticize oppressive practices and laws either anonymously or not at all.'"  *Doe,* 130 S. Ct. at

17   2831 (Stevens, J. concurring), quoting *McIntyre v. Ohio Elections. Comm'n,* 514 U.S. 334, 342

18   (1995).  When such a group is reviled, fear of exposure causes people to decline to associate

19   with or contribute to the group.  The Supreme Court has held that the risk of harassment of

20   such "'minor parties'" may require exemption from otherwise permissible disclosure

21   requirements, to preserve the First Amendment right of association.  *Doe,* 130 S. Ct. at 2821,

22   (quoting *Buckley* 424 U.S. at 74).

23         In reviewing this case, the Supreme Court commented that the plaintiffs offered "scant

24   evidence" in support of their claim.  *Doe,* 130 S. Ct. at 2821.  "Indeed, what little plaintiffs do

25   offer with respect to typical petitions in Washington hurts, not helps."  *Id.*  As the Court noted,

26   the State has released several petitions in recent years, "without incident."  *Id.*  The

DEFENDANTS' MOTION TO STRIKE
AND DEFENDANTS' RESPONSE TO
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT
NO. 09-CV-05456-BHS

16

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1   circumstances the Supreme Court has determined warrant exemption from public disclosure

2   are dramatically different than the circumstances presented by PMW.

3           a.      **Exemption From Disclosure Is Applied Only To Avoid Harassment
                    Of Minor Parties, Not Mainstream Political Organizations Like**
4                   **PMW**

5           In each case in which the Supreme Court exempted a party from a legitimate state

6   disclosure requirement, the party or group was a minor organization whose ability to associate

7   would be severely impaired by disclosure.   "[T]he governmental interest in disclosure is

8   diminished when the contribution in question is made to a minor party with little chance of

9   winning an election." *Buckley*, 424 U.S. at 70.

10          For example, the Supreme Court addressed the minority interests of African-Americans

11  in the 1950's who were challenging segregation in the deep south. *NAACP v. Alabama*, 357

12  U.S. 449, 462-63 (1958).   In contrast to PMW, the organization did not simply offer evidence

13  that its spokespersons might be harassed.   Instead, it "made an uncontroverted showing" that

14  its "rank and file" members suffered loss of employment, threat of physical coercion and other

15  manifestations of public hostility that would cause individuals to decline to associate with the

16  organization.   *Id.* at 462.   *Brown v. Socialist Workers*, 459 U.S. 87 (1982), also involved the

17  associational rights of a minor political party.   The Ohio Socialist Workers Party (SWP) was a

18  tiny, radical group of approximately sixty members, working toward the unpopular goal of

19  abolishing capitalism and establishing socialism. *Brown,* 459 U.S. at 88.   The Court noted that

20  in 1980, the SWP's U.S. senatorial candidate received just one-point-nine percent of the total

21  vote.   *Id.* at 89.   In *Brown*, the Socialist Workers Party proved "specific incidents of private

22  and government hostility," including destruction of members' property, extensive government

23  harassment, and the firing of shots at the SWP's office.   *Id.* at 99.   Many of the SWP's

24  members lost their jobs because of their membership in a highly disliked organization.   *Id.*

25  *Averill v. City of Seattle*, 325 F. Supp. 2d 1173 (2004), applied the decision in *Brown* to the

26  Freedom Socialist Party, a "minor political party" that describes itself as dedicated to

DEFENDANTS' MOTION TO STRIKE                              17                 ATTORNEY GENERAL OF WASHINGTON
AND DEFENDANTS' RESPONSE TO                                                      1125 Washington Street SE
PLAINTIFFS' MOTION FOR SUMMARY                                                        PO Box 40100
JUDGMENT                                                                         Olympia, WA 98504-0100
NO. 09-CV-05456-BHS                                                                  (360) 753-6200

establishing a socialist government. *See Freedom Socialist Party v. Bradbury*, 48 P.3d 199 (Or. 2002).

Similarly, disclosure of contributors was found to be likely to impede the ability of the Communist Party, a "minority political group," to exercise its right of association. *Fed. Elec. Comm'n v. Hall-Tyner Election Campaign Comm.*, 678 F.2d 416, 417 (2nd Cir. 1982). The Court noted that the Communist Party was so far out of favor that it was "illegal in many states simply to be a member of the Communist Party" or to make a donation. *Id.* at 422. When disclosure "causes potential supporters of an organization to refrain from engaging in protected activity," the First Amendment right of association is endangered. *Id.* at 423.

The plaintiffs claim their views in favor of traditional marriage are "extremely unpopular." Dkt. 209 at 15. In reality, plaintiffs are a mainstream political organization, not an ostracized minor group. In fact, PMW successfully gathered over 130,000 R-71 petition signatures statewide. *Doe*, 130 S. Ct. at 2816. They obtained 838,842 votes in the R-71 election, and lost by a narrow margin of 53% to 47%. *Id.* PMW's position won the majority of the vote in 29 of Washington's 39 counties. Dkt. 207, Ex. B. Losing a close election does not make PMW a minor party, comparable to the NAACP, Socialist Workers Party or Freedom Socialist Party.

Plaintiffs contend that "declarations of state" attack the views of those opposing same sex marriage. Dkt. 209, at 15. In reality, Washington, like the vast majority of states, prohibits marriage for couples "other than a male and a female."[2] Washington's Supreme Court held

---

[2] Ala. Code § 30-1-19 (1975); Alaska Stat. § 25.05.011 (2010); Ariz. Rev. Stat. § 25-901 (2011); Ark. Code Ann. §9-11-109 (2010); Colo. Rev. Stat. § 14-2-104 (2011); Del. Code Ann. tit. 13, § 101 (2011); Fla. Stat. § 741.212 (2011); Ga. Const. art. 1, § 4 (2011); Haw. Rev. Stat. § 572-1 (2011); Idaho Const. art. III, § 28 (2011); Ill. Comp. Stat § 750 5/201 (2011); Ind. Code § 31-11-1-1 (2011); Kan. Const. art. 15, §16 (2010); Ky. Rev. Stat. § 233 A (2010); La. Const. art.12, § 15 (2011); Me. Rev. Stat. tit. 19-A, § 650 (2010); Md. Code Ann. Fam. Law § 2-101( 2011); Mich. Const. art. 1, § 25 (2011); Minn. Stat. § 517.01 (2011); Miss. Const. art. 14, § 263A (2011); Mo. Rev. Stat. § 451.022 (2011); Mont. Code Ann. § 40-1-103 (2010); Neb. Const. art. 1, § 29 (2010); Nev. Rev. Stat. § 122.020 (2011); N.C. Gen. Stat. § 51-1 (2010); N.D. Cent. Code § 14-03-01 (2011); Ohio Rev. Code Ann. § 3101.01 (2011); Okla. Const. art. 2, § 35 (2010); Or. Const. art. XV, §5a (2011); Pa. Stat. Ann. § 1102 (2011); S.C. Const. art. XVII, § 15 (2010); S.D. Const. art. 21, § 9 (2011); Tenn. Const. art. 11, § 18 (2011); Tex. Fam. Code Ann. § 2.001 (2011); Utah Code Ann. § 30-1-4.5 (2011); Va. Const. art. 1, § 15-A (2011); Wash.

---

DEFENDANTS' MOTION TO STRIKE
AND DEFENDANTS' RESPONSE TO
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT
NO. 09-CV-05456-BHS

18

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1    that our State's statutory prohibition on same-sex marriage complies with the Washington

2    constitution. *Andersen v. King County*, 138 P.3d 963 (2006).

3        The idea that supporters of traditional marriage can claim minority status was

4    specifically rejected by the federal district court in California. ProtectMarriage.com, a group

5    advocating for "traditional marriage" in the context of California's Proposition 8, claimed it

6    was a minor party. The court held that in "light of clearly established precedent, this Court is

7    unable to say . . . that the Plaintiffs' potential burden is even remotely comparable [to that in

8    *Brown v. Socialist Workers Party*]." *ProtectMarriage.com v. Bowen*, 599 F. Supp. 2d 1197,

9    1214 (2009). There "is surely no evidence that the seven million individuals who voted in

10   favor of Proposition 8 can be considered a 'fringe organization' or that their beliefs would be

11   considered unpopular or unorthodox." *Id.* at 1215.[3]

12       This Court should reject plaintiffs' invitation to depart from the United States

13   Supreme Court, and prohibit access to public records based on a threat of harassment to a

14   group that that clearly is not a minor party, unable to withstand the impact of typical election

15   events.

16       **b.    "Flexibility In The Proof Of Injury" Still Requires A Showing Of
        The Level Of Harm Demonstrated In *NAACP v. Alabama***

17

18       Citing *Buckley*, plaintiffs ask for "flexibility in the proof of injury." Dkt. 209 at 8. In

19   *Buckley*, a few people refused to contribute to a minor party because they feared disclosure.

20   *Buckley*, 424 U.S. at 72. Despite this proof of harm, the Court held that "the substantial public

21   interest in disclosure . . . outweighs the harm generally alleged." *Id.* at 72. The Court

22   explained that it will not recognize a blanket exemption even for minor parties, but will allow

23   the injury to be shown in a variety of ways.

24   Rev. Code § 26.04.020(1)(c) (2010); W.Va. Code § 48-2-104 (2011); Wis. Const. art. 13, § 13 (2011); Wyo. Stat.
     Ann. § 20-1-101 (2011).
         [3] In reviewing a district court order allowing live audio and visual streaming of a Proposition 8 trial, the
25   Supreme Court held that the local rule allowing broadcast was improperly adopted. *Hollingsworth v. Perry*, 130
     S. Ct. 705 (2010). Because the local rule was invalid, broadcast was not permitted. *Id.* at 714-715. It is important
26   to note that the Supreme Court did not close the trial, or otherwise limit the attendance of the public.

DEFENDANTS' MOTION TO STRIKE                          19          ATTORNEY GENERAL OF WASHINGTON
AND DEFENDANTS' RESPONSE TO                                               1125 Washington Street SE
PLAINTIFFS' MOTION FOR SUMMARY                                                 PO Box 40100
JUDGMENT                                                                 Olympia, WA 98504-0100
NO. 09-CV-05456-BHS                                                           (360) 753-6200

1   The proof may include, for example, specific evidence of past or present
2 harassment of members due to their associational ties, or of harassment directed
 against the organization itself.  A pattern of threats or specific manifestations of
3 public hostility may be sufficient.  New parties that have no history upon which to
 draw may be able to offer evidence of reprisals and threats directed against
4 individuals or organizations holding similar views.  Where it exists the type of
 chill and harassment identified in *NAACP v. Alabama* can be shown.
5

6 *Buckley*, 424 U.S. at 74.  The threat to the exercise of First Amendment rights must be "so

7 serious and the state interest furthered by disclosure so insubstantial that the Act's requirements

8 cannot be constitutionally applied." *Buckley*, 424 U.S. at 71.  In this case, the type of chill and

9 harassment identified in *NAACP* simply does not exist.  The witnesses offered by PMW are

10 sponsors of R-71, who made every effort to expose the public to their political opinions.

11 Their experiences do not demonstrate a probability that "rank and file" signers of the petition

12 would be subject to harassment sufficient to persuade them not to associate with PMW.

13   The Supreme Court justices have also indicated that the First Amendment will not be

14 used to prohibit distribution of information to the public unless there is a showing that the

15 harassment will not be addressed by the State.  As Justice Sotomayor stated in a concurring

16 opinion joined by Justices Stevens and Breyer, the First Amendment is not applicable unless

17 "there is serious and widespread harassment that the State is unwilling or unable to control."

18 *Doe*, 130 S. Ct. at 2829 (Sotomayor, J., concurring).  In a concurring opinion joined by

19 Justice Breyer, Justice Stevens reiterated that to succeed, PMW must show "significant threat

20 of harassment directed at those who sign the petition that cannot be mitigated by law

21 enforcement measures." *Id.* at 2831 (Stevens, J., concurring).  Justice Scalia wrote that "the

22 First Amendment does not prohibit public disclosure" and emphasized that "[t]here are laws

23 against threats and intimidation." *Id.* at 2832, 2837.  Thus, five justices have indicated that if

24 the State is willing and able to control the harassment, the First Amendment does not prohibit

25 public disclosure.  As is evident in the deposition testimony of plaintiffs' witnesses, as well

26

DEFENDANTS' MOTION TO STRIKE     20    ATTORNEY GENERAL OF WASHINGTON
AND DEFENDANTS' RESPONSE TO          1125 Washington Street SE
PLAINTIFFS' MOTION FOR SUMMARY         PO Box 40100
JUDGMENT                 Olympia, WA 98504-0100
NO. 09-CV-05456-BHS             (360) 753-6200

1   as the police reports offered by the State, Washington's state and local police have been

2   willing and able to respond to all allegations of harassment. *See, e.g.* Dkt. 199, 201.

3         c.     **Only "New Parties" With "No History" May Rely On The Experiences Of Other Groups To Establish A Reasonable Probability Of Harm**

5         Unable to show a reasonable probability of harm in Washington, plaintiffs primarily

6   rely on internet pages relating to California's Proposition 8. Williams Decl. at ¶ 11. Resort to

7   events in California, in an entirely different election, is improper. In *Buckley*, the Supreme

8   Court stated that "new parties that have no history upon which to draw may be able to offer

9   evidence of reprisals and threats directed against individuals or organizations holding similar

10  views." *Buckley*, 424 U.S. at 74. Since there is an abundance of evidence regarding PMW's

11  history in Washington, including concrete statistics showing the near success of their election

12  campaign, reliance on allegations regarding other organizations is not permitted under *Buckley*.

13        The history of PMW in this state provides direct evidence of what happens when the

14  names of its supporters are publically disclosed. Since June 2009, the Washington Public

15  Disclosure Commission has disclosed the names, addresses, contribution amount, and even

16  some employment information, regarding over 850 donors to PMW. Dkt. 198 ¶¶ 16-18. The

17  information is posted on the internet, in a searchable database. *Id.* The public can view the

18  entire list, run a search of the database to find contributors from a particular city or zip code, or

19  run a search to locate contributors employed by a particular business or in a specific

20  occupation. *Id.* ¶ 18. Although PMW's supporters have been publically disclosed for over two

21  years, the plaintiffs are unable to name anyone who has been harassed, threatened, or otherwise

22  harmed as a result of the disclosure.[4] Given PMW's directly relevant history, it cannot claim

23  to be a "new party" with "no history." *Buckley*, 424 U.S. at 74.

---

25      [4] PMW spokesman REDACTED admitted that he has been emailing petition signers and donors, asking them to inform PMW of any instances of harassment or threats that occurred. Dkt. 197-2 Ex. 5, at 30:21 to 33:3. Although the petitions were signed in highly public locations, and the names of donors have been disclosed for over two years, PMW is still unable to name anyone who was harassed after merely signing or donating.

1   The Supreme Court addressed precisely this issue in *Citizens United v. Federal*
2   *Election Commission*, 130 U.S. 876 (2010). The Court refused to find harassment based on
3   injuries allegedly suffered in campaigns not at issue in *Citizens United*. The Court stated that
4   Citizens United "offered no evidence that its members may face similar threats or reprisals. To
5   the contrary, Citizens United has been disclosing its donors for years and has identified no
6   instance of harassment or retaliation." *Citizens United*, 130 S. Ct. at 916. As was the case in
7   *Citizens United*, this Court can already see the effect of disclosure. The State has been
8   disclosing the names and addresses of PMW's donors for over two years. Yet PMW does not
9   allege that the donors have been harassed, or discouraged from exercising their First
10  Amendment right of association.

### 3. The Alleged Harm Will Not Impact The First Amendment Right Of Association

11
12  The plaintiffs' burden requires them to establish not only a reasonable risk of harassment,
13  threats, and reprisals, but also a link between the alleged harm and the ability to exercise the First
14  Amendment right of association. For a minor party, a justified fear of public and government
15  persecution can deter so many people from participating or donating that it impedes the group's
16  ability to associate. For example, in *NAACP*, the Court stated that the severity of the harm would
17  impact the right of association by causing NAACP members to withdraw from the Association,
18  and by creating sufficient fear to dissuade others from joining. *NAACP*, 357 U.S. at 463. In
19  *Brown*, the Court noted that in some cases, a fear of reprisal "'may deter contributions to the
20  point where the movement cannot survive.'" *Brown*, 459 U.S. at 93 (quoting *Buckley*, 424
21  U.S. at 71).

22  In this case, there is no need to speculate. The evidence shows that public disclosure of
23  PMW's supporters on a searchable, internet database had no impact on its right of association.
24  The Public Disclosure Commission began disclosing the names and addresses of PMW's donors
25  during the time PMW was gathering signatures. Dkt. 198 ¶¶ 16-18. And yet there is no allegation

26

DEFENDANTS' MOTION TO STRIKE
AND DEFENDANTS' RESPONSE TO
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT
NO. 09-CV-05456-BHS

22

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1   that the disclosure impacted PMW's association for the purpose of gathering signatures, or the

2   associational interest in drawing other campaign donors.   Nor did disclosure affect PMW's

3   associational interest in persuading the public to participate in the campaign.

4        Since the election concluded nearly two years ago, no associational right could be

5   impaired by disclosure.   As Justice Alito's concurring opinion in *Doe* notes, only before the

6   election is there a possibility that harassment might infringe on First Amendment rights of

7   association by discouraging people from signing petitions or participating in the campaign.

8   *Doe*, 130 S. Ct. at 2822 (Alito, J., concurring).   Since there is no risk to association, the

9   extraordinary measure of applying the First Amendment is not an option.

10   **4.**      **The State Has An Indisputably Important Interest In Preserving The Integrity Of The Electoral Process**

11        In a footnote argument, plaintiffs contend the State's interest in public disclosure is

12   "nonexistent" now that the election is over. Dkt. 209 at 5 n.3.   The Supreme Court disagrees.

13   In a ruling issued long after the conclusion of the election, the Court held that "[t]he State's

14   interest in preserving the integrity of the electoral process is undoubtedly important." *Doe,* 130

15   S. Ct. at 2820.   The Court explained that allowing the public access to the signed petitions

16   "helps prevent certain types of petition fraud otherwise difficult to detect." *Id.* at 2820.   The

17   people of Washington have a "particularly strong" interest in eliminating fraud. *Id.* at 2819.

18   Fraud "'drives honest citizens out of the democratic process and breeds distrust of our

19   government.'" *Id.* (quoting *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006)).

20        Since PMW is still a registered Washington political committee, the question of

21   whether PMW engaged in fraud continues to be a live issue. Dkt. 198 ¶ 19.   As the Court

22   emphasized, public disclosure "helps prevent certain types of petition fraud otherwise difficult

23   to detect, such as out-right forgery and 'bait and switch' fraud, in which an individual signs the

24   petition based on a misrepresentation of the underlying issue." *Doe*, 130 S. Ct. at 2820.   Even

25   when each signature is checked, State detection of bait and switch fraud is nearly impossible.

26

DEFENDANTS' MOTION TO STRIKE
AND DEFENDANTS' RESPONSE TO
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT
NO. 09-CV-05456-BHS

23

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1   As the Supreme Court recognized, petition signers are best able to detect this type of fraud,

2   "and public disclosure can bring the issue to the signer's attention." *Doe,* 130 S. Ct. at 2820;

3   *Montanans for Justice v. State ex rel. McGrath,* 146 P.3d 759 (Mont. 2006) (finding that

4   signature gatherers used bait and switch tactics to deceptively obtain signatures). The State has

5   an ongoing interest in determining whether Washington's political committees have engaged in

6   bait and switch fraud.

7       The Ninth Circuit has also recognized that interest in public oversight of the State's

8   election system does not conclude with the election. *Porter v. Bowen,* 496 F.3d 1009, 1013

9   (9th Cir. 2007). The Court of Appeals held that after an election concluded, a challenge to the

10   legality of the Secretary of State's actions was not moot, because the State could act similarly

11   in future elections. As the Supreme Court noted, mistakes can happen. *Doe,* 130 S. Ct. at

12   2820. Public review helps "identify and cure the inadequacies of the verification and

13   canvassing process" and can provide confidence in the State's work in upcoming elections. *Id.*

14   **D.**   **Conclusion**

15       Defendants respectfully request denial of Plaintiffs' Motion for Summary Judgment.

16       DATED this 18th day of July, 2011.

17

18                   ROBERT M. MCKENNA
                    Attorney General

19

20                    s/ Anne Egeler
                    ANNE EGELER, WSBA #20258

21                   Deputy Solicitor General

22                   WILLIAM CLARK, WSBA #9234
                    Senior Counsel

23

24                   PO Box 40100
                    Olympia, WA  98504-0100

25                   360-664-3027
                    Annee1@atg.wa.gov

26

DEFENDANTS' MOTION TO STRIKE
AND DEFENDANTS' RESPONSE TO
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT
NO. 09-CV-05456-BHS

24

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

## CERTIFICATE OF SERVICE

I hereby certify that on this date I electronically filed under seal the foregoing with the

Clerk of Court using the CM/ECF system which will send notification of such filing to:

Scott F. Bieniek, sbieniek@bopplaw.com

James Bopp, Jr , jboppjr@aol.com

Joseph La Rue, jlarue@bopplaw.com

Stephen Pidgeon, stephen.pidgeon@comcast.net

Steven Dixson, sjd@wkdtlaw.com, collettr@wkdtlaw.com

Duane Swinton, dms@wkdtlaw.com

Leslie Weatherhead, lwlibertas@aol.com, emilyr@wkdtlaw.com, janetj@wkdtlaw.com

William Clark, billc2@atg.wa.gov

William Stafford, wstafford@perkinscoie.com

Ryan McBrayer, rmcbrayer@perkinscoie.com, nreynolds@perkinscoie.com, docketsea@perkinscoie.com

Kevin Hamilton, khamilton@perkinscoie.com, canderson@perkinscoie.com, docketsea@perkinscoie.com

Jared M. Haynie, jhaynie@bopplaw.com, thehaynies@gmail.com

I declare under the penalty of perjury under the laws of the State of Washington that the

above is true and correct. Executed this 18th day of July, 2011.

s/ Anne Egeler
Anne Egeler

DEFENDANTS' MOTION TO STRIKE
AND DEFENDANTS' RESPONSE TO
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT
NO. 09-CV-05456-BHS

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200