1
2
3
4
5
6
7                                                    The Honorable Benjamin Settle
8                        **UNITED STATES DISTRICT COURT**
                        **WESTERN DISTRICT OF WASHINGTON**
9                                  **AT TACOMA**

10   JOHN DOE #1, an individual, JOHN              NO.  09-cv-05456-BHS
     DOE #2, an individual, and PROTECT
11   MARRIAGE WASHINGTON,                          DEFENDANTS' TRIAL BRIEF

12                            Plaintiffs,

13          v.

14   SAM REED, in his official capacity as
     Secretary of State of Washington,
15   BRENDA GALARZA, in official
     capacity as Public Records Officer for the
16   Secretary of State of Washington,

17                            Defendants.

18
19
20
21
22
23
24
25
26

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................ 1

II.    ISSUES FOR TRIAL ......................................................................... 1

III.   BACKGROUND ................................................................................ 3

IV.   SUMMARY OF DEFENDANTS' EVIDENCE ............................... 4

V.    LEGAL ARGUMENT ....................................................................... 6

    A.   The State Has An Important Interest In Disclosure ................................... 6

    B.   Plaintiffs Cannot Meet Their Burden Of Establishing Reasonable Probability That Disclosure Will Result In Serious Threats, Harassment, Or Reprisals That Will Impair The First Amendment Right Of Association ................................ 8

        1.   The Evidence Will Show That Disclosure Of PMW Supporters Does Not Result In The Harm Experienced In *NAACP*, *Brown*, And *Hall-Tyner* ........... 12

        2.   Plaintiffs Cannot Meet Their Burden By Relying On Events And Opinions Unrelated To R-71 ................................................................. 13

    C.   Plaintiffs Are Not A Minor Group, Whose Ability To Associate Is Threatened By Disclosure ................................................................. 15

    D.   Plaintiffs Cannot Show That State And Local Police Are Unwilling Or Unable To Respond If Threats, Harassment, Or Reprisals Occur .......................... 16

    E.   Even If There Were A Severe First Amendment Burden, The State Public Disclosure Laws Are Narrowly Tailored To Achieve The State's Compelling Interest In Preserving Electoral Integrity ................................................ 17

VI.   CONCLUSION ................................................................................ 18

DEFENDANTS' TRIAL BRIEF            i
NO.  09-CV-05456-BHS

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Brown v. Socialist Workers*,
459 U.S. 87 (1982)............................................................................ 10, 12

*Buckley v. Valeo*,
424 U.S. 1 (1976)......................................................................... 2, 9, 13, 14

*Citizens United v. Fed. Elec. Comm'n*,
130 U.S. 876 (2010)............................................................................ 14, 18

*Doe v. Reed*,
130 S. Ct. 2811 (2010)...................................................................... passim

*Doe v. Reed*,
586 F.3d 671 (9th Cir. 2009) ................................................................ 4

*Fed. Elec. Comm'n v. Hall-Tyner Elect. Campaign Comm.*,
678 F.2d 416 (2d Cir. 1982) ............................................................. 11, 12

*First Nat'l Bank of Boston v. Bellotti*,
435 U.S. 765 (1978)............................................................................... 18

*Montanans for Justice v. State ex rel. McGrath*,
146 P.3d 759 (Mont. 2006).................................................................... 7

*NAACP v. Alabama*,
357 U.S. 449 (1958).......................................................................... 9, 12

*Nat'l Org. for Marriage v. McKee*,
__ F.3d __, 2011 WL 3505544 (1st. Cir. 2011) ................................. 13

*Porter v. Bowen*,
496 F.3d 1009 (9th Cir. 2007) ............................................................. 8

*Purcell v. Gonzalez*,
549 U.S. 1 (2006).................................................................................. 7

*Roberts v. Priest*,
975 S.W.2d 850 (Ark. 1998) ................................................................ 7

*State v. Pappas*,
424 N.W.2d 604 (Neb. 1988) .............................................................. 7

DEFENDANTS' TRIAL BRIEF
NO.  09-CV-05456-BHS

ii

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**Statutes**

2009 Wash. Sess. Laws page nos. 3065-3141 (E2SSB 5688) ........................................... 3, 5, 15

Wash. Rev. Code § 26.04.020(1)(c) ...................................................................... 16

Wash. Rev. Code § 29A.72.030 ............................................................................ 3

Wash. Rev. Code § 29A.72.240 (2009) ................................................................. 3

Wash. Rev. Code 42.56 ................................................................................... 1,3

Wash. Rev. Code § 42.56.010(2) ......................................................................... 3

Wash. Rev. Code § 42.56.030 ............................................................................. 3

Wash. Rev. Code § 42.56.070(2) ......................................................................... 3

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

## I.    INTRODUCTION

This case is on remand from the United States Supreme Court's decision rejecting a facial challenge to disclosure of signed referendum petitions, pursuant to Washington's Public Records Act. *Doe v. Reed*, 130 S. Ct. 2811 (2010); Wash. Rev. Code 42.56.  On remand, the "as applied" challenge requires the plaintiffs to provide evidence showing that disclosure of signed Referendum 71 (R-71) petitions will cause the signers to experience threats, harassment, or reprisals from government officials or private parties that will significantly burden their right of association under the First Amendment to the United States Constitution. If there is a reasonable probability of threats, harassment, or reprisals to petition signers, plaintiffs must demonstrate that state and local law enforcement are not willing or able to effectively respond to them.  It is a burden the plaintiffs cannot meet.  The plaintiffs are not a persecuted, minor party for which disclosure would burden the right of association.   As the evidence will demonstrate, for over two years, the State of Washington has publicly disclosed the names, contact information, and even some employer information, regarding over 850 donors to Protect Marriage Washington (PMW).  The evidence will establish that there is no indication that any of these individuals experienced threats, harassment, or reprisals as a result of disclosure of their support for Protect Marriage Washington's R-71 campaign.  In addition, the evidence will show that the state and local police would have been willing and able to respond if any such harm had occurred.

## II.    ISSUES FOR TRIAL

1.    Have plaintiffs demonstrated a reasonable probability that disclosure of the signers of an R-71 petition will result in threats, harassment, or reprisals from government

DEFENDANTS' TRIAL BRIEF
NO.  09-CV-05456-BHS

1

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

officials or private parties that will significantly burden the plaintiffs' right of association under the First Amendment to the United States Constitution?

a.    *Buckley v. Valeo*, 424 U.S. 1, 74 (1976), states that "new parties that have no history upon which to draw may be able to offer evidence of reprisals and threats directed against individuals or organizations holding similar views." Have plaintiffs demonstrated that they are entitled to the benefit of this evidentiary standard?

b.    Have plaintiffs demonstrated that law enforcement or the state's criminal justice system is not willing or able to effectively respond to any potential threats, harassment, or reprisals?

c.    Have plaintiffs demonstrated that they are an organization with a history of being subjected to serious threats, harassment, and reprisals from government and private parties for espousing a widely unpopular minority position, such that there is good reason to believe that release of the R-71 petitions would seriously impede plaintiffs' right to association?

2.    Does there continue to be a substantial relationship between the State's public disclosure laws and the State's important interest in preserving the integrity of the electoral process by combating fraud and fostering government transparency and accountability, after the passage of R-71?

3.    If the Court finds that disclosure of the R-71 petition signers will result in threats, harassment, or reprisals that will exceed a significant burden on the right of association, and constitute a severe burden or prohibition on the plaintiffs' First Amendment right of association, are the State's public disclosure laws narrowly tailored to achieve the

State's compelling interest in preserving electoral integrity by combating fraud and fostering government transparency and accountability?

### III.   BACKGROUND

This case is a challenge to Washington's Public Records Act (PRA).   Wash. Rev. Code 42.56.   The PRA was enacted by the people using the initiative process.   It requires disclosure of every record containing information relating to performance of a government function, unless it is specifically exempted from disclosure.   Wash. Rev. Code §§ 42.56.010(2), .030, .070(2).   There is no exemption for signed petitions.   As the record will show, the Washington Secretary of State received public records requests from Washington Families Standing Together (WAFST), the Washington Coalition for Open Government (WCOG), and others, to obtain signed petitions to place R-71 on the ballot.

R-71 addressed a bill enacted by the Washington Legislature in 2009, expanding the rights and responsibilities of same-sex and senior domestic partners.   2009 Wash. Sess. Laws page nos. 3065-3141 (E2SSB 5688).   Under Washington law, within ninety days after a bill is passed by the legislature, the people may file a petition, with a requisite number of signatures, calling for an election on whether to accept or reject the bill.   Wash. Rev. Code § 29A.72.030. The signed petitions are filed with the Secretary of State, who must determine whether the petitions contain a sufficient number of valid signatures from registered voters to satisfy the constitutional requirements for placing the measure on the ballot.   Anyone disagreeing with the Secretary's decision that a referendum contains enough valid voter signatures to qualify for the ballot may challenge the decision in superior court.   Wash. Rev. Code § 29A.72.240 (2009).

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

On July 28, 2009, before the election on R-71, John Does Nos. 1 and 2 and PMW filed this action alleging that the PRA violates the First Amendment rights of persons who sign referendum petitions, and seeking to enjoin the release of signed petitions. Plaintiffs advanced two claims. First, in Count I, they asserted that releasing signed petitions for any referendum would violate First Amendment rights. Complaint at 10. Second, in Count II, they asserted that disclosing R-71 petitions would violate the petition signers' First Amendment right of association by subjecting them to threats and harassment. Complaint at 10-11.

This Court granted the plaintiffs' motion for a preliminary injunction based on Count I of the complaint. Dkt. #63. No ruling was made on Count II, the claim that, as applied to R-71, the PRA violates the First Amendment. Complaint at 13.

The Ninth Circuit Court of Appeals reversed the preliminary injunction. *Doe v. Reed*, 586 F.3d 671 (9th Cir. 2009). The Supreme Court affirmed the Ninth Circuit, and rejected the facial challenge to the PRA. *Doe v. Reed*, 130 S. Ct. 2811 (2010). The Supreme Court did not consider Count II because it had not been considered below. *Id.* at 2821. The case was remanded to the District Court for consideration of Count II.

## IV.    SUMMARY OF DEFENDANTS' EVIDENCE

The testimony and documents provided by the defendants at trial will show precisely what occurs when the State discloses the names and addresses of persons who supported PMW's campaign to reject R-71. For over two years, Washington's Public Disclosure Commission has been disclosing the identities of over 850 donors to PMW. Each contribution was posted on the Commission's website, including the contributor's name and address, the sum contributed, and the occupation and employer of contributors of more than $100. *Doe*, 130 S. Ct.

DEFENDANTS' TRIAL BRIEF
NO. 09-CV-05456-BHS                    4                    ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1   at 2821.  For over two years, the public has been able to view this information on the internet.

2   Yet, as will be shown, there is absolutely no indication that disclosure caused any of the donors to

3   experience threats, harassment, or reprisals, even during the election when the topic was of

4   interest to the public.

5

6       In addition, the record will reflect that there is no evidence that anyone that merely signed

7   an R-71 petition was threatened or harassed.  Since the petitions were signed in full public view, if

8   anyone had wanted to harass petition signers, they had a clear opportunity to do so.  As the

9   testimony will show, the plaintiffs sought out busy retail parking lots and crowded public

10  gatherings to collect petition signatures.   The petition sheets were on big paper, measuring

11  seventeen by eleven inches, and contained twenty lines for signatures.  As will be demonstrated at

12  trial, this allowed people who read or glanced at the petition to see the signers' names, addresses,

13  and some email addresses.  The testimony will demonstrate that PMW saved the email addresses

14  of petition signers, and used them to ask signers to let him know of any threats, harassment, or

15  reprisals they suffered by signing the R-71 petition.   As with the PMW donors, it will be

16  demonstrated at trial that plaintiffs were unable to find any petition signers that experienced

17  threats, harassment, or reprisals after publicly signing the petition.

18

19      The testimony also will demonstrate that there is no evidence of R-71-related harassment

20  that caused anyone to decline to sign a petition or engage in speech related to R-71.  On the

21  contrary, the evidence will show that plaintiffs were able to gather more than 137,000

22  signatures within a short period, and that 838,842 people, 46.85% of Washingtonians who

23  voted in the R-71 election, supported plaintiffs in their opposition to E2SSB 5688.

24

25

26

The plaintiffs have indicated an intent to offer the testimony of PMW organizers and spokespersons in an effort to show that harm was perceived by someone, if not the signers. The testimony will demonstrate that these individuals did not merely sign the R-71 petition or donate to the campaign. They were spokespersons for PMW who promoted R-71 by broadcasting their names, faces, and opinions on television and radio, in newspapers, on PMW's campaign webpage, and at public rallies. The evidence will show that, even as to these spokespersons, evidence of threats and harassment is insufficient to meet the plaintiffs' burden to show impact on First Amendment rights. Plaintiffs' witnesses will testify that they received verbal comments that they found rude, but did not cause them to feel threatened or call the police. In the few instances that someone felt a need to call the police, the police responded immediately and no harm occurred.

## V.   LEGAL ARGUMENT

### A.   The State Has An Important Interest In Disclosure

In examining a First Amendment challenge to government disclosure, the Court considers whether there is a "'substantial relation between the disclosure requirement and a sufficiently important governmental interest.'" *Doe*, 130 S. Ct. at 2818 (quoting *Buckley v. Valeo*, 424 U.S. 1, 64 (1976). Because this case involves disclosure of election-related petitions, the State is afforded "substantial latitude" to enforce its regulations. *Doe*, 130 S. Ct. at 2818.

The Supreme Court held that "[t]he State's interest in preserving the integrity of the electoral process is undoubtedly important." *Id.* at 2819. This important government interest is directly related to the State disclosure laws. As the Supreme Court recognized, the

DEFENDANTS' TRIAL BRIEF                6
NO.  09-CV-05456-BHS

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

disclosure required by the PRA "helps prevent certain types of petition fraud otherwise difficult to detect" and "can help cure the inadequacies of the verification and canvassing process." *Id.* at 2820.

The State has a "particularly strong" interest in eliminating fraud. *Id.* at 2819. Fraud "drives honest citizens out of the democratic process and breeds distrust of our government." *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006). There are numerous cases in which courts across the country have found fraud or corruption in the initiative petition process. *See, e.g., State v. Pappas*, 424 N.W.2d 604 (Neb. 1988) (affirming conviction of aiding and abetting another to willfully and falsely swear to signature upon initiative petition); *Roberts v. Priest*, 975 S.W.2d 850 (Ark. 1998) (finding, in part, that initiative petition had false and forged signatures); *Montanans for Justice v. State ex rel. McGrath*, 146 P.3d 759 (Mont. 2006) (upholding finding that signature gatherers used bait and switch tactics to deceptively obtain signatures).

As the Supreme Court explained, without access to the names of signers, the public cannot confirm whether PMW gathered signatures in a fraudulent manner or from persons disqualified from voting, or confirm whether the Secretary of State properly verified and counted the signatures. *Id.* at 2819-20. The Supreme Court emphasized that public disclosure may be the only means of determining whether PMW engaged in "bait and switch" fraud, by misrepresenting the issue in order to persuade individuals to sign the petitions. *Doe*, 130 S. Ct. at 2820. "The signer is in the best position to detect these types of fraud, and public disclosure can bring the issue to the signer's attention." *Id.* Public access to signature petitions thus provides an important check on the integrity of the referendum election process. *Id.*

DEFENDANTS' TRIAL BRIEF
NO.  09-CV-05456-BHS

7

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1   Washington's concern with the integrity of the electoral process, including ferreting out

2   circumstances of illegal signature gathering, did not end with the election.  The Ninth Circuit

3   has held that ensuring the integrity of the State's election systems is a matter of continuous

4   concern.  *E.g., Porter v. Bowen*, 496 F.3d 1009, 1013 (9th Cir. 2007) (review of legality of

5   Secretary of State's actions after election concluded not moot, because State could act similarly

6   in future elections).  PMW continues to be a political committee registered in the state of

7   Washington.  Therefore, evidence of forgery or fraudulent behavior by PMW, and the State's

8   response to such behavior, continues to be a matter of public interest.

9   The testimony in this case will show that the plaintiffs themselves continue to have

10   concerns about the Secretary of State's proper verification of signatures on future petitions.  As

11   the Supreme Court noted, the job of checking signatures "is large and difficult."  *Doe*, 130 S.

12   Ct. at 2820.  The Secretary of State typically checks signatures using sampling techniques that

13   examine just 3-5% of the signatures, and mistakes can occur.  *Id.*  Given the difficulty of the

14   task, transparency and government accountability are particularly important.  Public oversight

15   helps the State identify and "cure the inadequacies of the verification and canvassing process"

16   and can provide the public confidence about the quality of the State's performance in

17   upcoming elections.  *Id.*

**B.    Plaintiffs Cannot Meet Their Burden Of Establishing Reasonable Probability That Disclosure Will Result In Serious Threats, Harassment, Or Reprisals That Will Impair The First Amendment Right Of Association**

The State's important interest in disclosure can be overcome only "where the threat to

the exercise of First Amendment rights is so serious and the state interest furthered by

disclosure so insubstantial that the Act's requirements cannot be constitutionally applied."

*Buckley v. Valeo*, 424 U.S. 1, 71 (1976).  The Supreme Court prohibits public disclosure of election related information when there is a reasonable probability of threats, harassment, or reprisals that will impair the ability to exercise the First Amendment right of association.  *Doe*, 130 S. Ct. at 2820 (citing *Buckley*, 424 U.S. at 74).

The Supreme Court has extended this exception to public disclosure only to minor parties that proved they would be unable to exercise their First Amendment right of association if disclosure were required.  The seminal case is *NAACP v. Alabama*, 357 U.S. 449, 462-63 (1958), in which the State of Alabama required the NAACP to disclose its membership information.  The NAACP was challenging Alabama's official state policy of segregation in the 1950's.  The state alleged that disclosure of members' names would assist the state in determining whether the NAACP was conducting business in Alabama.  The Court was "unable to perceive" how disclosure of the rank and file members of the NAACP would further the state's interest in knowing whether the NAACP was doing business in the state.  *Id.* at 464-66.  The Court also found that the NAACP "made an uncontroverted showing that on past occasions revelation of the identity of its rank-and-file members has exposed these members to economic reprisal, loss of employment, threat of physical coercion, and other manifestations of public hostility."  *Id.* at 462.  Given both the lack of state justification for disclosure, and overwhelming evidence of private and state harassment, the Court held that compelled disclosure would violate the First Amendment.

*NAACP* is readily distinguishable from this case.  In contrast to Alabama's thin justification for compelling disclosure of the minority group's membership list, the Supreme Court has specifically held that Washington has an important interest in disclosure.  *Doe*, 130 S.

DEFENDANTS' TRIAL BRIEF
NO.  09-CV-05456-BHS

9

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1   Ct. at 2819.  In addition, the testimony in this case will demonstrate that there is no evidence of

2   any threats, harassment or economic reprisals experienced by persons who signed the R-71

3   petitions.  The evidence will show that even those who sought publicity as spokespersons for

4   PMW experienced only the rude remarks and behavior typical of all elections.  And finally,

5   unlike Alabama, the record will show that the State of Washington demonstrated a willingness

6   and ability to have its police forces respond to every perceived threat, real or imagined.

7

8        In *Brown v. Socialist Workers*, 459 U.S. 87 (1982), the Supreme Court addressed a state

9   requirement that the Ohio Socialist Workers Party (SWP) disclose the names of its

10   contributors and recipients of campaign expenditures.  The SWP was "a small political party

11   with approximately sixty members" whose goal was "the abolition of capitalism and the

12   establishment of a workers' government to achieve socialism." *Brown*, 459 U.S. at 88.  The

13   Court illustrated the SWP's dramatic separation from the mainstream by noting that in 1980,

14   the Party's U.S. senatorial candidate received just 1.9% of the total vote.  *Id.* at 89.  The SWP

15   proved "specific incidents of private and government hostility" including "the burning of

16   SWP literature, the destruction of SWP members' property, police harassment of a party

17   candidate, and the firing of shots at an SWP office." *Id.* at 99.  In addition, "in the 12-month

18   period before trial 22 SWP members, including four in Ohio, were fired because of their party

19   membership." *Id.*  The evidence also established that the FBI "conducted surveillance of the

20   Ohio SWP," interfered with its activities, and planted FBI informants in the SWP. *Id.* at 100

21   & n.18.   The Court noted that the evidence included "numerous instances of recent

22   harassment" in addition to the extensive past government harassment. *Id.* at 100-01.  In this

23   case, the testimony will show that plaintiffs cannot show anything remotely comparable.

24

25

26

1    Unlike the SWP, the plaintiffs in this case cannot show that they are a minor party

2  that will be unable to exercise their right of association if they are identified.  As the record

3  will show, the R-71 petition signers are not united in a group of any sort, and cannot even be

4  said to have signed the petition for a single, common reason.  PMW did not represent a fringe

5  position outside the mainstream of Washington political views.   As the evidence will

6  demonstrate, PMW easily secured the signatures necessary to put the measure on the ballot,

7  and ultimately their position was supported by 46.85% of the voters who participated in the

8  R-71 election.  Finally, the testimony will show that the State and the federal government

9  have never harassed or interfered with PMW in any way.  On the contrary, the evidence will

10  show that PMW's supporters were pleased with the assistance of Washington's police forces.

11    In a case similar to *Brown*, the Second Circuit held that the Communist Party was

12  exempt from disclosure under the Federal Election Campaign Act.  *Fed. Elec. Comm'n v.*

13  *Hall-Tyner Elect. Campaign Comm.*, 678 F.2d 416 (2d Cir. 1982).  The Court found that

14  disclosure created a serious risk of harm, including government prosecution.   The Court

15  noted that "[n]umerous statutes purport to subject members of the Communist Party to both

16  civil disabilities and criminal liability."  *Id.* at 422.  The Court expressed concern with state

17  "laws which place supporters of the Committee in danger of legal sanctions or harassment if

18  their ties with the Communist Party should be made public.  It is still illegal in many states

19  simply to be a member of the Communist Party."  *Id.* at 422.  Finally, the Court pointed to a

20  senate report detailing "extensive governmental surveillance and harassment long directed at

21  the Communist Party and its members."  *Id.* at 423.

The testimony will show that unlike the *Hall-Tyner* case, persons who signed the R-71 petition were not part of a minor party, and did not experience threats or harassment. The record will establish that there is no reasonable danger of legal sanctions or harassment if the signers of the R-71 petition are disclosed.

1.     **The Evidence Will Show That Disclosure Of PMW Supporters Does Not Result In The Harm Experienced In *NAACP*, *Brown*, And *Hall-Tyner***

In this case, the evidence will show that signers of the R-71 petition do not face the type of chill and harassment identified in *NAACP*, *Brown*, and *Hall-Tyner*.  On the contrary, the testimony will show that the names and addresses of over 850 donors to PMW have been publicly disclosed on a state website for over two years.  Yet, despite two years of public disclosure, and requests that PMW supporters share any stories of harm, the testimony will establish that there is absolutely no evidence that supporters of PMW have been threatened, harassed, or subject to reprisals.  Evidence of the impact of disclosure on the donors is the best indication of the possible effect on those who merely signed a petition, without publicly participating in the campaign to reject R-71, or acting as a spokesperson for PMW.

In determining whether people who signed the R-71 petition two years ago will be subject to threats or harassment, allegations of harassment experienced by spokespersons for PMW during the campaign are not relevant.  As the evidence will show, the plaintiffs' witnesses are not comparable to petition signers.  The testimony will illustrate the extensive public campaign activities, deliberate exposure in the media, and campaign leadership roles taken by these individuals.

Even if such evidence were relevant, it would be grossly insufficient to meet the plaintiffs' burden to show a probability of serious harm that would undermine the First

DEFENDANTS' TRIAL BRIEF
NO.  09-CV-05456-BHS

12

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

Amendment right of association.  At most, the evidence will show that plaintiffs experienced the rough and tumble of a typical campaign, which did not cause them to feel threatened.  As the testimony will demonstrate, the police appropriately responded to all reports of perceived threat.  Most importantly, the evidence will establish that the minor events of the campaign did not deter anyone from exercising their First Amendment rights, by signing the R-71 petitions or associating with PMW's campaign to reject R-71.

### 2.   Plaintiffs Cannot Meet Their Burden By Relying On Events And Opinions Unrelated To R-71

In claiming that disclosure may result in harm to the right of association, the plaintiffs must establish that they are within the class of persons potentially impacted by the state law. *Nat'l Org. for Marriage v. McKee*, __ F.3d __, 2011 WL 3505544 (1st. Cir. 2011).   A "subjective fear" of harm "will not be held to constitute an injury." *Nat'l Org. for Marriage*, 2011 WL 3505544, at *7.

The Court explained that it will not recognize a blanket exemption even for minor parties, but will allow the injury to be shown in a variety of ways.

> The proof may include, for example, specific evidence of past or present harassment of members due to their associational ties, or of harassment directed against the organization itself.  A pattern of threats or specific manifestations of public hostility may be sufficient.  New parties that have no history upon which to draw may be able to offer evidence of reprisals and threats directed against individuals or organizations holding similar views.  Where it exists the type of chill and harassment identified in *NAACP v. Alabama* can be shown.

*Buckley*, 424 U.S. at 74.  The threat to the exercise of First Amendment rights must be "so serious and the state interest furthered by disclosure so insubstantial that the Act's requirements cannot be constitutionally applied." *Id.* at 71.

DEFENDANTS' TRIAL BRIEF
NO.  09-CV-05456-BHS

13

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

The *Buckley* test precludes the use of testimony and exhibits addressing events other than the R-71 campaign.  As the evidence at trial will demonstrate, PMW is not a "new party" that has "no history upon which to draw."  *Id.* at 74.  Rather, PMW's history in this State is the best possible indicator of what happens when PMW's supporters are disclosed by the State.  As the evidence will show, the names and addresses of 850 of PMW's supporters have been disclosed by the State for over two years, yet PMW is unable to find a single incident of the disclosed individual's being subjected to threats, harassment, or reprisals.  Since the plaintiffs have a history in Washington that is directly related to the subject of this case, *Buckley* does not permit the use of evidence unrelated to the petition signers at issue.

The Supreme Court recently confirmed that a party with a history of disclosure in the state cannot show harassment by relying on the experiences of others outside the state.  *Citizens United v. Fed. Elec. Comm'n*, 130 U.S. 876 (2010).  Citizens United's campaign donors had been disclosed for years.  *Citizens United*, 130 U.S. at 916.  There was no evidence that this disclosure resulted in harassment or retaliation.  *Id.*  Evidence was offered to show that in similar campaigns, individuals "were blacklisted, threatened, or otherwise targeted for retaliation."  *Id.*  The Court refused to find harassment based on allegations related to other campaigns.  The Court found that the relevant information was that "Citizens United has been disclosing its donors for years and has identified no instance of harassment or retaliation."  *Id.*  As in *Citizens United*, the plaintiffs cannot escape their positive history in Washington by asking the Court to look to alleged events and opinions related to issues unrelated to R-71.

DEFENDANTS' TRIAL BRIEF
NO.  09-CV-05456-BHS

14

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

**C.      Plaintiffs Are Not A Minor Group, Whose Ability To Associate Is Threatened By Disclosure**

In determining whether protection of a group's First Amendment right of association outweighs the State's interest in disclosure, the courts consider not only the nature of the harassment, but also the nature of the group or individuals being harassed, and how harassment will impact their ability to associate.  As the testimony will show, it is typical to experience harassment and threats during an election, regardless of whether one is espousing a conservative or liberal position.   For most, such behavior does not cripple the ability to exercise the right of association.   In such cases, the harassment is appropriately addressed in civil or criminal cases, not through the extraordinary remedy of applying the First Amendment to prohibit public disclosure of election-related information.

However, "'from time to time throughout history, persecuted groups have been able to criticize oppressive practices and laws either anonymously or not at all.'"  *Doe*, 130 S. Ct. at 2831 (Stevens, J., concurring) (quoting *McIntyre v. Ohio Elec. Comm'n*, 514 U.S. 334, 342 (1995)).  When such a group is reviled, fear of exposure causes people to decline to associate with or contribute to the group.  The Supreme Court has held that the risk of harassment of such "minor parties" may require exemption from otherwise permissible disclosure requirements, to preserve the First Amendment right of association.  *Doe*, 130 S. Ct. at 2821 (quoting *Buckley*, 424 U.S. at 74).

The testimony will show that the plaintiffs are not even a cohesive organization, with an associational interest.  As the Supreme Court noted, it is unclear why individuals signed the R-71 petition.  Some may have wished to revoke E2SSB 5688, others may only have wanted to ensure that the issue be considered "by the whole electorate."  *Doe*, 130 S. Ct. at 2817.  Even if a

DEFENDANTS' TRIAL BRIEF
NO.  09-CV-05456-BHS                                         15                    ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1   unifying goal had existed among the petition signers, losing a close election would not make the

2   signers a minor group, comparable to the NAACP or Socialist Workers.  The testimony regarding

3   PMW's successful signature campaign, and the close outcome of the election, will illustrate that

4
    the signers cannot be called a minor party.   In addition, the lack of a minor interest is

5
    demonstrated by Washington law, which like most states, contains a prohibition on marriage for

6
7   couples other than a man and a woman.  Wash. Rev. Code § 26.04.020(1)(c).

8       Since the election concluded nearly two years ago, even if an associational right had

9   existed, it could not be impaired by disclosure.  As Justice Alito's concurring opinion in *Doe*

10  notes, only before the election is there a possibility that harassment might infringe on First

11
    Amendment rights of association by discouraging people from signing petitions or

12
13  participating in the campaign.  *Doe*, 130 S. Ct. at 2822 (Alito, J., concurring).  Since there is no

14  risk to association, the extraordinary measure of applying the First Amendment is not an

15  option.

16  **D.      Plaintiffs Cannot Show That State And Local Police Are Unwilling Or Unable To
            Respond If Threats, Harassment, Or Reprisals Occur**
17

18      The Supreme Court justices have indicated that the First Amendment will not be used

19  to prohibit distribution of information to the public unless there is a showing that the

20  harassment will not be addressed by the State.

21      As the testimony will demonstrate, threats, harassment, and reprisals are common

22  occurrences in virtually every Washington campaign.  Dkt. #200; Dkt. #207.  This does not

23  give rise to a First Amendment claim that every harassed party and campaign organization is

24
    entitled to avoid public scrutiny of election-related filings.  As five justices emphasized in *Doe*,

25
26  "there are laws against threats and intimidation."   *Doe*, 130 S. Ct. at 2837 (Scalia, J.,

1  concurring).  The First Amendment is not applicable unless "there is serious and widespread

2  harassment that the State is unwilling or unable to control."  *Id.* at 2829 (Sotomayor, J.,

3  concurring, joined by Justices Stevens and Ginsberg), 2831 (Stevens, J., concurring, joined by

4  Justice Breyer), 2837.  To satisfy its burden of proof, PMW must show "significant threat of

5  harassment directed at those who sign the petition that cannot be mitigated by law enforcement

6  measures."  *Id.* at 2831 (Stevens, J., concurring).

7

8  It is a burden the plaintiffs cannot meet.  The testimony will establish that in the few

9  instances that PMW's spokespersons felt the need to call the police, officers responded

10  promptly.  No harm occurred.  In most cases, the officers concluded that it was impossible to

11  even determine whether the perceived threat had any connection to R-71.  Furthermore, the

12  evidence will show that Washington's state and local police never acted in a threatening or

13  harassing manner toward the plaintiffs or PMW's supporters, and stood ready to protect them

14  in the event of any harm.

15

16  **E.    Even If There Were A Severe First Amendment Burden, The State Public
Disclosure Laws Are Narrowly Tailored To Achieve The State's Compelling
17  Interest In Preserving Electoral Integrity**

18  As explained above, the Supreme Court has repeatedly held that First Amendment

19  challenges to disclosure are reviewed under either intermediate or exacting scrutiny.  *Doe*, 130

20  S. Ct. at 2818 (citing *Citizens United*, 130 S. Ct. at 914).

21

22  If this Court were to find that plaintiffs' First Amendment rights were severely

23  impaired or eliminated, and depart from the Supreme Court to apply strict scrutiny, plaintiffs

24  would still be unable to meet their burden.  Strict scrutiny "requires the Government to prove

25  that the restriction 'furthers a compelling interest and is narrowly tailored to achieve that

26

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

interest.' *[Fed. Election Comm'n v. Wisconsin Right To Life, Inc.*, 551 U.S. 449, 464 (2007)]."

*Citizens United*, 130 S. Ct. at 882.  As explained in section A above, the State's interest in government transparency and accountability is compelling, and the public disclosure laws are narrowly tailored to achieve that public interest.

In addition, strict scrutiny's narrow tailoring requires that the law be neither underinclusive nor overinclusive.  *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 793 (1978) (law failed narrow tailoring because "the provisions of the statute . . . are both underinclusive and overinclusive").  The plaintiffs have not alleged that application of the PRA to disclosure of R-71 petitions violates this requirement, and it does not.  The disclosure is not underinclusive.  All of the signatures are subject to public disclosure.  None of them are excluded.  Nor is there any overinclusiveness.  The R-71 petitions are only disclosed in response to a public records request.  Thus, there is only disclosure if citizens desire to make a decision about government accountability or obtain public information.

Strict scrutiny is not the applicable standard in this.  However, even if it were, the PRA should be upheld.  Because there are compelling government interests for public disclosure of the R-71 petitions, and such disclosure is narrowly tailored, being neither underinclusive nor overinclusive, the PRA satisfies strict scrutiny.

## VI.   CONCLUSION

For the foregoing reasons, the evidence adduced at trial will support a judgment in favor of the defendants.  This Court should accordingly deny the plaintiffs any relief and dismiss the case with prejudice.

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1    DATED this 6th day of September, 2011.

2

3                                    ROBERT M. MCKENNA
                                     Attorney General

4
                                      s/ Anne Egeler
5                                    ANNE EGELER, WSBA #20258
                                     Deputy Solicitor General
6
                                     WILLIAM CLARK, WSBA #9234
7                                    Senior Counsel
                                     PO Box 40100
8                                    Olympia, WA  98504-0100
                                     360-664-3027
9                                    Anne1@atg.wa.gov

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

The Honorable Benjamin H. Settle

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT TACOMA

JOHN DOE #1, an individual, JOHN
DOE #2, an individual, and PROTECT
MARRIAGE WASHINGTON,

               Plaintiffs,

     v.

SAM REED, in his official capacity as
Secretary of State of State of Washington,
BRENDA GALARZA, in her official
capacity as Public Records Officer for the
Secretary of State of Washington,

               Defendants.

NO. 09-cv-05465-BHS

CERTIFICATE OF SERVICE

    I certify that on September 6, 2011, I electronically filed the foregoing Defendants'
Trial Brief with the Clerk of the Court using the CM/ECF system, which will send
notification of such filing to the following attorneys of record.

    James Bopp, Jr , jboppjr@aol.com

    Joseph La Rue, jlarue@bopplaw.com

    Stephen Pidgeon, stephen.pidgeon@comcast.net

    Steven Dixson, sjd@wkdtlaw.com

    Duane Swinton, dms@wkdtlaw.com

ATTORNEY GENERAL OF WASHINGTON
P.O. Box 40100
Olympia, WA  98504-0100
(360) 753-7085

1     Leslie Weatherhead, lwlibertas@aol.com

2     William Stafford, wstafford@perkinscoie.com

3     Ryan McBrayer, rmcbrayer@perkinscoie.com

4     Kevin Hamilton, khamilton@perkinscoie.com

5     Jared M. Haynie, jhaynie@bopplaw.com, thehaynies@gmail.com

6     DATED this 6th day of September, 2011.

7                               s/Anne Egeler

                                    Anne E. Egeler, WSBA No. 20258

8                                 *Deputy Solicitor General*

                                  P.O. Box 40100

9                                 Olympia, WA  98504-0100

                                  annee1@atg.wa.gov

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26