THE HONORABLE BENJAMIN H. SETTLE

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
TACOMA DIVISION

| | |
|---|---|
| JOHN DOE #1, an individual; JOHN DOE #2, an individual; and PROTECT MARRIAGE WASHINGTON,<br><br>Plaintiffs,<br><br>v.<br><br>SAM REED, in his official capacity as Secretary of State of Washington and BRENDA GALARZA, in her official capacity as Public Records Officer for the Secretary of State of Washington,<br><br>Defendants. | NO. C:09-cv-05456 BHS<br><br>INTERVENOR WASHINGTON FAMILIES STANDING TOGETHER'S TRIAL BRIEF |

## I. INTRODUCTION

It is Plaintiffs' burden to prove by a preponderance of the evidence that the 137,881 people who signed Referendum 71 (also, "R-71") are members of a minority party, and will face a reasonable probability of serious and widespread harassment that the State is unwilling or unable to control if their names are publicly disclosed. Although different jurists word the precise standard for this as-applied exemption differently, at least five U.S. Supreme Court Justices have explained that given the important public interest of public disclosure at stake Plaintiffs must face an uphill battle in this precise case. As will be demonstrated in this trial brief and by the evidence presented at trial, Plaintiffs have not shown either their minor party

INTERVENOR WASHINGTON FAMILIES
STANDING TOGETHER'S TRIAL BRIEF (No.
C06-0045 RSM) – 1

Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

LEGAL21625333.1

status or a probability of threat to be anywhere near the standard required by the U.S. Supreme Court. At the conclusion of this trial, Intervenor Washington Families Standing Together ("WAFST") respectfully submits,. .

## II. PROCEDURAL HISTORY

Protect Marriage Washington (also, "PMW") filed this action on July 28, 2009, raising facial (Count I) and as-applied (Count II) challenges to the public disclosure of the R-71 petitions. Count I was rejected 8-1 by the U.S. Supreme Court in *Doe v. Reed*, 130 S. Ct. 2811 (2010). Count II is now before the Court.

In their disclosures and during discovery, Plaintiffs identified nineteen witnesses. The State Defendants, WAFST, and intervenor Washington Coalition for Open Government ("WCOG") deposed all but one (a minor child) of Plaintiffs' proposed witnesses. In response to a request from the Court to submit supplemental summary judgment briefing, Plaintiffs candidly conceded that they have no evidence that people who merely signed the R-71 petitions have been subjected to threats, harassments, or reprisals.[1] Dkt. #259. Defendant Protect Marriage Washington ("PMW") also sent out emails requesting any evidence of harassment of the R-71 petition signers, and received nothing in response. Similarly, although the identities and contact information of those who contributed to defendant Protect Marriage Washington are posted on the Public Disclosure Commission's website—and have been for over two years—Plaintiffs have presented no evidence that any PMW contributor was harassed or threatened. Instead, Plaintiffs apparently seek to rely instead on a large collection of undifferentiated material, the vast majority of which has no relevance to the issues before the Court and, as explained below, is inadmissible for a variety of additional reasons as well.

---

[1] Plaintiffs' assertion, in that supplemental briefing, that the identity of persons who "simply signed" R-71 petition is unknown and thus such individuals could not possibly have been harassed because they signed is incorrect. People generally signed the petition in highly public places, and may have otherwise disclosed that they signed the petition. Plaintiffs' inability to present evidence that a single person was harassed or threatened because he or she signed the R-71 petition speaks volumes.

INTERVENOR WASHINGTON FAMILIES
STANDING TOGETHER'S TRIAL BRIEF (No.
C06-0045 RSM) – 2
LEGAL21625333.1

Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Based on the paucity of evidence to support Plaintiffs' as-applied challenge, the State, WAFST, and WCOG moved for summary judgment. These motions are currently pending. The State, WAFST, and WCOG have also filed motions in limine to exclude certain of Plaintiffs' proposed evidence. These motions are also pending.

### III. EXPECTED TRIAL TESTIMONY

Throughout this case, Plaintiffs have made sweeping claims regarding threats and harassment that R-71 signers will face if their names are released. On remand from the Supreme Court, and on a more fully developed record, it is now clear that Plaintiffs' evidence falls far short of their heavy burden.

#### A. R-71 Petition-Signature Process and Vote

In 2009, the Washington State Legislature enacted Engrossed Second Substitute Senate Bill 5688 ("E2SSB 5688"), an enhanced domestic partnership law expanding the rights and responsibilities accorded to registered same-sex partners and opposite-sex senior partners. Protect Marriage Washington ("PMW") filed paperwork with the Public Disclosure Commission to become a political action committee and, in May 2009, PMW began gathering signatures to put R-71 before Washington voters.

The circulators gathered signatures in public places, such as community events, county fairs, storefronts, and shopping malls. Each petition sheet contained twenty lines for signatures, printed names, and contact information, including home addresses and email addresses. Nothing shielded these signatures, printed names, addresses, or email addresses from the view of others who read or signed the petitions, or from the people circulating the petitions. Nothing on the petitions indicated that this information would be kept confidential. In fact, the State's practice in prior elections had been to make petitions publicly available in response to public disclosure requests.

By the July 25, 2009 deadline, PMW and other volunteers had gathered 137,881 signatures. The Washington Secretary of State's office concluded that the petitions contained

INTERVENOR WASHINGTON FAMILIES STANDING TOGETHER'S TRIAL BRIEF (No. C06-0045 RSM) – 3
LEGAL21625333.1

Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

more than 15,000 signatures that were invalid and approximately 121,757 valid signatures of registered voters, 1,180 more than the minimum required to qualify R-71 for the ballot.

On November 3, 2009, 53.15% of voters (951,822 voters) approved E2SSB 5688, while 46.85% (838,842 voters) rejected it, making E2SSB 5688 law and Washington the first state in the country to vote affirmatively in support of relationship recognition for LGBT individuals.

## B.    Plaintiffs' Evidence

Plaintiffs have identified only four witnesses who will testify in person at trial, ███████████████████████████████, and Plaintiffs' counsel James Bopp, Jr. (or someone else from Mr. Bopp's office); and have further identified fourteen witnesses who they propose having testify by deposition. WAFST objects to Plaintiffs' untimely identification of Mr. Bopp as a witness, whom Plaintiffs propose to call to attempt to authenticate Plaintiffs' many trial exhibits, the vast majority of which are materials printed from the Internet. WAFST also objects to and will oppose Plaintiffs' motion seeking to use deposition testimony because Plaintiffs have not made a showing of "exceptional circumstances" within the meaning of Federal Rule of Civil Procedure 32(a)(4)(D) with respect to most of the witnesses whose testimony Plaintiffs intend to offer by deposition but whom are within easy subpoena reach and could testify in person. (In a classic attempt to bootstrap, Plaintiffs contend that the volume of irrelevant Internet material Plaintiffs intend to introduce justifies submission of testimony-by-deposition as a time-saving measure.)

The live testimony Plaintiffs will offer will do little to advance Plaintiffs' case. Plaintiffs' witnesses will baldly admit that they have no serious concerns if the fact that they signed the R-71 petitions is disclosed, that they have experienced no substantial harassment even though they publicly support R-71, and that the few times they felt it necessary to call the police, the police have been both willing and able to come swiftly to their aid. Law enforcement witnesses will confirm that the police responded promptly and fully whenever contacted by Plaintiffs' witnesses.

INTERVENOR WASHINGTON FAMILIES
STANDING TOGETHER'S TRIAL BRIEF (No.
C06-0045 RSM) – 4
LEGAL21625333.1

Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

▇▇▇▇ is ▇▇▇▇▇▇ and describes himself as extremely public on the R-71 campaign. He testified in front of 300 spectators against E2SSB 5688 and willingly gave his name and address at that public hearing. His name is listed prominently on ▇▇ website, and he has participated in numerous public debates, and has made other appearances, regarding R-71. Despite his overtly public stance on R-71, he has felt personally threatened on only two occasions. Once, a blogger wrote, "Why can't we go to Arlington and harm his family?" ▇▇▇▇ contacted the police, who responded promptly. ▇▇▇▇ thereafter reported no further incidents involving the blogger. The other time involved his daughter informing him that a man was outside their house taking pictures. ▇▇▇▇ did not contact the police, and he cannot link the incident to his signing of R-71. ▇▇▇▇ also received phone calls from a person he perceived as bothersome, but he did not feel he needed to report the calls to the police. ▇▇▇▇ testimony will show that, as perhaps the most public face of the R-71 campaign, he has not suffered any serious or widespread harassment that law enforcement was unwilling or unable to control. His testimony is patently insufficient to support the claim.

▇▇▇▇ has also provided public support throughout the R-71 process. He testified in front of the State legislature, gathered petition signatures in public places, and participated in television interviews. He, too, does not fear having his name publicized and is not secretive about his opinions regarding R-71. Despite his public stance on the R-71 issue, he too will testify to only a few instances of alleged harassment, including the following: a couple chastising him that "[w]e have feelings too"; a person asking him why he was collecting signatures for R-71 and suggesting she might attend his church services; a young woman taking his picture while he gathered signatures; and a person asking a store manager to make ▇▇ leave the premises and collect R-71 petition signatures elsewhere. ▇▇▇▇ testimony will establish that he does not fear having his name disclosed, and that, even with all

INTERVENOR WASHINGTON FAMILIES
STANDING TOGETHER'S TRIAL BRIEF (No.
C06-0045 RSM) – 5
LEGAL21625333.1

Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

of his public appearances regarding R-71, he has not suffered anything close to the kind of serious harassment that is necessary to sustain Plaintiffs' burden of proof.

███████████████████████████, was public in her support of R-71. She spent at least ten days in front of large stores gathering approximately 1,000 for the R-71 effort. She testified before the State legislature. She led her group's efforts for more than a month at the Secretary of State's office during the signature verification process. And she publicly voiced her opinions on radio stations and in newspaper interviews. She does not fear saying that she supported R-71. In addition to the incidents ████ described, ████ also recalled that she received phone calls from a person who asked why she was collecting signatures for R-71 and who mentioned that she and her friends would come to ████ church and she withdrew an application for a volunteer position because of perceived hostility to her political views. ████ also felt, on one occasion, that a disagreement with a salon owner about whether the haircut she sought should be classified as a $2 bang trim or a $60 haircut was prompted by her position on traditional marriage, apparently because she perceived the salon owner to be "openly homosexual" (R-71 was not mentioned during the exchange and there is no other evidence of any sort linking the price of her haircut to her position on R-71). Like ████ testimony, ████ testimony will not help Plaintiffs meet their heavy burden of establishing serious and widespread harassment against R-71 signers that the State is unwilling or unable to control because even as a public persona for the R-71 campaign, ████ was not subjected to any substantial harassment beyond some bothersome conversations with people who disagreed with her views regarding R-71.

The same is true of Plaintiffs' other witnesses, even assuming the Court grants Plaintiffs latitude to use their deposition testimony. The testimony of each of Plaintiffs' possible witnesses, singly and in combination, will fail to sustain Plaintiffs' burden of proof. These witnesses' evidence of alleged threats and harassment consists of a few uncomfortable exchanges between R-71 proponents and opponents and heated rhetoric during a hotly contested campaign.

INTERVENOR WASHINGTON FAMILIES
STANDING TOGETHER'S TRIAL BRIEF (No.
C06-0045 RSM) – 6
LEGAL21625333.1

Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Plaintiffs' witnesses do not have substantial concerns about disclosing their names. Even though Plaintiffs' witnesses intentionally publicized their positions regarding R-71, they did not generally experience the sort of harassment that led them to contact the police. And the few times they did contact law enforcement, the police promptly attended to the callers' needs and addressed the callers' concerns. Therefore, Plaintiffs' witnesses will not be able to help Plaintiffs establish that R-71 signers, if their names are disclosed, will face a reasonable probability of serious and widespread harassment that the State will be unable or unwilling to control.

Indeed, testimony presented by the State Defendants and/or WAFST from long-term Republican and Democratic political operatives will confirm that the type of activity described by Plaintiffs' witnesses as threats or harassment (stolen or destroyed campaign signs, rude gestures or words directed to persons waving campaign signs, etc.) are part and parcel of almost any high-profile political campaign, on either side of the aisle. Plaintiffs will fail to show that run-of-the-mill campaign unpleasantries entitle Plaintiffs to an exemption from Washington's Public Records Act. Indeed, such an exemption would have far reaching consequences given the relative commonplace and typical nature of the interactions so breathlessly described as "threatening" by Plaintiffs.

### C. Plaintiffs' Documentary Evidence

Plaintiffs have proposed the introduction of 263 exhibits. Dkt. 253 (Pls.' Pretrial Statement). These 263 exhibits consist primarily of online materials, such as newspaper articles, blog posts, and YouTube videos. Most of these materials pertain to events occurring outside of Washington and that relate to different issues, most prominently Proposition 8 (also, "Prop. 8") in California.[2]

---

[2] The district court that reviewed the evidence of alleged threats and harassment from the Prop. 8 campaign concluded that evidence *fails* to meet the high standard for an as-applied exemption to disclosure. *See ProtectMarriage.com v. Bowen*, 599 F. Supp. 2d 1197 (E.D. Cal. 2009). Nonetheless, Plaintiffs in this case rely very heavily on this same evidence.

INTERVENOR WASHINGTON FAMILIES STANDING TOGETHER'S TRIAL BRIEF (No. C06-0045 RSM) – 7
LEGAL21625333.1

Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Plaintiffs filed some of these materials in support of their Motion for Summary Judgment. The State Defendants (joined by WAFST and WCOG) moved to strike the evidence on various grounds. Dkts. #224 & 231. When these materials and other similar materials reappeared in Plaintiffs' Pretrial Statement, Dkt. #253, the State Defendants, WAFST, and WCOG filed Motions in Limine seeking to exclude these materials on multiple grounds. Dkts. #251, 255, 257. Plaintiffs now propose to use one of their attorneys, James Bopp, Jr., to authenticate these materials. Even had Mr. Bopp (or another lawyer from Mr. Bopp's law firm) been timely disclosed, he cannot authenticate these materials because (1) it is apparent from previously-submitted declarations of Mr. Bopp's former associate, Jared Haynie, that Mr. Haynie did not personally access and print each of the documents from the Internet (and that Mr. Bopp himself did not do so), and (2) Mr. Bopp cannot in any event authenticate the documents posted on the webpages he seeks to authenticate, such as embedded YouTube videos.[3]  In any event, these materials are also inadmissible hearsay, and they often contain multiple layers of hearsay. Some of them are anonymous and don't even identify the name of the declarant. The evidentiary problems with such an approach are self evident. State Defendants, WAFST, and WCOG have objected to Plaintiffs' attempt to use the residual hearsay exemption without specifying the name and address of the declarants and without attempting to show that the offered materials are more probative than any other evidence that could be procured through reasonable efforts, as required by the residual hearsay exception. Plaintiffs cannot lay adequate foundation for these documents, as Plaintiffs have not named anyone who can testify regarding creation or generation of the original materials.

Moreover, even if Plaintiffs could authenticate and lay foundation for the internet materials and overcome the hearsay nature of the documents, these materials are simply not relevant to this case. It is Plaintiffs' burden to establish that *R-71 signers* would likely be

---

[3] Plaintiffs previously offered Mr. Haynie as a witness, until Mr. Haynie withdrew as counsel of record on September 1, 2011. Dkt. #262.

INTERVENOR WASHINGTON FAMILIES
STANDING TOGETHER'S TRIAL BRIEF (No.
C06-0045 RSM) – 8
LEGAL21625333.1

Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

subjected to harassment if their names were disclosed, not that people involved in the Prop. 8 campaign in another state (and in various capacities more public than merely signing a petition) or other campaigns on different subjects elsewhere in the country might have been harassed because of their views at some point in time.

Plaintiffs have also proposed introducing, as Trial Exhibit 249, a collection of John Doe declarations from *ProtectMarriage.com*. WAFST has moved to exclude this exhibit because Plaintiffs did not identify these declarants in response to this Court's scheduling order, Dkt. #255, and the State Defendants have moved to exclude this exhibit on hearsay grounds, Dkt. #251. These declarants are not available to Defendants for cross-examination – either before trial or during – and their out-of-court statements are obviously being offered to prove the truth of the matter asserted. The suggestion that unnamed anonymous declarations could be offered without ever identifying the witnesses or allowing the Court or opposing counsel a fair opportunity to examine the witnesses on their knowledge, bias, or foundation for their testimony is frankly absurd. These materials should be rejected at the outset and without further discussion. (The declarations are in any event irrelevant because they do not address Washington's R-71 campaign or association with PMW).

Finally, Plaintiffs intend to offer photographs, email, letters, and recordings not created by their witnesses. The State Defendants' Motion in Limine moves to exclude these items as well on authentication grounds. *See* Dkt. 251.

WAFST asserts that few of Plaintiffs' proposed exhibits will meet the standards necessary for admission into evidence and that, therefore, Plaintiffs' documentary evidence will do little to help Plaintiffs meet their heavy burden of proof.

## IV.     LEGAL STANDARD

As a default rule, a State may publicize the names and addresses of citizens who have signed a referendum petition. *Doe v. Reed*, 130 S. Ct. 2811, 2815 (2010). The First Amendment provides a narrow exemption from this general disclosure requirement if a minor party can

INTERVENOR WASHINGTON FAMILIES
STANDING TOGETHER'S TRIAL BRIEF (No.
C06-0045 RSM) – 9
LEGAL21625333.1

Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

establish "a reasonable probability that the compelled disclosure of a party's . . . names will subject them," *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 93 (1982), to "serious and widespread harassment that the State is unwilling or unable to control," *Doe*, 130 S. Ct. at 2829 (Sotomayor, J., concurring); *see also id.* at 2831 (Stevens, J., concurring) (noting that a plaintiff must show that harassment "cannot be mitigated by law enforcement measures").

Five of the U.S. Supreme Court Justices who heard this case on the facial challenge offered guidance regarding Plaintiffs' substantial burden on establishing its case on the as-applied challenge. Justices Sotomayor, Stevens, and Ginsburg called Plaintiffs' burden "heavy," explaining that "[a]llowing case-specific invalidation under a more forgiving standard would unduly diminish the substantial breathing room States are afforded to adopt and implement reasonable, nondiscriminatory measures like the disclosure requirement now at issue." *Doe*, 130 S. Ct. at 2829 (Sotomayor, J., concurring). Justices Stevens and Breyer agreed that Plaintiffs must produce "strong evidence" to meet their burden. *Id.* at 2931 (Stevens, J., concurring). Justices Stevens and Breyer, and also Justice Scalia, all noted their skepticism that any plaintiff could obtain an as-applied exemption to petition-disclosure laws. *See id.* at 2831 (Stevens, J., concurring) (noting that it is "unlikely" that an as-applied challenge could succeed in "cases involving the [Public Records Act]"); *id.* at 2836-37 (Scalia, J., concurring) ("[T]here is no constitutional basis for this Court to impose [a requirement to keep petition signatures secret] upon the States . . . . And it may even be a bad idea to keep petition signatures secret.").

This is Plaintiffs' burden in this case—a heavy burden to establish that R-71 signers are a minor political party who, if their names are disclosed, will be subjected to "serious and widespread harassment that the State is unable or unwilling to control." *Doe*, 130 S. Ct. at 2829 (Sotomayor, J., concurring). Plaintiffs will be unable to meet their burden.

A.   **Minor Party Status**

Only minority groups may achieve an exemption from the publication rule. *E.g.*, *Doe*, 130 S. Ct. at 2820-21 (noting "'minor parties' may be exempt from disclosure requirements")

INTERVENOR WASHINGTON FAMILIES
STANDING TOGETHER'S TRIAL BRIEF (No.
C06-0045 RSM) – 10
LEGAL21625333.1

Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

(quoting *Buckley v. Valeo*, 424 U.S. 1, 74 (1976) (per curiam)); *Brown*, 459 U.S. at 94 (calling the exemption the "minor party exemption"). In fact, "minor status is a necessary element of a successful as-applied claim." *ProtectMarriage.com v. Bowen*, 599 F. Supp. 2d 1197, 1216 (E.D. Cal. 2009). The Eastern District of California has held that proponents of a constitutional amendment defining marriage as being between a man and a woman are not part of a minor party. *See ProtectMarriage.com*, 599 F. Supp. 2d 1215-16. Instead, minor parties are those "with little chance of winning an election," and which "are less likely to have a sound financial base." *Buckley*, 424 U.S. at 70-71. One example is the Socialist Workers Party during the 1980s, "a small political party with approximately sixty members in the State of Ohio," which had "little success at the polls," and whose "expenditures in Ohio . . . averaged about $15,000 annually." *Brown*, 459 U.S. at 88-89.

Plaintiffs will not be able to establish that the 137,881 people who signed R-71 are in the first instance anything other than an array of voters with no association other than having signed a petition, let alone a minority party "with little chance of winning an election." *Buckley*, 424 U.S. at 70-71. In fact, voters in twenty-nine of Washington's thirty-nine counties, or 47% of those who voted on R-71, agreed with the signers. And, unlike the Socialist Workers Party, while Plaintiffs did not win the R-71 election, likeminded persons historically have prevailed on every other statewide ballot measure across the country seeking to limit the recognition of same-sex relationships. *See* Jane S. Schacter, *The Other Same-Sex Marriage Debate*, 84 Chi-Kent L. Rev. 379, 385-86 (2009). Indeed, Plaintiffs have not even attempted to proffer evidence of the signers' minority status. That is because Plaintiffs cannot meet this burden.

B.  **Party Status**

Because the purpose of the minor-*party* exemption is to ensure that disclosure requirements do not impinge on a protected associational activity, *see Buckley*, 424 U.S. at 73, only groups that associate may seek such an exemption. People who sign a referendum petition do not constitute that sort of associational group: they may not even agree on the single issue

INTERVENOR WASHINGTON FAMILIES
STANDING TOGETHER'S TRIAL BRIEF (No.
C06-0045 RSM) – 11
LEGAL21625333.1

Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

presented in the petition, and some may sign the petition merely to "express[] the political view that the question should be considered by the whole electorate." *See Doe*, 130 S. Ct. at 2817 (internal quotation marks and citation omitted); *Jenness v. Fortson*, 403 U.S. 431, 438-39 (1971) (explaining that a voter may sign a petition to place a candidate on the ballot and then decline to vote for that candidate at the election). Moreover, even if everyone who signed a referendum petition agreed on that one issue presented in the petition, one issue hardly defines individuals as a group whose associational interests are in need of protection. Indeed, many who have signed petitions for the wide variety of measures on the ballot in Washington State over the years would be surprised to learn they had any sort of associational interest with other signers.

Here, too, Plaintiffs' evidence will fail to meet their burden. Plaintiffs' Pretrial Statement suggests no evidence regarding the vast majority of petition signers, so Plaintiffs will fail to meet their burden of establishing that the R-71 signers are a "party."

### C.    Reasonable Probability Serious and Widespread Harassment

Even if Plaintiffs are a minority and a party (and they are neither), Plaintiffs must still meet a "substantial burden," *Doe*, 130 S. Ct. at 2831 (Stevens, J., concurring), of establishing that R-71 signers would face a "reasonable probability of serious and widespread harassment" if their names were disclosed, *id.* at 2829 (Sotomayor, J., concurring).

If Plaintiffs were a "new part[y] that ha[s] no history upon which to draw," Plaintiffs "may be able to offer evidence of reprisals and threats directed against individuals or organizations holding similar views." *Buckley*, 424 U.S. at 74. But Plaintiffs will not be able to establish that they are a "new party," even if this Court finds that they are a "party." PMW was constituted on May 13, 2009. The list of PMW's donors has been publicly available on the Public Disclosure Commission's website since June 2009. Therefore, PMW has more than two years of directly relevant history from which to draw.

Because PMW is not a "new party" with no history upon which to draw, Plaintiffs must offer "specific evidence of past or present harassment of *members* due to their associational ties,

INTERVENOR WASHINGTON FAMILIES
STANDING TOGETHER'S TRIAL BRIEF (No.
C06-0045 RSM) – 12
LEGAL21625333.1

Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

or harassment directed against the *organization* itself." *Buckley*, 424 U.S. at 74 (emphases added). Plaintiffs will not be able to meet their heavy burden with probative, admissible evidence. Plaintiffs admit that they have no evidence that even a single R-71 petition signer has been harassed because he or she signed an R-71 petition, despite PMW's efforts to solicit such evidence. Plaintiffs have produced no evidence that PMW's donors have been harassed, despite the fact that donor information has been publicly available on the Internet for over two years. Nor will Plaintiffs be able to present any admissible evidence that people refused to sign the R-71 petition out of concern that their names would become public.

D.   **Law Enforcement Unable or Unwilling to Control Harassment**

Finally, five Justices of the U.S. Supreme Court have indicated that, for a plaintiff to succeed on an as-applied challenge, the plaintiff must prove not only serious harassment, but also that law enforcement is unwilling or unable to control the harassment. *See Doe*, 130 S. Ct. at 2829 (Sotomayor, J., concurring); *id.* at 2831 (Stevens, J., concurring) ("[F]or an as-applied challenge to a law such as the [Public Records Act] to succeed, there would have to be a significant threat of harassment directed at those who sign the petition that cannot be mitigated by law enforcement measures."); *id.* at 2837 (Scalia, J., concurring) ("There are laws against threats and intimidation.").

Plaintiffs will not be able to meet this standard at trial either. The witnesses who were deposed admitted that they did not usually find the alleged harassment so serious as to require calling the police. The few times a witness did call the police, the police promptly attended to the callers' needs and the alleged harassment thereafter ceased.

V.   **STANDARD FOR GRANT OF JUDGMENT ON PARTIAL FINDINGS UNDER RULE 52(c)**

WAFST believes Plaintiffs will be unable to establish their burden of proving that R-71 signers are members of a minor party who, if their names are disclosed, will be subjected to serious and widespread harassment that law enforcement in Washington will be unwilling and

INTERVENOR WASHINGTON FAMILIES
STANDING TOGETHER'S TRIAL BRIEF (No.
C06-0045 RSM) – 13
LEGAL21625333.1

Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

unable to control. WAFST therefore anticipates moving under Federal Rules of Civil Procedure 52(c) for a judgment on partial findings.

Rule 52(c) governs such judgments in bench trials, and it provides in full as follows:

> ***Judgment on Partial Findings.*** If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue. The court may, however, decline to render any judgment until the close of the evidence. A judgment on partial findings must be supported by findings of fact and conclusions of law as required by Rule 52(a).

In ruling on a Rule 52(c) motion, the court weighs the evidence, resolves conflicts, and determines the plaintiff has met its burden of proof. *See Ritchie v. United States*, 451 F.3d 1019, 1023 (9th Cir. 2006). The court does not consider the evidence in the light most favorable to the nonmoving party or draw any other special inferences in the nonmovant's favor. *Id.*

Because WAFST believes that Plaintiffs will not be able to establish that (1) the 137,881 people who signed R-71 espouse historically marginalized minority views, (2) constitute an associational group, (3) and will face a reasonable probability of serious and widespread harassment, that (4) the State will be unwilling or unable to control, WAFST anticipates moving for a judgment on partial findings under Rule 52(c).

DATED: September 6, 2011

*s/ Kevin J. Hamilton, WSBA No. 15648*
Kevin J. Hamilton, WSBA No. 15648
William B. Stafford, WSBA No. 39849
**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000
KHamilton@perkinscoie.com
WStafford@perkinscoie.com

INTERVENOR WASHINGTON FAMILIES STANDING TOGETHER'S TRIAL BRIEF (No. C06-0045 RSM) – 14
LEGAL21625333.1

Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

# CERTIFICATE OF SERVICE

I certify that on September 6, 2011, I electronically filed the foregoing **INTERVENOR WASHINGTON FAMILIES STANDING TOGETHER'S TRIAL BRIEF** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following attorneys of record.

James Bopp, Jr.
Joseph E La Rue *(admitted pro hac vice)*
**Bopp Coleson & Bostrom**
1 South Sixth Street
Terre Haute, IN 47807-3510
jboppjr@aol.com
sbieniek@bopplaw.com
jlarue@bopplaw.com

Stephen Walter Pidgeon
3002 Colby Avenue, Suite 306
Everett, WA 98201
stephen.pidgeon@comcast.net

*Attorneys for Plaintiffs*

Duane M Swinton
Leslie R. Weatherhead
Steven Joseph Dixson
**Witherspoon Kelley Davenport & Toole**
422 W Riverside, Ste 1100
Spokane, WA 99201
dms@wkdtlaw.com
lwlibertas@aol.com
sjd@wkdtlaw.com

*Attorneys for Intervenor Washington Coalition for Open Government*

Anne Elizabeth Egeler
James Kendrick Pharris
Jay Douglas Geck
**Attorney General of Washington**
P.O. Box 40100
Olympia, WA 98504-0100
360-753-7085
annee1@atg.wa.gov
jamesp@atg.wa.gov
billc@atg.wa.gov

*Attorneys for Sam Reed and Brenda Galarza*

CERTIFICATE OF SERVICE (No. C06-0045 RSM) – 1

LEGAL21625333.1

Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

I certify under penalty of perjury that the foregoing is true and correct.

DATED this 6th day of September, 2011.

*s/ Kevin J. Hamilton*
Kevin J. Hamilton, WSBA No. 15648
**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000
WStafford@perkinscoie.com

*Attorneys for Intervenor Washington Families Standing Together*

CERTIFICATE OF SERVICE (No. C06-0045 RSM) – 2

LEGAL21625333.1

Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000