1

2

3                                                    The Honorable Benjamin H. Settle

4

5

6

7

8

9              **UNITED STATES DISTRICT COURT**
            **WESTERN DISTRICT OF WASHINGTON**
                        **AT TACOMA**

10

11   JOHN DOE #1, an individual, JOHN            NO.  09-cv-05456-BHS
     DOE #2, an individual, and PROTECT
     MARRIAGE WASHINGTON,                        DEFENDANTS' AND
12                                               INTERVENORS' PROPOSED
                            Plaintiffs,          FINDINGS OF FACT AND
13                                               CONCLUSIONS OF LAW

14        v.

15   SAM REED, in his official capacity as
     Secretary of State of Washington,
16   BRENDA GALARZA, in her official
     capacity as Public Records Officer for the
17   Secretary of State of Washington,

                            Defendants.
18

19        Defendants Secretary of State Sam Reed and Brenda Galarza (State Defendants) and

20   Intervenors Washington Families Standing Together (WAFST) and Washington Coalition for

21   Open Government (WCOG) respectfully submit proposed Findings of Fact and Conclusions

22   of Law in accordance with Fed. R. Civ. P. 52 and the Order entered by the Court on

23   January 10, 2011.

24                           **I.      INTRODUCTION**

25        This case came to trial before the Honorable Benjamin H. Settle, Judge of the United

26   State District Court for the Western District of Washington at Tacoma, from September 27 to

1  October 3, 2011.  Plaintiffs were represented by Bopp, Coleson & Bostrom and Stephen

2  Pidgeon, while defendants were represented by Anne Egeler and William G. Clark of the

3  Washington Attorney General's Office.  Intervenors Washington Families Standing Together

4  and Washington Coalition for Open Government were represented by Kevin J. Hamilton and

5  Ben Stafford of Perkins Coie, LLP and Duane M. Swinton, Leslie R. Weatherhead, and

6  Steven J. Dixson of Witherspoon Kelley, respectively.

7          The Court, having considered the testimony (live and deposition) and exhibits, and

8  having evaluated the legal memoranda and arguments by the parties, hereby enters the

9  following:

10                    **II.      FINDINGS OF FACT**

11  **A.      Jurisdiction, Venue, And Summary Of Claims**

12  1.        Jurisdiction is vested in this court by virtue of 28 U.S.C. § 1331 and 42 U.S.C.

13  § 1983, because plaintiffs' claims were based on an alleged violation of the right to associate,

14  pursuant to the First Amendment of the United States Constitution.  Venue is appropriate in

15  this judicial district.

16  2.        At trial, plaintiffs pursued their second claim set forth in their complaint, namely that

17  Washington's Public Records Act (Wash. Rev. Code § 42.56.001 *et seq.*) is unconstitutional as

18  applied to Referendum 71 (R-71) petition signers because plaintiffs alleged there is a

19  reasonable probability that, if exposed, R-71 signers will be subjected to threats, harassment, or

20  reprisals that will impair their right of association, under the First Amendment to the United

21  States Constitution.

22  3.        The defendants and Intervenors claimed that plaintiffs could not establish that R-71

23  petition signers were entitled to an exemption from the disclosure under the State's public

24  disclosure laws, and could not establish that there is a reasonable probability that they will

25  suffer threats, harassment, or reprisals as a result of disclosure of the signed R-71 petitions.

26  Moreover, the defendants and Intervenors maintained that plaintiffs could not demonstrate

DEFENDANTS' PROPOSED
FINDINGS AND FACT AND
CONCLUSIONS OF LAW
NO.  09-CV-05456-BHS

2

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

that law enforcement or the state's criminal justice system were not willing or able to effectively respond to any threats, harassment, or reprisals.  The defendants and Intervenors further claimed that the State has an important interest in preserving the integrity of the electoral process.

**B.     Identity Of Parties**

4.      Plaintiffs John Doe #1 and #2 are individuals who signed the R-71 petition and participated in gathering petition signatures and promoting the campaign to reject E2SSB 5688.  Plaintiff Protect Marriage Washington is a political committee organized under Washington law to oppose Laws of Washington 2009, E2SSB 5688.

5.      Defendant Sam Reed is the Secretary of State of Washington.   In his official capacity, Defendant Reed is responsible for receiving referendum petitions pursuant to Wash. Rev. Code § 29A.72.010 and for responding to public records requests made to the Secretary pursuant to Wash. Rev. Code § 42.56.

6.      Defendant Brenda Galarza is employed by the Secretary of State's Office as the Public Records Officer.

7.      Intervenor Washington Coalition for Open Government (WCOG) is an independent, nonprofit organization formed to promote public access to open government and public records.

8.      Intervenor Washington Families Standing Together (WAFST) is a statewide coalition endorsed by more than 150 community and faith-based organizations that all support E2SSB 5688, the subject of R-71.

**C.     Events**

9.      In 2009, the Washington Legislature enacted Laws of 2009, E2SSB 5688, which expanded the rights and responsibilities accorded to state registered same-sex partners and opposite-sex senior domestic partners.  (2009 Wash. Sess. Laws page nos. 3065-3141). Under Washington law, within 90 days after a bill is passed by the legislature, the people

DEFENDANTS' PROPOSED
FINDINGS AND FACT AND
CONCLUSIONS OF LAW
NO.  09-CV-05456-BHS

3

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

may file a petition, with a requisite number of signatures, calling for an election on whether to accept or reject the bill.  Wash. Rev. Code § 29A.72.030; Wash. Const. art. II, § 1.  The signed petitions are filed with the Secretary of State, who must determine whether the petitions contain a sufficient number of valid signatures from registered voters to satisfy the constitutional requirements for placing the measure on the ballot.  Anyone disagreeing with the Secretary's decision that a referendum contains a sufficient number of valid voter signatures to qualify for the ballot may challenge the decision in superior court.  Wash. Rev. Code § 29A.72.240 (2009).

10.     On May 13, 2009, a self-described "coalition of legislative and community leaders" with a long history of public advocacy in support of socially conservative causes filed paperwork with the Public Disclosure Commission to create a new political action committee named Protect Marriage Washington (PMW).  PMW became a State Political Committee and was organized for the express purpose of opposing E2SSB 5688, first, by collecting enough signatures to force a referendum, and then, by actively promoting the rejection of E2SSB 5688 at the polls.

11.     Plaintiffs and other Washingtonians worked to get R-71 on the ballot.  By the July 25, 2009, deadline, PMW and its coalition organizational members such as the Faith & Freedom Network, the Christian Coalition, the Knights of Columbus, Concerned Women for America, as well as PMW's religious and political leader board members had gathered 137,881 signatures, and submitted the signatures to the Secretary of State.  Most R-71 petition circulators had gathered signatures in public places, such as community events, county fairs, churches, storefronts, and shopping malls.

12.     On September 4, 2009, after more than a month of manual verification, Defendant Reed concluded that the R-71 petitions contained approximately 121,757 apparently valid Washington voter signatures, 1,180 more than the minimum 120,577 required to qualify

DEFENDANTS' PROPOSED
FINDINGS AND FACT AND
CONCLUSIONS OF LAW
NO.  09-CV-05456-BHS

4

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1   R-71 for the ballot.  After completing its verification process, the Secretary of State officially

2   certified R-71 for the ballot.

3   13.     Each petition sheet measured eleven inches by seventeen inches, and contained

4   twenty lines for signatures, printed names, addresses, and email addresses.  Nothing shielded

5   the names, contact information, and signatures on the petition sheets from view at the time

6   signatures were being gathered.  Nothing about the petitions indicated that the signatures and

7   other information provided by the signers would be kept confidential or would be withheld

8   by the State if disclosure were requested pursuant to State law.

9   14.     On November 3, 2009, voters in 29 of the State's 39 counties voted in favor of

10  PMW's initiative to reject E2SSB 5688.  Statewide, 53.15% of voters approved E2SSB 5688,

11  while 46.85% supported the repeal effort.  E2SSB 5688 became law.

12  15.     Since June 2009, the Washington Public Disclosure Commission has posted on the

13  internet the names, addresses, contribution amount, and some employment information of

14  over 850 donors to PMW.  The Public Disclosure Commission denied PMW's request to seal

15  this donor information.   PMW's request was premised on essentially the same allegations

16  presented in this lawsuit.  The Public Disclosure Commission determined that PMW could

17  not demonstrate a link between disclosure of names and addresses on the Commission's web

18  site, and any alleged harassment.

19  16.     Washington's Public Records Act (PRA) was enacted in 1972 by the people using

20  the initiative process.  Wash. Rev. Code § 42.56 (2009).  The PRA requires disclosure of

21  every record containing information relating to performance of a government function, unless

22  it is specifically exempted from disclosure.   Wash. Rev. Code §§ 42.56.010(2) (2009);

23  42.56.030 (2009); 42.56.070(2) (2009).   There is no disclosure exemption for signed

24  initiative or referendum petitions.

25  17.     WAFST made a public records request for the signed R-71 petitions, so that it could

26  determine whether the Secretary of State had made any errors in concluding that signatures

DEFENDANTS' PROPOSED
FINDINGS AND FACT AND
CONCLUSIONS OF LAW
NO.  09-CV-05456-BHS                          5                    ATTORNEY GENERAL OF WASHINGTON
                                                                  1125 Washington Street SE
                                                                  PO Box 40100
                                                                  Olympia, WA 98504-0100
                                                                  (360) 753-6200

1    on the petition were valid.  WAFST continues to assert that the records should be available to

2    the public so that fraud or mistakes can be identified to help ensure the integrity of future

3    elections.

4    18.    WCOG made a public records request for the R-71 petitions so that the public could

5    be informed about the decisions of its citizens when they act in the capacity of voter-

6    legislators through the referendum process.  WCOG continues to assert that the records

7    should be available to the public.

8    19.    There are currently five other public records requests that seek the R-71 petitions.

9    20.    Plaintiffs alleged that public disclosure of the signed R-71 petitions, pursuant to the

10   Washington Public Records Act, would violate the petition signers' First Amendment right

11   of association.

12   21.    The testimony and documents of plaintiffs and their trial witnesses, offered to

13   support their claims that public disclosure of R-71 petitions would harm their First

14   Amendment rights, fell into three general categories:  (1) verbal or written comments that did

15   not cause witnesses to feel threatened or call the police; (2) concerns resolved by the police

16   or other authorities; and (3) experiences that arose outside the context of the R-71 campaign

17   or from states other than Washington involving people unrelated to plaintiffs.

18   22.    Plaintiffs' evidence in support of their claims of harassment related only to

19   statements allegedly made to persons who promoted R-71 and other related advocacy

20   positions by broadcasting their names, faces, and opinions on television and radio, in

21   newspapers, on a variety of campaign webpages, and in statements of support in public

22   documents.  These persons spoke at public rallies, held R-71 signs at busy intersections, and

23   posted R-71 signs at their homes.  Their actions are very different from simply signing an R-

24   71 petition.  Even as to those witnesses, whose actions went beyond signing an R-71 petition,

25   the evidence of threats and harassment was insufficient to show any impact on First

26   Amendment rights.

DEFENDANTS' PROPOSED
FINDINGS AND FACT AND
CONCLUSIONS OF LAW
NO.  09-CV-05456-BHS

6

23.     There was no evidence of government involvement in, or support of, the isolated instances of harassment to which plaintiffs pointed.  In those few instances where law enforcement was contacted, its response was prompt and effective.

24.     Plaintiffs offered no evidence of R-71 related harassment which caused anyone to decline to sign a petition, to not be able to engage in speech related to R-71, or to decline association with PMW or its members.  Rather, the evidence proved that within a short period, plaintiffs were able to gather signatures from over 137,000 people who had not been given any reason to believe their signatures would be exempt from disclosure.  A total of 838,842 people, 46.85% of Washingtonians who voted in the R-71 election, supported plaintiffs in their opposition to E2SSB 5688.

        Plaintiffs offered no evidence that the 137,000 signers of the R-71 petition (or the Doe plaintiffs) are members of PMW, or have any other associational interest in common with each other.

25.     There was no evidence that persons providing financial support to PMW, whose names and addresses have been public for more than two years, have been subject to harassment or threats because they support PMW's aims or financed its cause.  The names and addresses of PMW's campaign contributors have long been publicly available on a State website.  PMW registered with Washington's Public Disclosure Commission as a political committee and sought campaign donations.  As required by Wash. Rev. Code § 42.17.370(10), PMW filed campaign finance disclosure reports with the Commission.  From May through November 2009, PMW reported 857 contributions.  Each contribution was posted on the Commission's website, including the contributor's name and address, the sum contributed, and the occupation and employer of contributors of more than $100.  For over two years, the public has been able to view this information on the internet.

26.     Similarly, plaintiffs have conceded there is no evidence of threats, harassment or acts of retribution experienced by signers of R-71 petitions other than that alleged by persons who have

DEFENDANTS' PROPOSED
FINDINGS AND FACT AND
CONCLUSIONS OF LAW
NO.  09-CV-05456-BHS

7

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1   publicly identified themselves as supporters of R-71 and other related causes.  There was no

2   credible evidence that anyone allegedly exposed to harassment, threats, or retribution declined

3   to sign an R-71 petition, declined to be involved in the R-71 campaign or election or in any way

4   declined to exercise First Amendment rights.

5   27.    In August 2009, PMW requested that the Public Disclosure Commission "seal"

6   PMW donor information that had already been made available to the public.  PMW

7   supporters, including plaintiffs' witnesses REDACTED and     REDACTED     ,

8   testified before the Commission that they had received uncivil, harassing, or threatening

9   communications regarding R-71.  Information regarding the REDACTED and REDACTEDs

10   involvement with the R-71 campaign was available from numerous public sources, including

11   the media and PMW's campaign website.  Because PMW could not demonstrate any link

12   between disclosure of names and addresses on the Commission's website, and the alleged

13   harassment, the Commission denied PMW's request and continues to provide R-71 donor

14   information to the public.  Plaintiffs offered no evidence that any violence was attempted

15   against any of PMW's publicly identified donors.

16   28.    Plaintiffs' witnesses also described public encounters with individuals using rude

17   language or gestures to express disagreement with the witness's political position.  While

18   collecting signatures, there were verbal exchanges, but no violence occurred.  Similar verbal

19   incidents occurred during the collection of petition signatures, but all at public locations.

20   These incidents were unpleasant, but not threatening.  Verbal exchanges also occurred while

21   gathering signatures at large businesses, such as Wal-Mart.  In those instances, however,

22   person(s) working at the business were able to resolve any apparent confrontations and no

23   violence or intimidation occurred.

24   29.    Similarly, plaintiffs' witnesses described written comments posted on the internet

25   regarding R-71.  Only one witness was sufficiently concerned to call the police.  A blogger in

26   Bellingham posted comments on the internet that REDACTED felt were threatening.  Mr.

1    REDACTED reported the blog to the Snohomish County Sheriff, who reported the matter to the

2    Bellingham police for investigation.  Bellingham Detective Allan Jensen investigated the

3    complaint.  The blogger, John Bisceglia, explained to Officer Jensen that he viewed R-71 as

4    a threat against his family.  He stated "he was sorry that this had grown into a police

5    complaint," assured Detective Jensen that "he would be careful on how he worded his blog

6    posts," and "removed any post that might offend others."  Detective Jensen concluded that

7    the blog did not merit criminal citation, but rather was "more the result of emotions"

8    surrounding the political issue.

9    30.    A few witnesses reported receiving phone calls they perceived to be hostile from a

10   transgendered individual named Krystal Mountaine.  Only one witness, REDACTED, felt

11   the call was sufficiently threatening to call the police.  The police responded promptly and

12   the calls stopped.

13   31.    Finally, one witness was a 2009 candidate for the Legislature.  The day after a

14   newspaper ran an article about this campaign, the candidate's son apparently received a

15   threat directed at the candidate from an anonymous telephone caller.  The candidate called

16   the police, who responded within five minutes.  Responding police officer Andrew Mehl

17   stated that such anonymous telephone threats are fairly common, explained how to trace any

18   further calls, suggested that the candidate get caller I.D., and said to call the police if anyone

19   appeared to be watching or following the candidate.  Statements in the police report reflect

20   that the caller did not state why he was making the threat, and never mentioned R-71 or any

21   other political issue.  No action on the threat ever materialized.

22   32.    Some witnesses shared stories or documents reporting events that had no

23   relationship to R-71, or which the witness admitted may not have been related to R-71.  In

24   the few instances that the witness felt threatened, the witness confirmed that local police had

25   intervened to ensure that there were no acts or threats of violence or harassment.

26

DEFENDANTS' PROPOSED
FINDINGS AND FACT AND
CONCLUSIONS OF LAW
NO.  09-CV-05456-BHS

9

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

33.     The John Doe plaintiffs each publicly advocated the rejection of E2SSB 5688 at church-sponsored and community events, in contexts in which their identity was known or easily discoverable by others present.

34.     REDACTED and REDACTED testified that they felt it necessary to contact the police regarding what they perceived to be rude verbal remarks.  The police responded immediately and the individual making the comments that troubled the REDACTED stopped immediately.

35.     During the period relevant to the R-71 campaign, only REDACTED and REDACTED REDACTED claimed to have received verbal threats of violence.  The police were called and responded immediately.  They found no evidence that either threat was related to R-71.  Ms. REDACTED was a candidate for office and Mr. REDACTED a reverend, both of whom over many years have advocated publicly on behalf of a range of social issues, candidates, and ballot measures.  The police were unable to determine the reason for each verbal threat.  Neither Ms. REDACTED nor Mr. REDACTED was subjected to any physical harm related to R-71.

36.     Reject R-71 signs were removed or vandalized, in a manner and volume typical of both liberal and conservative Washington State issues and candidate campaigns.  These acts do not constitute evidence of threats, harassment or retribution against the signers of R-71 petitions.

37.     In sum, plaintiffs' evidence of threats and harassment was insubstantial and unpersuasive.  It fell far short of demonstrating any reasonable probability that signers of the R-71 petition would be threatened, harassed, or suffer any reprisals that would undermine their First Amendment rights of speech and association if the R-71 petitions were disclosed.

38.     There is no evidence that the State participated in threats, harassment, or reprisals, or refused to respond to threats, harassment, or reprisals allegedly related to the R-71 petition drive, campaign, or election.

39.     There is no evidence that anyone declined to associate with PMW as a result of threats, harassment, or reprisals.

DEFENDANTS' PROPOSED
FINDINGS AND FACT AND
CONCLUSIONS OF LAW
NO.  09-CV-05456-BHS

10

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

40.     There is no credible evidence that anyone was threatened with death or serious bodily injury because they signed an R-71 petition.

41.     There is no evidence that anyone was threatened, harassed, or faced reprisals as a result of the State's public disclosure of PMW's donor list.

42.     PMW and its members and supporters do not constitute a "new" political organization with no history in the State of Washington.  To the contrary, PMW was formed by a coalition of long-time advocates of socially conservative causes in May 2009, and its supporters were able to garner substantial support for their views and the support of just under 47% of Washington's voters.

43.     There are no facts or competent, admissible evidence, to establish a reasonable probability of threats, harassment, or retribution against any person who signed, or who declined to sign, R-71 petitions.  Only persons who made themselves known publicly as R-71 supporters allege incidents of threats, harassment, or retribution.

44.     Allegations regarding events out of state that do not involve R-71 are not relevant to this case and are therefore inadmissible; even if relevant, they are so remote as to time, place, and subject matter as to be entitled to no weight on the question whether release of names of the R-71 petition signers is likely to trigger threats against any signer of R-71.

45.     Allegations regarding events in this state, unrelated to R-71, are not relevant to this case and are therefore inadmissible.

46.     Even if all of plaintiffs' proffered evidence were admitted and considered, the Court finds that evidence to be unpersuasive and insufficient to demonstrate a reasonable probability of threats, harassment, or reprisals occurring if R-71 petitions were made public pursuant to State law.  The overwhelming majority of such evidence pertained to events occurring in California related to the Proposition 8 campaign or otherwise unrelated to the R-71 campaign in Washington State.  Even if admitted, the probative value of such evidence is minimal, and the Court rejects the proffered inference that such evidence suggests R-71

DEFENDANTS' PROPOSED
FINDINGS AND FACT AND
CONCLUSIONS OF LAW
NO.  09-CV-05456-BHS

11

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1    petition signers would suffer harassment, threats, or reprisals if R-71 petitions are made

2    public.  In sum, the Court finds that the excluded evidence is significantly outweighed by

3    evidence directly related to the R-71 campaign, including the lack of evidence that PMW

4    contributors suffered harassment, or that PMW spokespeople experienced significant threats

5    or harassment because of their public advocacy.

6    47.     The election on R-71 concluded in November 2009.

7    48.     Although the election occurred two years ago, PMW continues to be registered in

8    Washington as a Political Action Committee.  Therefore, the State and the public have a

9    continuing interest in protecting the integrity of the election system by learning whether

10   PMW engaged in "bait and switch" fraud to induce individuals to sign the R-71 petitions

11   particularly in advance of future elections where the same signature-gathering methods may

12   be used, and the public has a continuing interest in transparency in its legislative processes.

13        Based upon the foregoing Findings of Fact, the Court enters the following

14   Conclusions of Law:

15                          **III.     CONCLUSIONS OF LAW**

16

17   1.      This Court has jurisdiction over the subject matter of this case and personal

     jurisdiction over the parties.

18

19   2.      Plaintiffs initiated this case as both a facial and as applied challenge to the

20   constitutionality of Washington's Public Records Act, RCW 42.56.010 *et seq*, as applied to

     disclosure of R-71 petitions.   Count I of plaintiffs' complaint, the facial challenge, was

21

22   dismissed as a result of the United State Supreme Court decision in *Doe v. Reed*, 130 S. Ct.

23   2811 (2010).  Plaintiffs' case proceeded to trial on Count II of the complaint, the claim that, as

24   applied to plaintiffs in this case, the State Public Records Act, and its disclosure provisions

25   violated plaintiffs' right to free association pursuant to the First Amendment of the United

26   States Constitution.

DEFENDANTS' PROPOSED
FINDINGS AND FACT AND
CONCLUSIONS OF LAW
NO.  09-CV-05456-BHS                              12                    ATTORNEY GENERAL OF WASHINGTON
                                                                         1125 Washington Street SE
                                                                         PO Box 40100
                                                                         Olympia, WA 98504-0100
                                                                         (360) 753-6200

3.      For an as-applied challenge to a law such as the PRA to succeed, plaintiffs must demonstrate a reasonable probability that disclosure will subject those identified to threats, harassment, or reprisals, that State law enforcement is unwilling or unable to control.  While the compelled disclosure of signatory information on referendum petitions is subject to judicial review under the First Amendment, the federal courts allow states significant flexibility in implementing their own voting systems (including State referendum and initiative laws) and, to the extent a state regulation concerns the legal effect of a particular activity in the electoral process, the government will be afforded substantial latitude in enforcing that regulation.

4.      Federal courts subject state law disclosure requirements that are alleged to have First Amendment impacts to exacting scrutiny.  That standard requires a substantial relationship between the disclosure requirement and a sufficiently important governmental interest.  Those resisting disclosure can prevail under the First Amendment only if they show a reasonable probability that the compelled disclosure of personal information will subject them to threats, harassment or reprisals from either government officials or private parties.

5.      Washington has demonstrated two interests sufficient to justify the alleged burden of compelled disclosure under the Public Records Act on First Amendment rights: (1) preserving the integrity of the electoral process by combating fraud, detecting invalid signatures and fostering governmental transparency and accountability, and (2) providing information to the electorate about individuals who support R-71.

6.      Public disclosure of the signed petitions helps ensure that the only signatures counted are those that should be and that the only referenda placed on the state ballot are those that garner sufficient valid signatures.   Public disclosure also promotes transparency and accountability by promoting detection of certain types of fraud that are otherwise difficult to detect.  The integrity of the State's electoral system is a matter of continuing public concern that exists after the petition gathering and ensuing electoral process is concluded.  Accordingly, this Court concludes that public disclosure of referenda petitions in general and in this

DEFENDANTS' PROPOSED
FINDINGS AND FACT AND
CONCLUSIONS OF LAW
NO.  09-CV-05456-BHS

13

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1  particular case, is substantially related to the important interests of preserving the integrity of

2  the electoral process by providing the public access to information contained in the referendum

3  petitions.

4  7.       Plaintiffs have not met their burden to demonstrate how disclosure would impact the

5  First Amendment right of association.  The petition signers are not joined as any sort of group

6  or organization.  It is unclear why any particular individual chooses to sign a referendum

7  petition, and the only definite unifying feature of R-71 petition signers was a desire to allow

8  the electorate to decide whether E2SSB 5688 would be retained as a law.  The signers no

9  longer have any associational interest.  Similarly, PMW has not offered any evidence of an

10  associational interest, given that the election occurred in 2009.  R-71 petition signers thus do

11  not constitute a "minor party."  Therefore, disclosure will not implicate the First Amendment

12  right of association.

13  8.       Plaintiffs also bore the burden of providing factual support for their claim that they

14  face a reasonable probability of suffering, threats, harassment, or reprisals because of the

15  disclosure of the identities of those who signed R-71 petition.

16  9.       Plaintiffs' evidence fell far short of establishing a reasonable probability of threats or

17  harassment that the State was unwilling or unable to control.  That evidence also fell far short

18  of establishing that plaintiffs, or others who signed R-71 petitions, experienced violence,

19  threats, harassment, or reprisals as a result of their involvement in the R-71 campaign.

20  10.      The testimony and documents offered by plaintiffs consisted of: verbal or written

21  comments that did not cause persons to feel threatened or to call police; concerns that were

22  resolved by the police or other authorities; and experiences that arose outside the context of the

23  R-71 campaign, or persons and events from outside the State of Washington.  The court was

24  not persuaded that this evidence demonstrated a reasonable probability of violence, threats,

25  harassment, or retribution against the petition signers or plaintiffs.  Plaintiffs' evidence of

26  alleged harassment was limited to persons who promoted R-71 by broadcasting their names,

DEFENDANTS' PROPOSED
FINDINGS AND FACT AND
CONCLUSIONS OF LAW
NO.  09-CV-05456-BHS

14

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1   faces, and opinions on television and radio, in newspapers, on campaign related web pages,
2   and in statement of support in public documents.  Plaintiffs offered nothing to suggest that
3   there was government involvement in, or support of, those instances of alleged harassment and,
4   in those few instances where plaintiffs contacted law enforcement personnel, the response was
5   prompt and effective.   Finally, plaintiffs offered no credible evidence of R-71 related
6   harassment that caused anyone to decline to sign an R-71 petition or to engage in speech
7   related to R-71.  To the contrary, the evidence demonstrated that plaintiffs were able to gather
8   more than 137,000 signatures on R-71 petitions within a relatively short period and that
9   46.85% of Washingtonians who voted in the R-71 election supported plaintiffs' position
10  regarding R-71.  Moreover, PMW continued to raise money and recruit donors and supporters
11  despite disclosure of their identities.

12  11.      In stark contrast to plaintiffs' evidence, the defendants provided evidence that no
13  persons providing financial support to plaintiffs and other proponents of R-71, whose names
14  and addresses have been a matter of public record for many years, were subjected to
15  harassment or threats.  PMW donor information has been available to the public on the internet
16  for years without incident, including during the time period that signatures were being gathered
17  on the R-71 petitions, and the time leading up to the election.  This Court concludes that the
18  experience of those identified publicly as donors to PMW proves that there is no reasonable
19  probability of violence, threats, harassment, or retribution against plaintiffs or other supporters
20  of R-71 due to the disclosure of the R-71 petitions.

21  12.      The court further concludes that plaintiffs' evidence of rude language or gestures
22  indicating disagreement with plaintiffs' political position on R-71, written comments posted on
23  the internet regarding R-71, and specific contacts made with supporters of R-71 by persons
24  opposed to plaintiffs' position, were insufficient to meet plaintiffs' burden in this case and no
25  greater than that experienced in elections in general.

26

DEFENDANTS' PROPOSED
FINDINGS AND FACT AND
CONCLUSIONS OF LAW
NO.  09-CV-05456-BHS

15

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

13.     Plaintiffs contended that they are entitled to a flexible burden of proof in establishing their claims based upon an exception to disclosure laws for members of a new party or organization without a history of conduct and experience in the forum state.  Neither plaintiffs nor PMW met their burden of establishing that they comprise a new political group without experience in the State of Washington.   PMW, for example, registered as a Washington political committee in May 2009 for the purpose of raising funds and collecting signatures statewide on R-71 petitions.  PMW also campaigned extensively statewide in anticipation of the 2009 November general election.  Since June 2009, the name, city, state, and zip code of over 850 individuals and businesses contributing to PMW have been posted on a publicly searchable database by the State of Washington.  No one who donated to PMW's campaign was alleged to have suffered retaliation or harassment that deterred their exercise of the First Amendment right of association.  Similarly, no one who simply signed the R-71 petition is alleged to have suffered retaliation or harassment that deterred their exercise of the First Amendment right of association.  Therefore, the Court concludes that neither plaintiffs nor PMW have established the predicate for any exception to the law and principles governing the disclosures of the personal identifying information of those who signed petitions in Washington State.

14.     Defendants' evidence also established that the history of the disclosure of referenda petitions in the State of Washington demonstrated that disclosure occurred without injury or harm to the First Amendment rights of petition signers.

15.     Most of plaintiffs' evidence in this case consisted of email, internet websites and postings, and hearsay accounts of confrontations between supporters of and opponents to the rights of same-sex partners.  Defendants submitted considerable evidence that the subject matter of these emails, websites, and internet postings is typical of what occurs in an electoral campaign.  The actions of some of these individuals and the events related were unpleasant and disagreeable, but they did not amount to evidence sufficient to overcome the State's legitimate

DEFENDANTS' PROPOSED
FINDINGS AND FACT AND
CONCLUSIONS OF LAW
NO.  09-CV-05456-BHS

16

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1  interest in carrying out its electoral process and in implementing its public disclosure laws.

2  Much of plaintiffs' evidence was inadmissible.  However, even if all of plaintiffs' evidence had

3  been admissible, it would have been legally insufficient to carry plaintiffs' burden of proof in

4  this case.

5  16.     Plaintiffs' constitutional claim in this case has failed due to a lack of proof.  Plaintiffs'

6  claim in this case has also failed because of the substantial state interest involved in the

7  referendum process and the states public disclosure laws.

8  17.     The Court concludes that the State's Public Records Act is constitutional as applied to

9  the facts of, and parties to, this case.

10  18.     Based on the foregoing, the Court will enter judgment in this case dismissing

11  plaintiffs' claims with prejudice.

12                Entered by the undersigned this _____ day of _____, 2011

13

14                                            _____
                                              BENJAMIN H. SETTLE, United States District Judge

15  Presented by:

16

17  ROBERT M. MCKENNA
    Attorney General

18

19   s/ Anne Egeler_____
    ANNE EGELER, WSBA #20258

20  Deputy Solicitor General
    PO Box 40100

21  Olympia, WA  98504-0100
    360-664-3027

22  Annee1@atg.wa.gov
    WILLIAM CLARK, WSBA #9234

23  Senior Counsel
    800 Fifth Ave, Ste 2000

24  Seattle, WA 98104
    206-464-7352

25  BillC2@atg.wa.gov
    _____

26

1   *By:  s/ Kevin J. Hamilton, WSBA No. 15648*
    *By:  s/William B. Stafford, WSBA No. 39849*
2   **PERKINS COIE LLP**
    1201 Third Avenue, Suite 4800
3   Seattle, WA  98101-3099
    Telephone:  206.359.8000
4   Facsimile:  206.359.9000
    Email:  KHamilton@perkinscoie.com
5           WStafford@perkinscoie.com

6   /s Leslie Weatherhead
    Leslie R. Weatherhead
7   Steven J. Dixson
    Witherspoon Kelley Davenport & Toole
8   422 W. Riverside Ave, Suite 1100
    Spokane, WA 99201
9   (509) 755-2011

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANTS' PROPOSED                          18            ATTORNEY GENERAL OF WASHINGTON
FINDINGS AND FACT AND                                              1125 Washington Street SE
CONCLUSIONS OF LAW                                                       PO Box 40100
NO.  09-CV-05456-BHS                                              Olympia, WA 98504-0100
                                                                      (360) 753-6200

1
2
3
4
5
6
7
8                                                    The Honorable Benjamin H. Settle

9                        UNITED STATES DISTRICT COURT
                        WESTERN DISTRICT OF WASHINGTON
10                                  AT TACOMA

11   JOHN DOE #1, an individual, JOHN          NO. 09-cv-05465-BHS
     DOE #2, an individual, and PROTECT
12   MARRIAGE WASHINGTON,                      CERTIFICATE OF SERVICE

13                      Plaintiffs,

14          v.

15   SAM REED, in his official capacity as
     Secretary of State of State of Washington,
16   BRENDA GALARZA, in her official
     capacity as Public Records Officer for the
17   Secretary of State of Washington,

18                      Defendants.

19          I certify that on September 6, 2011, I electronically filed the foregoing Defendants'

20   and Intervenors' Proposed Findings of Fact and Conclusions of Law with the Clerk of the

21   Court using the CM/ECF system, which will send notification of such filing to the following

22   attorneys of record.

23
            James Bopp, Jr , jboppjr@aol.com
24
            Joseph La Rue, jlarue@bopplaw.com
25
            Stephen Pidgeon, stephen.pidgeon@comcast.net
26
            Steven Dixson, sjd@wkdtlaw.com

CERTIFICATE OF SERVICE                    1          ATTORNEY GENERAL OF WASHINGTON
                                                                  P.O. Box 40100
                                                              Olympia, WA  98504-0100
                                                                  (360) 753-7085

1

Duane Swinton, dms@wkdtlaw.com

2

Leslie Weatherhead, lwlibertas@aol.com

3

William Stafford, wstafford@perkinscoie.com

4

Ryan McBrayer, rmcbrayer@perkinscoie.com

5

Kevin Hamilton, khamilton@perkinscoie.com

Jared M. Haynie, jhaynie@bopplaw.com, thehaynies@gmail.com

6

7

DATED this 6th day of September, 2011.

8

s/Anne Egeler
Anne E. Egeler, WSBA No. 20258

9

*Deputy Solicitor General*
P.O. Box 40100

10

Olympia, WA  98504-0100
annee1@atg.wa.gov

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ATTORNEY GENERAL OF WASHINGTON
P.O. Box 40100
Olympia, WA  98504-0100
(360) 753-7085