The Honorable Benjamin H. Settle

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| JOHN DOE No. 1, an individual, JOHN DOE No. 2, an individual, and PROTECT MARRIAGE WASHINGTON,<br><br>Plaintiffs,<br><br>v.<br><br>SAM REED, in his official capacity as Secretary of State of Washington, BRENDA GALARZA, in her official capacity as Public Records Officer for the Secretary of State of Washington,<br><br>Defendants. | No. 09-cv-05456-BHS<br><br>WASHINGTON COALITION FOR OPEN GOVERNMENT'S TRIAL BRIEF |

## I.   INTRODUCTION

John Doe No. 1, John Doe No. 2, and Protect Marriage Washington ("PMW") (collectively "Plaintiffs") ask this Court to foster a secret legislative process by declaring unconstitutional Washington's Public Records Act ("PRA"), a 39-year-old statute that ensures open government to all citizens of Washington State. Plaintiffs must show by competent, relevant evidence that Referendum 71 petition-signers face a reasonable probability of threats, harassment, and reprisals, that those threats have a likelihood of being carried out, and that the State or other government agencies are unable or unwilling to correct such actions. However, Plaintiffs, by their own



Witherspoon·Kelley
Attorneys & Counselors
422 W. Riverside Avenue, Suite 1100    Phone: 509.624.5265
Spokane, Washington 99201-0300           Fax: 509.458.2728

admission, have failed to come up with any evidence supporting such a drastic determination. The evidence produced at trial will show exactly the opposite. Because the Plaintiffs cannot meet their burden, WCOG respectfully requests that the Court deny Count II of Plaintiffs' Complaint and find that the PRA is constitutional as applied to the Referendum 71 petitions.

Plaintiffs concede that the PRA requires disclosure of the names of those citizens who supported putting Referendum 71 on the ballot by signing petitions. Plaintiffs also concede that there is no evidence of any threats, harassment, or reprisals directed toward any signer of the Referendum 71 petition who was not otherwise publicly identified with the Referendum 71 campaign, stating: "Of course there is no such evidence." (Dkt. 259, p. 1).

Instead of producing evidence of threats and harassment allegedly suffered by Washington citizens as a result of their signing of the Referendum 71 petitions, the Plaintiffs rely largely upon out-of-state, irrelevant, and inadmissible evidence to support their position. This "evidence" comes in the form of Internet postings and newspaper articles discussing incidents far removed in time and place from the Referendum 71 campaign; precious little evidence pertains to Washington. As demonstrated below, these materials are inadmissible at trial because they are either irrelevant or garden-variety hearsay, or both. Assuming, *arguendo*, that Plaintiffs' evidence clears the evidentiary hurdles, which it does not, the evidence is not probative of any impact on Referendum 71 petition signers.

Plaintiffs argue that they are entitled to submit information concerning alleged threats and harassment from other states to support their assertion that opponents of same-sex marriage are like members of the National Association for the Advancement of Colored People in the South during the 1950s or the Communist and Socialist Parties in the Midwest in the 1980s. Plaintiffs are in error here. The "minor party" rule allowing evidence of similarly situated parties only

WASHINGTON COALITION FOR OPEN GOVERNMENT'S TRIAL BRIEF
No. 09-cv-05456-BHS - 2

WITHERSPOON·KELLEY
Attorneys & Counselors
422 W. Riverside Avenue, Suite 1100   Phone: 509.624.5265
Spokane, Washington 99201-0300   Fax: 509.458.2728

applies to parties which are demonstrably "minor"; that is, whose views are not widely held or accepted and who have shown not only lack of protection from the government but actual abuse by government officials. PMW, by its membership ranks and ability to gather signatures, as well as the number of votes it received in the November 2009 election, is not a "minor party" entitled to present this evidence.

Moreover, even if it were a minor party, the evidence from other states is only relevant if there is some proof that the acts chronicled in other states would have some likelihood of occurring in Washington related to the Referendum 71 campaign. There is none; the Plaintiffs will not show that even a single person was discouraged from signing a Referendum 71 petition based upon any perceived threats, harassment, or reprisals. Absent some proof that the menacing acts from other jurisdictions would in fact take place in Washington, that evidence is not probative of any fact that the Plaintiffs must prove.

## II. PROCEDURAL HISTORY

**A. In 2009, The Washington Legislature Passed A Bill Expanding Domestic Partnership Rights; The Plaintiffs Gathered Signatures In Support Of A Petition Against Enactment Of This Legislation**

In March 2009, the Washington Legislature enacted Engrossed Second Substitute Senate Bill 5688 ("E2SSB 5688"), which expanded the rights and responsibilities of same-sex and senior domestic partners. (Dkt. 196, p. 3.) In Washington, citizen legislators may create and circulate petitions in opposition to legislation passed by the Legislature, and if the petition is signed by the statutorily-mandated number of voters, the matter passed by the Legislature will be submitted as a referendum election on whether to accept or reject the proposed law. (Dkt. 196, p. 4 (citing Wash. Rev. Code § 29A.72.030).) PMW sponsored such a petition in response to E2SSB 5688, gathering

WASHINGTON COALITION FOR OPEN GOVERNMENT'S TRIAL BRIEF
No. 09-cv-05456-BHS - 3

WITHERSPOON·KELLEY
Attorneys & Counselors
422 W. Riverside Avenue, Suite 1100   Phone: 509.624.5265
Spokane, Washington 99201-0300   Fax: 509.458.2728

approximately 137,000 signatures—enough to place the resulting referendum, Referendum 71, on the November 2009 ballot. (*Id*.)

**B.  Prior to Referendum 71's Inclusion On The Ballot, Plaintiffs Filed A Lawsuit To Block Disclosure Of The Names Of The Citizen-Legislators Who Signed Petitions In Support Of Referendum 71**

Prior to initiation of the instant suit, Intervenor Washington Families Standing Together ("WAFST") filed a lawsuit in King County Superior Court to preclude the Secretary of State from certifying Referendum 71 to the ballot based on concerns about the validity of signatures on referendum petitions. (Dkt. 45.) In order to verify its challenges, WAFST requested access to the actual petitions to check signatures and filed a public records request for the signed petitions with the Washington Secretary of State. WCOG similarly filed a request for the records under the PRA.

In response to WAFST's public records request, which the State of Washington agreed to grant, Plaintiffs filed the present action on July 28, 2009, alleging that the PRA, by mandating public disclosure of the petitions, violated the First Amendment rights of petition signers. Plaintiffs alleged that the PRA violates the First Amendment on its face (Count I) and as applied to release of R-71 petitions specifically (Count II). They claim that signers would face threats and harassment if their names and addresses were released.

The District Court granted Plaintiffs' motion for a preliminary injunction based on their facial challenge. The Ninth Circuit Court of Appeals reversed. *Doe v. Reed,* 586 F.3d 671 (2009). The United States Supreme Court affirmed the Ninth Circuit. *John Doe No. 1 v. Sam Reed,* 130 S. Ct. 2811 (2010).  It did not reach Plaintiffs' as-applied challenge from Count II because it had not been considered below.  *Id*.  The Supreme Court remanded the case to this Court to allow Plaintiffs the chance to produce evidence in support of their as-applied claim.

WASHINGTON COALITION FOR OPEN GOVERNMENT'S TRIAL BRIEF
No. 09-cv-05456-BHS - 4

WITHERSPOON · KELLEY
Attorneys & Counselors
422 W. Riverside Avenue, Suite 1100   Phone: 509.624.5265
Spokane, Washington 99201-0300   Fax: 509.458.2728

In August 2010, the Plaintiffs designated 19 witnesses who they claimed suffered threats, harassment, and reprisals as a result of their participation in the Referendum 71 campaign. Defendants and Intervenors then deposed these witnesses throughout the fall of 2010. The State of Washington supplied its own list of witnesses in rebuttal to the testimony proffered by the Plaintiffs' witnesses; the Plaintiffs elected not to depose any of those people.

Following the close of discovery, the parties cross-moved for summary judgment. The Defendants and Intervenors argue generally that Plaintiffs have failed to provide sufficient evidence to demonstrate that petition signers would face a reasonable probability of threats, harm, or reprisals, nor that there is any likelihood that those "threats" would actually occur or be acted upon, nor that effective law enforcement would not prevent the harms. The Plaintiffs concede that they have no evidence of threats or harassment directed at otherwise anonymous petition signers, but they argue that the perceived threats suffered by the campaign leaders, coupled with out-of-state anecdotes, satisfies their burden. Respectfully, it does not, and the Court should dismiss Count II of Plaintiffs' Complaint.

### III. STATEMENT OF EXPECTED TRIAL TESTIMONY

**A. Plaintiffs' Witnesses Are Expected To Testify That They Experienced Opposition To Their Public Advocacy In Support Of Referendum 71, And That This Alleged Harm Could Have Been Remedied Through Law Enforcement**

Plaintiffs are expected to offer testimony from 15 witnesses by deposition and at least three by live testimony. Intervenors anticipate that the testimony of these witnesses will state that the witnesses, all public advocates of Referendum 71, experienced political opposition related to their involvement in the campaign, such as: stolen and vandalized yard signs; unpleasant conversations, letters, and phone calls; and rude or vulgar public gestures. Glaringly absent from this expected testimony, however, will be any concrete evidence that rank-and-file petition signers suffered

WASHINGTON COALITION FOR OPEN
GOVERNMENT'S TRIAL BRIEF
No. 09-cv-05456-BHS - 5



WITHERSPOON·KELLEY
Attorneys & Counselors
422 W. Riverside Avenue, Suite 1100     Phone: 509.624.5265
Spokane, Washington 99201-0300          Fax: 509.458.2728

credible threats based on their act of signing the petitions, rather than their outspoken advocacy, or that law enforcement could not have addressed any alleged harms. In addition, the anecdotes these witnesses will provide cannot be reliably tied to Referendum 71, absent the witnesses' subjective speculation.

Intervenors also expect Plaintiffs will attempt to introduce hundreds of documents gleaned from the Internet and a number of online videos describing alleged incidents of harassment aimed at opponents of same-sex marriage in California, Utah, other states, and Britain. Plaintiffs apparently intend to "authenticate" these documents through their counsel, Bopp, Coleson & Bostrom. This far-flung and extraneous material lacks bearing on the instant case and should be excluded as irrelevant because it fails to meet the requirements of the Federal Rules of Evidence, as explained herein. Even if this evidence is admitted, Intervenors anticipate that it will fail to show a reasonable probability of threats, harassment, or reprisals aimed at ordinary Referendum 71 petition signers in Washington State, as required by the United States Supreme Court's test for nondisclosure of public records.

**B.   Defendants And Intervenors' Witnesses Will Testify That Law Enforcement Could Have Remedied Plaintiffs Alleged Harms, And That Random Vandalism Is Common During Washington Political Campaigns**

Defendants will proffer testimony of law enforcement officers reflecting the State's ability and willingness to investigate reported threats or harassment and that officers responding to the perceived threats in this case took prompt and effective action. Defendants will also offer testimony that the random vandalism Plaintiffs' witnesses allegedly observed—such as theft or destruction of campaign signs, rude remarks made to those waving campaign signs, and rude e-mails or calls—are incidental to any election and typically experienced by both sides of an issue.

WASHINGTON COALITION FOR OPEN GOVERNMENT'S TRIAL BRIEF
No. 09-cv-05456-BHS - 6

WITHERSPOON·KELLEY
Attorneys & Counselors
422 W. Riverside Avenue, Suite 1100    Phone: 509.624.5265
Spokane, Washington 99201-0300         Fax: 509.458.2728

## IV. LEGAL AUTHORITY

**A. The Supreme Court In *Doe v. Reed* Reaffirmed The Exacting Legal Standard In An As-Applied Claim**

Plaintiffs alleging a First Amendment violation in the context of disclosure of referendum information must establish by admissible evidence, not mere speculation, that rank-and-file petition signers face "a reasonable probability that the compelled disclosure [of personal information] will subject them to threats, harassment, or reprisals from either Government officials or private parties." *Reed,* 130 S. Ct. at 2820 (quoting *Buckley v. Valeo*, 424 U.S. 1, 74 (1976)). Furthermore, in order to justify the extraordinary remedy of declaring the PRA unconstitutional, the Plaintiffs must establish more than mere talk – they must prove the probability of threats; that is, a reasonable person must believe that some harmful action would likely follow the threatening speech. RCW 9A.46.020. In her concurring opinion, Justice Sotomayor elaborated that this test requires a showing that law enforcement would not be effective in controlling the alleged harm. *See Reed,* 130 S. Ct. at 2829 (Sotomayor, J., concurring). At least five Justices indicated that the Plaintiffs must show a "reasonable probability of *serious* and *widespread* harassment that the State is unwilling or unable to control." *Id*. (emphasis added).

**B. Plaintiffs Cannot Satisfy Their Burden To Justify Prevention Of Disclosure Of Public Records**

Federal courts have only withheld disclosure of political information in a handful of limited situations where the threat of harassment or retaliation was extensive and severe and the groups protected were small and in the political minority. *See, e.g., Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87 (1982) (holding Ohio Campaign Expense Reporting Law unconstitutionally infringed on Socialist Workers Party's freedom of association); *Nat'l Ass'n for Advancement of Colored People v. State of Ala. ex rel. Patterson*, 357 U.S. 449 (1958) (holding

WASHINGTON COALITION FOR OPEN GOVERNMENT'S TRIAL BRIEF
No. 09-cv-05456-BHS - 7

WITHERSPOON·KELLEY
Attorneys & Counselors
422 W. Riverside Avenue, Suite 1100   Phone: 509.624.5265
Spokane, Washington 99201-0300   Fax: 509.458.2728

state-court order for NAACP to turn over membership records was substantial restraint on members' exercise of freedom of association). In other situations, including a challenge to a California disclosure law by opponents of same-sex marriage, federal courts have refused to block disclosure of petitions in light of substantial governmental interests, identified by the Court in *Reed* as clearly existing in the case at bar. *See Citizens United v. Fed. Election Comm'n*, 130 S. Ct. 876 (2010); *McConnell v. Fed. Election Comm'n*, 540 U.S. 93 (2003); *ProtectMarriage.com v. Bowen*, 599 F. Supp. 2d 1197, 1214 (E.D. Cal. 2009); *Buckley*, 424 U.S. 1.

1. **Plaintiffs Fail to Show Substantial Harm such as Existed in the *Brown* and *NAACP* Cases**

In *Brown*, the Court saw "substantial evidence of both governmental and private hostility toward and harassment of SWP [Socialist Workers Party] members and supporters." *Brown*, 459 U.S. at 102. The SWP showed proof of concrete incidents spanning four years prior to the trial, including "threatening phone calls and hate mail, the burning of SWP literature, the destruction of SWP members' property, police harassment of a party candidate, and the firing of shots at an SWP office." *Id* at 99. There was evidence that 22 SWP members were fired because of their party membership, so their membership made it "difficult for them to maintain employment." *Id*. The FBI also subjected the SWP to an extensive surveillance and counterintelligence program. *Id*. Such hostility does not exist here, as Plaintiffs' witnesses will demonstrate at trial.

Likewise, in *NAACP*, the Court stated that the NAACP "has made an uncontroverted showing that on past occasions revelation of the identity of its rank-and-file members has exposed these members to economic reprisal, loss of employment, threat of physical coercion, and other manifestations of public hostility." *NAACP*, 357 U.S. at 462. That showing is glaringly absent based upon the testimony expected here.

WASHINGTON COALITION FOR OPEN
GOVERNMENT'S TRIAL BRIEF
No. 09-cv-05456-BHS - 8

WITHERSPOON·KELLEY
Attorneys & Counselors
422 W. Riverside Avenue, Suite 1100    Phone: 509.624.5265
Spokane, Washington 99201-0300    Fax: 509.458.2728

2. **This Case Is Like *Buckley* Because Plaintiffs Provide Only Witnesses Who Are Public Advocates for Referendum 71, And Even They Fail to Show Requisite Harm**

The instant case is analogous to *Buckley* and its progeny, which established the initial test for an as-applied challenge to disclosure of citizens' political activities. In *Buckley*, the Court contrasted the speculative evidence of potential harm to allegedly "minor" parties from the federal disclosure law at issue with the concrete evidence of harm to supporters of the NAACP. The Court in *Buckley* stated that plaintiffs failed to show requisite harm because they relied only "on 'the clearly articulated fears of individuals, well experienced in the political process,'" *Buckley*, 424 U.S. at 71, and not the experiences of rank-and-file members such as those justifying disclosure in the *NAACP* case.

Here, as in *Buckley*, Plaintiffs rely only on the experiences of a small group of 18 outspoken and highly visible critics of same-sex marriage, none of whom suffered violence, and all of whom obtained redress from the authorities if they choose to seek it, rather than showing a reasonable probability that general, otherwise anonymous petition signers would be subject to threats or harassment that could not be properly addressed by law enforcement. Plaintiffs candidly admitted there is no such evidence. (Dkt 254.)

3. **This Case Is Like *ProtectMarriage.com*, Because Plaintiffs Are Not Members of a Minority Political Group**

Plaintiffs also cannot meet the Supreme Court's test because they are not members of a "minor" political group. The *Buckley* "reasonable probability" test, as refined in *Reed*, is meant to protect supporters of "minor" political parties or groups from undue harassment and chilling of political speech that could occur if their political positions become public. *See Buckley*, 424 U.S. at 71. However, the petition signers identified by Plaintiffs to support their claims are far from

WASHINGTON COALITION FOR OPEN GOVERNMENT'S TRIAL BRIEF
No. 09-cv-05456-BHS - 9

**WK WITHERSPOON·KELLEY**
Attorneys & Counselors
422 W. Riverside Avenue, Suite 1100    Phone: 509.624.5265
Spokane, Washington 99201-0300          Fax: 509.458.2728

members of a secretive, minor party: they are, for the most part, politicians, pastors, or other publicly identified figures that have been outspoken critics of same-sex marriage who publicly campaigned in support of placing Referendum 71 on the ballot.

The Supreme Court's clear requirement in cases where it has granted exemptions from disclosure of public information is that the group seeking protection must be members of a *minor party*. *See Buckley*, 424 U.S. at 68-74. In *NAACP*, the Court cited *Buckley* for the rule that only "'**minor parties**' may be exempt from disclosure requirements." *Reed*, 130 S. Ct. at 2821 (emphasis added). Similarly, the SWP clearly was a minor party in Ohio politics. For example, the SWP candidate for United States Senate in 1980 "received fewer than 77,000 votes, less than 1.9% of the total vote." 459 U.S. at 88-89. In contrast, approximately 137,000 Washington voters signed Referendum 71, and more than 830,000 voted in support of Plaintiffs' position on the referendum during the election. *See* Washington Secretary of State, *November 3, 2009 General – Measures* (Nov. 24, 2009), http://vote.wa.gov/Elections/WEI/Results. It is an uncontroverted fact that the Plaintiffs hold a view shared by more than a small minority of Washingtonians, or Americans, for that matter.

The instant case is analogous to the facts of *ProtectMarriage.com v. Bowen*, 599 F. Supp. 2d 1197 (E.D. Cal. 2009), in which the court rejected a challenge to California's campaign-finance disclosure law by plaintiffs, committees formed to support passage of Proposition 8 (a California ballot measure that prohibited same-sex marriage). The *ProtectMarriage.com* court reasoned that, unlike the facts in *Brown*, proponents of Proposition 8 "succeeded in persuading over seven million voters to support their cause," a "set of circumstances [that] is a far cry from the sixty-member SWP party, repeatedly unsuccessful at the polls, and incapable of raising sufficient funds." *Id*. at 1214. The court stated it was "abundantly clear" that the plaintiffs "could not in good

WASHINGTON COALITION FOR OPEN GOVERNMENT'S TRIAL BRIEF
No. 09-cv-05456-BHS - 10

WITHERSPOON·KELLEY
Attorneys & Counselors
422 W. Riverside Avenue, Suite 1100    Phone: 509.624.5265
Spokane, Washington 99201-0300         Fax: 509.458.2728

conscience analogize their current circumstances to those of either the SWP or the Alabama NAACP *circa* 1950." *Id*.

Similarly, Plaintiffs in this matter cannot "in good conscience" argue that the anti-gay rights movement is analogous to the clearly minority position of the NAACP or the Socialist Workers of America, both of which had long histories of individuals and groups clearly in the minority. That 137,000 Washington residents signed Referendum 71 petitions graphically demonstrates the widely held support for Plaintiffs' views.

C. **Plaintiffs' Evidence To Be Presented At Trial Is Irrelevant or Inadmissible**

Given an opportunity to assemble witnesses to provide the factual basis needed to support their case, Plaintiffs produced no witness who will testify that he or she signed a Referendum 71 petition with an expectation of privacy. Instead, Plaintiffs produce stories of incidents far removed from the Referendum 71 campaign, indeed even far from the state of Washington, and limited testimony from vocal advocates of the Referendum who were not mere petition signers but who also took very public and outspoken stances in support of traditional marriage. Even the deposition testimony of these public advocates lacks the requisite showing of harm, as discussed *infra*.

   1. **Most of the Plaintiffs' Materials Are Beyond the Scope of the Court's Pretrial Order and Inadmissible at Trial**

This Court ordered that "the name, address, and phone number of each individual who will be or may be called as a witness or declarant by the plaintiffs, or is likely to have discoverable information – along with the subjects of that information – will be disclosed on August 23, 2010." (Dkt. 128, p. 1.) "<u>Witnesses not disclosed at that point will not be permitted to testify in person, by declaration or affidavit, or otherwise</u>." (*Id.*) (emphasis added). When "a pretrial order provides that the names, addresses, and general subject matter of testimony of witnesses must be disclosed prior

WASHINGTON COALITION FOR OPEN GOVERNMENT'S TRIAL BRIEF
No. 09-cv-05456-BHS - 11

**WK WITHERSPOON·KELLEY**
Attorneys & Counselors
422 W. Riverside Avenue, Suite 1100   Phone: 509.624.5265
Spokane, Washington 99201-0300   Fax: 509.458.2728

to trial, the court has the power to exclude the testimony of an unlisted witness." *Daly v. Far Eastern Shipping Co. PLC.*, 238 F. Supp. 2d 1231 (W.D. Wash. 2003), *aff'd*, 108 Fed. Appx. 476 (9th Cir. 2004). Much of the Plaintiffs' proposed testimony should not be admissible at trial because they failed to comply with the Court's order.

### 2. Much Of Plaintiffs' Evidence Is Irrelevant And Lacks Probative Value Because It Does Not Involve Events In Washington or Referendum 71

Plaintiffs appear to advocate "litigation by Internet." They intend to introduce events that occurred primarily in California around the time of the contentious public debate over Proposition 8, and alleged harassment occurring in Utah, Maine, Missouri, Colorado, and other states. Plaintiffs cannot show how these alleged incidents relate to the State of Washington, which is hundreds if not thousands of miles away from where these stories allegedly occurred, and which has its own political climate. Even if this "evidence" of out-of-state incidents is admissible, it fails to show a reasonable probability of threats, harassment, or reprisals to rank-and-file Washington petition signers.

In support of their offer, the Plaintiffs rely on *Buckley* for the proposition that "[n]ew [groups] that have no history upon which to draw may be able to offer evidence of reprisals and threats directed against individuals or organizations holding similar views," *Buckley*, 424 U.S. at 74. However, The Supreme Court's test is applicable only to "minor parties," such as the NAACP or the SWP, and, as discussed previously, PMW simply is not a minor party.

Even taking into account evidence from outside Washington, courts should still require *some* showing that similar conduct has occurred, or could occur, in this state. Plaintiffs make no such showing here. Instead, they offer witness testimony about minor incidents rising from the witnesses' public advocacy that were or could have been addressed by ordinary law enforcement.

WASHINGTON COALITION FOR OPEN
GOVERNMENT'S TRIAL BRIEF
No. 09-cv-05456-BHS - 12

**WK** WITHERSPOON·KELLEY
Attorneys & Counselors
422 W. Riverside Avenue, Suite 1100   Phone: 509.624.5265
Spokane, Washington 99201-0300   Fax: 509.458.2728

Not only is the evidence of bad behavior in California irrelevant to prove the likelihood of threats or harassment in a different state on a different election, even if it were relevant it adds no weight to Plaintiffs' claims – in fact it undercuts them.  Plaintiffs and 137,000 other Washington citizens actually signed the R-71 petition, and they did so in a public forum with no assurances that their signatures would not be disclosed.  Their having done so nine months **after** media reports of the bad behavior in California tends to show they were not deterred from exercising their right under state law to petition for referendum on the statute they opposed.

### 3. Much of Plaintiffs' Exhibits Should be Excluded as Impermissible Hearsay

Beyond the fact that most of the Plaintiffs' materials are inadmissible because they exceed the scope of this Court's pretrial order and are extraneous, most of the proposed evidence is inadmissible because it is garden-variety hearsay. Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Hearsay is inadmissible unless an exception applies. Fed. R. Evid. 802. Examples of hearsay inadmissible under Fed. R. Evid. 802 among Plaintiffs' presumed testimony are too numerous to describe fully here. (*See, e.g.*, Pls.' Pretrial Statement, Exs. 104, 108, 115.) The following examples are indicative of the problems with Plaintiffs' evidence:

- Exhibit 130, which is an article posted to a "conservative news" and opinion website, "Townhall.com," describes how a community college student in Los Angeles allegedly received a note from his teacher instructing him to "[a]sk God what [his] grade is" after he gave a speech about God in a Speech 101 class. (*Id*).  Even if this material was not hearsay, this account about an alleged incident in Los Angeles says nothing as to how disclosure of Referendum 71 petition information would lead to harm.

- Plaintiffs cite an article from EWTN News, the "Global Catholic Network," that contains a quotation that someone allegedly phoned the leader of a Christian organization in Maine and said, "Well I can tell him this – I'm a gay guy who owns guns, and he's my next target." (Pls.' Ex. 42.) This constitutes triple hearsay.

WASHINGTON COALITION FOR OPEN GOVERNMENT'S TRIAL BRIEF
No. 09-cv-05456-BHS - 13

**WK** WITHERSPOON·KELLEY
Attorneys & Counselors
422 W. Riverside Avenue, Suite 1100   Phone: 509.624.5265
Spokane, Washington 99201-0300   Fax: 509.458.2728

- Plaintiffs cite Exhibit 37, a November 18, 2008, article from Christian website Charismamag.com that purports to describe how "intercessors with a house of prayer" in San Francisco, California, said they feared they "might be killed" during a prayer walkthrough of the Castro District. The article contains two layers of hearsay and lacks any connection to Washington that would illuminate the probability of threats to petition signers. The article was written in a different state about an alleged incident nine months before the Referendum 71 signatures were submitted to the Secretary of State and 12 months before Washington's election.

This reliance by Plaintiffs on multiple-level hearsay is a far cry from the "strong evidence" a court must demand in order to avoid a determination "that an indirect and speculative chain of events imposes a substantial burden on speech." *Reed*, 130 S. Ct. at 2832 (Stevens, J., concurring).

### 4. Much of Plaintiffs' Evidence Lacks Authentication

Many of Plaintiffs' exhibits are incompetent evidence because they lack authentication as required by Fed. R. Evid. 901. For example, printouts of blog posts and YouTube videos lack proof of authentication. (*See, e.g.*, Pls.' Ex. 4, 18, 83, 114.)

### 5. Plaintiff Should Not Be Allowed to Introduce Testimony Through Counsel

The order is clear: only identified witnesses will be allowed to testify. (Dkt. 128, p. 1.) Plaintiffs' counsel attempts to circumvent this order by attaching the "testimony" of articles and videos through declarations. However, Attorney Jared Haynie, to whose declarations the exhibits are attached, was not named as a witness in the case.[1] Nor are Mr. Haynie's attached exhibits based on personal information, *see Daly*, 238 F. Supp. 2d at 1237, and this Court should not consider any evidence that cannot be properly authenticated pursuant to the Federal Rules of Evidence. Moreover, Washington's Rules of Professional Conduct preclude an attorney from

---

[1] WCOG is aware that Mr. Haynie has filed a motion to withdraw from the case and does not intend to participate at trial. (Dkt. 262.). As of the date of writing, Plaintiffs have not designated anyone in Mr. Haynie's place.

WASHINGTON COALITION FOR OPEN GOVERNMENT'S TRIAL BRIEF
No. 09-cv-05456-BHS - 14



WITHERSPOON·KELLEY
Attorneys & Counselors
422 W. Riverside Avenue, Suite 1100   Phone: 509.624.5265
Spokane, Washington 99201-0300   Fax: 509.458.2728

being a witness in a case his or her firm is litigating. *See* RPC 3.7. Allowing such "authentication" would convert federal trials into evidentiary shams where stacks of irrelevant hearsay become evidence by the mere affidavit of a trial attorney.

**D. The Plaintiffs' Few Examples Of Allegedly Harassing Incidents In Washington Fall Far Short Of Satisfying The Plaintiffs' Burden Of Showing Serious And Widespread Harm That The State Is Unable Or Unwilling To Control**

Other than Plaintiffs' inadmissible, irrelevant, and remote materials, the Plaintiffs are expected to introduce testimony of a limited number of witnesses who will describe incidents that occurred in Washington. Even this evidence, however, fails to satisfy Plaintiffs' burden of identifying the requisite harm. In each instance, the purported threats are either not demonstrably tied to support of Referendum 71 (especially the private signing of the petition), arose from public support of Referendum 71, were remediable through law enforcement means, or were discounted by the witnesses as not harassing. The incidents are a far cry from establishing the pattern of private and government abuses witnessed in *Brown* and *NAACP*.

**1. Plaintiffs Fail to Distinguish Between Harms That May Result from Public Advocacy of Referendum 71 Versus Harm from Signing Petitions**

Plaintiffs fail to recognize the difference between *the probability of harm from signing a petition*—the issue in this case—and alleged harm from taking an outspoken and very public stance on same-sex marriage. Testimony of Plaintiffs' witnesses, who are zealous opponents of same-sex marriage, will provide no evidence about ordinary petition signers in Washington. Rather, it will merely show that strident, public opponents of same-sex marriage, as might be expected, have received negative attention from their fellow citizens as a result of their advocacy. As in *Oregon Socialist Workers v. Paulus*, 432 F. Supp. 1255 (D. Or. 1977), most of the incidents Plaintiffs will offer "have not been shown to be the result of" the political act at issue (here,

WASHINGTON COALITION FOR OPEN GOVERNMENT'S TRIAL BRIEF
No. 09-cv-05456-BHS - 15

WITHERSPOON·KELLEY
Attorneys & Counselors
422 W. Riverside Avenue, Suite 1100   Phone: 509.624.5265
Spokane, Washington 99201-0300   Fax: 509.458.2728

signing the Referendum 71 petition), but are instead "at least as likely to be the product of the other political activities of the affiants." 432 F. Supp. at 1259.

E.   **Plaintiffs Fail To Prove a Reasonable Probability of Harm That Could Not Be Remedied Through Enforcement of Existing Laws**

The Supreme Court was clear in *Reed* and its predecessors that, in order to prohibit public disclosure of petition information, any threats or harassment encountered by the Plaintiffs must be irremediable through ordinary law enforcement. *See Reed*, 130 S. Ct. at 2829 (Sotomayor, J., concurring). *See also Brown*, 459 U.S. 87; *NAACP*, 357 U. S. 449.

This case is analogous to *Oregon Socialist Workers,* where the court held that information about political contributions to the Oregon Socialist Workers Party must be disclosed, and *ProtectMarriage.com*, where the court allowed disclosure of alleged private information because existing criminal laws provided an adequate remedy to those worried about threats or harassment. There is no proof in this case that ordinary law enforcement officers were unwilling and/or unable to protect any Washington voters concerned about threats or harassment. Plaintiffs' witnesses rarely attempted to call the police to report alleged harassment (Dkt. 222, p. 19-22.), and when contacted, the police addressed the issue. Defendants' witnesses will substantiate the efficacy of law enforcement in this matter.

Washington has laws that provide an adequate deterrent and remedy for would-be harassers of petition signers. The Plaintiffs themselves have cited one such law, which makes it a felony, punishable by up to five years in prison, to threaten a person or a group based on the perception of the victim's religion. (Dkt. 228, p. 3 n. 3 (citing Wash. Rev. Code § 9A.36.080(1)(c)).

Although the Plaintiffs argue that Washington's existing anti-harassments laws are insufficient to protect petitioners, their own materials reveal incidents where police assistance was

WASHINGTON COALITION FOR OPEN GOVERNMENT'S TRIAL BRIEF
No. 09-cv-05456-BHS - 16

WITHERSPOON·KELLEY
Attorneys & Counselors
422 W. Riverside Avenue, Suite 1100   Phone: 509.624.5265
Spokane, Washington 99201-0300   Fax: 509.458.2728

effective or the people concerned did not even seek help from the police. Plaintiffs' evidence does not show that law enforcement was not available and effective to resolve perceived harms.

## V. CONCLUSION

While Americans have a right to free speech, they must be willing to accept some responsibility for the consequence of that speech. The Plaintiffs wish to act in a legislative capacity to overturn new state laws, yet they seek to do so in the absence of any public scrutiny out of fear that others might disagree with their stance on a very public and significant issue. Such disagreement fosters political debate, as it should. Citizens must be "willing to 'stand up and be counted.'" *Oregon Socialist Workers*, 432 F. Supp. at 1259. "The *Buckley* decision demonstrates that certain responsibilities, such as disclosure, can constitutionally be imposed on the exercise of First Amendment freedoms." *Id.* Further, Justice Scalia's concurring opinion in *Reed* admonishes those who would try to operate the levers of government anonymously:

> Requiring people to stand up in public for their political acts fosters civic courage, without which democracy is doomed. For my part, I do not look forward to a society which, thanks to the Supreme Court, campaigns anonymously ... and even exercises the direct democracy of initiative and referendum hidden from public scrutiny and protected from the accountability of criticism. This does not resemble the Home of the Brave.

*Reed*, 130 S. Ct. at 2837 (Scalia, J., concurring).

Plaintiffs' trial evidence consists only of inadmissible, irrelevant, and speculative materials and not evidence of serious and widespread harm resulting directly from public disclosure of the petitions that could not be addressed through law enforcement means in Washington. The parties agree that the PRA contains no exemption from disclosure that applies to Referendum 71 petitions. Plaintiffs have failed to prove requisite harm not protectable by law enforcement if the petitions

WASHINGTON COALITION FOR OPEN GOVERNMENT'S TRIAL BRIEF
No. 09-cv-05456-BHS - 17

WITHERSPOON·KELLEY
Attorneys & Counselors
422 W. Riverside Avenue, Suite 1100   Phone: 509.624.5265
Spokane, Washington 99201-0300   Fax: 509.458.2728

were released.  The Referendum 71 petitions are public records that must be disclosed as has been requested.

DATED this 6th day of September, 2011.

WITHERSPOON • KELLEY

/s/ Leslie R. Weatherhead
DUANE M. SWINTON, WSBA NO. 8354
LESLIE R. WEATHERHEAD, WSBA NO. 11207
STEVEN J. DIXSON, WSBA NO. 38101

Counsel for Intervenor Washington Coalition for Open Government

WASHINGTON COALITION FOR OPEN GOVERNMENT'S TRIAL BRIEF
No. 09-cv-05456-BHS - 18



WITHERSPOON·KELLEY
Attorneys & Counselors
422 W. Riverside Avenue, Suite 1100    Phone: 509.624.5265
Spokane, Washington 99201-0300    Fax: 509.458.2728

# CERTIFICATE OF SERVICE

1. I, Leslie R. Weatherhead, am a citizen of the United States and a resident of the State of Washington. I am over the age of 18 years and not a party to the within action. I am employed by the law firm of Witherspoon · Kelley, P.S., 422 W. Riverside Avenue, Suite 1100, Spokane, Washington.

2. On the 6th day of September, 2011, I caused to be served upon the parties via electronic mail, the Mediation Memorandum of Intervenor Washington Coalition for Open Government, on the following:

James Jr. Bopp, jboppjr@aol.com
Joseph E. LaRue, jlarue@bopplaw.com
Stephen Walter Pidgeon, stephen.pidgeon@comcast.net
Jared M. Haynie, jhaynie@bopplaw.com
Anne E. Egeler, annee1@atg.wa.gov
Jay Geck, jayg@atg.wa.gov
William Clark, billc2@atg.wa.gov
Kevin J. Hamilton, khamilton@perkinscoie.com
William B. Stafford, wstafford@perkinscoie.com
Ryan McBrayer, rmcbrayer@perkinscoie.com
Nicholas Gellert, ngellert@perkinscoie.com

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

/s/ Leslie R. Weatherhead, WSBA #11207
Leslie R. Weatherhead

WASHINGTON COALITION FOR OPEN
GOVERNMENT'S TRIAL BRIEF
No. 09-cv-05456-BHS - 19

WITHERSPOON·KELLEY
Attorneys & Counselors
422 W. Riverside Avenue, Suite 1100    Phone: 509.624.5265
Spokane, Washington 99201-0300    Fax: 509.458.2728