**United States District Court**
**Western District of Washington**
**Tacoma Division**

| | |
|---|---|
| **John Doe #1**, et al.,<br><br>         Plaintiffs,<br>   vs.<br><br>**Sam Reed**, et al.,<br><br>         Defendants. | No. 3:09-CV-05456-BHS<br><br>The Honorable Benjamin H. Settle<br><br>**Plaintiffs' Response to Defendants' Motion in Limine**<br><br>NOTE ON MOTION CALENDAR:<br><br>September 9, 2011 |

Pls' Response to Defs.' Mot. in Limine
(No. 3:09-CV-05456-BHS)

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

Come now Plaintiffs and respond to Defendant State of Washington's motions in limine (Dkt. 251) and make the following points and arguments in support thereof.

## Introduction

"Motions in limine are intended to prevent allegedly prejudicial evidence from being so much as whispered before a *jury* prior to obtaining the Court's permission to broach the topic." *Cramer v. Sabine Transp. Co.*, 141 F. Supp. 2d 727, 733 (S.D. Tex. 2001) (emphasis added). This matter will be tried before the bench, "making any motion in limine asinine on its face." *Id.*; *see also* 1 McCormick On Evid. § 60 (6th ed.) ("judges possess professional experience in valuing evidence, greatly lessening the need for exclusionary rules"). "In nonjury cases the district court can commit reversible error by excluding evidence but it is almost impossible for it to do so by admitting evidence." *Turner v. Univ. of WA*, 2007 WL 2984682, at *1 (W.D. Wash. Oct. 10, 2007) (quoting 11 Wright & Miller, Federal Practice & Procedure § 2885); *id.* ("the technical evidentiary rules are generally viewed as 'the child of the jury system,' and therefore there is no need to apply those rules when the judge is the factfinder") (citations omitted). Should this Court choose to entertain the State's motion, Plaintiffs ask this Court to deny it, and defer all evidentiary judgments until that time Plaintiffs present their evidence at trial.

The party seeking to exclude evidence *in limine* faces a high burden. "Evidence should be excluded on a motion in limine only when the evidence is clearly inadmissible on *all potential grounds*." *Turner v. Univ. of WA*, 2007 WL 2984682, at *1 (W.D. Wash. Oct. 10, 2007) (emphasis added). "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Hawthorne Partners v. AT & T Tech., Inc.*, 831 F.Supp. 1398, 1400 (N.D. Ill. 1993); *see also Turner*, at *1 (same). Although motions *in limine* may save "time, costs, effort and preparation, a court is almost always better situated during the actual trial to assess the value and utility of evidence." *Wilkins v. Kmart Corp.*, 487 F.Supp.2d 1216, 1219 (D. Kan. 2007).

## Argument

The requests made by the State are both premature and overbroad. The State fails to identify specific exhibits and statements it contends are inadmissible. Rather, they request that entire

Pls' Response to Defs.' Mot. in Limine
(No. 3:09-CV-05456-BHS)

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

1

1  categories of evidence be excluded, which is improper. *See Colton Crane Co. v. Terex Cranes Wilmington, Inc.*, 2010 WL 2035800, at *1 (C.D. Cal. May 19, 2010) ("motions *in limine* should rarely seek to exclude broad categories of evidence, as the court is almost always better situated to rule on evidentiary issues in their factual context during trial").

The State cannot show that the exhibits and testimony it seeks to exclude are inadmissible on "all potential grounds." *Turner*, at *1. Therefore, this Court should deny the State's motion *in limine* and defer all evidentiary judgments to allow Plaintiffs their full opportunity to present their case at trial. Of course, "the denial of a motion *in limine* does not mean that the questioned evidence is admissible. It only means that the court will resolve the issue at trial." *Nettles v. Farmers Ins. Exch. & Farmers Group, Inc.*, 2007 WL 1417304, at *1 (W.D. Wash. May 11, 2007).

**I. The State's Motion *In Limine* Should Be Denied Because Plaintiffs' Evidence Is Relevant, And Will Be Properly Authenticated and Admissible At Trial.**

**A. Evidence Of Threats, Harassment and Reprisals From Across The Country Is Pertinent To The Exposure Exemption Calculation.**

The State asks this Court to exclude *in limine* all evidence "of events or statements concerning gay marriage generally, about campaigns or controversies in other states, about persons who are not signators to (or declined to sign) R-71 petitions, and about events in Washington prior to 2009, that do not concern R-71." (State's Mot. in Lim. 5.) The State argues such evidence is irrelevant, and therefore inadmissible, under Federal Rules of Evidence 401 and 402. (*Id.*) The State is wrong. This Court should deny the State's motion because evidence of reprisals against supporters of causes similar to that advanced by those who signed the R-71 petition, both in and out of Washington, is pertinent to the merits of this case and admissible under Supreme Court precedent. To deny Plaintiffs the opportunity to present this evidence at trial would contravene what the Supreme Court promised to groups seeking an exposure exemption, namely, "flexibility in the proof of injury." *Buckley v. Valeo*, 424 U.S. 1, 74 (1976).

Further, "motions *in limine* should rarely seek to exclude broad categories of evidence." *Colton Crane Co. v. Terex Cranes Wilmington, Inc.*, 2010 WL 2035800, at *1 (C.D. Cal. May 19, 2010). This is because "the court is almost always better situated to rule on evidentiary issues in their

Pls' Response to Defs.' Mot. in Limine
(No. 3:09-CV-05456-BHS)

2

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

1 factual context during trial." *Id*. Because the State has failed to identify specific exhibits or
2 testimony it contends are irrelevant, the Court cannot *in limine* properly evaluate and weigh any of
3 the evidence sought to be excluded. This Court should therefore defer judgment on the admissibility
4 of this evidence until that time Plaintiffs present it at trial. *See C & E Servs., Inc. v. Ashland, Inc.*,
5 539 F. Supp. 2d 316, 323 (D.D.C. 2008) ("[A] motion *in limine* should not be used to resolve factual
6 disputes or weigh evidence.").

7     "Rule 401 defines relevant evidence as 'evidence having any tendency to make the existence
8 of any fact that is of consequence to the determination of the action more probable or less probable
9 than it would be without the evidence.'" *United States v. Curtin*, 489 F.3d 935, 943 (9th Cir. 2007)
10 (*quoting* Fed. R. Evid. 401). If evidence is relevant, it is admissible. Fed. R. Evid. 402. The threshold
11 for relevance is low. "To be 'relevant,' evidence need not be conclusive proof of a fact sought to be
12 proved, or even strong evidence of the same. All that is required is a 'tendency' to establish the fact
13 at issue." *Curtin*, 489 F.3d at 943.

14     The "fact at issue" in this case is whether there exists a reasonable probability that compelled
15 disclosure of the identities of those who signed the R-71 petition will cause them to face threats,
16 harassment and reprisals. All of Plaintiffs' evidence that will be submitted at trial is relevant to the
17 determination of this fact. The underlying controversy in this case is a pressing national issue. This
18 debate does not stop at the Washington-Oregon border any more than the debate over slavery
19 stopped at the Mason-Dixon line. Notably, a citizen-group on the other side of the continent,
20 Massachusetts-based KnowThyNeighbor.org, got involved in R-71 from the very beginning when
21 it announced in June 2009 that it intended to publish, on its web site and in searchable format, the
22 identities of every person who would eventually sign the referendum. (Dkt. 4-5, Ex. 4, pg. 1.) Those
23 who stood against SB 5688 made virtually the same arguments and advocated virtually the same
24 beliefs that supporters of traditional marriage have made in every state in the Union. Therefore,
25 evidence of reprisals against *those* supporters is relevant to calculating the likelihood of future
26 reprisals against *these* supporters.

27     The Supreme Court has ruled that evidence similar to that Plaintiffs' intend to offer at trial is
28 relevant and warranted in a case like this. In *Buckley v. Valeo*, the Supreme Court stated that "[n]ew

Pls' Response to Defs.' Mot. in Limine
(No. 3:09-CV-05456-BHS)

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

3

1  [groups] that have no history upon which to draw may be able to offer evidence of reprisals and
2  threats directed against individuals or organizations holding similar views." *Buckley*, 424 U.S. at 74.
3  Because Protect Marriage Washington is a new group—it was formed on May 13, 2009, for the
4  express purpose of collecting enough signatures to force a referendum vote on SB 5688 (Compl.
5  ¶¶ 22–23)—it has little or "no history upon which to draw," *Buckley*, 424 U.S. at 74, and may
6  therefore present evidence of reprisals against supporters of similar causes elsewhere. *See id.*

7  But the fact that Plaintiffs are part of a newly formed group is not the only reason for admitting
8  evidence of reprisals beyond those strictly related to R-71. The overarching principle running
9  through the exposure exemption analysis is "flexibility in the proof of injury." *Buckley*, 424 U.S.
10 at 74. A rigid rule that evidence of reprisals must relate strictly and solely to R-71 is hardly
11 "flexible." And the Supreme Court recognized as much in *Brown v. Socialist Workers '74 Campaign*
12 *Committee (Ohio)*, which held, unanimously, and against argument to the contrary, that evidence
13 of out-of-state reprisals against persons holding similar views is relevant to, and therefore should
14 be considered in, the exposure exemption analysis. *Brown*, 459 U.S. 87 (1982). *Brown*'s decision
15 to consider out-of-state threats and reprisals had nothing to do with how "new" the Socialist
16 Workers Party of Ohio was. *Id.* at 88, 101 n.20. The analysis hinged rather on the similarity of
17 political views linking the in-state and out-of-state groups together: "Surely," the Court found, "the
18 Ohio [Socialist Workers Party] may offer evidence of the experiences of other chapters espousing
19 the same political philosophy." *Id.* at 101 n.20. Therefore, even if Protect Marriage Washington was
20 not a "new" party, Plaintiffs may still present evidence of reprisals against supporters of similar
21 causes elsewhere.

22 For these reasons, Plaintiffs' evidence concerning threats, harassment, and reprisals directed
23 at those who have supported traditional-marriage, in and out of Washington, and prior to the R-71
24 campaign, is relevant, and should not be excluded at trial. *See* Fed. R. Evid. 401, 402. Consequently,
25 the State's motion should be denied. *Turner v. Univ. of WA*, 2007 WL 2984682, at *1 (W.D. Wash.
26 Oct. 10, 2007) ("Evidence should be excluded on a motion in limine only when the evidence is
27 clearly inadmissible on all potential grounds.").

28 **B.  Plaintiffs' John Doe Declarations Should Not Be Excluded.**

Pls' Response to Defs.' Mot. in Limine (No. 3:09-CV-05456-BHS)

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

4

At trial, Plaintiffs intend to offer declarations of 58 "Joe Does" filed in support of Plaintiffs' Motion for Preliminary Injunction in the case of *ProtectMarriage.com, et al. v. Debra Bowen, et al.*, No. 2:09-cv-00058 (E.D. Cal.). (Pls.' Trial Ex. 249.) The State argues these declarations should be excluded *in limine* because they do not address Washington's R-71 or association with PMW and they are inadmissible hearsay. (State's Mot. in Lim. 5–6.) Neither of the State's contentions has merit, and its motion should therefore be denied. As explained, out-of-state threats, harassment and reprisals are relevant and admissible in this case. *See Buckley*, 424 U.S. at 74; *Brown*, 459 U.S. at 101, n.20. And, the John Doe declarations should not be excluded because they are admissible under Federal Rule of Evidence 807.

Rule 807 "exists to provide judges a 'fair degree of latitude' and 'flexibility' to admit statements that would otherwise be hearsay." *United States v. Bonds*, 608 F.3d 495, 501 (9th Cir. 2010) (*quoting United States v. Valdez–Soto*, 31 F.3d 1467, 1471 (9th Cir. 1994)). Hearsay evidence may be admitted under Rule 807 if (a) it has circumstantial guarantees of trustworthiness equivalent to the listed exceptions to the hearsay rule, (b) it serves as evidence of a material fact, and (c) it is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts. The hearsay must serve the general purposes of the Rules of Evidence and the interests of justice by its admission into evidence. Fed. R. Evid. 807; s*ee also United States v. Fowlie*, 24 F.3d 1059, 1069 (9th Cir. 1994). The hearsay evidence used in this action meets the requirements for admission under Rule 807.

First, the John Doe declarations have circumstantial guarantees of trustworthiness equivalent to the listed exceptions of the hearsay rule. The statements contained within each John Doe declaration were made from personal knowledge and under penalty of perjury. Also, the type of threats, harassment, and reprisals experienced by each declarant is consistent with the type that has been widely reported in the media and the type experienced by those who supported traditional marriage in Washington. *See United States v. Valdez-Soto*, 31 F.3d 1467, 1471 (9th Cir. 1994) ("[W]e've recognized that corroborating evidence is a valid consideration in determining the

**Pls' Response to Defs.' Mot. in Limine (No. 3:09-CV-05456-BHS)**

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

5

1  trustworthiness of out-of-court statements for purposes of Rule 803(24).")[1]

2  Second, this evidence is admissible under Rule 807 because the John Doe declarations are the most probative evidence Plaintiffs can procure through reasonable efforts. As Plaintiffs have previously explained, (Dkt. 225), the identities of the John Doe declarants (most but not all of whom are from California) are protected by court order (not this Court's order);[2] Plaintiffs are not privy to their identities; and Plaintiffs were not then, and are not now, able to reveal their identities. Plaintiffs are unable to offer this testimony through any other means. It is therefore the "best evidence" available and should be admitted. *See Larez v. City of Los Angeles*, 946 F.2d 630, 644 (9th Cir. 1991).

Moreover, the State has objected to each of the 58 declarations Plaintiffs will offer at trial. While it is Plaintiffs' position that each declaration is admissible, a proper determination under Rule 807 can only be made on a declaration by declaration basis. The proper time for such a determination is at trial. *See Colton Crane Co. v. Terex Cranes Wilmington, Inc.*, 2010 WL 2035800, at *1 (C.D. Cal. May 19, 2010) ("motions *in limine* should rarely seek to exclude broad categories of evidence, as the court is almost always better situated to rule on evidentiary issues in their factual context during trial"); *see also Stewart v. Hooters of Am., Inc.*, 2007 WL 1752873, at *1 (M.D. Fla. June 18, 2007) ("Motions In Limine are disfavored; admissibility questions should be ruled upon as they arise at trial.").

"Evidence should be excluded on a motion in limine only when the evidence is clearly inadmissible on all potential grounds." *Turner v. Univ. of WA*, 2007 WL 2984682, at *1 (W.D. Wash. Oct. 10, 2007). The State has not shown that Plaintiffs are unable to admit each John Doe declarations on all potential grounds. This Court should defer ruling on their admissibility until Plaintiffs offer them at trial.

---

[1] Two residual exceptions were contained in the Federal Rules as initially adopted. In 1997, the residual exceptions were transferred out of Rules 803 and 804, and combined in the a single exception in Rule 807. No change in meaning was intended. The cases decided under old rules 803(24) and 804(b)(5) remain pertinent in deciding whether hearsay is admissible under Rule 807.

[2] *See* Order Granting Pls.' Mot. for a Protective Order (Dkt. 29), *ProtectMarriage.com v. Bowen*, No. 2:09-cv-0058 (E.D. Cal. Jan. 14, 2009); Order Denying Pls.' Mot. for Prelim. Inj. & Extending Protective Order (Dkt. 88) at 1–2, 61, *Protect Marriage.com v. Bowen*, No. 2:09-cv-0058 (E.D. Cal. Jan. 30, 2009).

Pls' Response to Defs.' Mot. in Limine (No. 3:09-CV-05456-BHS)

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

6

1  **C.  Plaintiffs' Internet Exhibits Should Not Be Excluded From Trial.**

2  As indicated in their Pretrial Statement, Plaintiffs intend to introduce and rely on at trial exhibits consisting of news articles, postings, videos, and other documents available on the Internet ("Internet Exhibits).[3] These exhibits document specific instances of threats, harassment, and reprisals directed at persons who have in various ways supported traditional marriage in Washington and other areas of the country. As such, it is relevant to this Court's determination as to whether those persons who evidenced support for traditional marriage by signing the R-71 petition will be subject to threats, harassment, or reprisals if their names are made publicly available. These exhibits should not be excluded at trial. To do so would contravene what the Supreme Court promised to groups seeking an exposure exemption, namely, "flexibility in the proof of injury." *Buckley v. Valeo*, 424 U.S. 1, 74 (1976).

**1.  Each Internet Exhibit Can, And Will Be, Properly Authenticated At Trial.**

The State argues Plaintiffs' Internet Exhibits are inadmissible because they are not self-authenticating and Plaintiffs lack the personal knowledge required to authenticate them by witness testimony. (State's Mot. in Lim. 6–7.) The State is incorrect. Plaintiffs' Internet Exhibits will be authenticated at trial, pursuant to Federal Rule of Evidence 901, by a "competent witness with personal knowledge of their authenticity." *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 533 (9th Cir. 2011). Furthermore, the Internet Exhibits consisting of news articles are self-authenticating under Federal Rule of Evidence 902(6) and contain "sufficient indicia of authenticity."

Authentication is a "condition precedent to admissibility." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). "[T]his condition is satisfied by 'evidence sufficient to support a finding that the matter in question is what its proponent claims.'" *Id*. (*quoting* Fed. R. Evid. 901(a)). Federal Rule of Evidence 901(b)(1) provides that "[t]estimony that a matter is what it is claimed to be" "by a witness with knowledge" constitutes "sufficient evidence" for purposes of this rule. "'The rule requires only that the court admit evidence if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification.'" *United States v. Black*, 767

---

[3] The Internet Exhibits identified in Plaintiffs' Pretrial Statement have been previously filed as exhibits in support of Plaintiffs Motion for Summary Judgment. (*See* Dkts. 210–213, 225(6).)

Pls' Response to Defs.' Mot. in Limine
(No. 3:09-CV-05456-BHS)

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

7

1  F.2d 1334, 1342 (9th Cir. 1985) (*quoting* 5 J. Weinstein & M. Berger, Weinstein's Evidence ¶
2  901(a) [01], at 901-16 to -17 (1983)); *see also United States v. Tank,* 200 F.3d 627, 630 (9th Cir.
3  2000).

4  The threshold for the Court's determination of authenticity is not high. *See, e.g.*, *Orr*, 285 F.3d
5  at 784; *United States v. Reilly*, 33 F.3d 1396, 1404 (3d Cir. 1994); *United States v. Holmquist,* 36
6  F.3d 154, 168 (1st Cir. 1994) ("the standard for authentication, and hence for admissibility, is one
7  of reasonable likelihood"); *United States v. Coohey*, 11 F.3d 97, 99 (8th Cir. 1993) ("the proponent
8  need only demonstrate a rational basis for its claim that the evidence is what the proponent asserts
9  it to be"). "A document can be authenticated [under Rule 901(b)(1)] by a witness who wrote it,
10 signed it, used it, or saw others do so." *Orr*, 285 F.3d at 784 (*citing* 31 Wright & Gold, Federal
11 Practice & Procedure: Evidence § 7106, 43 (2000)).

12 Rule 901's low threshold for authenticity is easily satisfied in this case. At trial, Plaintiffs will
13 offer testimony of James Bopp, Jr.[4] (or another employee of Bopp, Coleson & Bostrom law firm
14 who will prepare Plaintiff's trial exhibits) to authenticate their Internet Exhibits. Whoever testifies
15 as to the authenticity of Plaintiffs' Internet Exhibits will do so based on personal knowledge that
16 each exhibit is what the witness claims it to be. Therefore, it would be entirely premature for this
17 Court to exclude this evidence *in limine*. *See Hilborn v. Chaw Khong Technologies, Co., Ltd.*, 2008
18 WL 4225783, *2 (E.D. Mich. Sept. 10, 2008) (denying motion *in limine* on authentication grounds
19 as premature where party will have opportunity to authenticate each exhibit at trial).

20 The declarations made by Jared Haynie to authenticate Plaintiffs' Internet Exhibits when they
21 were offered in support of Plaintiffs' Motion for Summary Judgment illustrate that the witness who
22 will prepare Plaintiffs Internet Exhibits for trial can easily authenticate them at trial. *See Rearden*
23 *LLC v. Rearden Commerce, Inc.*, 597 F. Supp. 2d 1006, 1027 (N.D. Cal. 2009) (the "proposition that
24 an attorney cannot authenticate a print-out from a publicly accessible website" is "nonsensical").
25 As to Plaintiffs' Internet Exhibits consisting of news articles, postings, and other Internet documents,

---

[4] James Bopp, Jr. was not identified as a trial witness in Plaintiffs' initial pretrial statement. However, Plaintiffs promptly informed all parties that Jared Haynie or another employee of the Bopp, Coleson & Bostrom law firm who will prepare Plaintiffs' trial exhibits will be called as a witness at trial for the limited purpose of authenticating some of Plaintiffs' trial exhibits, including the Internet Exhibits the State seeks to exclude here.

Pls' Response to Defs.' Mot. in Limine
(No. 3:09-CV-05456-BHS)

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

8

Mr. Haynie declared that the exhibits were "true and correct copies of news articles, postings, and other documents available on the Internet, as they appeared when accessed by myself or my colleagues." (Dkt. 210-1, pg. 2, ¶ 3); (Dkt. 225-6, pg. 2, ¶ 3) As to Plaintiffs' Internet Exhibits consisting of videos, Haynie declared "The documents listed below are true and correct copies of 'screen shots' of web sites at which the videos were obtained. The 'screen shots' are reproduced below as they appeared when accessed by myself or my colleagues." (Dkt. 213-1, pg. 2, ¶¶ 3-4.) Haynie's declarations illustrate testimony sufficient to authenticate each of Plaintiffs' Internet Exhibits because they are made from personal knowledge, i.e. he "used" each article, web site, or video, or he "saw others do so." *See Orr*, 285 F.3d at 784 ("A document can be authenticated [under Rule 901(b)(1)] by a witness who wrote it, signed it, *used it, or saw others do so*." (emphasis added)).

Additionally, Plaintiffs' news articles are self-authenticating under Federal Rule of Evidence 902(6), which provides that "[p]rinted materials purporting to be newspapers or periodicals are self-authenticating." *Ciampi v. City of Palo Alto*, __ F. Supp. 2d __ , 2011 WL 1793349, *7 (N.D. Cal. May 11, 2011) (*citing* Fed. R. Evid. 902(6)). "[S]elf-authenticating documents need no extrinsic foundation." *Orr*, 285 F.3d at 774 (*citing* Fed. R. Evid. 902(6)). Contrary to the State's assertions, Internet printouts of news articles are not excluded from this rule. Rather, "[i]n considering internet printouts, courts have considered the 'distinctive characteristics' of the website in determining whether a document is sufficiently authenticated." *Ciampi*, at *7; *see also, e.g., Premier Nutrition, Inc. v. Organic Food Bar, Inc.*, 2008 WL 1913163, at *6 (C.D. Cal. Mar. 27, 2008); *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 213 F. Supp.2d 1146, 1153–54 (C.D. Cal. 2002). News "articles . . . contain[ing] sufficient indicia of authenticity, including distinctive newspaper and website designs, dates of publication, page numbers, and web addresses" are sufficiently authenticated for purposes of admissibility. *Ciampi*, at *7.

In *Premier Nutrition, Inc. v. Organic Food Bar, Inc.*, 2008 WL 1913163, at *6 (C.D. Cal. Mar. 27, 2008), plaintiffs attached three printouts of internet news articles to a declaration in support of a motion for summary judgment. Defendants objected that these articles lacked foundation and thus were inadmissible. *Id*. The court disagreed and held the articles were sufficiently authenticated. *Id*.

Pls' Response to Defs.' Mot. in Limine
(No. 3:09-CV-05456-BHS)

9

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

In *Ciampi v. City of Palo Alto*, __ F.Supp. 2d __ , 2011 WL 1793349, at *7 (N.D. Cal. May 11, 2011), plaintiffs "submit[ed] copies of newspapers, as well as print-outs of internet publications." Defendants argued these articles were inadmissible because they lacked proper authentication. *Id*. The court disagreed. The court found the "internet publications" to be "sufficiently authenticated" because they "contain[ed] sufficient indicia of authenticity, including distinctive newspaper and website designs, dates of publication, page numbers, and web addresses." *Ciampi*, at *7 (citing *Premier Nutrition*, 2008 WL 1913163, at *6).

*Premier Nutrition* and *Ciampi* both relied on *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 213 F. Supp.2d 1146, 1153 (C.D. Cal. 2002) in which the court found that website printouts were admissible evidence over objections by the defense that they were insufficiently authenticated. The court determined that the declarant's statement that the printouts were "true and correct copies of pages printed from the Internet that were printed by [the declarant] or under his direction," "combin[ed] with circumstantial indicia of authenticity (such as the dates and web addresses), would support a reasonable juror in the belief that the documents are what Perfect 10 says they are." *Id*. Thus, the court held the Internet print-outs were sufficiently authenticated and therefore admissible. *Id*.

Plaintiffs' evidence will easily satisfy the standards set out by these courts and the Federal Rules of Evidence. Each printout contains sufficient indicia of authenticity. *Ciampi*, 2011 WL 1793349 at *7 (citing *Premier Nutrition, Inc.*, 2008 WL 1913163, at *6). As with the vast majority of Plaintiffs' summary judgment exhibits, each of Plaintiffs' trial exhibits will show the web address at which the news article, posting, or video is or was located on the Internet as well as the date and time Plaintiffs copied it from the Internet. *Perfect 10*, 213 F. Supp. 2d at 1153.

The cases cited by the State are inapposite. (State MIL at 7.) They did not involve news articles. *In re Easysaver Rewards Litigation*, 737 F. Supp. 2d 1159, 1167 (2010) (S.D. Cal. 2010) (screen shots of defendant's website, including screen shots of pop-ups and a privacy policy); *Adobe Sys., Inc. v. Christenson*, 2011 WL 540278, at *8-9 (D. Nev. Jan. 11, 2011) (print-outs of comments made on consumer review websites provided without declaration); *In re Homestore.com, Inc. Securities Litigation*, 347 F. Supp. 2d 769, 782-83 (2004) (C.D. Cal. 2004) (press and earnings releases).

1  "Evidence should be excluded on a motion in limine only when the evidence is clearly inadmissible on all potential grounds." *Turner v. Univ. of WA*, 2007 WL 2984682, at *1 (W.D. Wash. Oct. 10, 2007). Because the State has not shown that Plaintiffs are unable to authenticate their Internet Exhibits at trial, this Court should defer ruling on their admissibility until Plaintiffs offer them at trial. *See Stewart v. Hooters of Am., Inc.*, 2007 WL 1752873, at *1 (M.D. Fla. June 18, 2007) ("Motions In Limine are disfavored; admissibility questions should be ruled upon as they arise at trial.").

**2. This Court Should Defer Judgment As To Whether Plaintiffs Internet Exhibits Constitute Inadmissible Hearsay.**

The State also argues that Plaintiffs' Internet Exhibits are inadmissible hearsay, and should therefore be excluded *in limine*. The State's objections are both premature and overbroad. This Court should therefore deny the State's motion and defer judgment until trial to allow Plaintiffs to offer each exhibit on a document by document basis and explain the purpose for which each exhibit is being offered and why it is admissible. *See Colton Crane Co. v. Terex Cranes Wilmington, Inc.*, 2010 WL 2035800, at *1 (C.D. Cal. May 19, 2010) ("motions *in limine* should rarely seek to exclude broad categories of evidence, as the court is almost always better situated to rule on evidentiary issues in their factual context during trial").

Contrary to the State's arguments, Plaintiffs evidence is not hearsay (because of the purpose for which it is offered). In making its argument, the State misapprehends the purpose for which Plaintiffs' evidence is offered. Hearsay is an out-of-court statement used "to prove the truth of the matter asserted." Fed. R. Evid. 801(c). However, for Plaintiffs' purposes, it makes little difference whether the accounts of harassment discussed in newspaper editorials or portrayed on the six o'clock news are factually accurate, because reasonable persons viewing such reports are likely to come to the conclusion, not unreasonably, that if they (the readers and the viewers) choose to speak up for traditional marriage, they too risk facing (like the people in the news reports) threats, harassment, and reprisals. Thus, Plaintiffs' proffering of the evidence does not hinge on "prov[ing] the truth of the matter asserted" in each and every news report, magazine article, and video clip but, rather, it goes to the natural and probable effect that such reports have on the listener, which is to chill

Pls' Response to Defs.' Mot. in Limine  
(No. 3:09-CV-05456-BHS)

BOPP, COLESON & BOSTROM  
1 South Sixth Street  
Terre Haute, Indiana 47807-3510  
(812) 232-2434

11

1  protected expression. Therefore, the news reports and videos are not hearsay, and are admissible.

2  But even if the news reports and videos were hearsay (and they are not), they would still be admissible under Federal Rule of Evidence 807. Rule 807 "exists to provide judges a 'fair degree of latitude' and 'flexibility' to admit statements that would otherwise be hearsay." *United States v. Bonds*, 608 F.3d 495, 501 (9th Cir. 2010) (*quoting United States v. Valdez–Soto*, 31 F.3d 1467, 1471 (9th Cir. 1994)). Hearsay evidence may be admitted under Rule 807 if (a) it has circumstantial guarantees of trustworthiness equivalent to the listed exceptions to the hearsay rule, (b) it serves as evidence of a material fact, and (c) it is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts. The hearsay must serve the general purposes of the Rules of Evidence and the interests of justice by its admission into evidence. Fed. R. Evid. 807; s*ee also United States v. Fowlie*, 24 F.3d 1059, 1069 (9th Cir. 1994). The hearsay evidence used in this action meets the requirements for admission under Rule 807.

The articles used as evidence in the case at bar have circumstantial guarantees of trustworthiness equivalent to the listed exceptions of the hearsay rule. First, the sheer volume of news reports relating to harassment of traditional marriage supporters is itself a strong circumstantial guarantee of trustworthiness. Given the number of stories on this issue, one must only conclude that, (a) these threats and reprisals are actually occurring across the country or (b) there is a vast conspiracy in the media to portray these incidents as arising across the country. The second circumstantial guarantee of trustworthiness is the broad range of political perspectives that reported, discussed, and editorialized about the threats and reprisals. The fact that many news sources who were unabashedly pro-same sex marriage ran stories covering these instances is a strong indicator that these incidents did in fact occur as recorded. (*See, e.g.,* Pls' Trial Exs. 43 (*Newsweek*); 91 (*New York Times*) 93, 146, 147 (*Los Angeles Times*); 173 (*Time Magazine*); 216 (Associated Press).)

Courts have held that where multiple independent newspapers attribute the same quotations or details to the same individual or set of events, the statements may have "circumstantial guarantees of trustworthiness" at least equivalent to those of the other hearsay exceptions when the statements, and can be used as evidence of a material fact. *Larez v. City of Los Angeles*, 946 F.2d 630, 643–44 (9th Cir. 1991). In *Larez*, the Ninth Circuit recognized that newspaper articles meet the

Pls' Response to Defs.' Mot. in Limine
(No. 3:09-CV-05456-BHS)

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

12

trustworthiness requirement. 946 F.2d at 643. In that case, however, the court ultimately turned to the "best evidence" requirement and concluded that articles are nonetheless inadmissible if the declarant is able to testify about the statements. In support of this conclusion, the court noted that Rule 803(24)(b)[5] requires that the hearsay evidence be *more probative* than any other evidence that could be reasonably obtained. *Larez,* 946 F.2d at 644. In failing to meet the "best evidence" requirement, however, *Larez* is clearly distinguished from the facts of our case.

Here, the amount of evidence provided by the news articles cannot be reasonably obtained in any other manner. The evidence used in this case seeks to establish a pattern of harassment and necessarily spreads across countless individuals across hundreds of miles. The evidence also includes anonymous Internet postings (available for anyone to access) whose authors' identities are unknown. In contrast to the more typical case involving a single incident documented by a small number of reports, this case involves authors, victims, incidents, and news reports that are virtually limitless in number and variety. Plaintiffs cannot, through "reasonable efforts," procure and call to the witness stand each and every one of these individuals.

The news reports, postings, and videos contained in Plaintiffs' trial exhibit list are admissible under Rule 807 because the articles are the most probative evidence Plaintiffs can procure through reasonable efforts. *Larez,* 946 F.2d at 644. The circumstances in this case warrant their admission. The existence of a catch-all hearsay exception was meant precisely for a case like this. Rule 807 exists to provide courts with flexibility in admitting statements traditionally regarded as hearsay but not falling within any of the conventional exceptions. *United States v. Valdez-Soto,* 31 F.3d 1467, 1471 (9th Cir. 1994). In this case, the use of Rule 807 serves to forward the general purposes of the Rules and the interests of justice by allowing the exhibits to be admitted into evidence.

The States's hearsay objections to Plaintiffs' Internet Exhibits are entirely premature. Whether each exhibit has "circumstantial guarantees of trustworthiness" that warrant its admission under Fed. R. Evid. 807 can only be determined at trial as statements from each exhibit are presented and

---

[5]Two residual exceptions were contained in the Federal Rules as initially adopted. In 1997, the residual exceptions were transferred out of Rules 803 and 804, and combined in the a single exception in Rule 807. No change in meaning was intended. The cases decided under old rules 803(24) and 804(b)(5) remain pertinent in deciding whether hearsay is admissible under Rule 807.

Pls' Response to Defs.' Mot. in Limine
(No. 3:09-CV-05456-BHS)

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

13

1  evaluated. The State recognizes that under a Rule 807 analysis admissibility is determined on a
2  statement by statement basis. (State MIL at 8.) Depending on the statement offered and its source,
3  the Court may determine that some statements are admissible and some are not. If during the course
4  of its case Plaintiffs attempt to elicit statements that are improper on hearsay grounds, the State can
5  object at that time and the issue will be resolved at that time. *S.E.C. v. Treadway*, 438 F. Supp. 2d
6  218, 225 (S.D.N.Y. 2006).

7  In a case with evidence as voluminous as this one—and where the object of the admission of
8  the evidence is not to incarcerate or impose financial liability—it is unreasonable to expect that
9  Plaintiffs would actually call, as witnesses on the witness stand, each and every newspaper reporter,
10 editorial board member, magazine writer, news anchor, and video editor who ran stories or produced
11 videos relating to harassment of pro-traditional-marriage supporters (not to mention the hundreds
12 of victims who those reporters, board members, writers, anchors, and editors interviewed, quoted,
13 and filmed for their stories). To do so, Plaintiffs would literally have to call hundreds upon hundreds
14 of witnesses. Not only is such a result counterintuitive, but it also flies in the face of what the
15 Supreme Court promised to groups seeking an exposure exemption, namely, "flexibility in the proof
16 of injury." *Buckley v. Valeo*, 424 U.S. 1, 74 (1976). Each and every instance of intimidation could
17 easily comprise an entire trial of its own. Surely, the "flexibility" the Court promised was not the
18 promise of one trial (for an exemption) that itself comprised hundreds of mini-trials, each with their
19 own intricacies.

20 Where alternative grounds upon which alleged hearsay evidence could be admitted exist, the
21 Court should defer judgment until such time as Plaintiffs seeks to offer its exhibits into evidence at
22 trial. *Wechsler v. Hunt Health Sys., Ltd.*, 381 F. Supp. 2d 135, 153 (S.D.N.Y. 2003). This is because
23 a court "excludes evidence on a Motion In Limine only if the evidence is clearly inadmissible for
24 *any* purpose." *Hawthorne Partners v. AT & T Technologies*, 831 F.Supp. 1398, 1400 (N.D. Ill. 1993)
25 (emphasis added).

26 For these reasons, the Court should deny the State's motion. Of course, "the denial of a motion
27 *in limine* does not mean that the questioned evidence is admissible. It only means that the court will
28 resolve the issue at trial." *Nettles v. Farmers Ins. Exch. & Farmers Group, Inc.*, 2007 WL 1417304

**Pls' Response to Defs.' Mot. in Limine**
**(No. 3:09-CV-05456-BHS)**
14
BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

(W.D. Wash. May 11, 2007).

### D. Plaintiffs' Email, Photographic, and Audio Evidence Will Be Properly Authenticated At Trial.

Lastly, the State contends "photographs, email, letters and voice recordings" Plaintiffs intend to offer are inadmissible and should be excluded "unless the plaintiffs provide authentication." (State MIL at 10-11.) This Court should deny the State's motion because all photographs, emails, letters, and voice recordings Plaintiffs will offer at trial will be authenticated, pursuant to Federal Rule of Evidence 901, by a "competent witness with personal knowledge of their authenticity." *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 533 (9th Cir. 2011).

Larry Stickney can and will properly authenticate emails and photographs sent to Protect Marriage Washington ("PMW"), which Plaintiffs intend to offer at trial. As the Campaign Manager of Protect Marriage Washington, Mr. Stickney maintained the PMW e-mail account and personally responded to almost all of the emails (Dkt. 209-4, pg. 2, ¶¶ 2-3). Mr. Stickney is qualified to authenticate the documents because he is the one who received the emails. *B.S. ex. rel. Schneider v. Board of School Trustees, Fort Wayne Community Schools*, 255 F. Supp. 2d 891, 893-94 (N.D. Ind. 2003) (affidavit of email's recipient is an "acceptable method for authenticating an email message").

In addition, Rule 901(b) sets forth illustrations of how evidence may be authenticated or identified while emphasizing that these are "illustration(s) only" and are not intended to be the only methods by which the Court may determine that the emails are what [the proponent] says they are. *See United States v. Dean,* 989 F.2d 1205, 1210 n. 7 (D.C. Cir. 1993). Mr. Stickney fulfills at least two of 901(b)'s suggested methods of authentication. First, 901(b)(1) holds that "testimony of [a] witness with knowledge" provides authentication. Mr. Stickney satisfies this because he is PMW's campaign manager and PMW received these emails. Second, under Rule 901(b)(4), e-mail may be authenticated by reference to its "appearance, contents, substance, internal patterns, or other distinctive characteristics." While the senders may have been anonymous or unidentifiable, (Dkt. 248-1, pg. 2, ¶ 6), there remains sufficient evidence for a fact-finder to identify that the emails were sent to PMW, directed to Mr. Stickney, and that (in many cases) Mr. Stickney replied to them.

Pls' Response to Defs.' Mot. in Limine
(No. 3:09-CV-05456-BHS)

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434

15

1   Likewise, any voice recordings and letters Plaintiffs intend to use can and will be authenticated
2   at trial by a "competent witness with personal knowledge of their authenticity." *Las Vegas Sands*,
3   632 F.3d at 533. Plaintiffs' methods of authenticating their voice recordings and letters offered in
4   support of their motion for summary judgment are illustrative. *See* Dkt. 209-3, pg. 9, ¶ 45 (transcript
5   of voice mail message authenticated through declaration of person who received it); Dkt. 225-7, pgs.
6   2-3, ¶¶ 3-6 (voice mail recordings authenticated through declaration of person who received and
7   listened to them); Dkt. 225-10, pg. 3, ¶ 7 (threatening letter authenticated through declaration of
8   person who received it).

    A motion *in limine* made on authentication grounds should be denied as premature where a
    party will have an opportunity to authenticate the evidence in question at trial. *See Hilborn v. Chaw
    Khong Technologies, Co., Ltd.*, 2008 WL 4225783, *2 (E.D. Mich. Sept. 10, 2008). The State has
    not carried its burden of proving Plaintiffs' trial exhibits are "clearly inadmissible on all potential
    grounds." *Turner v. Univ. of WA*, 2007 WL 2984682, at *1 (W.D. Wash. Oct. 10, 2007) This Court
    should accordingly deny their motion. *Id*.

## Conclusion

For the reasons presented in this response, this Court should deny the State's motions in limine.

Dated this 6th day of September, 2011.

Respectfully submitted,

   s/ James Bopp, Jr.
James Bopp, Jr.
Attorney for Plaintiffs

**Pls' Response to Defs.' Mot. in Limine**
**(No. 3:09-CV-05456-BHS)**

**BOPP, COLESON & BOSTROM**
**1 South Sixth Street**
**Terre Haute, Indiana 47807-3510**
**(812) 232-2434**

16

# Certificate of Service

I, James Bopp, Jr. am over the age of 18 years and not a party to the above-captioned action. My business address is 1 South Sixth Street; Terre Haute, Indiana 47807-3510.

On September 6th, 2011, I electronically filed the foregoing document, described as Plaintiffs' Response to Defendants' Motion In Limine, with the Clerk of Court using the CM/ECF system which will send notification of such filing to:

Anne E. Egeler
annee1@atg.wa.gov
Jay Geck
jayg@atg.wa.gov
James K. Pharris
jamesp@atg.wa.gov
*Counsel for Defendants Sam Reed and Brenda Galarza*

Steven J. Dixson
sjd@wkdlaw.com
Duane M. Swinton
dms@wkdlaw.com
Leslie R. Weatherhead
lwlibertas@aol.com
*Counsel for Intervenor Washington Coalition for Open Government*

Ryan McBrayer
rmcbrayer@perkinscoie.com
Kevin J. Hamilton
khamilton@perkinscoie.com
William B. Staffort
wstafford@perkinscoie.com
Rhonda L. Barnes
rbarnes@perkinscoie.com
*Counsel for Intervenor Washington Families Standing Together*

I declare under the penalty of perjury under the laws of the State of Indiana that the above is true and correct. Executed this 6th day of September, 2011.

s/ James Bopp, Jr.
James Bopp, Jr.
*Counsel for All Plaintiffs*

**Pls' Response to Defs.' Mot. in Limine**
**(No. 3:09-CV-05456-BHS)**

**BOPP, COLESON & BOSTROM**
**1 South Sixth Street**
**Terre Haute, Indiana 47807-3510**
**(812) 232-2434**