1
2
3
4
5
6
7

**United States District Court**
**Western District of Washington**
**Tacoma Division**

| | |
|---|---|
| **John Doe #1**, et al., | No. 3:09-CV-05456-BHS |
| Plaintiffs, | The Honorable Benjamin H. Settle |
| v. | **Plaintiffs' Trial Brief and** |
| **Sam Reed**, et al., | **Proposed Findings & Conclusions** |
| Defendants. | |

Pls.' Trial Brief and Proposed
Findings & Conclusions
(No. 3:09-CV-05456-BHS)

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807
(812) 232-2434

**Trial Brief**

Plaintiffs have heretofore filed summary judgment briefing with the Court. That briefing is extensive, as to both the facts and the law. Such briefing included (on Plaintiffs' behalf alone) an opening brief, three response briefs, and three reply briefs. As neither the facts nor the legal arguments raised by the parties has changed since that briefing was submitted, Plaintiffs opt to rely on their summary judgment briefing in this trial brief, and accordingly, Plaintiffs hereby incorporate in this trial brief all arguments and factual allegations raised in their summary judgment briefing. (*See* Dkt. 209 (Pls.' Opening Br.); Dkt. 225 (Pls.' Resp. to State's Mot. for Summ. J.); Dkt. 227 (Pls.' Resp. to WAFST's Mot. for Summ. J.); Dkt. 228 (Pls.' Resp. to WCOG's Mot. for Summ. J.); Dkt. 232 (Pls.' Reply to State); Dkt. 233 (Pls.' Reply to WAFST); Dkt. 234 (Pls.' Reply to WCOG); Dkt. 259 (Pls.' Add'l Briefing per Order of the Court).) Given that no decision has issued from the Court on the cross motions for summary judgment, Plaintiffs assert that their position at summary judgment, as to both the facts and the law, is unchanged at this, the trial stage.

Rather than re-filing, in essence, their extensive summary judgment briefing, Plaintiffs incorporate by reference the legal arguments and factual assertions raised in those briefs, and provide the following executive summary of their arguments and assertions:

In November 2009, Referendum 71 ("R-71") appeared on the ballot in Washington. R-71 asked Washingtonians to reject or affirm Senate Bill 5688 ("SB 5688"), which granted same-sex partners a host of legal rights and obligations popularly described as "everything but marriage." Plaintiffs, together with the help of other Washingtonians, worked to get R-71 on the ballot. To do so, Plaintiffs needed to submit 120,577 valid signatures. On July 25, 2009, Plaintiff Protect Marriage Washington submitted 137,881 signatures to the Secretary of State. After completing its verification process, in which the Secretary of State examined every single signature, the Secretary of State officially certified R-71 for the ballot, having found 122,007 valid signatures. At the November 2009 election, Washingtonians voted to affirm SB 5688.

Protect Marriage Washington organized in May 2009 for the express purpose of opposing SB 5688, first, by collecting enough signatures to force a referendum, and then, by actively promoting the rejection of SB 5688 at the polls. Under Washington's Public Records Act, several citizen groups

Pls.' Trial Brief and Proposed
Findings & Conclusions
(No. 3:09-CV-05456-BHS)

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807
(812) 232-2434

have requested the names and addresses of R-71 petition signers. At least two groups have publicly indicated their intent to publish those names on their web sites, in searchable format.

In June 2010, the Supreme Court held that, as a general proposition, a state may publicize the names and addresses of citizens who have signed a referendum petition. *Doe v. Reed*, 130 S. Ct. 2811, 2821 (2010). It also held, however, that the First Amendment demands that an exception be made if a group can show "'a reasonable probability that the compelled disclosure of personal information will subject them to threats, harassment, or reprisals from either Government officials or private parties.'" *Id.* (internal brackets omitted) (*quoting Buckley v. Valeo*, 424 U.S. 1, 74 (1976)); *see also Citizens United v. FEC*, 130 S. Ct. 876, 915 (2010); *McConnell v. FEC*, 540 U.S. 93, 198 (2003).

Thus, Plaintiffs' task at trial is to present evidence sufficient to show a "reasonable probability" that the public exposure of the names and addresses of R-71 petition signers will result in "threats, harassment, or reprisals."

When the Supreme Court announced the exposure exemption test in *Buckley v. Valeo*, 424 U.S. 1, 74 (1976), it was concerned that "unduly strict requirements of proof" could impose an unworkable, "heavy burden" on speech. It therefore based the exposure exemption test on this foundational principle: *Groups must be allowed "sufficient flexibility in [their] proof of injury to assure a fair consideration of their claim." Id.* (emphasis added). "Flexibility" is the rule. And therefore, to obtain an exemption, groups "need show *only* a reasonable probability" that exposure will lead to reprisals. *Id.* (emphasis added); *see also Doe*, 130 S. Ct. at 2820.

Before, during, and after the debate over R-71, persons supporting traditional marriage, both in Washington and throughout the country, were subjected to threats, harassment, and reprisals. As Plaintiffs' evidence at trial will show, there have been death threats; physical assaults and threats of violence; vandalism and threats of destruction of property; arson and threats of arson; angry protests; lewd and perverse demonstrations; intimidating emails and phone calls; hate mail; mailed envelopes containing white suspicious powder; multiple web sites dedicated to blacklisting those who support traditional marriage and similar causes; loss of employment and job opportunities; intimidation and reprisals on campus and in the classroom; acts of intimidation through

Pls.' Trial Brief and Proposed
Findings & Conclusions
(No. 3:09-CV-05456-BHS)

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807
(812) 232-2434

2

photography; economic reprisals and demands for "hush money"; and gross expressions of anti-religious bigotry, including vandalism and threats directed at religious institutions and religious adherents. In addition, protected speech and association have been chilled because of the prospect of reprisals.

Because the evidence at trial will show that there is a reasonable probability that, if exposed, those who signed the R-71 petition will be subjected to threats, harassment, or reprisals, the State should be permanently enjoined from publicizing the names of those persons who signed the R-71 petition.

## Proposed Findings of Fact

1. In November 2009, Referendum 71 ("R-71") appeared on the ballot in Washington. R-71 asked Washingtonians to reject or affirm Senate Bill 5688 ("SB 5688"), which granted same-sex partners a host of legal rights and obligations popularly described as "everything but marriage."

2. Plaintiffs, together with the help of other Washingtonians, worked to get R-71 on the ballot. To do so, Plaintiffs needed to submit 120,577 valid signatures. On July 25, 2009, Plaintiff Protect Marriage Washington submitted 137,881 signatures to the Secretary of State. After completing its verification process, in which the Secretary of State examined every single signature, the Secretary of State officially certified R-71 for the ballot, having found 122,007 valid signatures. At the November 2009 election, Washingtonians voted to affirm SB 5688.

3. Protect Marriage Washington organized in May 2009 for the express purpose of opposing SB 5688, first, by collecting enough signatures to force a referendum, and then, by actively promoting the rejection of SB 5688 at the polls.

4. Under Washington's Public Records Act, citizen groups have requested the names and addresses of R-71 petition signers. At least two groups have publicly indicated their intent to publish those names on their web sites, in searchable format.

5. Before, during, and after the debate over R-71, persons supporting traditional marriage, both in Washington and throughout the country, were subjected to threats, harassment, and reprisals.

Pls.' Trial Brief and Proposed
Findings & Conclusions
(No. 3:09-CV-05456-BHS)

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807
(812) 232-2434

3

6. There have been death threats; physical assaults and threats of violence; vandalism and threats of destruction of property; arson and threats of arson; angry protests; lewd and perverse demonstrations; intimidating emails and phone calls; hate mail; mailed envelopes containing white suspicious powder; multiple web sites dedicated to blacklisting those who support traditional marriage and similar causes; loss of employment and job opportunities; intimidation and reprisals on campus and in the classroom; acts of intimidation through photography; economic reprisals and demands for "hush money"; and gross expressions of anti-religious bigotry, including vandalism and threats directed at religious institutions and religious adherents.

7. The threats, harassment, and reprisals listed above are attributable to the respective victims' stance in favor of traditional marriage or similar causes.

8. Protected speech and association have been chilled because of the prospect of reprisals.

**Proposed Conclusions of Law**

1. As applied to R-71 petition signers, Washington's Public Records Act is unconstitutional, as contrary to the First Amendment to the U.S. Constitution (incorporated against the State via the Fourteenth Amendment), because Plaintiffs have demonstrated a reasonable probability that, if exposed, R-71 signers will suffer threats, harassment, or reprisals.

2. The exposure exemption test as outlined in *Buckley v. Valeo*, 424 U.S. 1, 74 (1976), and as reiterated in *Doe v. Reed*, 130 S. Ct. 2811, 2821 (2010), is available to *any* group that can demonstrate, to a "reasonable probability," that exposure of their personal information will subject them to threats, harassment, or reprisals. In other words, the exemption is not a legal mechanism available exclusively to "minor parties."

3. The exposure exemption test does not include, as a necessary element, law enforcement's unwillingness or inability to respond to threats, harassment, or reprisals.

4. Plaintiff Protect Marriage Washington is a "new" group that organized in May 2009 for the express purpose of opposing SB 5688, first, by collecting enough signatures to force a referendum, and then, by actively promoting the rejection of SB 5688 at the polls. As a

Pls.' Trial Brief and Proposed
Findings & Conclusions
(No. 3:09-CV-05456-BHS)

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807
(812) 232-2434

4

"new" political organization, Protect Marriage Washington is permitted, as a matter of law, to rely on evidence of threats, harassment, and reprisals directed at other groups, within and without the State of Washington, who supported traditional marriage or similar causes. *See Buckley*, 424 U.S. at 74.

5. Even if Protect Marriage Washington were not a "new" group (and it is), Plaintiffs are permitted, as a matter of law, to point to evidence of threats, harassment, and reprisals directed at other groups, within and without the State of Washington, who supported traditional marriage or similar causes. The Supreme Court has held time and again that the exposure exemption test is designed to be flexible, and part of that flexibility requires that Plaintiffs be permitted to point to examples of harassment aimed against those, in Washington and throughout the country, who have stood up for traditional marriage. *See Brown v. Socialist Workers '74 Campaign Committee (Ohio)*, 459 U.S. 87, 99 (1982) (holding unanimously, against argument to the contrary, that evidence of out-of-state reprisals against persons holding similar views is relevant to, and therefore should be considered in, the exposure exemption analysis); *id.* (indicating, with approval, that appellants introduced "proof of specific incidents" of hostility, "*many of which* occurred in Ohio and neighboring states" (emphasis added)); *id.* at 100–01 (relying on "numerous instances of recent harassment . . . both in Ohio *and in other states*" (emphasis added)); *id.* at 101 n.20 (holding that incidents in Chicago and Pittsburgh were "certainly relevant" to the decision whether to grant an exposure exemption to a group in Ohio).

6. As part of the flexible standard of proof announced by the Supreme Court, Plaintiffs are permitted to introduce evidence of threats, harassment, and reprisals, under Federal Rule of Evidence 807, that would otherwise be considered hearsay. *See Buckley*, 424 U.S. at 74 (without flexibility in the proof of injury, a group seeking an exposure exemption "may never be able to prove a substantial threat of harassment, however real that threat may be, because it would be required to come forward with witnesses who are too fearful to contribute but not too fearful to testify about their fear").

7. The State's interest in preventing fraudulent referenda from being voted upon (i.e., by

Pls.' Trial Brief and Proposed
Findings & Conclusions
(No. 3:09-CV-05456-BHS)

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807
(812) 232-2434

5

preventing referenda without the statutorily required number of valid signatures from appearing on the ballot) is now dormant, particularly in light of the fact that, in this as-applied challenge, the Secretary of State reviewed every single signature that was submitted in connection with the R-71 petition.

Dated this 6th day of September, 2011.

Respectfully submitted,

   s/ James Bopp, Jr.
James Bopp, Jr. (Ind. Bar No. 2838-84)*
   jboppjr@aol.com
Joseph E. La Rue (Ohio Bar No. 80643)*
   jlarue@bopplaw.com
BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807-3510
(812) 232-2434
*Counsel for All Plaintiffs*
*Pro Hac Vice Application Granted*

Stephen Pidgeon
ATTORNEY AT LAW, P.S.
30002 Colby Avenue, Suite 306
Everett, Washington 98201
(360) 805-6677
*Counsel for All Plaintiffs*

Pls.' Trial Brief and Proposed
Findings & Conclusions
(No. 3:09-CV-05456-BHS)

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807
(812) 232-2434

6

# Certificate of Service

I, James Bopp, Jr., am over the age of eighteen years and not a party to the above-captioned action. My business address is 1 South Sixth Street, Terre Haute, Indiana 47807.

On September 6, 2011, I filed the foregoing document using the Court's CM/ECF system, which will automatically send an email copy of the same to counsel's respective emails below:

(1) Counsel for Defendants Sam Reed and Brenda Galarza:
Anne E. Egeler — annee1@atg.wa.gov
Jay Geck — jayg@atg.wa.gov
William G. Clark — billc2@atg.wa.gov

(2) Counsel for Intervenor Washington Coalition for Open Government:
Steven J. Dixson — sjd@wkdlaw.com
Duane M. Swinton — dms@wkdlaw.com
Leslie R. Weatherhead — lwlibertas@aol.com

(3) Counsel for Intervenor Washington Families Standing Together
Ryan McBrayer — rmcbrayer@perkinscoie.com
Kevin J. Hamilton — khamilton@perkinscoie.com
William B. Staffort — wstafford@perkinscoie.com
Rhonda L. Barnes — rbarnes@perkinscoie.com

I declare under the penalty of perjury under the laws of the State of Indiana that the above is true and correct.

Executed this 6th day of September, 2011.


 s/ James Bopp, Jr.
James Bopp, Jr.
*Counsel for All Plaintiffs*

Pls.' Trial Brief and Proposed
Findings & Conclusions
(No. 3:09-CV-05456-BHS)

BOPP, COLESON & BOSTROM
1 South Sixth Street
Terre Haute, Indiana 47807
(812) 232-2434